IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF CONNECTICUT; NED LAMONT, Governor of Connecticut, in his official capacity; WILLIAM TONG, Attorney General of Connecticut, in his official capacity; PATRICK GRIFFIN, Chief State's Attorney of Connecticut, in his official capacity; and ELIOT D. PRESCOTT, Deputy Chief State's Attorney, Inspector General, in his official capacity, <br><br> Defendants. | **COMPLAINT** <br><br><br> Case No.: 3:26-cv-758 |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

1.      For centuries, the Supreme Court has repeatedly recognized that states have no authority whatsoever to regulate the Federal Government's operations. *United States v. Washington*, 596 U.S. 832, 838–39 (2022) (The Supremacy Clause "prohibit[s] state laws that either regulat[e] the United States directly or discriminat[e] against the Federal Government…."); *Mayo v. United States*, 319 U.S. 441, 445 (1943) (The Supremacy Clause renders "the activities of the Federal Government … free from regulation by any state."); *Tennessee v. Davis*, 100 U.S. 257, 262–63 (1879); *In re Neagle*, 135 U.S. 1, 75 (1890); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819). A state law that directly regulates the Federal Government's operations is straightforwardly invalid. *E.g.*, *United States v. California*, No. 26-926, -- F.4th -- 2026 WL

1

1088674 at *5 (9th Cir. Apr. 22, 2026) (enjoining state law attempting to regulate federal law enforcement because states are forbidden "from regulating the federal government *qua* government and from controlling federal governmental functions in any manner and to any degree").

2.      Despite that well-established precedent, Connecticut recently enacted a bill that purports to do exactly what constitutional law says it cannot: subject federal officers to criminal laws that seek to regulate how those officers carry out their federal duties.

3.      On May 1, 2026, the Connecticut legislature passed Substitute Senate Bill 397, misleadingly titled "An Act Concerning Democracy and Government Accountability and the Use and Retention of Data from Automated License Plate Reader Systems," which the Governor signed into law on May 4, 2026 (hereinafter the "Act" or "SB 397"). The provisions of the Act challenged herein—including parts of Sections 3, 4, 5, and 6—took effect immediately and are blatantly unconstitutional.[1]

4.      Portions of Sections 3, 4 and 5 seek to regulate federal agents' use of force when executing their federal duties by applying state-law standards governing use of force to federal officers. Such provisions violate the principles of intergovernmental immunity that flow from the Supremacy Clause of the U.S. Constitution.

5.      Furthermore, portions of Section 6 of the Act purport to regulate what federal officers may and may not wear within the State of Connecticut when carrying out their official duties, including face coverings and personal identifiers. A violation of those provisions by a federal officer is a misdemeanor offense, punishable by jail time. Those challenged sections also

---

[1] The United States has grave concerns over the constitutionality of other parts of the Act as well and reserves the right to bring additional challenges in the future.

violate the principles of intergovernmental immunity contained within the Supremacy Clause of the U.S. Constitution.

6.      Just last month, the Ninth Circuit unanimously granted an injunction against a materially similar California law requiring federal law enforcement officers to "visibly display identification." *See California*, 2026 WL 1088674 at *1. Because California's law "expressly applie[d] to federal officers," sought "to control their conduct in performing law enforcement operations," "purport[ed] to override the federal government's power to determine whether, how, and when to publicly identify its officers," and thereby "aim[ed] to regulate the manner and conditions under which federal agents can enforce federal law," the Ninth Circuit easily concluded that it was "barred by intergovernmental immunity" under the Supremacy Clause. *Id.* at *5–6. Moreover, the district court held that California's mask law unlawfully regulated and discriminated against the Federal Government. *See United States v. California*, No. 2:25-cv-10999, 2026 WL 363346, at *11-12 (C.D. Cal. Feb. 9, 2026)

7.      The Connecticut Act seeks to regulate the actions of federal law enforcement officers within Connecticut by subjecting those officers to criminal penalties for following the federal laws and policies that govern their federal duties and actions. Such laws also undermine the principles of federalism that underlie our entire constitutional order, by seeking to prevent effective federal law enforcement within Connecticut. Such actions are unconstitutional and harm the citizens of both the United States as a whole and of Connecticut as a "State" subject to the Supremacy Clause. U.S. Const. art. VI, cl. 2.

