# EXHIBIT A



*Substitute Senate Bill No. 397*

## *Public Act No. 26-14*

### *AN ACT CONCERNING DEMOCRACY AND GOVERNMENT ACCOUNTABILITY AND THE USE AND RETENTION OF DATA DERIVED FROM AUTOMATED LICENSE PLATE READER SYSTEMS.*

Be it enacted by the Senate and House of Representatives in General Assembly convened:

Section 1. (NEW) (*Effective from passage*) (a) Every person, including a federal or state officer or employee who, under color of any statute, ordinance, regulation, custom or usage, of the United States or the state of Connecticut, subjects, or causes to be subjected, any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the United States Constitution, shall be liable to the party injured in an action at law or other proper proceeding for redress.

(b) (1) In a civil action brought pursuant to subsection (a) of this section, if the defendant is held liable, the court may award damages, including, but not limited to, nominal damages, actual damages, compensatory damages, punitive damages, injunctive relief and other appropriate equitable relief, to protect the peaceable exercise or enjoyment of the right or rights secured by the United States Constitution.

(2) In a civil action brought pursuant to subsection (a) of this section,

if the defendant is held liable, the court shall award the plaintiff reasonable attorney's fees and expenses, unless the court determines that special circumstances would render such an award unjust.

(c) It is the intent of the legislature that in construing the provisions of this section, the courts shall be guided by interpretations given by federal and state courts to 42 USC 1983, as amended from time to time, except that under this section an injured person may bring a claim against a federal officer or employee. Any person named as a defendant under the provisions of this section shall be entitled to raise any applicable immunities or defenses under federal or state law, and federal officers or employees shall be immune to the same degree as an equivalent state officer or employee.

(d) No provision of this section shall be construed to constitute a waiver of the state's sovereign immunity.

Sec. 2. Section 3-129g of the 2026 supplement to the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) The Attorney General may investigate, intervene in or bring a civil or administrative action in the name of the state, seeking injunctive or declaratory relief, damages, and any other relief that may be available under law, whenever any person is or has engaged in a practice or pattern of conduct, or has established a policy, that:

(1) Subjects, or causes to be subjected, other persons to the deprivation of any rights, privileges or immunities secured by the constitutions or laws of this state or the United States; or

(2) Interferes, or attempts to interfere, by threats, intimidation or coercion, with the exercise or enjoyment by other persons of any rights, privileges or immunities secured by the constitutions or laws of this state or the United States.

*Substitute Senate Bill No. 397*

(b) In conducting any investigation under this section, the Attorney General may issue subpoenas and interrogatories, and otherwise gather information, in the same manner and to the same extent as is provided in section 35-42. No information obtained pursuant to the provisions of this subsection may be used in a criminal proceeding.

(c) The Attorney General may investigate, intervene in or bring a civil or administrative action in the name of the state, seeking injunctive or declaratory relief, damages and any other relief that may be available under law, whenever any person, acting under color of any statute, ordinance, regulation, custom or usage, of the United States or the state of Connecticut:

(1) Subjects, or causes to be subjected, other persons to the deprivation of any rights, privileges or immunities secured by the Constitution of the United States or the state Constitution; or

(2) Interferes, or attempts to interfere, by physical obstruction, threats, intimidation or coercion, with the exercise or enjoyment by other persons of any rights, privileges or immunities secured by the Constitution of the United States or the state Constitution.

[(c)] (d) If the Attorney General prevails in a civil action brought pursuant to this section, the court shall order the distribution of any award of damages to the injured person. In a matter involving the interference or attempted interference with any right protected by the [constitutions of this state or the United States] Constitution of the United States or the state Constitution, the court may also award civil penalties against each defendant in an amount not exceeding two thousand five hundred dollars for each violation, provided such violation has been established by clear and convincing evidence. Any civil penalty that is received pursuant to this subsection shall be deposited in the General Fund.

*Substitute Senate Bill No. 397*

**[(d)]** (e) In lieu of bringing a civil action under this section, the Attorney General may accept an assurance of the discontinuance of any allegedly unlawful or unconstitutional practice from any person engaged in such practice. Thereafter, any evidence of a violation of such assurance shall constitute prima facie proof of violation of the applicable law or right in any action commenced by the Attorney General.

**[(e)]** (f) Nothing in this section shall limit the right of a person adversely affected by a violation of chapter 814c to file a complaint with the Commission on Human Rights and Opportunities.

**[(f)]** (g) Nothing in this section shall limit the jurisdiction of the Commission on Human Rights and Opportunities under chapter 814c.

**[(g)]** (h) The Attorney General shall not bring an action under the provisions of this section during the pendency of a matter involving the same parties and the same alleged facts and circumstances before the Commission on Human Rights and Opportunities.

**[(h)]** (i) Nothing in this section shall permit the Attorney General to bring an action that would otherwise be barred under the applicable statute of limitations or repose.

**[(i)]** (j) The Attorney General shall post on the Attorney General's Internet web site information on how to properly file a complaint with the Commission on Human Rights and Opportunities. The Attorney General may, as appropriate, refer cases to the Commission on Human Rights and Opportunities.

**[(j)]** (k) Nothing in this section shall permit the Attorney General to assert any claim against a state agency or a state officer or state employee in such officer's or employee's official capacity, regarding actions or omissions of such state agency, state officer or state employee. If the Attorney General determines that a state officer or state employee is not entitled to indemnification under section 5-141d, the Attorney

**Substitute Senate Bill No. 397**

General may, as relates to such officer or employee, take any action authorized under this section.

**[**(k)**]** (l) With regard to any action brought pursuant to this section against a person for a pattern or practice of conduct in violation of section 46a-64, 46a-64c, 46a-81d or 46a-81e, or, as a result of an investigation conducted pursuant to this section, of a potential violation of section 46a-64, 46a-64c, 46a-81d or 46a-81e, the Attorney General may petition the superior court for the judicial district in which the violation or alleged violation occurred for any relief available under subsection (b) of section 46a-89, in addition to any relief as described in subsection (a) or (c) of this section.

(m) With regard to any action brought pursuant to subsection (c) of this section, the Attorney General may petition the superior court for the judicial district in which the violation or alleged violation occurred for any relief available under this section. Upon filing of the complaint, the court may order any declaratory or temporary injunctive relief required to make the complainant whole. The court shall order a hearing to be had upon such complaint not more than five days after the date of filing the complaint and the Attorney General shall cause notice to be given to any interested party of the time and place for the hearing upon such complaint. A continuance of the hearing may be granted upon consent of the parties. The court shall, on the day fixed for such hearing and without unnecessary delay, proceed to hear the parties. The court may order, amend or continue any declaratory or temporary injunctive relief.

Sec. 3. Section 51-277a of the 2026 supplement to the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) (1) As used in this section:

(A) "Peace officer" means a member of the Division of State Police

*Substitute Senate Bill No. 397*

within the Department of Emergency Services and Public Protection or an organized local police department, a chief inspector or inspector in the Division of Criminal Justice, a state marshal while exercising authority granted under any provision of the general statutes, a judicial marshal in the performance of the duties of a judicial marshal, a conservation officer or special conservation officer, as defined in section 26-5, a constable who performs criminal law enforcement duties, a special policeman appointed under section 29-18, 29-18a, 29-18b, 29-18c or 29-19, an adult probation officer, an official of the Department of Correction authorized by the Commissioner of Correction to make arrests in a correctional institution or facility, any investigator in the investigations unit of the office of the State Treasurer, an inspector of motor vehicles in the Department of Motor Vehicles, who is certified under the provisions of sections 7-294a to 7-294e, inclusive, any federal law enforcement officer as defined under 18 USC 115(c)(1) and 34 USC 50301(5), or a member of a law enforcement unit of the Mashantucket Pequot Tribe or the Mohegan Tribe of Indians of Connecticut created and governed by a memorandum of agreement under section 47-65c who is certified as a police officer by the Police Officer Standards and Training Council pursuant to sections 7-294a to 7-294e, inclusive;

(B) "Deadly physical force" has the same meaning as provided in section 53a-3; and

(C) "Electronic defense weapon" has the same meaning as provided in section 53a-3.

