## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 3:26-CV-00758-SVN |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, ET AL. | : | |
| *Defendants.* | : | JULY 13, 2026 |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS

Through this suit, the United States attacks Connecticut's longstanding and fundamental right to enforce its criminal laws, manage its criminal justice system, and protect the health and safety of its residents. It seeks to bar the State of Connecticut from investigating and prosecuting federal law enforcement officers who violate its criminal laws. Taken to its logical conclusion, the United States' position would mean federal agents could commit crimes and violate Connecticut residents' rights with impunity, accountable to no one. Its position undermines the "integrity, dignity, and residual sovereignty of the States" crucial to our system of federalism. *Bond v. United States,* 564 U.S. 211, 221 (2011). But to even bring this suit, the United States must establish the basic requirement of demonstrating standing, which it cannot do.

The United States' case is wrong on the merits. Regardless, the Court must dismiss it in its entirety under Rule 12(b)(1) because the United States cannot demonstrate standing. It failed to name a proper party with connection to enforcement of Connecticut's newly enacted mask restrictions and identification requirements. As to its challenges to Conn. Gen. Stat. §§ 53a-22, 51-277a, and 51-277e, *first,* the United States cannot establish pre-enforcement standing because the laws do not proscribe any conduct; *second*, the United States has not alleged any concrete,

1

imminent injury in fact; and *third,* the United States' alleged harms are not redressable through this suit, because Connecticut retains a paramount and inviolable sovereign right to enforce its criminal laws, including against federal officials, that exists regardless of the outcome in this suit. The entire suit should be dismissed.

## BACKGROUND

I.    **Connecticut's statutory scheme vests investigative and prosecutorial authority for use of force incidents in the DCJ, and more specifically, OIG.**

In 1988, the Connecticut General Assembly authorized the Connecticut Division of Criminal Justice ("DCJ") to investigate and, where appropriate, prosecute "peace officer[s]" for certain uses of force in the line of duty.  *See* Conn. Gen. Stat. § 51-277a (rev. to 1989); Public Act No. 88-199.  Since then, Section 51-277a has vested this authority in the DCJ and directed the DCJ to appoint various officials to carry out this task. For example, the 2019 version required the Chief State's Attorney ("CSA") to "designate a prosecutorial official from a judicial district other than the judicial district in which the incident occurred to conduct the investigation, or… appoint a special assistant state's attorney or special deputy assistant state's attorney to conduct the investigation." *Id.* (rev. to 2019); Public Act No. 19-90. All versions of Section 51-277a have required the investigating and prosecuting authority to consider whether the "peace officer" was legally justified in using force as determined by Conn. Gen. Stat. § 53a-22 when deciding to prosecute. Even today, if a peace officer were to be charged in Connecticut for a use of force incident, the peace officer would be charged with an independent criminal charge such as murder, manslaughter or assault not a violation of Conn. Gen. Stat. §§ 53a-22, 51-277a, or 51-277e. Neither Section 51-277a nor 51-277e are criminal provisions, and they cannot be "violated" by a law enforcement officer.

Section 53a-22 codifies Connecticut's justification defense for law enforcement officers. It sets out the standard to be applied in criminal prosecutions and defines who may assert the defense. Specifically, it provides the circumstances under which a peace officer's certain uses of force may be justified under Connecticut law. Section 53a-22 is not "enforceable" nor can it be violated. It does not carry a criminal penalty. Connecticut's justification defense has been codified in § 53a-22 for decades and has been available to some federal law enforcement officials if prosecuted in Connecticut since at least 1991.

Until recent statutory amendments in Senate Bill ("SB") 397,[1] the term "peace officer" as used in Sections 53a-22, 51-277a and 51-277e was defined by Conn. Gen. Stat. § 53a-3(9). Since 1991, Section 53a-3(9) defined "peace officer" to include "any special agent of the federal government authorized to enforce the provisions of Title 21 of the United States Code." This definition encompasses many federal law enforcement officials, including agents employed by the FBI, ATF, USMS, and DEA.

Following the murder of George Floyd in Minnesota, the Connecticut General Assembly enacted an *Act Concerning Police Accountability* ("ACPA") which amended, *inter alia,* Conn. Gen. Stat. § 51-277a to establish the Office of the Inspector General ("OIG"). *See* July Sp. Sess. Public Act No. 20-1. ACPA vested the Inspector General ("IG") with the power to issue investigatory subpoenas, conduct criminal investigations, issue reports about certain incidents in accordance with § 51-277a, and prosecute, if appropriate, unjustified uses of deadly force or uses of non-deadly force that result in a death that constitute a crime. ACPA also authorized other law enforcement to refer incidents to the OIG for investigation. It authorized the IG to investigate a

---

[1] SB 397 was signed into law in Public Act 26-14. Because the Plaintiff refers to the bill number, this brief will refer to the bill number, and where appropriate, the applicable general statutes numbers for those longstanding statutes that were amended through the bill.

peace officer's alleged failure to intervene in or report unjustified uses of force by law enforcement officers, and to investigate a peace officer's failure to report certain deaths. ACPA also empowered the IG to recommend the Connecticut's Police Officer Standards and Training ("POST") Council take certain actions.

Subsection (2) of Conn. Gen. Stat. § 51-277a requires the OIG to investigate and determine whether a peace officer's use of physical force is justified whenever 1.) a peace officer uses non-deadly physical force upon a person *and* the person dies as a result, or 2.) when a peace officer uses deadly physical force, regardless of injuries or death. The OIG does not have general authority to investigate or prosecute uses of non-deadly physical force that do not result in a death. Non-lethal incidents may be investigated and prosecuted by the relevant State's Attorneys. The OIG is also required to issue a final report at the conclusion of an investigation under either subsection (2) or (3) of § 51-277a.[2] Finally, subsection (c) of § 51-277a vests the OIG with prosecutorial authority for any incidents in which the IG determines a certain use of force was not justified or if there was a failure to intervene or report an incident of excessive force. Outside these limited circumstances outlined in §§ 51-277a and 51-277e, the IG does not have general investigatory or prosecutorial authority.

In 2026, Connecticut's General Assembly passed SB 397, which is the subject of this suit. The Bill included numerous provisions, but the United States challenges only Sections 3, 4, 5, and 6. Section 6 establishes limits on the wearing of facial coverings by law enforcement and requires that law enforcement be visibly identifiable. Intentional violations of § 6 are a class D misdemeanor.

---

[2] Final reports of the OIG are available on OIG's website, of which the Court may take judicial notice: https://portal.ct.gov/dcj/about/inspector-general/use-of-force-reports?language=en_US.

Section 3 of SB 397 expanded the definition of "peace officer" in § 51-277a to include "any federal law enforcement officer as defined under 18 U.S.C. [§] 115(c)(1) and 34 U.S.C. [§] 50301(5)," not just those with Title 21 authority. Beyond that, SB 397 made only minor changes to the OIG's authority. It did not alter the standard set forth in § 53a-22, as amended by the ACPA, for determining whether a peace officer's use of force is justifiable.

### A. Connecticut's criminal justice system vests primary criminal enforcement authority in the DCJ and State's Attorneys, not the Governor, Attorney General, or Chief State's Attorney.

Connecticut law charges the individual State's Attorneys for each judicial district, all of whom are independent constitutional officers with the "prosecutorial power of the state," with the duty of enforcing Connecticut's criminal laws, including§ 6, in the first instance. Conn. Const. Art. IV., § 27. Neither the Attorney General nor the Governor have general criminal enforcement authority[3] in Connecticut. Likewise, the CSA generally does not investigate criminal matters or initiate criminal prosecutions in the first instance for violations of the criminal law, including violations of § 6. *See* Conn. Const. Art. XXIII; see Conn. Gen. Stat. § 51-277(c); see Conn. Gen. Stat. § 51-278(a) (providing that CSA is the "administrative head" of the Division of Criminal Justice); Conn. Gen. Stat. § 51-279 (describing the powers and duties of CSA). The primary authority to prosecute crimes in Connecticut rests with the 13 State's Attorneys that is not imposed upon the CSA: "[e]ach state's attorney, assistant state's attorney and deputy assistant state's attorney shall diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court or in which the court may proceed, whether committed before or after his appointment to office." Conn.

---

[3] The Attorney General has limited criminal authority to prosecute home improvement contractor consumer fraud, but Assistant Attorney Generals who prosecute these criminal matters do so as special State's Attorneys. See Conn. Gen. Stat. § 51-285.