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

3

9. Venue is proper under 28 U.S.C. § 1391(b)(1) because all defendants reside in this district.

10. The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

11. Plaintiff, the United States of America, enforces federal laws through its Executive agencies. Those agencies include but are not limited to the Department of Justice and its component law enforcement agencies—e.g., the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA)—and the Department of Homeland Security (DHS) and its component law enforcement agencies—e.g., U.S. Immigration and Customs Enforcement (ICE) (which includes Homeland Security Investigations (HSI)), U.S. Customs and Border Protection (CBP), and the Federal Protective Service.

12. Defendant Connecticut is a state of the United States.

13. Defendant Ned Lamont is the Governor of Connecticut and is being sued in his official capacity.

14. Defendant William Tong is the Attorney General of Connecticut and is being sued in his official capacity.

15. Defendant Patrick Griffin is the Chief State's Attorney of Connecticut. In that capacity he is the administrative head of the Division of Criminal Justice, the independent agency of the executive branch of state government that is responsible for the investigation and prosecution of all criminal matters in the State of Connecticut. He is being sued in his official capacity.

16. Defendant Eliot D. Prescott, Deputy Chief State's Attorney, Inspector General, leads the Connecticut Division of Criminal Justice's Office of Inspector General, which is charged with investigating use of force incidents by peace officers under state law and prosecuting those deemed unjustified. He is being sued in his official capacity.

## LEGAL AND FACTUAL BACKGROUND

## THE SUPREMACY CLAUSE AND FEDERAL LAW ENFORCEMENT

17. The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause incorporates principles of intergovernmental immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly or discriminat[es] against the Federal Government or those with whom it deals." *United States v. Washington*, 596 U.S. 832, 838 (2022) (citation omitted).

18. The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3.

19. Subordinate officers in various federal agencies assist the President in discharging that duty. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020); *see also Tennessee*, 100 U.S. at 263 (stating that the Federal Government "can act only through its officers and agents").

20. Federal law empowers the Executive to provide for and dictate the conduct of federal law enforcement officers in carrying out their official duties. *See, e.g.*, 5 U.S.C. § 301 (authorizing the head of an Executive or military department to "prescribe regulations for the government of his department [and] the conduct of its employees"); 28 U.S.C. § 509 (vesting all

functions of other officers, agencies, and employees of the Department of Justice in the Attorney General); 8 U.S.C. § 1103(a)(2) (giving the Secretary of Homeland Security the power to "control, direct[], and supervis[e]" all DHS employees).

21.    Federal law similarly empowers the Executive to provide for and dictate federal law enforcement officers' uniforms and equipment when carrying out their official duties. *See, e.g., id.*; 5 U.S.C. § 5901 (directing the head of each federal agency to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational safety and health programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees).

22.    Because the authority to execute the laws "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States," federal officers and agents "must act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement officers carry out their duties within the several states, including Connecticut.

23.    For example, the DEA enforces our Nation's controlled substances laws. *See generally* The Controlled Substances Act (CSA), *codified as amended at* 21 U.S.C. §§ 801, *et seq.*

24.    In carrying out that mission, the DEA investigates and aids in the prosecution of major violators of controlled substances laws; seizes and forfeits assets derived from illicit drug trafficking; and manages a national drug intelligence program in cooperation with federal, state, local, and foreign officials. *See* 28 C.F.R. § 0.100–0.101.[2]

25.    As another example, the FBI is charged with rooting out violent crime, defending the homeland against terrorist attacks, and investigating and combating cybercrime, among other

---

[2] *See also* DEA, Mission Statement, https://perma.cc/99W4-98GL.

duties. It carries out this mission through numerous operations throughout the country and in partnership with federal, state, local, and foreign officials. *See id.* § 0.85.[3]

26.    And as another example, DHS, through ICE and CBP, is principally responsible for enforcing our Nation's immigration laws, including the Immigration and Nationality Act (INA), and, pursuant to Congress's power to "establish a uniform Rule of Naturalization," U.S. Const. art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status," *see Arizona v. United States*, 567 U.S. 387, 395 (2012).