**[**(a) (1)**]** (2) Whenever a peace officer, in the performance of such officer's duties, uses physical force upon another person and such person dies as a result thereof or uses deadly physical force **[**, as defined in section 53a-3,**]** upon another person, the Division of Criminal Justice shall cause an investigation to be made and the Inspector General shall have the responsibility of determining whether the use of physical force by the peace officer was justifiable under section 53a-22, as amended by

**Substitute Senate Bill No. 397**

this act. The use of an electronic defense weapon **[**, as defined in section 53a-3,**]** by a peace officer shall not be considered deadly physical force for purposes of this section.

**[**(2)**]** (3) (A) Except as provided under subdivision **[**(1)**]** (2) of this subsection, whenever a person dies **[**in the**]** within the physical custody of a peace officer or law enforcement agency, the Inspector General shall investigate and determine whether physical force was used by a peace officer upon the deceased person, and if so, whether the use of physical force by the peace officer was justifiable under section 53a-22, as amended by this act. If the Inspector General determines the deceased person may have died as a result of criminal action not involving the use of force by a peace officer, the Inspector General shall refer such case to the Chief State's Attorney or a state's attorney for potential prosecution.

(B) Except as provided under subdivision **[**(1)**]** (2) of this subsection or subparagraph (A) of this subdivision, **[**(2) of this subsection,**]** whenever a person dies **[**in the**]** within the physical custody of the Commissioner of Correction, the Inspector General shall investigate and determine whether the deceased person may have died as a result of criminal action, and, if so, refer such case to the Chief State's Attorney or a state's attorney for potential prosecution. The Inspector General may issue a report concerning the death of such person, which may include, but need not be limited to, any recommended future action to be taken by said commissioner.

**[**(3)**]** (4) Whenever a person who (A) is a next of kin of a deceased person, (B) is not notified of such deceased person's death as required pursuant to section 7-294mm and no other person who is a next of kin of the deceased person was so notified, and (C) requests of the Office of the Inspector General an investigation of the lack of notification or timely notification of such death, the Inspector General shall investigate and determine whether there was any malfeasance on the part of a peace

Public Act No. 26-14                                                7 of 42

*Substitute Senate Bill No. 397*

officer, except for a federal law enforcement officer, or a supervisor of the peace officer, except for a federal law enforcement officer, in the failure to provide such notification or timely notification, and if so, may make recommendations to the Police Officer Standards and Training Council established under section 7-294b concerning censure, suspension, renewal, cancelation or revocation of the peace officer's or supervisor's certification, provided any such recommendation may be made to said council only in a case where such failure is found to be intentional or made with reckless indifference. If there is no finding that such failure was intentional or made with reckless indifference, a recommendation may be made to the officer's or supervisor's employing agency for any further disciplinary action as so determined by such employing agency.

[(4)] (5) (A) The Inspector General shall request the appropriate law enforcement agency to provide such assistance as is necessary to investigate and make a determination under subdivision [(1), (2) or (3)] (2), (3) or (4) of this subsection.

(B) The Division of Criminal Justice and the Inspector General shall have the unrestricted right to access the scene and collect evidence whenever a peace officer, in the performance of such officer's duties, uses physical force upon another person and such person dies as a result thereof or uses deadly physical force, or a person dies in the custody of a peace officer or law enforcement agency, regardless of whether such incident involved only peace officers employed by the federal government and did not involve any peace officer employed by the state or a municipality.

(C) If any person restricts the Division of Criminal Justice or the Inspector General's right to access the scene and collect evidence as set forth in subparagraph (B) of this subdivision, the Division of Criminal Justice or the Inspector General may bring an action in the Superior Court for injunctive relief against any person who has committed the

violation. Upon filing of the complaint, the court may order any declaratory or temporary injunctive relief required to make the complainant whole. The court shall order a hearing to be had upon such complaint not more than five days after the date of filing the complaint and the Division of Criminal Justice or the Inspector General shall cause notice to be given to any interested party of the time and place for the hearing upon such complaint. A continuance of the hearing date may be granted upon consent of the parties. The court shall, on the day fixed for such hearing and without unnecessary delay, proceed to hear the parties. The court may order, amend or continue any declaratory or temporary injunctive relief.

**[**(5)**]** (6) Whenever a peace officer, in the performance of such officer's duties, uses physical force or deadly physical force upon another person and such person dies as a result thereof, the Inspector General shall complete a preliminary status report that shall include, but need not be limited to, (A) the name of the deceased person, (B) the gender, race, ethnicity and age of the deceased person, (C) the date, time and location of the injury causing such death, (D) the law enforcement agency involved, (E) the status on the toxicology report, if available, and (F) the death certificate, if available. The Inspector General shall complete the report and submit a copy of such report not later than five business days after the cause of the death is available to the Chief State's Attorney and, in accordance with the provisions of section 11-4a, to the joint standing committees of the General Assembly having cognizance of matters relating to the judiciary and public safety.

(b) Upon the conclusion of the investigation of an incident described in subdivision **[**(1) or**]** (2) or (3) of subsection (a) of this section, the Inspector General shall file a report with the Chief State's Attorney which shall contain the following: (1) The circumstances of the incident, (2) a determination of whether the use of physical force by the peace officer was justifiable under section 53a-22, as amended by this act, and

*Substitute Senate Bill No. 397*

(3) any recommended future action to be taken by the **[**Office of the Inspector General**]** law enforcement agency as a result of the incident. The Chief State's Attorney shall provide a copy of the report to the chief executive officer of the municipality in which the incident occurred and to the Commissioner of Emergency Services and Public Protection or the chief of police of such municipality, as the case may be, and shall make such report available to the public on the Division of Criminal Justice's Internet web site not later than forty-eight hours after the copies are provided to the chief executive officer and the commissioner or chief of police.

(c) The Office of the Inspector General shall prosecute any case in which the Inspector General determines that (1) the use of force by a peace officer was not justifiable under section 53a-22, as amended by this act, or (2) there was a failure to intervene in such incident or to report any such incident, as required under subsection (a) of section 7-282e or section 18-81nn.

Sec. 4. Section 53a-22 of the 2026 supplement to the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) (1) For purposes of this section: **[**, a**]** (A) A reasonable belief that a person has committed an offense means a reasonable belief in facts or circumstances which if true would in law constitute an offense. If the believed facts or circumstances would not in law constitute an offense, an erroneous though not unreasonable belief that the law is otherwise does not render justifiable the use of physical force to make an arrest or to prevent an escape from custody; and (B) notwithstanding the provisions of subdivision (9) of section 53a-3, "peace officer" has the same meaning as provided in section 51-277a, as amended by this act.

(2) A peace officer or an authorized official of the Department of Correction or the Board of Pardons and Paroles who is effecting an

*Substitute Senate Bill No. 397*

arrest pursuant to a warrant or preventing an escape from custody is justified in using the physical force prescribed in subsections (b), (c) and (d) of this section unless such warrant is invalid and is known by such officer to be invalid.

(b) Except as provided in subsection (a) or (d) of this section, a peace officer or an authorized official of the Department of Correction or the Board of Pardons and Paroles is justified in using physical force upon another person when and to the extent that he or she reasonably believes such use to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape.