Gen. Stat. § 51-286a(a). These individual State's Attorneys have the power, ability, and special duty to enforce criminal law in the first instance within their assigned judicial district, unlike the named parties in this action. Conn. Gen. Stat. § 51-286a(a).

**II.     The United States sues, seeking to invalidate Conn. Gen. Stat. §§ 53a-22, 51-277a, 51-277e, and § 6 of SB 397, as applied to federal law enforcement.**

The United States ("Plaintiff") has sued the State of Connecticut ("Connecticut") along with Governor Ned Lamont, Attorney General William Tong, CSA Patrick Griffin, and IG Eliot Prescott (collectively, "Defendants"). Based on a facial Supremacy Clause challenge, the United States asks the Court to enjoin Conn. Gen. Stat. §§ 53a-22, 51-277a, 51-277e, and § 6 of SB 397 as applied to "federal agents" "federal law enforcement officers" and the "Federal Government" generally. *See* ECF No. 1, ¶¶ 63-67. The United States argues that these challenged sections impermissibly "regulate" the federal government in violation of the intergovernmental immunity doctrine. Shortly after filing the suit, the United States moved for a preliminary injunction on all counts. See ECF No. 12.

The United States styles its suit as a "pre-enforcement challenge" and argues it is harmed because it intends to engage in a course of conduct "proscribed by the statutes." ECF No. 1, ¶ 36; *See* ECF No. 12-1, pg. 9. But the United States makes clear that it is not currently chilled or impacted by the SB 397.  It alleges that "[f]ederal law enforcement agencies cannot and will not comply with the challenged Act[.]" *Id.* ¶ 38.   It further argues it is harmed by the existence of SB 397 because it harms federal "sovereign interest." *Id.* ¶¶ 38, 52. The United States also claims it is injured because Connecticut's justification defense creates a "patchwork" of inconsistent state laws that federal law enforcement must suddenly rush to learn. ECF No. 12-1, pg. 29; ECF No. 1, ¶ 39. The United States further alleges, though, that "Federal law enforcement agencies cannot and will not comply with the challenged Act." ECF No. ¶ 38.

**STANDARD OF REVIEW**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* Although the court accepts all material factual allegations in the complaint as true, it cannot draw inferences from the complaint favorable to the plaintiff or rely on conclusory statements in the Complaint. *See, e.g.*, *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)). *TransUnion LLC v. Ramirez,* 594 U.S. 413, 430 (2021). "A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021). (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992)).

**ARGUMENT**

The Complaint should be dismissed in its entirety for lack of standing. All claims brought against Governor Lamont, Attorney General Tong, and CSA Griffin must be dismissed because none has connection with enforcement of the challenged provisions, and so they cannot redress any supposed harm. Further, Plaintiff has not sued any proper party in relation to its challenge to § 6, and the State of Connecticut as a whole is not a proper party either.

The United States' challenges to Conn. Gen. Stat. §§ 53a-22, 51-277a, and 51-277e have even less legal basis. It has not alleged any injury from the availability of a justification defense in § 53a-22, which does not proscribe any conduct. And to the extent any injury might exist from either the justification defense or the OIG's authority, any such injury is remote, speculative, and insufficient to establish standing. Further, all three provisions are valid exercises of Connecticut's

7

sovereign right to control its own criminal justice system and its own officials, which the federal government has no right to interfere with.

The aim of this suit is plain: the United States seeks to prevent the State of Connecticut, through the OIG, from ever prosecuting federal law enforcement officials who violate state criminal law. It seeks to exempt federal law enforcement from state criminal procedure and accountability for violating the law.  But "the state is not without power to prosecute federal officials from the outset." *Whitehead v. Senkowski*, 943 F.2d 230, 236 (2d Cir. 1991). And because the State of Connecticut has a longstanding and sovereign right to enforce its criminal laws through its DCJ, the relief the United States seeks here would not redress the harm it alleges because Connecticut's State's Attorneys could still investigate and prosecute federal law enforcement for crimes they may commit in the state.

I.      **The United States sues improper parties, and lacks standing to challenge the mask and identification law.**

First, all claims against Governor Lamont, Attorney General Tong, and CSA Griffin must be dismissed because they have no connection with enforcement of any challenged provisions. Second, Plaintiff lacks standing to challenge § 6 because it has not named a proper defendant with authority to enforce those provisions. Article III requires "a causal connection" between the injury and each defendant's conduct; the injury may not be a result of "the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. In a pre-enforcement case, "the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957-58 (8th Cir. 2015) (*quoting Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007)); *see Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc); *Support Working Animals, Inc. v. Governor of Fla.*, 8

F.4th 1198, 1201 (11th Cir. 2021).  So, too, does the redressability requirement.  *Digital Recognition Network, Inc.*, 803 F.3d at 958.

### A. Governor Lamont, Attorney General Tong, and CSA Griffin are not proper Defendants for any claim.

Neither Governor Lamont, Attorney General Tong, nor CSA Griffin are proper defendants for any claim here because none have primary enforcement authority connected to the laws challenged by the United States.

For each claim, Plaintiff must establish the conduct from which it seeks relief is "fairly traceable" to, and "likely to be redressed by a favorable ruling" against, each defendant. *Doe v. Hochul,* 139 F.4th 165, 184 (2d Cir. 2025); *see also Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) ("'The redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute.'") (quotations omitted). Here, it cannot do so.

Like the *Ex Parte Young* exception to Eleventh Amendment immunity, for a party to be a proper defendant to any facial statutory challenge, the defendant must have sufficient connection with enforcement of the statute such that an order enjoining enforcement would provide some relief. *See United States v. Walz,* No. 25-cv-2668 (KMM/DTS), 2026 U.S. Dist. LEXIS 65486, at *8 (D. Minn. Mar. 27, 2026) (collecting cases). "[T]he official being sued must have (1) a particular duty to enforce the law in question and (2) a demonstrated willingness to exercise that duty." *We the Patriots USA, Inc. v. Lamont*, No. 3:23-cv-00737 (KAD), 2024 U.S. Dist. LEXIS 51190, at *6 (D. Conn. Mar. 22, 2024); *see also Grant v. Lamont*, No. 3:22-cv-01223 (JBA), 2023 U.S. Dist. LEXIS 147954, at *4 (D. Conn. Aug. 23, 2023) (same). General enforcement power is not enough. *See Connecticut Assn. of Health Care Facilities v. Rell*, No. 3:10-CV-136 (PCD), 2010 U.S. Dist.

LEXIS 54649, at *16 (D. Conn. June 2, 2010) *Cinicola v. Lamont*, No. 3:25-CV-493 (VDO), 2026 U.S. Dist. LEXIS 592, at *11 (D. Conn. Jan. 5, 2026).

As a preliminary matter, §§ 52a-22, 51-277a, and 51-277e are *not* "enforceable" at all, as discussed *infra* at pages 17-19. They vest specific authority in the IG. None of these statutes reference or have connection with the Governor, Attorney General, or CSA Griffin, beyond noting that the IG is within DCJ for administrative purposes and must be housed in a location separate from other state prosecutors.

Neither the Governor nor the Attorney General[4] have any duty to enforce Connecticut's criminal law at all, including §6 of SB 397. The Governor's general constitutional duty to "take care that the laws be faithfully executed," and the Attorney General's position as chief legal officer of the State do not make them proper parties. Conn. Const. art. IV, § 12. Any alleged injury from the challenged provisions is not traceable to these defendants, nor would any order enjoining them from "enforcing" them accomplish anything. Such an order would not redress any hypothetical injury the United States asserts. Therefore, all claims against Governor Lamont and Attorney General Tong should be dismissed.