27.    The INA confers upon the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully present in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225–29a, 1231. As part of those enforcement efforts, DHS, through HSI, also investigates transnational crime and threats, including incidents of human smuggling and human trafficking.  *See* 8 U.S.C. §§ 1324, 1232.

### CONNECTICUT'S ACT

28.    On May 1, 2026, the Connecticut legislature passed Substitute Senate Bill 397, titled "An Act Concerning Democracy and Government Accountability and the Use and Retention of Data from Automated License Plate Reader Systems" (**Exhibit A**), which the Governor signed into law on May 4, 2026.

29.    The provisions of the Act challenged herein—including portions of Sections 3, 4, 5, and 6—took effect immediately.

30.    Portions of Sections 3, 4 and 5 seek to regulate the Federal Government by imposing use-of-force laws on federal officers executing their official duties within the State of

---

[3] *See also* FBI, About, Mission and Priorities, https://www.fbi.gov/about/mission (last visited May 12, 2026).

Connecticut. In particular, parts of Sections 3, 4, and 5 purport to impose Connecticut's own state-law use-of-force standards on federal officers executing their official duties within the state—standards that conflict with and differ materially from applicable federal use-of-force standards and policies. The Act then authorizes state officials to investigate and criminally prosecute use-of-force incidents involving such federal officers whose use of force is deemed unjustified under state-law use-of-force standards while executing their federal duties.

31.     Portions of Section 6 purport to regulate what federal officers may and may not wear within the State of Connecticut when carrying out their official duties, including how they must be identified and when they may wear facial coverings. For example, subsection (b) prohibits federal officers from "wear[ing] any facial covering or personal disguise while interacting with the public in the performance of such officer's duties," including "while carrying out the enforcement of laws of … the United States." And subsection (c) requires that federal officers authorized to make arrests, when "conducting a planned arrest or interacting with the public in such officer's official capacity," to "be clearly identified by such officer's badge and name tag on the officer's uniform." Both the facial covering and identification requirements include only limited exceptions that differ in material respects from federal agency policies. Both requirements provide that any intentional violation is "a class D misdemeanor." Under Connecticut penal law, a class D misdemeanor is punishable by up to 30 days in jail. Conn. Gen Stat. § 53a26(d)(4) (defining misdemeanor classes, including "a class D misdemeanor if the maximum term of imprisonment specified is thirty days.").

32.     The Act explicitly purports to apply these new rules to federal law enforcement officers by amending Section 51-277a of the Connecticut General Statutes. Under subsection (a) of the revised § 51-277a, "peace officer" is explicitly defined to include "any federal law

8

enforcement officer as defined under 18 U.S.C. 115(c)(1) and 34 U.S.C. 50301(5)." *Id.* § 51-277a(a).

33.    Connecticut has indicated an intent to enforce the Act against federal officers and agents, including the challenged provisions in Sections 3, 4, 5, and 6. For example, after signing the law, Governor Lamont posted a statement to X stating, "Today I signed SB 397 into law. Connecticut will not stand by while federal agents violate the constitutional rights of our residents. Protected areas, accountability measures, and the right to sue federal agents who break the law." X post, May 4, 2026 (@GovNedLamont). He further stated that the bill is "the law of the land in the State of Connecticut" and "this is what Connecticut is all about."[4] Connecticut's Attorney General stated, "Today's passage of Senate Bill 397 reaffirms a simple truth. In Connecticut, no one is above the law, including federal immigration officials."[5] He further proclaimed, at the bill's signing, that, "[w]e are sovereign in this state, this is the sovereign state of Connecticut. That is why we have a Supreme Court. That is why we have state laws. That's why we have a Capitol."[6]

34.    The challenged parts of the Act relating to use of force, facial coverings, and identification all violate the principles of intergovernmental immunity contained within the Supremacy Clause of the U.S. Constitution by regulating the Federal Government. *Washington*, 596 U.S. at 838.