(c) (1) Except as provided in subsection (d) of this section, a peace officer or an authorized official of the Department of Correction or the Board of Pardons and Paroles is justified in using deadly physical force upon another person for the purposes specified in subsection (b) of this section only when his or her actions are objectively reasonable under the given circumstances at that time, and:

(A) He or she reasonably believes such use to be necessary to defend himself or herself or a third person from the use or imminent use of deadly physical force; or

(B) He or she (i) has reasonably determined that there are no available reasonable alternatives to the use of deadly physical force, (ii) reasonably believes that the force employed creates no unreasonable risk of injury to a third party, and (iii) reasonably believes such use of force to be necessary to (I) effect an arrest of a person whom he or she reasonably believes has committed or attempted to commit a felony

*Public Act No. 26-14*                                              *11* of 42

which involved the infliction of serious physical injury, and if, where feasible, he or she has given warning of his or her intent to use deadly physical force, or (II) prevent the escape from custody of a person whom he or she reasonably believes has committed a felony which involved the infliction of serious physical injury and who poses a significant threat of death or serious physical injury to others, and if, where feasible, he or she has given warning of his or her intent to use deadly physical force.

(2) For purposes of evaluating whether actions of a peace officer or an authorized official of the Department of Correction or the Board of Pardons and Paroles are reasonable under subdivision (1) of this subsection, factors to be considered include, but are not limited to, whether (A) the person upon whom deadly physical force was used possessed or appeared to possess a deadly weapon, (B) the peace officer or an authorized official of the Department of Correction or the Board of Pardons and Paroles engaged in reasonable deescalation measures prior to using deadly physical force, and (C) any unreasonable conduct of the peace officer or an authorized official of the Department of Correction or the Board of Pardons and Paroles led to an increased risk of an occurrence of the situation that precipitated the use of such force.

(d) A peace officer or an authorized official of the Department of Correction or the Board of Pardons and Paroles is justified in using a chokehold or other method of restraint applied to the neck area or that otherwise impedes the ability to breathe or restricts blood circulation to the brain of another person for the purposes specified in subsection (b) of this section only when he or she reasonably believes such use to be necessary to defend himself or herself or a third person from the use or imminent use of deadly physical force.

(e) Except as provided in subsection (f) of this section, a person who has been directed by a peace officer or an authorized official of the Department of Correction or the Board of Pardons and Paroles to assist

**Substitute Senate Bill No. 397**

such peace officer or official to effect an arrest or to prevent an escape from custody is justified in using reasonable physical force when and to the extent that he or she reasonably believes such to be necessary to carry out such peace officer's or official's direction.

(f) A person who has been directed to assist a peace officer or an authorized official of the Department of Correction or the Board of Pardons and Paroles under circumstances specified in subsection (e) of this section may use deadly physical force to effect an arrest or to prevent an escape from custody only when: (1) He or she reasonably believes such use to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of deadly physical force; or (2) he or she is directed or authorized by such peace officer or official to use deadly physical force, unless he or she knows that the peace officer or official himself or herself is not authorized to use deadly physical force under the circumstances.

(g) A private person acting on his or her own account is justified in using reasonable physical force upon another person when and to the extent that he or she reasonably believes such use to be necessary to effect an arrest or to prevent the escape from custody of an arrested person whom he or she reasonably believes to have committed an offense and who in fact has committed such offense; but he or she is not justified in using deadly physical force in such circumstances, except in defense of person as prescribed in section 53a-19.

(h) In determining whether use of force by a peace officer who is a police officer, as defined in subsection (a) of section 29-6d, is justified pursuant to this section, the trier of fact may draw an unfavorable inference from a police officer's deliberate failure in violation of section 29-6d to record such use of physical force.

Sec. 5. Section 51-277e of the 2026 supplement to the general statutes is repealed and the following is substituted in lieu thereof (*Effective from*

**Substitute Senate Bill No. 397**

*passage*):

(a) There is established the Office of the Inspector General that shall be a separate office within the Division of Criminal Justice. Not later than October 1, 2021, the Criminal Justice Commission established pursuant to section 51-275a shall appoint a deputy chief state's attorney as Inspector General who shall lead the Office of the Inspector General. The office shall: (1) Conduct investigations of peace officers in accordance with section 51-277a, as amended by this act; (2) prosecute any case in which the Inspector General determines a peace officer used force found to not be justifiable pursuant to section 53a-22, as amended by this act, or where a police officer or correction officer fails to intervene in any such incident or to report any such incident, as required under subsection (a) of section 7-282e or section 18-81nn, as applicable; (3) investigate any failure to report the death of a person in accordance with the provisions of section 7-294mm; (4) investigate any failure to report in accordance with the provisions of subdivision (1) of subsection (h) of section 7-294d; (5) investigate the death of a person within the physical custody of a peace officer or law enforcement agency or the Commissioner of Correction in accordance with the provisions of subdivision (2) of subsection (a) of section 51-277a, as amended by this act; and **[**(5)**]** (6) make recommendations to the Police Officer Standards and Training Council established under section 7-294b concerning censure and suspension, renewal, cancelation or revocation of a peace officer's certification, provided in the case of a failure to report a death of a person, any such recommendation may be made to said council only in a case where such failure is found to be intentional or made with reckless indifference, or if there is no finding that such failure was intentional or made with reckless indifference, a recommendation may be made to the officer's employing agency for any further disciplinary action as so determined by such employing agency. As used in this subsection, "peace officer" has the same meaning as provided in section 51-277a, as amended by this act.

*Substitute Senate Bill No. 397*

(b) The Inspector General shall serve a term of four years from July first in the year of the appointment unless sooner removed by the Criminal Justice Commission. The commission shall not be precluded from reappointing an individual who has previously served as Inspector General.

(c) An Inspector General may be removed or otherwise disciplined only in accordance with section 51-278b.

(d) The Inspector General may issue subpoenas to municipalities, law enforcement units, as defined in section 7-294, the Department of Correction and any employee or former employee of the municipality, unit or department (1) requiring the production of reports, records or other documents concerning an investigation described in subsection (a) of this section that is undertaken by the Inspector General, and (2) compelling the attendance and testimony of any person having knowledge pertinent to such investigation at an investigative deposition conducted by the Inspector General, or the Inspector General's designee.

(e) A chief of police of a municipality, the Commissioner of Emergency Services and Public Protection or the Commissioner of Correction may refer and the Inspector General shall accept any such referral of an incident described in subsection (a) of this section for purposes of an investigation.

(f) The Office of the Inspector General shall be at a location that is separate from the locations of the Office of the Chief State's Attorney or any of the state's attorneys for the judicial districts.

(g) The Inspector General may employ necessary staff to fulfil the duties of the Office of the Inspector General described in subsection (a) of this section. Such staff shall be selected by the Inspector General within the confines of any existing collective bargaining agreement and shall include, but not be limited to, an assistant state's attorney or a

deputy assistant state's attorney, an inspector and administrative staff. As needed by and upon request of the Inspector General, the Office of the Chief State's Attorney shall ensure assistance from additional assistant state's attorneys or deputy assistant state's attorneys, inspectors and administrative staff.

Sec. 6. (NEW) (*Effective from passage*) (a) As used in this section: (1) "Peace officer" has the same meaning as provided in section 51-277a of the general statutes, as amended by this act; and (2) "facial covering" means any opaque mask, garment, helmet, headgear or other item that conceals or obscures the facial identity of an individual, including, but not limited to, a balaclava, tactical mask, gator, ski mask and any similar type of facial covering or face-shielding item.