As to CSA Griffin, Connecticut law does not impose upon him any special duty to investigate criminal matters or initiate criminal prosecutions in the first instance for violations of the criminal law, including a violation of §6. See Conn. Const. Art. XXIII. Rather, violations of §6 will be prosecuted by parties other than the CSA, namely the individual State's Attorneys, all of whom have the power, ability, and special duty to enforce the criminal law in the first instance within their assigned judicial district. Conn. Gen. Stat. § 51-286a(a). The Second Circuit has

---

[4] As mentioned above, the Attorney General has very limited criminal enforcement authority in the context of consumer protection housing improvement violations, not relevant here.

recognized that the CSA occupies a "somewhat peculiar position" as the "administrative head" of the Connecticut Division of Criminal Justice. Conn. Const. Art. XXIII; *Powers v. Coe*, 728 F.2d 97, 99 n.3 (2d Cir. 1984) (observing that under previous statutory scheme CSA exercised powers in criminal matters "similar in some respects to those of the attorney general in many states"). Connecticut law requires the CSA to carry out administrative duties and to represent the state in "appellate, post-trial, and postconviction proceedings," but it does not impose any duty upon the CSA to enforce Connecticut's criminal law in the first instance. Conn. Gen. Stat. § 51-277(c); see Conn. Gen. Stat. § 51-278(a) (providing that CSA is the "administrative head" of the Division of Criminal Justice); Conn. Gen. Stat. § 51-279 (describing the powers and duties of CSA).

Connecticut law charges the individual State's Attorneys for each judicial district, all of whom are independent constitutional officers with the "prosecutorial power of the state," with the duty of enforcing Connecticut's criminal laws, like §6, in the first instance. Conn. Const. Art. IV., § 27. And Connecticut law imposes a special duty upon the individual State's Attorneys that is not imposed upon the CSA: "Each state's attorney, assistant state's attorney and deputy assistant state's attorney shall diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court or in which the court may proceed, whether committed before or after his appointment to office." Conn. Gen. Stat. § 51-286a(a); *see, e.g.,* Conn. Gen. Stat. § 51-278(b)(1)(B) (providing that each State's Attorney appointed for each judicial district "shall act therein as attorney on behalf of the state"); *see also Inkel v. Connecticut,* No. 3:14-CV-01303 (MPS), 2015 U.S. Dist. LEXIS 86092, at *13 (D. Conn. July 2, 2015) (observing that CSA "is not responsible for prosecuting individual cases within the various judicial districts" but that such responsibility belongs to "the local State's Attorney for each judicial district"); *Grant,* 2023 U.S. Dist. LEXIS 147954, at *9 (same, CSA

Griffin not a proper party to a facial challenge of criminal statute). CSA Griffin is thus not a proper party for the instant suit either, and any claims against him should be dismissed.

### B.  Plaintiff has not sued any proper party in relation to § 6 of SB 397.

Governor Lamont and Attorney General Tong are improper defendants because neither of them have authority to enforce the criminal prohibitions in § 6.  *E.g. We the Patriots USA, Inc. v. Lamont*, No. 3:23-cv-00737 (KAD), 2024 U.S. Dist. LEXIS 51190, at *8 (D. Conn. Mar. 22, 2024) (Governor Lamont not a proper party); *Goldstein v. Hochul*, 680 F. Supp. 3d 370, 385 (S.D.N.Y. 2023) (Attorney General not a proper party). That they made public statements endorsing SB 397, *Br.* at 10-11, does not compel a different result. *Disability Rights S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022). Nor does IG Prescott have authority to enforce § 6. His authority is limited. *See* Conn. Gen. Stat. §§ 51-277a and 51-277e.

Nor does CSA Griffin have direct authority to enforce § 6. *Grant,* 2023 U.S. Dist. LEXIS 147954, at *6 (D. Conn. Aug. 23, 2023) (CSA lacks requisite connection to enforcement of criminal laws for purposes of *Ex Parte Young*). As discussed above, the general authority to prosecute violations of Connecticut's criminal laws, including § 6, is vested in the 13 States Attorneys—none of whom are named Defendant in this case.[5] *See* Conn. Gen. Stat. §§ 51-286a(a); *see also* Conn. Gen. Stat. § 51-278(b)(1)(B) (providing that each State's Attorney appointed for each judicial district "shall act therein as attorney on behalf of the state"). So whatever injury Plaintiff has sustained from § 6, those injuries were not caused by CSA Griffin, and Plaintiff has failed to demonstrate that an injunction against him is likely to redress those injuries.

Plaintiff's attempt to enjoin the entire State of Connecticut fares no better.  Because none of the named Defendants have authority to redress Plaintiff's alleged harms, the claims against

---

[5] Defendants advised Plaintiff that the States Attorneys would be proper parties to challenge § 6, but Plaintiff declined to amend its complaint to name them as defendants.

State itself, as a purely political entity that "can act only through its officers and agents," are even more attenuated. *Columbia Air Servs. v. DOT*, 293 Conn. 342, 349 (2009). Indeed, the Supreme Court has long recognized that a state officials' enforcement of an allegedly unconstitutional statute is, by definition, not attributable to the State itself: "[t]he attempt of a state officer to enforce an unconstitutional statute is a proceeding without authority of, and does not affect, the State in its sovereign or governmental capacity, and is an illegal act and the officer is stripped of his official character and is subjected in his person to the consequences of his individual conduct." *Ex Parte Young*, 209 U.S. 123, 142 (1908).

Moreover, enjoining an entire State from enforcing a criminal statute would exceed the limits on federal courts' equitable powers, which apply even when the federal government is the plaintiff. *NLRB v. P\*I\*E Nationwide*, 894 F.2d 887, 893 (7th Cir. 1990) (*Posner, J.*). "[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves." *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) (*citing California v. Texas*, 593 U.S. 659 (2021)); *see also Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) (emphasizing that in "a case for preventive relief," the court "enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding"). An injunction against the State itself without any connection to a specific official with enforcement authority would be no different from enjoining the law itself.

More problematically, a state-wide injunction would necessarily encompass state judicial employees like judges, clerks, and other "court . . . machinery" involved in the docketing and adjudication of criminal cases brought under § 6. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 32 (2021); *see Compl.* p. 17 (seeking injunction against Defendants as well as their "employees"). Enjoining such officials violates "the whole scheme of our Government." *Id.* And it would sweep

13

in countless state employees with no connection whatsoever to § 6—in violation of the "general rule" that "injunctive relief should be no more burdensome" on the defendant than is "necessary to provide complete relief to the plaintiffs." *Kane v. De Blasio*, 19 F.4th 152, 174 (2d Cir. 2021) (*quoting Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006)).

And although the Supreme Court has upheld the federal court's ability to name States as defendants in some circumstance, that has generally only been when there is express congressional authorization to do so, *United States v. Mississippi*, 380 U.S. 128 (1965). Plaintiff points to no federal statute granting authority to name the State as a defendant in a suit to enjoin a criminal statute under the Supremacy Clause. Nor could the Supremacy Clause be viewed as providing such grant of authority because it merely "instructs courts what to do when state and federal law clash"; it "does not create a cause of action." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 320 (2015). Plaintiff thus had to sue a State official with authority to enforce § 6. Because it did not, its challenge to § 6 must be dismissed.

## II. The United States lacks standing to challenge Connecticut's justification defense or the IG's authority.

The United States' claims challenging both Connecticut's justification defense and its IG's authority to investigate and prosecute must be dismissed for lack of standing.

*First,* the United States has not alleged an injury in fact. It cannot establish pre-enforcement standing to challenge §§ 53a-22, 51-277a, and 51-277e because the statutes do not "proscribe" any conduct. To the extent the United States has arguably alleged an injury outside the pre-enforcement standing context, it is remote and speculative because a theoretical series of events would have to occur before a federal officer might even face prosecution, let alone assert a justification defense at a criminal trial. Such a remote and speculative injury is insufficient to establish standing.

*Second,* any injuries from these sections are not redressable by the relief sought. The United States' real complaint is that federal law enforcement officers will be investigated or prosecuted if they violate Connecticut criminal law. But "no man is above the law" and federal law enforcement officers are not entitled to blanket immunity from prosecution or investigation. *Trump v. Vance,* 591 U.S. 786, 836 (2020) (Thomas, J., dissenting). Regardless, the injunction sought here would not provide that immunity because Connecticut State's Attorneys, non-parties to this suit, retain the power to investigate and initiate a prosecution of anyone—federal official or not—who violates state criminal law regardless of what happens in this suit.

The plaintiff "bears the burden of establishing standing as of the time [they] brought this lawsuit and maintaining it thereafter." *Carney v. Adams,* 592 U.S. 53, 59 (2020) (citations omitted). To do so, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 157-58 (2014) (alteration in original) (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Article III standing is a 'bedrock constitutional requirement that [the Supreme] Court has applied to all manner of important disputes.'" *Id.* at 378 (*quoting United States v. Texas,* 599 U.S. 670, 675 (2023)). Put another way, the standing doctrine helps ensure that federal courts do not "operate as an open forum for citizens 'to press general complaints about the way in which government goes about its business.'" *Id.* (*quoting Allen v. Wright,* 468 U.S. 737, 760 (1984)). "Because standing is not dispensed in gross, a plaintiff must demonstrate standing for *each* claim that he presses and for *each* form of relief that he seeks (for example, injunctive relief and damages)." *Doe v. Hochul,* 139 F.4th 165, 185 (2d Cir. 2025) (alterations adopted, internal citations omitted).