35.    Indeed, the Ninth Circuit recently determined that the United States was likely to prevail on its challenge to a similar identification requirement in California because it unlawfully regulated the Federal Government. *See California*, 2026 WL 1088674. There, the Ninth Circuit

---

[4] https://www.youtube.com/watch?v=5Z1etP04_As (last visited May 14, 2026).
[5] *See* https://portal.ct.gov/ag/press-releases/2026-press-releases/attorney-general-tong-praises-senate-passage-of-senate-bill-397 (last visited May 14, 2026).
[6] Eng, https://ctnewsjunkie.com/2026/05/04/we-are-all-minneapolis-lamont-signs-bill-limiting-ice-into-law/ (May 4, 2026, 2:11 p.m.) (last visited May 14, 2026).

held that "if a state law directly regulates the conduct of the United States, it is void irrespective of whether the regulated activities are essential to federal functions or operations, and irrespective of the degree to which the state law interferes with federal functions or operations." *Id.* at *5. It held that the challenged law attempted "to directly regulate the federal government in its performance of law enforcement operations" by seeking "to control [its] conduct in performing law enforcement operations" and purporting to "override the federal government's power to determine whether, how, and when to publicly identify its officers" thus seeking to "regulate the manner and conditions under which federal agents can enforce federal law." *Id.* In that same litigation, the district court enjoined California's similar law regulating facial coverings for federal officers. *See United States v. California*, No. 2:25-cv-10999, 2026 WL 363346, at *11-12 (C.D. Cal. Feb. 9, 2026) (holding that mask laws were an unlawful direct regulation of the Federal Government that also unlawfully discriminated against the Federal Government).

**CONNECTICUT'S LAW HARMS THE FEDERAL GOVERNMENT AND THE PUBLIC**

36.      The United States has standing to bring this lawsuit where it "inten[ds] to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a [state] statute[,]" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014), and the Act violates the Supremacy Clause and principles of intergovernmental immunity, and thus imposes a sovereign and irreparable injury on the United States, *cf. Arizona v. Yellen*, 34 F.4th 841, 851–53 (9th Cir. 2022); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000). The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to Connecticut (or any state) by complying with Connecticut's purported requirements for federal law enforcement officers. A favorable ruling would redress these harms.

37.     Even beyond the sovereign injury, which itself is sufficient for standing to seek an injunction, compliance with the Act would endanger officers and reduce operational effectiveness.

38.     Federal law enforcement agencies cannot and will not comply with the challenged Act, which is unconstitutional and recklessly disregards officer safety, public safety, and federal operational needs.

39.     Federal law enforcement officers routinely undergo training on their agencies' use-of-force policies and are trained to operate within the confines of those policies. Though federal officers operate throughout the country, within each agency they generally operate under a federal use-of-force policy no matter which state or locality they may find themselves in. That consistency in policy and training allows federal officers to focus on the situation before them while relying on their extensive training to operate safely and effectively within the confines of federal law and policy. Requiring federal officers to suddenly learn and incorporate differing or inconsistent policies depending on the particular state can lead to hesitation, indecision, or second-guessing on the part of the agents in situations where they are "forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *see also Tennessee v. Garner*, 471 U.S. 1 (1985). Hesitation or indecision in such circumstances can lead to injury or death. *See, e.g.*, *Hicks v. Scott*, 958 F.3d 421, 437 (6th Cir. 2020) ("When the hesitation involved in giving a warning could readily cause such a warning to be the officer's last, then a warning is not feasible.") (internal quotation and alteration omitted)); *Crosby v. Monroe County*, 394 F.3d 1328, 1334 (11th Cir. 2004) ("We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal.").