(b) A peace officer, while carrying out the enforcement of laws of this state, any other state or the United States, shall not wear any facial covering or personal disguise while interacting with the public in the performance of such officer's duties, except for (1) a medical grade facial covering that is designed to protect the health and safety of the peace officer, provided protecting the health and safety of the officer does not include protecting the identity of the peace officer, (2) any facial covering designed to prevent the transmission of airborne diseases, (3) any facial covering designed to protect against exposure to smoke during a fire-involved situation, (4) any facial covering necessary to perform duties during a water rescue operation, (5) any facial covering related to protection against exposure to biological or chemical agents during an incident where such agents may be present, (6) any facial covering protecting against freezing temperatures, provided such facial covering is worn during an activity not requiring oral communication with the public or a person sought to be placed in custody, or (7) any facial covering necessary to perform duties during an active undercover operation or assignment which have been authorized to be worn by supervising personnel or court order. Notwithstanding the provisions

### Substitute Senate Bill No. 397

of this subsection, a peace officer assigned to a bomb squad, motorcycle unit or specialized weapons and tactics team is permitted to utilize gear necessary to protect such officer's face and head from physical harm while performing the duties associated with such assignment. Any peace officer who violates the provisions of this subsection shall be guilty of a class D misdemeanor.

(c) In accordance with the provisions of section 7-294ii of the general statutes, a peace officer, who is conducting a planned arrest or interacting with the public in such officer's official capacity and is authorized to make arrests, shall be clearly identified by such officer's badge and name tag on the officer's uniform, unless (1) such officer is performing duties during an active undercover assignment authorized by supervising personnel, (2) compliance is excused pursuant to the model policy adopted pursuant to section 7-294ii of the general statutes, (3) compliance is excused pursuant to a court order, or (4) while in the performance of such officer's duties, weather-related events or traffic safety issues exist that prevent such officer from having a name tag or badge on such officer's outer garment. Any peace officer who intentionally violates the provisions of this subsection shall be guilty of a class D misdemeanor.

(d) Notwithstanding any other law, any peace officer who is found to have committed an intentional tort of assault, battery, false imprisonment, false arrest, abuse of process or malicious prosecution pursuant to state law or 28 USC 2680(h), while wearing a facial covering or personal disguise in a knowing and wilful violation of this section, shall not be entitled to assert any privilege or immunity for such officer's tortious conduct against a claim of civil liability.

Sec. 7. (NEW) (*Effective October 1, 2026*) (a) As used in this section:

(1) "Protected area" means any of the following buildings or locations, including the grounds of such buildings or locations and any garages or

parking lots utilized in the operation of such buildings or locations, irrespective of whether such garages or parking lots are contiguous to the buildings or locations:

(A) A school, including, but not limited to, a preschool, primary or secondary school, vocational school or college or university;

(B) A hospital licensed pursuant to the provisions of chapter 368v of the general statutes or an urgent care center, as defined in section 19a-493d of the general statutes;

(C) A place of worship or religious study;

(D) A playground, recreation center, child care center, before or after-school care center, foster care facility, group home for children or school bus stop when children are present;

(E) A social services establishment, including, but not limited to, a crisis center, domestic violence shelter, victims services center, child advocacy center, supervised visitation center, family justice center, facility that serves disabled persons, homeless shelter, drug or alcohol counseling and treatment facility, or food bank, pantry or other establishment distributing food or other essentials of life to people in need;

(F) A place where disaster or emergency response and relief is provided, including, but not limited to, such places along evacuation routes, where shelter or emergency supplies, food or water are being distributed, or registration for disaster-related assistance or family reunification is underway; or

(G) A cemetery or other place of internment for the deceased.

(2) "State facility" means any building, or part thereof, owned, leased, occupied, controlled by or used for business by an office or agency of

*Substitute Senate Bill No. 397*

the Executive Department, either directly or indirectly, including, but not limited to, entities providing direct services on behalf of offices or agencies, but not including state-owned property leased to a federal entity. "State facility" includes the grounds of such facility and any garages or parking lots utilized in the operation of such facility, irrespective of whether such garages or parking lots are contiguous to the facility.

(3) "Municipal facility" means any building or part thereof, owned, leased, occupied, controlled by or used for business by a municipal government, either directly or indirectly, including, but not limited to, entities providing direct services on behalf of a municipal government. "Municipal facility" includes the grounds of such facility and any garages or parking lots utilized in the operation of such facility, irrespective of whether such garages or parking lots are contiguous to the facility.

(4) "Civil offense" means an offense for which a local, state or federal civil proceeding is available to the charged individual to offer a defense. "Civil offense" does not include any offense identified as an infraction by the general statutes, a motor vehicle violation or an arrest allowed (A) for an alleged violation of the criminal law of: (i) The state or another jurisdiction within the United States, for which a sentence of a term of imprisonment is authorized by law; or (ii) the United States, for which a sentence of a term of imprisonment is authorized by law, and for which federal law requires an initial appearance before a federal judge, federal magistrate or other judicial officer, pursuant to the federal rules of criminal procedure that govern initial appearances; (B) for contempt of court; (C) for a capias issued by a judge; (D) in response to a warrant for a violation of parole or probation; or (E) for commitment under emergency certificate or other arrest permitted under chapter 319i of the general statutes.

(b) No peace officer, as defined in section 51-277a of the general

## Substitute Senate Bill No. 397

statutes, as amended by this act, shall detain, arrest or otherwise take an individual in a protected area, state facility or municipal facility into custody on the basis of a civil offense, unless (1) such peace officer is acting in the peace officer's official capacity, and (2) the individual to be detained, arrested or otherwise taken into custody is the subject of a judicial warrant.

(c) (1) Any individual aggrieved by a violation of this section may bring a civil action for equitable relief or damages in the Superior Court. A civil action brought for damages may be triable by jury.

(2) In any action pursuant to this section, the court may grant a plaintiff such legal and equitable relief which it deems appropriate, including, but not limited to, temporary or permanent injunctive relief, punitive damages, attorney's fees and court costs.

Sec. 8. Section 51-33b of the 2026 supplement to the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) No representative of a local, state or federal law enforcement authority shall detain, arrest or otherwise take an individual on courthouse grounds into custody on the basis of a civil offense, unless such representative (1) is acting in the representative's official capacity, and (2) has notified a judicial marshal within the courthouse in which the representative intends to detain, arrest or otherwise take an individual into custody and has provided documentation to the judicial marshal demonstrating that the individual to be detained, arrested or otherwise taken into custody (A) is the subject of a judicial warrant, (B) has been convicted of (i) a violation of section 53-21, 53a-56a, 53a-64aa, 53a-71, 53a-72a, 53a-72b, 53a-90a, 53a-102a, 53a-196e, 53a-196f, 53a-196i, 53a-222 or 53a-223, or (ii) any class A or B felony offense, or (C) is identified as a possible match in the federal Terrorist Screening Database or similar database. The provisions of this subsection do not

*Substitute Senate Bill No. 397*

apply to a judicial marshal detaining, arresting or otherwise taking an individual on courthouse grounds into custody.

(b) Any judicial marshal receiving documentation pursuant to subsection (a) of this section shall promptly review such documentation in accordance with policies and procedures approved by the Office of the Chief Court Administrator. No representative of a local, state or federal law enforcement authority shall detain, arrest or otherwise take an individual on courthouse grounds into custody on the basis of a civil offense who is the subject of such documentation, unless the judicial marshal determines, based upon such review, that such individual (1) is the subject of a judicial warrant, (2) has been convicted of (A) a violation of section 53-21, 53a-56a, 53a-64aa, 53a-71, 53a-72a, 53a-72b, 53a-90a, 53a-102a, 53a-196e, 53a-196f, 53a-196i, 53a-222 or 53a-223, or (B) any class A or B felony offense, or (3) is identified as a possible match in the federal Terrorist Screening Database or similar database.