15

As an underlying matter, the application of these sections to federal officials is nothing new. The United States' halfhearted allegations of injury are severely undermined by the fact that these sections applied to federal law enforcement officials *for years.* As of 1991, § 53a-22 was a defense available to certain federal law enforcement who might be criminally prosecuted in Connecticut. And justification defenses generally are not revolutionary—they arose from common law, and many states have one codified in statute.[6] The United States' complaints that the minor amendment to § 53a-22 now "suddenly" creates a "patchwork" of different "policies" that federal law enforcement must rush to learn rings hollow, given the statute has included federal officers for decades. ECF No. 1, ¶¶ 38-40. Further, the alleged "patchwork" of laws already exists among the states and has caused no injuries so far.[7] The same is true of the IG's authority. Since the creation of the IG's role in 2021, the office's authority applied to federal law enforcement. And before 2021, prior iterations of Conn. Gen. Stat. § 52-277a vested the same investigatory authority in the CSA for decades.[8] Indeed, Connecticut has used this authority to investigate and report on uses of force

---

[6] *See, e.g.,* Ala. Code § 13A-3-27 (2025); Alaska Stat. Ann. § 11.81.370 (1978); Ariz. Rev. Stat. Ann. § 13-409 (1978); Ark. Code Ann. § 5-2-610 (2005); Cal. Penal Code § 196 (2020); Colo. Rev. Stat. Ann. § 18-1-707 (2024); Del. Code Ann. tit. 11, § 467 (2021); Fla. Stat. § 776.05 (1997); Haw. Rev. Stat. § 703-307 (2001); Idaho Code Ann. §§ 18-4011 (1986); 720 Ill. Comp. Stat. 5/7-5 (2021); Ind. Code § 35-41-3-3 (2021); Kan. Stat. Ann. § 21-5227 (2011); Ky. Rev. Stat. Ann. § 503.090 (1974); Me. Rev. Stat. tit. 17-A, § 107 (2025); Minn. Stat. 609.06 (2024); Miss. Code Ann. § 97-3-15 (2023); Mo. Rev. Stat. § 563.046 (2017); Mont. Code Ann. § 45-3-106 (2009); Neb. Rev. Stat. § 28-1412 (1975); N.H. Rev. Stat. Ann. § 627:5 (2020); N.J. Stat. § 2C:3-7 (1981); N.M. Stat. Ann. § 30-2-6 (1989); N.Y. Penal Law § 35.30 (2004); N.D. Cent. Code Ann. § 12.1-05-02 (2021); Okla. Stat. tit. 21, § 732 (2025); Or. Rev. Stat. §§ 161.233 (2020); 18 Pa. Cons. Stat. § 508 (2007); S.D. Codified Laws §§ 22-16-33 (2005); Tenn. Code Ann. § 39-11-620 (2021); Tex. Penal Code Ann. § 9.51 (1994); Utah Code Ann. § 76-2-403 (2025); Vt. Stat. Ann. tit. 13, § 2305 (2022); Wash. Rev. Code § 9A.16.040 (2019).

[7] The Defendants are unaware of the federal government filing suit challenging any other state's justification defense, despite the existence of the "patchwork" of different defenses at the state level that has existed for years.

[8] *See* Conn. Gen. Stat. § 52-277a (2019); Conn. Gen. Stat. § 52-277a (1990).

by federal law enforcement in the state three times in the last six years alone without objection—and instead, cooperation—from the federal government.[9] This further demonstrates the United States' grievances are founded upon either a basic misunderstanding of the laws at issue or an effort to establish blanket criminal immunity for federal law enforcement. Regardless, the United States' claims cannot proceed, because it has suffered no injury-in-fact that can be redressed through this suit.

> **A.** **The United States has not alleged a cognizable Article III injury-in-fact from §§ 53a-22, 51-277a, and 51-277e.**
>
> **i.** **The United States cannot establish pre-enforcement standing as to §§ 53a-22, 51-277a, and 51-277e because these provisions do not "proscribe" any conduct.**

The United States' claim regarding §§ 53a-22, 51-277a, and 51-277e, suffers from a fundamental fatal flaw because it mischaracterizes what these sections do. These provisions "proscribe" nothing, are not "enforceable," cannot be "violated," and do not prohibit federal officials' conduct. They do not impose "standards" on federal officials and do not "subject them to prosecution" if they "violate" them. The laws provide 1.) an affirmative defense to liability if they are ever criminally prosecuted and 2.) authority, guidelines, and standards for a state official—the IG—to follow in carrying out his duties. Neither proscribes the conduct of federal officials and

---

[9] *See* Office of the Inspector General, Reports, *Report Concerning an Officer Involved Use of Deadly Physical Force on Enfield Street in Hartford on January 6, 2021,* https://portal.ct.gov/dcj/-/media/dcj/ois-hartford_final-report1.pdf?rev=3b146aedb21a457e88aa86c6631051e2&hash=7294DF0C1A2683B2A53FC3227FC6410D; *Report Concerning Use of Deadly Force by the United States Marshals Service on January 13, 2022,* https://portal.ct.gov/dcj/-/media/dcj/11172022new-haven.pdf?rev=e04d794002da4d86a3a57a6d4f4c2114&hash=DBC45392C3B8DB3A3236042BB4575C1E; *Report Concerning the Use of Deadly Force against Aaron Freeman by the West Haven Police Department and the Waterbury Police Department on January 29, 2025,* https://portal.ct.gov/dcj/-/media/dcj-beta/12192025westhavenwaterburyoisfinal.pdf?rev=9676eed0467b4d4cacb397d09590e8eb&hash=D19124B500C5674406E2BA4520C268D5

thus cannot support standing for a pre-enforcement challenge. *See Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

To satisfy the injury-in-fact requirement for a pre-enforcement challenge, a plaintiff must show that it has "an intention to engage in a course of conduct arguably affected with a constitutional interest, ***but proscribed by a statute***, and there exists a credible threat of prosecution thereunder." *Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022) (*quoting Susan B. Anthony List*, 573 U.S. at 158-59) (emphasis added); *see also, United States v. California*, 819 F. Supp. 3d 1109 (C.D. Cal. 2026) ("For pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future."). To establish the second requirement, the United States need only prove its conduct is "*arguably* proscribed" by the challenged statute, not that the intended conduct is in fact proscribed. *Id.* at 98 (emphasis in original). This requires the plaintiff's interpretation of the statute be only "reasonable enough" and that they "legitimately fear [they] will face enforcement *of the statute.*" *Id.,* at 98-99 (citing *Pac. Cap. Bank, N.A. v. Conn.,* 542 F.3d 341, 350 (2d Cir. 2008)) (emphasis added).

There is no reasonable interpretation of the challenged statutes that proscribes federal officials' conduct. Section 53a-22 does not proscribe, restrict, or control any conduct; it creates a defense and sets forth the standards under which the defense may be asserted in a criminal prosecution. Sections 51-277a and 51-277e are similarly not provisions that prohibit, restrict, forbid, or bar the conduct of federal officials. Contrary to the United States' misapprehension, none of these sections can be "violat[ed]" and the plain language of these sections do not "carry criminal penalties." ECF No. 1, ¶ 52. Instead, they create investigative, reporting, and prosecutorial authority for the OIG and establish standards and guidelines by which the OIG assesses, investigates, reports, and prosecutes uses of force. At most, if the IG investigates a use of force

incident and exercises his prosecutorial discretion to prosecute, he will charge a peace officer under an independently enforceable criminal statute—like manslaughter, assault, or murder—not §§ 53a-22, 51-277a, or 51-277e. Simply stated, a person cannot be charged with "unjustified force" under Connecticut law.