40. That is particularly true here, where Connecticut's Act does not appear to permit use of force in situations outside of arrests or escapes from custody, such as the execution of search warrants, inspections at ports of entry, or *Terry* stops. Yet, such scenarios occur routinely, can include dangerous and unpredictable situations, and are contemplated in the DOJ and DHS use-of-force and other applicable policies. By excluding such occurrences, the Act seeks to deter federal officers from investigating crimes and criminal enterprises by subjecting federal officers to potential prosecution for simply doing their jobs. Federal law enforcement frequently investigates more complex criminal enterprises that cause substantial harm to communities. Deterring the investigation of such crime and violations of federal law harms the public as a whole.

41. Indeed, Section 4 of the Act conflicts with federal policy because it provides that use of force is only justified to defend against a person using or threatening physical force against the officer or a third party. The Act's standards for evaluating use of force, scenarios in which use of force is permitted, the threshold standards that must be met for using force, and when warnings or deescalation are required also differ from federal policies. Expecting officers to comply with multiple inconsistent policies can put officers and the public at risk.

42. Connecticut's use-of-force law thus not only seeks to regulate how federal officers carry out their duties, but it does so to the detriment of the officers and the public.

43. Connecticut's laws seeking to regulate what federal officers may wear in terms of facial coverings and identification also harm federal law enforcement. Law enforcement is always a dangerous job. But now is an extraordinarily dangerous time to serve in federal law enforcement in particular. Protecting the personal identities of federal officers and by extension their families is necessary in part due to the increasing threats of targeted harassment and retaliation against federal officers and agents for simply doing their jobs. While such threats have always existed, the

volatile political environment has increased such threats exponentially, requiring new tactics to mitigate the harms to officer safety and operational effectiveness.

44. Increasingly, members of the public photograph, film, and publish federal enforcement actions online and include the personal identities of federal officers for the sole purpose of intimidation and harassment. This content is directly used by members of organized crime and transnational criminal organizations in serious and potentially deadly ways.

45. For example, some individuals photograph officers' faces and run them through facial recognition applications that search social media and doxxing sites such as ICESpy.org, ICEList.is, and ICEList.info. Once a match is made, they often search for family members, including children, and disseminate this information online, allowing people to track, harass, and obstruct law enforcement.

46. This opens officers up to harassment, tracking, and assaults in the performance of their duties in the field. These threats are coming from rioters, illegal aliens, as well as "highly sophisticated gangs like Tren de Aragua and MS-13, criminal rings, murderers, and rapists."[7]

47. Facial coverings can prevent agitators from identifying and tracking officers, especially those using facial recognition or other tools. And while officers almost always wear tags identifying them as federal officers (with the exception of, for example, undercover or plainclothes operations), personal identifiers carry similar risks that can allow agitators to identify and harass individual officers. Protecting officers' personal identities is particularly important during high-risk enforcement operations involving individuals with violent criminal history, gang affiliations, transnational criminal organizations, and known or suspected terrorists.

---

[7] Press Release, DHS, 8000% Increase in Death Threats Against DHS, ICE Law Enforcement as They Risk Their Lives to Remove the Worst of the Worst (Oct. 30, 2025), https://perma.cc/VXK9-MSBQ.

48.     Facial coverings and removal of personal identifiers also prevent suspects from identifying officers who may be involved in future enforcement actions. Because suspects who recognize officers may take preemptive actions to evade apprehension and obstruct enforcement efforts, flexibility is critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent. The existence of databases with individual officers' identities can also undermine undercover operations and plainclothes missions.

49.     Due to the nature of law enforcement operations, officers require flexibility to determine when to announce their identities. To this end, CBP and ICE have discretion on when they permit their officers and agents to wear facial coverings and remove individual identifiers. They also allow officers discretion as to when they announce themselves. Federal regulations provide that "an immigration officer who is authorized to execute an arrest" announce themselves and the purpose of the arrest "as soon as it is practical and safe to do so." 8 C.F.R. § 287.8(c)(2)(iii). That is up to the officers in particular circumstances and cannot be subjected to bright-line or conflicting rules. Removing this flexibility would undermine officer safety and operational effectiveness.

50.     Denying federal agencies and officers discretion in these areas would chill federal law enforcement and deter applicants for law enforcement positions.