(c) Any violation of the provisions of this section may be deemed contempt of court and punished in accordance with the provisions of section 51-33.

(d) Any individual aggrieved by a violation of this section may bring a civil action for equitable relief or damages in the Superior Court. A civil action brought for damages may be triable by jury.

(e) In any action pursuant to this section, the court may award reasonable attorney's fees and costs incurred to the prevailing party.

(f) No action may be commenced pursuant to subsection (d) of this section against the Judicial Branch or any officer or employee of said branch acting lawfully pursuant to such officer's or employee's official capacity, regarding actions or omissions of said branch or such officer or employee.

(g) The provisions of this section shall not be construed to prohibit a

representative of a local, state or federal law enforcement authority from detaining, arresting or otherwise taking an individual on courthouse grounds into custody on the basis of a civil offense, if such action is in compliance with the provisions of this section and section 54-192h.

(h) For purposes of this section, (1) "courthouse" means the interior of any facility or property in which a court of this state conducts business, **[**and**]** (2) "courthouse grounds" includes the courthouse and any garage or parking lot owned by the Judicial Branch, or under contract with said branch, for the purpose of serving a courthouse, any walkways or sidewalks on the grounds of, contiguous to or abutting the grounds of the courthouse or connecting such garage or parking lot to the courthouse or grounds of the courthouse, and (3) "civil offense" has the same meaning as provided in section 7 of this act.

Sec. 9. Subsection (b) of section 7-294d of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(b) (1) No person may be employed as a police officer by any law enforcement unit for a period exceeding one year unless such person has been certified under the provisions of subsection (a) of this section or has been granted an extension by the council. No person may serve as a police officer during any period when such person's certification has been cancelled or revoked pursuant to the provisions of subsection (c) of this section. In addition to the requirements of this subsection, the council may establish other qualifications for the employment of police officers and require evidence of fulfillment of these qualifications. The certification of any police officer who is not employed by a law enforcement unit for a period of time in excess of two years, unless such officer is on leave of absence, shall be considered lapsed. Upon reemployment as a police officer, such officer shall apply for recertification in a manner provided by the council, provided such recertification process requires the police officer to submit to a urinalysis

drug test that screens for controlled substances, including, but not limited to, anabolic steroids, and receive a result indicating no presence of any controlled substance not prescribed for the officer.

(2) The council shall certify any applicant who presents evidence of satisfactory completion of a program or course of instruction in another state or, if the applicant is a veteran or a member of the armed forces or the National Guard, as part of training during service in the armed forces, that is equivalent in content and quality to that required in this state, provided such applicant passes an examination or evaluation as required by the council. The council shall not waive any portion of the required basic training program for any applicant who has previously served as a peace officer, or who, at the time the application is made, is serving as a peace officer, unless the applicant presents evidence of satisfactorily completing a substantially equivalent training or educational program, which includes a minimum of four hundred eighty hours of training. Nothing in this section shall require the council to waive any portion of the required basic training program for any applicant who has previously served as a peace officer, or who, at the time the application is made, is serving as a peace officer. For the purposes of this [section,] subsection, (A) "veteran" and "armed forces" have the same meanings as provided in section 27-103, and (B) "peace officer" has the same meaning as provided in section 51-277a, as amended by this act.

Sec. 10. Section 52-571j of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) For the purposes of this section, "peace officer" has the same meaning as provided in section [53a-3] 51-277a, as amended by this act, except "peace officer" does not include [a special agent of the federal government or] a member of a law enforcement unit of the Mashantucket Pequot Tribe or the Mohegan Tribe of Indians of Connecticut.

*Substitute Senate Bill No. 397*

(b) An employer of a peace officer who interferes with any person taking a photographic or digital still or video image of such peace officer or another peace officer acting in the performance of such peace officer's duties shall be liable to such person in an action at law, suit in equity or other proper proceeding for redress.

(c) An employer of a peace officer shall not be liable under subsection (b) of this section if the peace officer had reasonable grounds to believe that the peace officer was interfering with the taking of such image in order to (1) lawfully enforce a criminal law of this state, a federal criminal law or a municipal ordinance, whichever is applicable, (2) protect the public safety, (3) preserve the integrity of a crime scene or criminal investigation, (4) safeguard the privacy interests of any person, including a victim of a crime, or (5) lawfully enforce court rules and policies of the Judicial Branch with respect to taking a photograph, videotaping or otherwise recording an image in facilities of the Judicial Branch.

(d) Notwithstanding any other law, any peace officer who is found to have committed an intentional tort of assault, battery, false imprisonment, false arrest, abuse of process or malicious prosecution, pursuant to state law or 28 USC 2680(h), while interfering with any person taking a photographic or digital still or video image of such peace officer or another peace officer acting in the performance of such peace officer's duties, shall not be entitled to assert any privilege or immunity for their tortious conduct against a claim of civil liability.

Sec. 11. (NEW) (*Effective from passage*) In any prosecution for an offense, no federal officer, employee or agent shall have immunity for any action taken under color of federal law, unless such officer's, employee's or agent's action was: (1) Authorized by federal law; and (2) necessary and proper to execute such officer's, employee's or agent's official duties as a federal officer, employee or agent.

**Substitute Senate Bill No. 397**

Sec. 12. Section 7-291c of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) No law enforcement unit, as defined in section 7-294a, shall hire any person as a police officer, as defined in said section 7-294a, who was previously employed as a [police] peace officer, as defined in section 51-277a, as amended by this act, by such unit or in any other jurisdiction and who (1) was dismissed for malfeasance or other serious misconduct calling into question such person's fitness to serve as a [police] peace officer; or (2) resigned or retired from such officer's position while under investigation for such malfeasance or other serious misconduct.

(b) Any law enforcement unit that has knowledge that any former police officer of such unit who (1) (A) was dismissed for malfeasance or other serious misconduct, or (B) resigned or retired from such officer's position while under investigation for such malfeasance or other serious misconduct; and (2) is an applicant for the position of police officer with any other law enforcement unit, shall inform such other unit and the Police Officer Standards and Training Council established under section 7-294b of such dismissal, resignation or retirement.

(c) The provisions of this section shall not apply to any [police] peace officer who is exonerated of each allegation against such officer of such malfeasance or other serious misconduct.

(d) For purposes of this section, (1) "malfeasance" means the commonly approved usage of "malfeasance"; and (2) "serious misconduct" means improper or illegal actions taken by a [police] peace officer in connection with such officer's official duties that could result in a miscarriage of justice or discrimination, including, but not limited to, (A) a conviction of a felony, (B) fabrication of evidence, (C) repeated use of excessive force, (D) acceptance of a bribe, or (E) the commission of fraud.