To achieve the goal the United States seeks in this suit, the Court would have to enjoin application of every generally applicable Connecticut criminal statute to federal law enforcement, which it cannot do. Ultimately, by their plain language, the challenged sections do not forbid any conduct and are not enforceable. *Cerame v. Slack*, 123 F.4th 72, 83 (2d Cir. 2024) (defining the arguable proscription standard as whether, "on a plausible interpretation of the statute, the conduct is forbidden" (*quoting Christian Healthcare Ctrs., Inc. v. Nessel,* 117 F.4th 826, 843 (6th Cir. 2024)). Because these provisions do not proscribe, forbid, or prohibit any conduct, the United States cannot establish pre-enforcement standing.

### ii.    Availability of a justification defense in § 53a-22 does not injure the federal government.

Even outside the context of a pre-enforcement challenge, which this case plainly is not, the United States cannot establish standing. The United States' claimed injury from § 53a-22 ultimately rests on a straw man: it argues this section "imposes" state use of force "policy" on federal law enforcement and subjects them to "criminal penalties" if they "violate" it, causing them harm. But that is simply not what the section does. It provides a defense to such officers if they are ever charged with a crime—a boon, not harm.

A justification defense of any kind offers a way for a criminal defendant to avoid criminal liability in a criminal prosecution. *See United States v. White*, 552 F.3d 240, 246 (2d Cir. 2009) ("justification" traditionally encapsulates a broad class of defenses); Model Penal Code § 3.02 (describing justification as an affirmative defense); 2 Wayne R. LaFave, *Substantive Criminal*

*Law* 115-87 (2d ed. 2003) (discussing doctrines falling under the heading "justification" including justified use of force defenses). This defense operates the same as any other, offering a way to avoid criminal liability in a criminal proceeding. It is functionally no different than other criminal defenses, like self-defense, entrapment, or duress. *See* Conn. Gen. Stat. §§ 53a-19, 53a-14, 53a-15. Like any other state law criminal defense, it would be available to a federal official if prosecuted. *See, e.g., New York v. Tanella*, 239 F. Supp. 2d 291, 297 (E.D.N.Y. 2003) (noting that in addition to federal defenses, state defenses like self-defense or officer justified use of force defense would be available to DEA agent in state criminal prosecution).

Defenses like § 53a-22 have existed in many states for decades, and at common law before that. Indeed, in *Tanella*, the federal government recognized a similar defense would apply to the DEA agent New York prosecuted therein. Similarly, in *Mesa v. California*, 489 U.S. 121, the federal government argued in its brief that justification defenses as applied to federal officials are a matter of state law because "no 'federal common law of 'justification' applicable to crimes committed by federal employees in the performance of their duties . . .'" *Id.* at 127. Plaintiff's contrary position here is without merit. And it is unclear why now, suddenly, the existence of Connecticut's justification defense somehow harms federal officials. If the United States can challenge Connecticut's justification defense here, it could challenge any state's parallel defense, entrapment defense, self-defense, and other defenses when they impose no harm on anyone. Such an absurd result is barred by basic standing requirements.

Further, § 53a-22 has also been applied as an affirmative defense in tort actions. *See Belton v. Dragoi*, 228 Conn. App. 510, 525 (2024) (recognizing the statute may be raised as an affirmative defense where officer was sued for assault and battery under tort law). It thus also provides a benefit if the United States were sued pursuant to the Federal Tort Claims Act ("FTCA"). *See, e.g.,*

20

*Medina v. United States,* 259 F.3d 220, 226 (4th Cir. 2001) (in FTCA claim, United States may avail itself of state law defenses, including state law defenses for law enforcement; dismissing FTCA claim about FBI conduct because state law defense defeated it). This benefit to its law enforcement officers does not harm the federal government at all. The United States risks harm to its own clients' interests by seeking to deprive them of a potential defense through this suit. Though the Defendants maintain there is no legal basis to invalidate § 53a-22, ultimately, if the United States gets the relief it seeks, it will leave their own law enforcement officials without a potential defense if they were ever prosecuted in Connecticut.

And even if § 53a-22 somehow harmed federal law enforcement, the circumstances under which the defense might be asserted are so speculative as to fail under *Lujan*. For a federal law enforcement officer to even be able to assert § 53a-22 as a defense, an attenuated series of events must occur. First, a federal law enforcement officer must be operating in Connecticut and use deadly force or non-deadly physical force that results in death in a way that *also* violates an independent Connecticut criminal provision like murder, manslaughter, or assault. The Complaint does not allege that any federal officer intends to engage in such conduct or that that would plausibly establish that an officer is likely to do so in the imminent future. Second, the IG must investigate, which depending upon the incident, can take months. Third, the IG must weigh the many factors he considers and ultimately determine to bring charges against the federal officer.[10] Fourth, the federal officer likely will remove the case to federal court asserting Supremacy Clause immunity as a bar to the prosecution in that instance, based upon the facts of the case. Fifth, the

---

[10] Notably, prosecution of peace officers by the IG is rare. The office's primary role is in providing transparency and protecting the public's right to know about law enforcement use of force. Since its inception, most investigations have resulted only in a report and a decision not to prosecute for various reasons. *See e.g.,* https://portal.ct.gov/dcj/about/inspector-general/use-of-force-reports?language=en_US.

federal court must determine Supremacy Clause immunity does not bar the prosecution,[11] and only then, finally, the defense of justification becomes an issue at trial.[12]

Although imminence "is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Lujan,* 504 U.S. at 564 n.2 (citations omitted) (emphasis in original). The United States has not alleged any facts to plausibly establish that even the *first* of this chain of attenuated events—a federal officer engaging in conduct the OIG can or would prosecute them for—is likely to occur, let alone that it is imminently likely that § 53a-22 will come into play for a federal law enforcement officer, and even if it did, how the availability of a defense would injure the officer. This "highly attenuated chain of possibilities" cannot support standing. *Clapper,* 568 U.S. at 401.

### iii. Any potential injury from the IG's investigative and prosecutorial authority is remote and speculative.

The United States' claims about Conn. Gen. Stat. §§ 52-277a and 52-277e fare no better. These provisions establish the OIG, vest in that office investigatory, reporting, and prosecutorial

---

[11] This is also an unlikely, but not impossible, outcome. Many criminal prosecutions of federal officials are barred by Supremacy Clause immunity. Waxman, Seth P., "*Federalism, Law Enforcement, and the Supremacy Clause: The Strange Case of Ruby Ridge*" (2002) Regardless, that this case centers on entirely hypothetical prosecutions, of which this Court cannot know the potential underlying facts and whether they would implicate Supremacy Clause immunity underscores the lack of an actionable case or controversy here. "A federal district court is not a roving beacon of justice, free to opine on each question any party presents, no matter how consequential." *United States v. City of Boston,* No. 25-12456-LTS, 2026 U.S. Dist. LEXIS 117779, at *18 (D. Mass. May 28, 2026). Given the speculative nature of the claims here, the Court should defer and let any challenges to the application of § 53a-22 be litigated in a case where it is actually applied to a federal official, as discussed further *infra* at pages 32-37.

[12] And at this point, once a federal employee or official is denied Supremacy Clause immunity and the justification defense becomes relevant, federal interests in the prosecution of an individual will be non-existent.

22

duties, and establish standards by which the IG must evaluate use of force incidents. The United States has not alleged an injury in fact as to any provisions of these statutes.

### OIG Investigatory and Reporting Duties

The United States has not alleged any "concrete, particularized, and actual or imminent injury" traceable to the OIG's investigatory or reporting requirements as applied to federal law enforcement. *Murthy*, 603 U.S. at 57. Most enumerated responsibilities and duties in §§ 52-277a and 52-277e require the IG to investigate and report upon certain types of uses of force by peace officers. The purpose of the office is to ensure transparency and accountability, provide the public with timely and accurate information, and foster trust with law enforcement. It does so by requiring the IG to investigate: 1.) uses of deadly force, 2.) uses of non-lethal physical force where someone dies as a result, 3.) certain in custody deaths and 4.) instances where officers fail to intervene or report instances of excessive use of force. Reporting requirements vary; in some situations, the IG is statutorily required to issue a report summarizing the findings of an investigation.