51.     Finally, the threat of state enforcement for noncompliance will only further exacerbate the chilling effects of these laws. Officers face a choice of whether to wear facial coverings or identify themselves when it may be dangerous to themselves, others, and the operation, or face the threat of criminal enforcement. Either option presents serious risks and harms and purposefully works to chill the enforcement of federal law. *Davis*, 100 U.S. 262–63 (1879); *In re Neagle*, 135 U.S. at 75.

14

52.     The United States is irreparably harmed by laws that violate the Supremacy Clause by regulating the United States, thus impinging on the ability of the United States to carry out its functions through its Executive agencies, particularly in the context of its sovereign functions, such as federal criminal and immigration enforcement. Further, the Act is newly issued and therefore likely to be enforced, and the challenged provisions of the Act plainly apply to federal law enforcement officers and carry criminal penalties for non-compliance.

53.     There is no other adequate remedy at law.

54.     The public interest favors maintaining our system of federalism and the constitutional lines drawn between federal and state power and enabling the Federal Government to carry out its functions as mandated by the Constitution and Congress.

55.     The public interest also favors allowing federal officers to safely and effectively enforce the laws of the United States.

**CLAIMS FOR RELIEF**

**COUNT I**

**VIOLATION OF THE SUPREMACY CLAUSE**
**(UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)**

56.     Plaintiff hereby incorporates paragraphs 1 through 55 of this Complaint as if fully stated herein.

57.     Connecticut's enforcement of Sections 3, 4, and 5 of SB 397 against federal law-enforcement officers constitutes an unlawful regulation of the Federal Government.

58.     Sections 3, 4, and 5 of SB 397 purport to require federal agents to comply with Connecticut use-of-force policies.

59.     Sections 3, 4, and 5 of SB 397 subject federal agents to state enforcement for noncompliance, including criminal penalties, even if federal agents fully complied with federal

15

laws and policies on use of force.

60.     Sections 3, 4, and 5 of SB397 therefore purport to directly regulate the Federal Government in violation of the intergovernmental immunity doctrine.

61.     Accordingly, Sections 3, 4, and 5 of SB397 are invalid under the Supremacy Clause and their application to the Federal Government should be enjoined.

## COUNT II

### VIOLATION OF THE SUPREMACY CLAUSE
### (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

62.     Plaintiff hereby incorporates paragraphs 1 through 55 of this Complaint as if fully stated herein.

63.     Connecticut's enforcement of Section 6 of SB 397 against federal law-enforcement officers constitutes an unlawful regulation of the Federal Government.

64.     Section 6 of SB 397 purports to ban federal agents from wearing facial coverings while performing their duties in Connecticut and subjects those agents to state enforcement for noncompliance, including criminal penalties.

65.     Section 6 of SB397 purports to require federal agents to display the agent's badge and name tag on the agent's uniform while performing their official duties in Connecticut and subjects those agents to state enforcement for noncompliance, including criminal penalties.

66.     Section 6 of SB397 therefore purports to directly regulate the Federal Government in violation of the intergovernmental immunity doctrine.

67.     Accordingly, Section 6 of SB397 is invalid under the Supremacy Clause and its application to the Federal Government should be enjoined.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

A.      That this Court enter a judgment declaring that Sections 3, 4, 5 and 6 of SB 397

violate the Supremacy Clause and are therefore invalid as to federal agencies and officers;

B.      That this Court preliminarily and permanently enjoin Defendants, as well as their

successors, agents, servants, employees and attorneys, and all those working in concert with them,

from enforcing Section 3, 4, 5, and 6 of SB 397 against federal agencies and officers;

C.      That this Court award the United States its costs and fees in this action; and

D.      That this Court award any other relief it deems just and proper.

DATED: May 15, 2026

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

CHARLES E.T. ROBERTS
Counsel to the Assistant Attorney General
Civil Division

ALESSANDRA FASO
Senior Litigation Counsel

*/s/ Alexandra Schulte*
ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 718-0483
alexandra.schulte@usdoj.gov

*Attorneys for the United States of America*