*Substitute Senate Bill No. 397*

Sec. 13. (NEW) (*Effective from passage*) (a) As used in this section and sections 14 and 15 of this act:

(1) "Automated license plate reader system" means a mobile or fixed electronic image recording device that is capable, in combination with computer programs or algorithms, of converting images of license plates or vehicle descriptors into computer-readable data. "Automated license plate reader system" does not include an image recording device that provides evidence used in enforcement of an offense specified in the general statutes or by municipal ordinance, including, but not limited to, such devices as an automated traffic enforcement safety device, as defined in section 14-307b of the general statutes, or those used as part of a work zone speed control system, as defined in section 13a-261 of the general statutes, or a municipal school bus violation enforcement system, as defined in section 14-279c of the general statutes;

(2) "Automated license plate reader data" includes any data captured, recorded, held or stored, processed or derived from an automated license plate reader system, including, but not limited to, license plate characters, vehicle still or video images, vehicle attributes, location data, time stamps and metadata;

(3) "Gender-affirming health care services" has the same meaning as provided in section 52-571m of the general statutes;

(4) "Hotlist" means a list of registration numbers displayed on license plates maintained for comparison against a registration number collected by an automated license plate reader system;

(5) "Internal hotlist addendum" means a hotlist that (A) is maintained for use only at a specific state facility or facilities for which the list was made and by the public agency that made such list, and (B) may contain registration numbers displayed on a license plate of a motor vehicle

registered to a person who is identified in the making of such list as a potential threat to a person in the state facility, to the state facility or against the public agency operating the state facility, for reasons that include a previous conviction of such person for a misdemeanor or felony offense involving threats of physical violence or harassment against a person in the state facility, to the state facility or against the public agency operating the state facility or conduct by a person that is documented and involves threats of or attempted violence, harassment or incitement of physical violence against a person in the state facility, to the state facility or against the public agency operating the state facility, provided no such inclusion on an internal hot list addendum is based on an arrest for or conduct that is solely speech, conduct or association protected by article first of the Constitution of the state or the first amendment to the United States Constitution.

(6) "Law enforcement agency" means a department or agency for which a law enforcement officer is an employee of or otherwise paid by or acting as an agent of, including, but not limited to, a municipal police department or the Division of State Police within the Department of Emergency Services and Public Protection;

(7) "Public agency" has the same meaning as provided in section 1-200 of the general statutes;

(8) "Reproductive health care services" has the same meaning as provided in section 52-571m of the general statutes; and

(9) "State facility" means any building, or part thereof, owned, leased, occupied, controlled by or used for business by an office or agency of the Executive Department, Legislative Branch or Judicial Branch, either directly or indirectly, including, but not limited to, entities providing direct services on behalf of offices or agencies, but not including state-owned property leased to a federal entity. "State facility" includes the grounds of such facility and any garages or parking lots utilized in the

operation of such facility, irrespective of whether such garages or parking lots are contiguous to the facility.

(b) (1) On and after October 1, 2026, no public agency or private vendor under contract with a public agency may operate an automated license plate reader system or use automated license plate reader data, except as follows:

(A) A public agency or a private vendor under contract with a public agency may operate an automated license plate reader system or use automated license plate reader data for the following purposes: (i) Performing weigh station duties; (ii) monitoring or maintaining the agency's vehicles or equipment; (iii) assisting in the control of access to a secured area; (iv) conducting traffic analytics; (v) enforcing parking regulations and collecting fines, including (I) by a municipal parking authority pursuant to chapter 100 of the general statutes, or (II) on the grounds of any facility owned or operated by any other public agency and any garages or parking lots utilized in the operation of such facility, irrespective of whether such garages or parking lots are contiguous to the facility; (vi) monitoring and securing state facilities; or (vii) enforcing motor vehicle tax compliance pursuant to section 14-33 and chapter 203 of the general statutes; and

(B) A law enforcement agency or a private vendor under contract with a law enforcement agency may operate an automated license plate reader system or use automated license plate reader data for the following purposes: (i) Comparing such data with (I) data contained in a hotlist or internal hotlist addendum, (II) records of the Connecticut Online Law Enforcement Communications Teleprocessing System, (III) data contained in the Federal Bureau of Investigations Kidnapping and Missing Persons list, (IV) data contained in the Connecticut Criminal Justice Information System, (V) data contained in the Federal Terrorist Screening Database, (VI) data contained in the National Crime Information Center database, or (VII) data contained in the National

**Substitute Senate Bill No. 397**

Center for Missing and Exploited Children database; or (ii) entering a license plate number into an automated license plate reader system upon a law enforcement officer's determination that data in the system may (I) be relevant and material to a specific active investigation of a criminal offense in which there is reasonable suspicion that the offense has been or is being committed, provided any access by an officer of automated license plate reader data for such purpose shall result in a record of the reason for the access and any associated case number for the complaint or incident that is being investigated and is the basis for the access, (II) assist in the apprehension of an individual with an outstanding warrant, (III) assist in locating a missing or endangered individual, or (IV) assist in the recovery of a stolen motor vehicle.

(2) (A) On and after October 1, 2026, except as provided in subparagraph (B) or (C) of this subdivision, any automated license plate reader data collected or otherwise acquired or held or stored by a public agency or by a private vendor under contract with a public agency shall not be retained for a period in excess of twenty-one days, or for a shorter period when required pursuant to the terms of a contract between a public agency with a private vendor that accesses an automated license plate reader system or holds or stores such data, unless such data is being retained (i) pursuant to a warrant or court order issued by a judge or magistrate on behalf of the state or federal judicial branches, or pursuant to court rules governing the preservation of evidence, (ii) for the purpose of collecting highway usage fees if such fees exist, provided such data is deleted not later than thirty days following the collection of such fees, (iii) as evidence in an active criminal investigation or prosecution, provided (I) at the time such data is designated for retention, such retention is approved by a supervisory law enforcement officer and documented by the law enforcement agency in a record stating the purpose for such retention and any associated case number for the investigation or prosecution to which the data relates, and (II) such data is deleted upon the conclusion of the investigation if no

criminal charges are filed, or, in the case of a conviction for which no defendant is sentenced to a term of imprisonment, upon the final disposition of the criminal case to which the data relates, including the exhaustion of all direct appeals, whichever occurs first, or, in the case of a conviction for which a defendant is sentenced to a term of imprisonment, upon the release the last defendant serving a term of imprisonment for a conviction to which the data relates, unless otherwise required to be retained under subparagraph (A)(i) of this subdivision, or (iv) for the purpose of conducting traffic analytics pursuant to subparagraph (A)(iv) of subdivision (1) of this subsection, provided such data is held or stored or managed as de-identified, aggregated or summarized data.

(B) A public agency or a private vendor under contract with a public agency may hold or retain automated license plate reader data for a period in excess of twenty-one days, if such data may be necessary to establish that the commission of a potential future offense, motor vehicle violation or infraction pursuant to an ordinance, the general statutes or a regulation is a subsequent offense, motor vehicle violation or infraction for which a penalty prescribed for such subsequent offense, motor vehicle violation or infraction exceeds the penalty for the previous offense, motor vehicle violation or infraction.

(C) Any data collected pursuant to clause (vii) of subparagraph (A) of subdivision (1) of this subsection may be held or retained for a period in excess of twenty-one days, if such data is being held or retained expressly for the purpose of ensuring an individual's compliance with a municipality's motor vehicle tax laws, provided (i) such data is not shared with any entity or individual other than the municipality's tax assessor or the individual to whom the motor vehicle is registered, and (ii) such data is deleted after ninety days, or following a determination of compliance by the municipality's tax assessor, whichever occurs first.

(c) Automated license plate reader data may be admissible as

evidence in any court of this state, provided such data was collected or otherwise acquired or held or stored in accordance with the provisions of this section or obtained pursuant to a warrant issued by a judge of the Superior Court.