These investigatory and reporting requirements have applied to federal officials since the inception of the OIG in 2021. At least three use of force incidents by a federal official were investigated and reported upon by the State in the last six years, without an emergency lawsuit from the federal government. *See* fn. 9, *supra*. To the contrary, the federal government welcomed the State's criminal investigatory resources to process evidence, secure the scene, and investigate. *Id.*

The United States alleged no injury at all from these duties in the complaint. It has alleged no harm other than a vague, generalized concern stemming from a potential risk of prosecution for criminal acts. But prosecution is distinct from investigation and reporting, and the United States has not alleged and cannot point to any harm that may arise from the IG investigating and

23

communicating to the public the results of any such investigation. Nor has it cited to any legal authority to suggest that individual federal employees are categorically immune from state investigations. None exists. "[N]o citizen, not even the President, is categorically above" state criminal investigations and proceedings. *Trump*, 591 U.S. at 810. Indeed, the federal government conceded in *Trump* that state criminal investigations, including grand jury subpoenas, are permitted under the Supremacy Clause. *Id.* at 804.

Although the United States may prefer its law enforcement to operate in secret and conceal use of force incidents from the public, Connecticut does not—and the United States' preference, without concrete injury, is not enough to establish standing.

### *Prosecutorial Duties*

Although the United States halfheartedly attempts to argue it is injured because its officers risk prosecution by the IG, any such injury is entirely hypothetical. *Clapper,* 568 U.S. at 409 (threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient). The claim is not justiciable because it does not meet the imminence requirement for standing and is essentially unripe. *See Nat'l Org. for Marriage, Inc. v. Walsh,* 714 F.3d 682, 687 (2d Cir. 2013). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300 (1998) (quotation marks omitted). "Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing." *Walsh*, 714 F.3d at 688. "[I]n other words," "to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not actual or imminent, but instead conjectural or hypothetical." *Paro Mgmt. Co. v. Willis of N.J., Inc.,* No. 25-872-cv, 2025 U.S. App. LEXIS 29289, at *3 (2d Cir. Nov. 5, 2025) (internal citations omitted).

24

The series of events that must occur before a federal agent might be prosecuted by the IG in Connecticut is attenuated and hypothetical. The United States has not alleged that any of its' officers plan to kill a Connecticut resident or use deadly force on a Connecticut resident, much less that they intend to do so in a way that violates a criminal statute or would be unjustified. To trigger the prosecution by the IG that the United States seeks to bar, a law enforcement officer must violate a Connecticut criminal statute like murder, manslaughter, or assault while using force, and the IG must determine that a use of force is unjustified after an investigation, which could take months. And even then, the chance of prosecution is still unsettled; lack of justification is only one factor the IG considers when determining whether to prosecute.[13] The alleged injury of potential prosecution is thus not impending, let alone "certainly impending," particularly in the absence of any allegations that a federal law enforcement officer intends to commit a criminal violation like murder while using force in Connecticut. *See Evergreen Ass'n,* 2025 U.S. Dist. LEXIS 17448, 2025 WL 359074, at *6 (finding that "the hypothetical chain of events that would need to occur to create the conditions for Evergreen to engage in conduct proscribed by the statute is fatally attenuated"); *Lujan,* 504 U.S. at 564 (explaining that "'some day' intentions—without any description of concrete plans, or indeed any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that [the caselaw] require[s]") (emphasis in original).

---

[13] In some circumstances, the IG has declined to prosecute even where it appeared a use of force was unjustified. Such reasons may include anything that may make the prosecution unlikely to succeed, like whether the officer's supervisor authorized the use of force or whether the law enforcement agency's policies endorsed or allowed it. *See e.g.,* https://portal.ct.gov/dcj/about/inspector-general/use-of-force-reports?language=en_US.

####    iv.    The United States cannot rely on sovereign interest to establish harm.

Plaintiff's primary standing argument is the most sweeping: that it need not demonstrate any actual or imminent injury because it "inflicts a 'sovereign injury' on the United States." ECF No. 1, ¶¶ 36-37. But courts have rejected the proposition that "the mere *existence* of a preempted state law creates a sovereign injury to the federal government." *United States v. California*, No. 2:25-cv-06230-MCS-AGR, 2026 U.S. Dist. LEXIS 61221, at *8 (C.D. Cal. Mar. 18, 2026) (emphasis in original); *see also United States v. City of Boston*, No. 25-12456-LTS, 2026 U.S. Dist. LEXIS 117779, at *25 (D. Mass. May 28, 2026). And for obvious reasons: that would effectively nullify Article III as it relates to the federal government and challenges to State laws under the Supremacy Clause. The federal government could compel federal courts to address novel constitutional questions whenever it believed a state law or policy violated the Supremacy Clause. *California*, 2026 U.S. Dist. LEXIS 61221, at *8. That would allow it to "initiate a campaign of preemption suits under the aegis of its sovereignty" whenever a particular administration wished to "bring state laws in line with its own political agenda." *Id.* *11-12. For example, since Plaintiff apparently believes that conferring federal officers with a justification defense violates the Supremacy Clause, Plaintiff's theory would mean it could file suit in virtually every State in the country which has similar laws without demonstrating a specific injury.

Article III does not permit that result. Instead, the Supreme Court has "consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened *enforcement*, whether today or in the future." *California v. Texas*, 593 U.S. 659, 670 (2021) (emphasis in original). That is no less true in Supremacy Clause cases when the federal government is the plaintiff. *California*, 2026 U.S. Dist. LEXIS 61221, at *8; *e.g. United States v. King County*, 122 F.4th 740, 751 (9th Cir. 2024) (finding United States demonstrated injury in fact where there was a

"substantial risk that the county will formally prohibit" entities from servicing ICE charter flights).

Ultimately, the United States also cannot rely on "sovereign interest" to establish their injury in

fact here.

### B. No hypothetical injury is redressable by an order enjoining §§ 53a-22, 51-277a, and 51-277e.

The Court must also dismiss all claims seeking to invalidate §§ 53a-22, 51-277a, and 51-277e as applied to federal officials because that relief would not redress the supposed harm. The federal government's primary concern is that federal officers can be prosecuted by the State if they commit a crime. But Connecticut retains a paramount and inviolable right to prosecute anyone who violates its criminal laws, including federal officials, regardless of whether §§ 53a-22, 51-277a, and 51-277e are enjoined. Indeed, the federal government's own removal and habeas statutes and the doctrine of Supremacy Clause Immunity acknowledge this reality. *See Wyoming v. Livingston*, 443 F.3d 1211, 1222 (10th Cir. 2006) (discussing history of removal and habeas statutes, and how they protect federal interests in state prosecutions of federal officials); 28 U.S.C. § 1442(a) (allowing removal of any "criminal prosecution commenced in State court" against a federal officer).

"To determine whether an injury is redressable," courts "consider the relationship between the judicial relief requested and the injury suffered." *Murthy,* 603 U.S. at 73. "The primary goals of [the redressability] requirement are to ensure that plaintiffs do not sue the wrong parties and that courts do not issue advisory opinions." *Diamond Alt. Energy, LLC v. Env't Prot. Agency,* 606 U.S. 100, 120 (2025). "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). To satisfy the element of redressability, the plaintiff must show that his requested relief would provide "meaningful redress" for an injury. *Am. Cruise Lines v. United*

27

*States*, 96 F.4th 283, 286 (2d Cir. 2024); *see also Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (defining redressability as an inquiry asking whether "it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit") (internal citations omitted). "The second and third standing requirements— causation and redressability—are often flip sides of the same coin." *See Food & Drug Admin. v. All. for Hippocratic Med.,* 602 U.S. 367, 380 (2024).

### i.    States have always had a fundamental sovereign right to enforce their criminal laws.

"Under our federal system, "[it] goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government." *Patterson v. New York,* 432 U.S. 197, 201 (1977); *United States v. Lopez*, 514 U.S. 549, 564 (1995) (recognizing "criminal law enforcement" as an area "where States historically have been sovereign"). The Supreme Court has long recognized that the States retain primary responsibility for protecting public safety and responding to violent crime. *See Morrison*, 529 U.S. 598, 618 (2000) ("[W]e can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims."). The reserved power to the States to make and enforce criminal law is longstanding and non-controversial. "Prior to forming the Union, the States possessed 'separate and independent sources of power and authority,' which they continue to draw upon in enacting and enforcing criminal laws. State prosecutions therefore have their most ancient roots in an 'inherent sovereignty.'" *Sánchez Valle*, 579 U.S. at 69 (internal citations omitted). These ancient roots include the inherent, noncontroversial right and authority to prosecute anyone who violates criminal laws in their states—including federal employees and officials. *See, e.g., Mesa v. California*, 489 U.S. 121, 138 (1989); *see also* Waxman, 51 U. Kan. L. Rev. at 145 ("[T]he mere

fact of federal employment surely does not confer blanket immunity from state law. Why, for example, should a postal worker be able to escape state liability for a death caused while driving under the influence, simply because he was delivering mail?").