(d) On and after October 1, 2026, no public agency operating an automated license plate reader system or using automated license plate reader data pursuant to subsection (b) of this section may:

(1) Use or assist in the use of automated license plate reader data to monitor or investigate an individual based on such individual's actual or perceived race, ethnicity, sexual orientation, gender identity or expression, sex, pregnancy status, disability, citizenship, nationality or income level, or perceived criminal history, except in a case where an individual is being investigated for a potential criminal offense for which an element of such offense is a prior conviction;

(2) Use or assist in the use of an automated license plate reader data system or automated license plate reader data for the purpose of identifying an individual engaged in an activity protected under the First Amendment to the United States Constitution;

(3) Use or assist in the use of an automated license plate reader data system or automated license plate reader data for the purpose of investigating a suspected immigration violation or otherwise assisting in any civil or criminal immigration enforcement activity;

(4) Use or assist in the use of an automated license plate reader data system or automated license plate reader data for the purpose of investigating or prosecuting any individual who has sought, received, or provided reproductive health care services or gender-affirming health care services that are permitted under the laws of this state;

(5) Unless authorized pursuant to section 29-6d of the general statutes, collect automated license plate reader data from a fixed

automated license plate reader system on the premises or within a distance established by the Police Officer Standards and Training Council pursuant to section 14 of this act, of a reproductive or sexual health facility, as defined in section 42-515 of the general statutes, that primarily provides gender-affirming health care services that are permitted under the laws of this state or a nonprofit or community organization that primarily serves immigrant communities, excluding any property under federal jurisdiction, provided such facility or organization notified the Police Officer Standards and Training Council of such facility's or organization's location;

(6) Share or provide access to automated license plate reader data, unless the individual or entity requesting such data or access is (A) a public agency of this state, (B) a law enforcement agency of the state of New York or Rhode Island or the Commonwealth of Massachusetts or a municipality of said states or commonwealth or a multijurisdictional task force of which a public agency of this state is a participating member, provided (i) such requesting law enforcement agency or task force provides a written declaration affirming that any data received will be used in compliance with the prohibitions set forth in this section, and will not be used for an immigration investigation or enforcement action or to investigate or prosecute any individual who has sought, received or provided reproductive health care services or gender-affirming health care services that are permitted under the laws of this state and will not be further disclosed except as permitted under the laws of this state, and (ii) in the case of a multijurisdictional task force, such specific data requested is approved by the head of such task force or such head's designee and is directly and reasonably relevant to a specific investigation of such task force, (C) any other law enforcement agency other than those of this state or described in subparagraph (B) of this subdivision, including any federal law enforcement agency, if such requesting law enforcement agency has a judicially issued probable cause warrant for the specific data requested, or is requesting specific

data on an individual identified as a possible match in the Federal Terrorist Screening Database, or (D) an individual requesting data regarding a motor vehicle registered in such individual's name, provided if a motor vehicle has more than one owner, lessor or regular user, all such owners, lessors and regular users join in the request and are natural persons;

(7) Participate in a system or network that shares automated license plate reader data, or provide to, or access such data through any multistate, intrastate or national data-sharing system or network unless such system or network requires, as a condition of participation in or access to such system or network, execution of a written declaration by each participant affirming that: (A) Any data shared, accessed or otherwise acquired will be used solely in compliance with this section and other laws of this state; and (B) such participant will not share or use such data, except in compliance with the provisions of this section; and

(8) Permit a public agency to have real-time, bulk or automatic access to automated license plate reader data, unless such data is in response to a documented, case-specific request and the sharing of such data is not otherwise prohibited under this subsection.

(e) (1) Automated license plate reader data is confidential and shall not be deemed a public record for the purposes of the Freedom of Information Act, as defined in section 1-200 of the general statutes.

(2) The following are not confidential and are deemed public records for the purposes of the Freedom of Information Act, as defined in section 1-200 of the general statutes:

(A) Locations of any still or video image recording device used as part of an automated license plate reader system, except such data is confidential and not deemed public records if the purchase of the still or

*Substitute Senate Bill No. 397*

video image recording device was funded in whole or in part by the United States Department of Homeland Security and such funding was conditioned on the location of such device not being disclosed; and

(B) Any data derived from any audit of an automated license plate reader system, usage logs for such system and logs detailing access to automated license plate reader data, provided any such data disclosable under this subsection has all automated license plate reader data redacted from otherwise disclosable data.

(3) Any person who seeks to obtain automated license plate reader data concerning a motor vehicle that was registered in such person's name at the time of the creation of such data may obtain such data from the contracting public agency, provided if such motor vehicle is also registered in another person's name, such person also consents to such disclosure.

(f) Not later than January 1, 2027, a public agency, other than a law enforcement agency, that operates an automated license plate reader system or uses automated license plate reader data shall adopt and publicize a written automated license plate reader system usage and privacy policy prior to using or acquiring an automated license plate reader system or automated license plate reader data. Such policy shall comply with all applicable provisions of this section and include safeguards and standards substantially equivalent to those required under the model policy adopted under section 14 of this act.

(g) On and after the effective date of this section, no public agency shall enter into or renew any contract with a private vendor related to automated license plate reader system usage or automated license plate reader data, unless such contract provides that the private vendor shall not engage in any of the following activities with respect to any automated license plate reader data collected in this state, notwithstanding any terms of service, including, but not limited to,

## Substitute Senate Bill No. 397

terms or conditions of use, use agreements or policies or procedures maintained by a private vendor, that are incorporated by reference or otherwise into the contract:

(1) Sell such automated license plate reader data;

(2) Share or transfer such automated license plate reader data with or to any third party, without receiving the prior express written authorization of the contracting public agency for the sharing or transferring of such data for a specific purpose;

(3) Allow any person other than the contracting agency to access such automated license plate reader data, unless the private vendor is required to allow such person to access such automated license plate reader data pursuant to a warrant or court order issued by a judge or magistrate on behalf of the state or federal judicial branches. As used in this subdivision, "warrant or court order" excludes any subpoena or demand of a grand jury investigation;

(4) Share or transfer such automated license plate reader data, or allow access to such automated license plate reader data, if the private vendor reasonably believes that such automated license plate reader data may be used for purposes of (A) investigating any suspected immigration violation or otherwise assisting in any immigration enforcement activity, (B) investigating any suspected, or prosecuting any alleged person or persons for, (i) seeking, providing or receiving reproductive health care services or gender-affirming health care services that are permitted under the laws of this state, or (ii) assisting another individual who is seeking, providing or receiving reproductive health care services or gender-affirming health care services that are permitted under the laws of this state, including, but not limited to, providing information, transportation, lodging or material support to such other individual, or (C) any effort to identify, or impose any civil or criminal liability on, any person based solely on such person's

### Substitute Senate Bill No. 397

participation in any activity that is protected by the United States Constitution or the Constitution of the state of Connecticut, including, but not limited to, any exercise of such person's right to freedom of speech, to peaceably assemble or to petition the government for a redress of grievances, except as otherwise provided by applicable state or federal law; or

(5) Hold or store the contracting public agency's automated license plate reader data (A) with the automated license plate reader data held or stored pursuant to a contract with a different public agency concerning automated license plate reader data or any such data held or stored pursuant to a contract with any other person concerning such data, or (B) in a manner that is not in accordance with industry-recognized data security practices, including, but not limited to, using encryption when transmitting or storing such data.

(h) On and after the effective date of this section, no public agency shall enter into or renew any contract with a private vendor related to automated license plate reader system usage or automated license plate reader data, unless such contract provides that the private vendor consents to personal jurisdiction in this state in the event of any legal proceeding and contains a choice of law provision that states that Connecticut state law shall be the controlling law for the contract.

(i) The Attorney General may bring an action against any private vendor with which a public agency contracts, if that private vendor is engaged in any conduct identified in subdivisions (1) to (5), inclusive, of subsection (g) of this section or subsection (h) of this section with respect to any automated license plate reader data collected in this state. In any action instituted under this subsection, the court may grant appropriate relief, including, but not limited to, injunctive or declaratory relief, damages and any other relief that may be available under law. If the Attorney General prevails in an action brought pursuant to this section, the court shall order the distribution of any

award of damages to any injured person. The court may also award civil penalties against each defendant in an amount not exceeding two thousand five hundred dollars for each violation. Any civil penalty that is received pursuant to this subsection shall be deposited in the General Fund.