For centuries, the Supreme Court and courts around the country have recognized States' fundamental right to prosecute federal officials who violate state criminal law. *See In re Neagle,* 135 U.S. at 75. These prosecutions have occurred both when federal officials are involved in carrying out their duties under federal law and where they act in a purely personal capacity. *See* Bryna Godar, *Explainer: Can States Prosecute Federal Officials?,* State Democracy Rsch. Initiative (July 17, 2025), https://statedemocracy.law.wisc.edu/featured/2025/explainer-can-states-prosecute-federal-officials/; *see also Colorado v. Symes,* 286 U.S. 510, 518 (1932) ("Federal officers and employees are not, merely because they are such, granted immunity from prosecution in state courts for crimes against state law."); *Johnson v. Maryland,* 254 U.S. 51, 56 (1920) ("[A]n employee of the United States does not secure a general immunity from state law while acting in the course of his employment."); *Marra,* 528 F. Supp. at 385 ("It goes without saying, of course, that federal immunity is not absolute and does not extend to all actions of federal agents, or even to all of their actions taken during the course of their official duties."). Plaintiff's claim that "States cannot subject federal officers to state criminal liability," and that federal officials are "generally not required to comply with individual state laws", is fundamentally incorrect and contradicted by Plaintiff's own authority. ECF No. 12-1, Pg. 16-17.

Instead, federal employees do not enjoy blanket immunity from criminal prosecution and are subject to state-law restrictions if their actions exceed federal authority or are not "justified by [the] federal duty," *State v. Ivory*, 906 F.2d 999, 1002 (4th Cir. 1990); *see also United States ex rel. Drury v. Lewis*, 200 U.S. 1, 8 (1906) (in homicide charge, if decedent had surrendered, "it could

not reasonably be claimed that the fatal shot was fired in the performance of a duty imposed by the Federal law"); *Clifton v. Cox*, 549 F.2d 722, 728-30 (9th Cir. 1977). Federal officers do not have "carte blanche…to proceed as they please" in carrying out their duties. *Ivory,* 906 F.2d at 1003. Repeated state prosecutions of federal officials, including in numerous use of force incidents, confirms the basic principle that states have a right to initiate such prosecutions. *See, e.g., Whitehead*, 943 F.2d 230, 236; *Marra,* 528 F. Supp. at 385; *Tanella,* 281 F. Supp. 2d at 607; *United States ex rel. Drury v. Lewis,* 200 U.S. 1 (1906); *Morgan v. California,* 743 F.2d 728 (9th Cir. 1984); *Idaho v. Horiuchi,* 215 F.3d 986, 988 (9th Cir. 2000).

The United States makes the startling and bald assertion that even if a federal law enforcement agent engages in conduct that is "federally illegal" any state investigation and potential criminal liability is still "unconstitutional." ECF No. 12-1, pg. 23. This reveals their true motive—to insulate all federal law enforcement from state authority and allow them to violate state and federal law with impunity. This deeply concerning proposition is entirely unsupported by any legal authority. To justify this statement, the United States asserts "[s]tate officials have no authority to investigate and prosecute federal officers for actions taken in the performance of their duties." *Id.* But that is flat wrong and directly contradicted by federal law—and the United States' own authority, which are cases where states had already initiated prosecutions. Instead, courts have determined that for a prosecution to be barred by the Supremacy Clause, the federal official charged must have been "performing authorized acts and doing no more than necessary to perform his tasks" and must have "reasonably believed his conduct was justified and that belief must be objectively reasonable." *Whitehead,* 943 F.2d at 234 (citations omitted); *see also Clifton,* 549 F.2d at 728 ("[W]e do not mean to imply that the exercise of authority in and of itself places a federal officer beyond the reach of a state's criminal process. The significant question of whether the

conduct was necessary and proper under the circumstances must still be answered"). It is certainly not true that an officer may engage in conduct that is illegal under both state and federal law and escape state prosecution.

Whether a prosecution may proceed is a question addressed in each individual case, and turns on a determination about Supremacy Clause immunity, which heavily depends upon the facts of an individual case. But whether a prosecution is ultimately successful is a different question than whether it can be *brought in the first place*. The United States seeks to enjoin the OIG's prosecutorial authority entirely and stop any prosecutions from the outset. No authority exists to support this result. To the contrary, it is black letter law that states have such authority.

**ii. The relief the United States seeks will not redress its supposed injuries, because even if §§ 53a-22, 51-277a, and 51-277e, are invalidated, Connecticut can and will investigate and prosecute federal law enforcement that violate Connecticut's criminal laws.**

Because the State has the paramount right to enforce its criminal laws, including against federal officials, enjoining the IG from exercising his authority does not provide relief to the United States. Even if the IG's authority were enjoined, the primary enforcers of criminal law in Connecticut, the DCJ and State's Attorneys, can and will prosecute any federal officials who violate Connecticut's criminal laws.

Connecticut law charges the individual State's Attorneys for each judicial district, all of whom are independent constitutional officers with the "prosecutorial power of the state," with the duty of enforcing Connecticut's criminal laws in the first instance. Conn. Const. Art. IV., § 27. If a federal official violates Connecticut criminal law, they will be criminally investigated and prosecuted by whatever standards the prosecutor deems appropriate. Even if the IG is enjoined from initiating that prosecution against federal officials, it does not matter—the State retains the inherent authority, through its prosecutors, to enforce its criminal laws.

The United States' claimed injury is that they may be subject to criminal prosecution. It argues that the amendments to Conn. Gen. Stat. §§ 51-277a and 51-277e in SB 397 should be enjoined because they "purport to give the State of Connecticut the authority to investigate and prosecute uses of force by federal agents." ECF No. 12-1, Pg. 7. The State of Connecticut already has that authority. It always has had that authority, as a fundamental pillar of this nation's principles of federalism. It does not need a statute to establish that authority. That it has chosen to establish a specific office responsible for specific types of investigations and prosecutions does not render Connecticut's basic sovereign right to enforce its criminal laws somehow unconstitutional. So the United States' "injury" exists regardless of the Court's judgment here. "[T]hat is the very kind of relief that cannot alone supply jurisdiction." *California,* 593 U.S. at 673; *All. for Hippocratic Med.*, 602 U.S. at 378-79 ("[F]ederal courts do not issue advisory opinions about the law—even when requested by the President.").

"The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet [standing] requirements." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986)); *see also Kearns v. Cuomo*, 981 F.3d 200, 207 (2d Cir. 2020). The United States' arguments here amount solely to a disagreement and discontent with basic principles of federalism that secure the State's right to enforce its criminal laws against federal officials. That is not enough to bring a claim, and this court should dismiss all such claims.

## III.   Prudential ripeness considerations counsel in favor of dismissal.

The concerns the federal government raises are more appropriately addressed in a hypothetical prosecution, should one ever occur, than with the blanket ban on prosecution it seeks here. Courts have repeatedly recognized that Supremacy Clause concerns in the context of state

criminal prosecutions are adequately protected by federal statute, law, and procedure. *See, e.g., Whitehead,* 943 F.2d at 233 (federal statute and Supremacy Clause immunity designed "to avoid state frustration of federal law enforcement efforts" through criminal prosecution); *Wyoming,* 443 F.3d at 1217  (Supremacy Clause immunity has long been designed "to prevent [the] evil of… states… imped[ing] or frustrat[ing] the legitimate execution of federal law"). And even in exercising their limited authority to intervene in state prosecutions of federal officials, federal courts have repeatedly recognized that "reasons for the interference" must be "extraordinary" and present "exceptional facts as to justify the interference of the Federal tribunal." *Baker v. Grice,* 169 U.S. 284, 291 (1898). Because Supremacy Clause concerns in state criminal prosecutions are already adequately protected and reasons for interference in state criminal proceedings is highly disfavored, the Court should decline to grant the blanket criminal immunity the United States seeks.