(j) On and after October 1, 2026, a public agency may be subject to an action by any aggrieved individual for injunctive or declaratory relief, including a determination of past violations, if an officer, employee or other individual otherwise paid by or acting as an agent of such agency violates any provision of subsection (b), (d) or (e) of this section. If the alleged violation that forms the basis of an action under this subsection is committed by a private vendor with which a public agency contracts, or if that private vendor is engaged in any conduct identified in subdivisions (1) to (5), inclusive, of subsection (g) of this section with respect to any automated license plate reader data collected in this state, the private vendor shall be liable for such violation, rather than the public agency. Such action may be brought in the superior court for the judicial district in which the aggrieved individual resides. If an aggrieved individual prevails and an order of injunctive relief is issued, such aggrieved individual may be entitled to recover court costs and reasonable attorney's fees associated only with an action or that portion of an action concerning a request and order for injunctive relief. An action under this subsection shall be privileged with respect to assignment for trial.

(k) Any law enforcement officer who is found to have knowingly accessed, used or disseminated automated license plate reader data with malicious intent for purposes outside of the provisions of this section shall be subject to disciplinary action including, but not limited to, suspension, cancellation or revocation of certification by the Police Officer Standards and Training Council pursuant to section 7-294d of the general statutes, as amended by this act.

*Substitute Senate Bill No. 397*

(l) If a law enforcement agency of this state suspects that a law enforcement agency of another state or a federal law enforcement agency may have used any automated license plate reader data shared with such agency in any manner prohibited by this section, such law enforcement agency of this state shall notify the Police Officer Standards and Training Council of such suspected prohibited use. The Police Officer Standards and Training Council shall determine whether automated license plate reader data was used in a prohibited manner by the law enforcement agency of another state or federal law enforcement agency, as applicable, and, if so determined, direct each law enforcement agency in this state to discontinue sharing such data or providing access to such data with or to such other law enforcement agency.

Sec. 14. (NEW) (*Effective from passage*) (a) Not later than December 1, 2026, the Police Officer Standards and Training Council shall adopt a model policy governing law enforcement agency acquisition and use of automated license plate reader systems and automated license plate reader data. Such policy shall direct agencies to act in accordance with section 13 of this act, including permissible and prohibited uses of such system and any automated license plate reader data, whether collected by such system or acquired otherwise. In addition to detailing such permissible and prohibited uses of such system or data, such policy shall, at a minimum: (1) Develop standards for the use of a hotlist, including the sources from which a hotlist may be compiled, supervisory approval requirements for use and management of, access to and validation procedures for the data on any hotlist, including time limitations for the inclusion of such data on a hotlist, (2) provide for data retention limits in accordance with subdivision (2) of subsection (b) of section 13 of this act, (3) establish data access and sharing requirements in accordance with subsection (d) of section 13 of this act, including internal access controls and supervisory review and conditions under which such data may be shared with other public agencies or law

enforcement agencies, (4) provide for a supervisory responsibility and accountability structure, including designation of an officer or unit responsible for oversight of automated license plate reader system use and compliance with any policy adopted in accordance with the provisions of this section, (5) establish training requirements, including initial and periodic training for any officer or employee authorized to access the system or data, (6) establish audit and logging requirements, including the creation and retention of access logs sufficient to ensure compliance and facilitate independent review, of which the logs shall include documentation of access to and retention of automated license plate reader data pursuant to subdivision (2) of subsection (b) of section 13 of this act, including, but not limited to, (A) the number of times such data is retained, and (B) the duration of such retention, and require that such audits be conducted not less than quarterly, (7) establish public transparency standards and requirements, including publication of agency-specific usage policies for an automated license plate reader system and annual statistical reports detailing such usage, (8) establish the distance described in subdivision (5) of subsection (d) of section 13 of this act, and (9) contain provisions concerning compliance with subsection (g) of section 13 of this act concerning contracting with private vendors for services associated with access to an automated license plate reader system or storage of, processing of, transmission of or access to automated license plate reader data.

(b) Not later than January 1, 2027, each law enforcement agency shall adopt and implement the policy developed pursuant to subsection (a) of this section, or a policy that provides greater privacy protections than that which are in the policy developed pursuant to said subsection (a). Such policy shall be in effect until regulations are adopted pursuant to this section, at which point such policy shall be supplanted by any such regulation.

(c) (1) Not later than January 1, 2028, the Commissioner of Emergency

*Substitute Senate Bill No. 397*

Services and Public Protection shall, in consultation with the Police Officer Standards and Training Council, adopt regulations, in accordance with the provisions of chapter 54 of the general statutes, to enact a policy that, at a minimum, satisfies the provisions of subdivisions (1) to (9), inclusive, of subsection (a) of this section and section 13 of this act.

(2) Not later than January 1, 2033, and at least once during each five-year period thereafter, the commissioner shall, in consultation with the Police Officer Standards and Training Council, adopt regulations in accordance with the provisions of chapter 54 of the general statutes. Such regulations shall (A) comply with the provisions of this section and section 13 of this act and shall not reduce or limit the protections afforded by said sections or any minimum standards established by said sections, and (B) be based on a consideration of any changes in law, technology and best practices since the previous adoption of regulations pursuant to this section.

(3) Any regulation adopted pursuant to this section shall be binding upon all law enforcement agencies.

Sec. 15. (NEW) (*Effective from passage*) (a) Not later than January 1, 2027, the Police Officer Standards and Training Council, in consultation with the Commissioner of Emergency Services and Public Protection and the Institute for Municipal and Regional Policy at The University of Connecticut, shall develop and promulgate a standardized form for reporting automated license plate reader system usage, including, but not limited to, (1) the number of (A) license plates scanned, (B) searches performed by the law enforcement agency as a result of automated license plate reader system use and the reason for any such search, (C) times automated license plate reader data was shared with or accessed by another entity, the identity of each of those entities and the reason for sharing the data, (D) times automated license plate reader data was shared or accessed pursuant to a judicial warrant, (E) instances, if any,

when data was retained longer than permissible pursuant to subdivision (2) of subsection (b) of section 13 of this act, (F) instances, if any, when data was requested to be collected at locations described in subdivision (5) of subsection (d) of section 13 of this act, and (G) times that data is accessed or requested on or after the fourteenth day after such data is collected, and (2) any changes to the law enforcement agency's data collection, retention or sharing policies that affect privacy of automated license plate reader data.

(b) Each law enforcement agency shall, not later than January thirty-first following a calendar year during which the law enforcement agency used an automated license plate reader system pursuant to subsection (b) of section 13 of this act, submit a report detailing such usage to the Institute for Municipal and Regional Policy at The University of Connecticut using the standardized form promulgated pursuant to subsection (a) of this section and publish such report on the law enforcement agency's Internet web site.

(c) Not later than January thirty-first of each year, any public agency, other than a law enforcement agency, that uses an automated license plate reader system pursuant to subsection (b) of section 13 of this act, shall publish on the agency's Internet web site an annual report containing the information described in subsection (a) of this section as it pertains to such agency for the previous calendar year.

(d) Not later than July 30, 2027, and annually thereafter, the Institute for Municipal and Regional Policy at The University of Connecticut shall compile, analyze and summarize the reports submitted pursuant to subsections (b) and (c) of this section and shall submit, in accordance with section 11-4a of the general statutes, a consolidated report regarding automated license plate reader system usage and any recommendations for legislation to the Governor and the joint standing committees of the General Assembly having cognizance of matters relating to public safety and the judiciary.

*Substitute Senate Bill No. 397*

Governor's Action:
Approved May 4, 2026