"[P]rudential ripeness[,]" which "constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it," and allows a court to determine "that the case will be better decided later." *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003); *see also Am. Sav. Bank, FSB v. UBS Fin. Servs.*, 347 F.3d 436, 439 (2d Cir. 2003) ("The . . . prudential ripeness doctrine . . . is a more flexible doctrine of judicial prudence, and constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it.") (internal quotation marks and citations omitted).  As it pertains to "prudential ripeness" the Second Circuit has explained that:

> When a court declares that a case is not prudentially ripe, it means that the case will be better decided later and that the parties will not have constitutional rights undermined by the delay.  It does not mean that the case is not a real or concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III.  Of course, in deciding whether "better" means later, the court must consider the likelihood that some of the parties will be made worse off on account of the delay.  But that, and its degree, is just

33

one-albeit important-factor the court must consider. Prudential ripeness is, then, a tool that court may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial.

*Am. Sav. Bank*, FSB, 347 F.3d at 439-440 (*citing Simmonds*, 326 F.3d at 357). Determining whether a case is prudentially ripe involves two inquiries: "(1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld." *Id.* at 440. The first inquiry "is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *Id.* (citations omitted). "Issues have been deemed ripe when they would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." *Id.* (citations omitted). The second inquiry, the hardship inquiry, examines "whether and to what extent the parties will endure hardship if the decision is withheld." *Simmonds,* 326 F.3d at 359. "The mere possibility of hardship is not enough to make a case ripe; instead, the courts must ask 'whether the challenged action creates a direct and immediate dilemma for the parties.'" *New York v. United States HHS*, No. 07-CIV-8621 (PAC), 2008 U.S. Dist. LEXIS 101064, at *30 (S.D.N.Y. Dec. 15, 2008) (*quoting New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008)).

Here, the United States' claims meet neither requirement. Supremacy Clause immunity, available to individual officers in criminal prosecutions, already ensures a constitutional balance of state and federal powers without requiring the facial invalidation of state criminal laws like those challenged here. It serves as a constitutional safeguard "to prevent states from nullifying federal laws by attempting to impede enforcement of those laws." *Morgan v. People of State of Cal.,* 743 F.2d 728, 731 (9th Cir. 1984). In the normal course of a prosecution of federal officials, whether the state prosecution interferes with federal duties is addressed, as applied, in each

34

individual case by a determination of Supremacy Clause immunity.[14] A federal officer is immune from state criminal liability only if "he did no more than what was necessary and proper for him to do," *In re Neagle*, 135 U.S. 1, 75 (1890) —and if he has "an honest and reasonable belief" that his actions are necessary to carry out his duties. *Whitehead,* 943 F.2d at 234 (citations omitted). But this is not properly decided as a blanket determination prohibiting a state official from *ever* prosecuting a federal employee like the United States seeks here. Instead, in countless cases, whether a prosecution "retard[s], impede[s], burden[s], or in any manner control[s], the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government" is determined on an as applied basis influenced by the actual facts of the case. *See, e.g., Id.* at 234; *Marra,* 528 F. Supp. At 385; *Clifton*, 549 F.2d at 728; *United States ex rel. Drury*, 200 U.S. at 7.

A similar process is appropriate here, and a claim challenging a hypothetical prosecution under a hypothetical set of facts, circumstances, and charges is not ripe. *See Lee v. State of Or.*, 107 F.3d 1382, 1391-92 (9th Cir. 1997) (claim brought by doctors challenging facial validity of Oregon's Death With Dignity Act was not ripe because noncompliance with allegedly offending provisions would lead, at most, to an enforcement action, at which time the plaintiffs could challenge the provisions' validity). The question of whether an officer's actions are protected by Supremacy Clause immunity is highly factual and depends upon the circumstances presented to an officer at the time of an incident. *See Drury,* 200 U.S. at 26 (considering facts officer faced to determine whether it could "reasonably be claimed that [a] fatal shot was fired in the performance of a duty imposed by the Federal law"). This determination is already designed to protect federal

---

[14] This determination is usually made by federal courts after removal pursuant to 28 U.S.C. § 1442(a).

government from state interference and is not appropriately addressed as a blanket proposition like the United States seeks.[15]

Moreover, the Supremacy Clause concerns Plaintiff raises are already protected by federal statute without disturbing the underlying police power of the state. *Whitehead,* 943 F.2d 230, 233 (2d Cir. 1991) (federal habeas corpus provisions that allow petition to federal court enacted "to avoid state frustration of federal law enforcement efforts" through criminal prosecution). In addition to habeas corpus provisions, Congress enacted federal removal statutes to allow a federal official to remove a state prosecution to federal court wherein they may assert a "colorable federal defense" like Supremacy Clause immunity. *Wyoming,* 443 F.3d at 1222 ("Like Supremacy Clause immunity, federal officer removal statutes are designed to protect the operations of the federal government from state interference."); *see also Willingham v. Morgan,* 395 U.S. 402, 407 (1969) ("One of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court."); *Tennessee v. Davis,* 100 U.S. 257, 263 (1880).

"Standing…. requirements are not present merely for purposes of disposing of cases. They developed to protect courts from the uncertainty and potential folly of ruling on theoretical claims." *Vt. All. for Ethical Healthcare, Inc. v. Hoser,* 274 F. Supp. 3d 227, 239 (D. Vt. 2017). This case demonstrates this problem. In the absence of an actual case the IG is prosecuting or is likely to, this Court is left to speculate about whether a potential action by a federal official falls within the bounds of Supremacy Clause immunity. Because "[t]he exercise of judicial power . . . can so profoundly affect the lives, liberty, and property of those to whom it extends. . . the decision to

---

[15] Supremacy Clause immunity resolves both concerns the United States raises—both the idea that interference can arise from federal officers having to acquaint themselves with different state criminal laws and that application of a specific law might be designed to frustrate or impede operations. *See* Waxman, *Federalism, Law Enforcement, and the Supremacy Clause: The Strange Case of Ruby Ridge,* 51 U. Kan. L. Rev. at 145.

seek review must be placed in the hands of those who have a direct stake in the outcome." *Diamond v. Charles,* 476 U.S. 54, 62 (1986) (internal quotation marks omitted). The Court here runs the risk of issuing an advisory opinion. If it grants the relief the United States seeks, it runs the risk of barring the IG from doing his job required by state law and prosecuting crimes that are completely outside the bounds of Supremacy Clause immunity and unquestionably within the State's authority to prosecute. This Court should decline to invalidate Connecticut's laws and allow any issues regarding the Supremacy Clause to be resolved at a time and in the manner repeatedly endorsed by the Supreme Court: in the context of any criminal prosecution that may arise, where individual federal officers could challenge the validity of the prosecution under long existing safeguards.

"[R]easons for the interference" in state prosecutions must be "extraordinary" and present "exceptional facts as to justify the interference of the Federal tribunal." *Baker v. Grice,* 169 U.S. 284, 291 (1898); *see also Ex parte Dickson*, 14 F.2d 609, 613 (N.D.N.Y. 1926) ("the power of the federal courts to interfere with state or county officers and state courts where federal officers of certain kinds are arrested, detained in jail, and the performance of their duties prevented, while undoubtedly existent, should be exercised with great care and discretion."). The "'regulation of crime is pre-eminently a matter for the States,'" and there is a "'strong judicial policy against federal interference with state criminal proceedings.'" *Mesa*, 489 U.S. at 138.

## **<u>CONCLUSION</u>**

No man is above the law, and this Court has an "obligation to avoid granting a license to federal officials to flout state laws with impunity." *Whitehead,* 943 F.2d 230, 234 (2d Cir. 1991). That is what the United States seeks with this suit. But it has failed to establish the constitutional minimum of standing, and so the entire suit must be dismissed.

Respectfully submitted,
DEFENDANTS

WILLIAM TONG
ATTORNEY GENERAL

By: /s/ *Janelle Medeiros*
    Janelle Medeiros (ct30514)
    Timothy Holzman (ct30420)
    Edward Rowley (ct30701)
    Assistant Attorneys General
    Office of the Attorney General
    165 Capitol Avenue, Suite 5000
    Hartford, CT 06106
    Tel:  (860) 808-5020
    Fax: (860) 808-5347
    E-mail: Janelle.Medeiros@ct.gov
    Timothy.Holzman@ct.gov
    Edward.Rowley@ct.gov

## CERTIFICATION

I hereby certify that on July 13, 2026, a copy of the foregoing was electronically filed and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's system.

U.S. DOJ-Civil Rights Dept.
Alexandra Schulte
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Alexandra.Schulte@usdoj.gov


/s/ *Janelle Medeiros*
Janelle Medeiros (ct30514)
Assistant Attorney General