# Exhibit 2

*Declaration of Racheal Cain with Attachment A*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 3:26-CV-00758-SVN |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, ET AL. | : | |
| *Defendants.* | : | JULY 7, 2026 |

## DECLARATION OF RACHEAL CAIN

I, RACHEAL CAIN, DO DECLARE (OR CERTIFY, VERIFY, OR STATE) UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT AND IS BASED UPON MY PERSONAL KNOWLEDGE:

1.     I am over the age of eighteen years old and believe in the obligations of an oath.

2.     I am currently employed by the State of Connecticut Division of Criminal Justice ("DCJ"), and I currently serve as Chief Inspector for the Office of Inspector General ("OIG"). I have served as the Chief Inspector since October 3, 2025.

3.  I have worked in law enforcement in various capacities for nearly thirty years. I began my career in the New Haven Police Department, where I served for twenty-one years. During that time, I held various positions including: Patrol Officer, Sergeant-Administrative Sergeant of Detective Bureau, Lieutenant-Commander of Training, Internal Affairs, Bureau of Identification and Assistant Chief of Police. In 2019 I joined the DCJ as a Police Inspector. I served in that role until January 26, 2024, when I was promoted to Supervisory Police Inspector, which I held until

1

appointed to my current role. I hold a Bachelor of Science in Criminal Justice from Albertus Magnus College.

4. In my role as Chief Inspector, I am responsible for assisting the Inspector General with carrying out his duties pursuant to Conn. Gen. Stat. §§ 51-277a and 51-277e. I lead the investigatory activities of the OIG's special unit. I am responsible for planning, organizing, and directing special investigations, including collaboration with other law enforcement entities. I attend incident and crime scenes involving matters statutorily delegated to the OIG. I am also responsible for assigning responsibilities for pre-arrest and post-arrest investigations, and ensuring adequate staffing for incident response. I review OIG activities to ensure compliance with statutory requirements. I conduct investigations, including collecting and processing physical evidence, questioning witnesses, taking statements, and interviewing bystanders. I also prepare warrants when required, assist with preparation and writing of various statutorily required reports.

5. In my role I supervise five inspectors and a supervisory inspector. I am responsible for training and evaluating inspectors to ensure compliance with OIG and DCJ policies. I also formulate policies and goals to define the role and responsibilities of inspectors under my supervision.

6. Investigations into a use of force incident are comprehensive, as further discussed below. Typically, these investigations take, on average, six to twelve months to conclude.

2

7.    When a use of force incident implicating the OIG's statutory authority occurs, we usually become aware of the incident by notification from LEAs or the State's Attorney for the jurisdiction in which the incident occurred. After notification, Connecticut State Police ("CSP") Major Crime Squads report to the scene along with OIG investigatory staff. Local police immediately secure the scene until the OIG arrives and the CSP collect and process evidence. Evidence collected at the scene can include shell casings, weapons, vehicles, clothing, a body, and biological and trace evidence like DNA, gun-shot residue ("GSR"). After the immediate aftermath of an incident, I or my inspectors continue the investigation in more detail, collecting additional evidence such as interviewing witnesses, collecting video evidence, evaluating photographic evidence, evaluating biological and trace evidence, DNA evidence and GSR. We also obtain the reports and body worn camera video from all involved officers, as well as training and disciplinary records of all involved. Over the course of months, we continue our investigation and track down additional leads for more information that may help determine whether a use of force was legally justified pursuant to Conn. Gen. Stat. § 53a-22, and whether a prosecution should be initiated. Additionally, a large part of my role in an investigation is coordinating with outside agencies and experts. For example, I request CSP run certain tests, and they send evidence to the lab for testing. Depending on the outcome of the analysis, I will work with the lab to have additional testing done on an item or suggest additional items be analyzed. I work with the OCME-we provide them with video or reports they need to investigate the cause of death and provide specific concerns to ensure the

3

appropriate testing is conducted. After the immediate response, the inspectors work directly with the involved agency and/or attorney to gather the supporting documents needed for our report (training records, disciplinary records, 911 calls, etc.). As we are preparing the report, I may need to secure and meet with expert witnesses to help us assess the evidence.

8.    Because CSP regularly secure scenes, collects sensitive evidence, preserves that evidence, and conducts comprehensive investigations for major crimes, they are well suited to respond to and process scenes of use of force incidents. They carry out these duties on a more frequent basis than federal law enforcement and are familiar with state and local considerations that federal law enforcement may not be. For example, CSP are more likely to understand traffic needs or other operational considerations that could require different approaches to collecting and processing evidence. CSP is familiar with OIG's statutory requirements and are more easily available to OIG to discuss evidence and analysis. Further, CSP utilizes the Connecticut State forensic lab for testing and analysis, which ensures consistency with testing and reporting and alleviates chain of custody issues. CSP is also able to respond to a scene much quicker than federal law enforcement and usually are on the scene within typically two hours of the incident occurring. The ability to quickly respond to an incident, secure a scene, and immediately begin collecting evidence is vital to an effective investigation, and also ensures that any burden by an area being closed off for an investigation placed on traffic patterns, residents of the area, or otherwise is minimized. Importantly, if a scene is not secured and evidence collected

4

thoroughly and quickly, evidence can be destroyed or altered. For example, GSR is very sensitive and generally needs to be collected within four hours of the incident. Weather can also destroy evidence if it is not collected quickly and thoroughly. The OIG relies upon CSP and local PD for carrying out our duties.

9.    In January of 2026, Renee Good and Alex Pretti were shot and killed by federal law enforcement officials in Minneapolis, Minnesota. After observing those incidents and hearing reports that federal officials did not cooperate with the investigations, our office became concerned about the possibility of such an incident in Connecticut. I was concerned how processing a similar scene might occur and wanted to ensure state and local officials were prepared for such an incident if it occurred in Connecticut.

10.    To that end, we met with CSP to discuss potential responses if a similar incident were to occur in Connecticut. While CSP were concerned with officer safety given the volatility of operations, they agreed major crime squads would be available to process and secure a scene of an incident involving a federal law enforcement officer, because our office does not have the resources to conduct crime scene processing.

11.    Given the events in Minnesota, we wanted to advise detectives from CSP major crimes to move quickly, obtain as much evidence and information as possible if a similar incident happened in Connecticut. We also wanted to address concerns for officers who might be facing a volatile civil unrest situations. We wanted to ensure, to the best of our abilities, that any use of force incident, including one

involving federal officials, was investigated safely, comprehensively, fairly, and objectively.

12.    Following the Good and Pretti killings, our office received numerous inquiries from local police about how such an incident would be handled in Connecticut. I authored a Guidance Letter on February 6, 2026, which was issued to local police chiefs, and is attached hereto as Attachment A. In the letter I conveyed our concerns about federal law enforcement officers' potential deadly use of physical force in Connecticut and explained that, consistent with longstanding practice, Connecticut law enforcement agencies have authority to investigate a deadly use-of-force incident in our state. I also provided guidance as to best practices to securing a scene, addressing safety concerns like civil unrest, and ensuring efficient and thorough collection of evidence.

13.    I issued the letter before Public Act 26-14 was enacted.

14.    On February 11, 2026, the Inspector General ("IG") and I attended a Law Enforcement Council ("LEC") meeting where we discussed the possibility of such incidents and the guidance letter. My understanding is that FBI Special Agent in Charge ("SAC") P.J. O'Brien was in attendance.

15.    On February 19, 2026, IG Prescott and I met with SAC O'Brien, Tony Costanza, Anish Shukla, and one other FBI member at the New Haven FBI Office, at 600 State Street, New Haven. IG Prescott and I brought the most recent version of the MOU that IG Devlin had been negotiating with federal agencies, in hopes that we could execute the MOU at that meeting or soon thereafter. Instead, SAC O'Brien

6

began the meeting by providing a history of how he believed federal agencies conduct their use of force investigations and the laws he believes they are subject to. He then advised the following:

- FBI will conduct their own use of force investigations in Connecticut;

- He does not believe federal agents are ever subject to state law because of the Supremacy Clause;

- If a federal officer is involved in a use of force incident in Connecticut, the FBI would handle the investigation, with an evidence collection team responding from Washington D.C. within hours. Federal authorities would conclude the investigation within one to two weeks;

- If a federal officer is involved in a use of force incident in Connecticut, the OIG would **not** be allowed access to: the agent(s), the agent(s) identity, the weapons, video (they might allow OIG to view it, but only on a case-by-basis), or copies of investigatory reports, including lab reports (they would allow OIG to view heavily redacted reports, but not take notes or make copies).

16. We informed SAC O'Brien that by statute, OIG is required to complete a report that identifies information about the law enforcement officer involved in the incident. SAC O'Brien unambiguously stated that information would be denied to the OIG.

17. We also noted that, in prior incidents, including one involving an FBI agent and a Task Force Officer in 2021, the CSP Western District Major Crime Squad handled processing the scene, collecting evidence, and collecting statements. The FBI cooperated with that state investigation by providing access to reports, evidence, and videos, and the investigation was carried out collaboratively. SAC O'Brien indicated

7

that process was no longer appropriate, and the State would be denied access to information and evidence in the future as described above.

18.    Conducting investigations the way SAC O'Brien envisions them is problematic for many reasons. First, his plan to complete an investigation of a use of force incident, including ones involving deadly force, in one to two weeks, is incomprehensible. I have never seen a similar investigation concluded in one to two weeks and I have been in law enforcement for nearly 30 years. A more appropriate estimate is, on average, six to twelve months. This duration is necessary to accurately collect, process, and evaluate information, conduct interviews, and in some instances retain and consult law enforcement or use of force experts to review the incident. One to two weeks is wholly inadequate to conduct a legitimate, thorough, and objective investigation, especially in incidents involving a death and any plan to do that reflects a disregard for the seriousness of the situation. Further, there is often evidence that is not even available within one to two weeks, which would make a thorough and proper investigation nearly impossible. For example, reports from the Office of the Chief Medical Examiner ("OCME") are generally not available for, at a minimum, 6 weeks. Information in OCME reports can be critical to investigations. The idea that federal authorities would conclude the investigation in one to two weeks suggested to me that they do not plan to do their job appropriately and follow even federal protocols as I understand them and that the investigation will not be done thoroughly, at the very least.

19.    Second, SAC O'Brien's process hides the identity of the officer and fails to offer any transparency or accountability. Transparency and accountability are statutorily required in Connecticut and absolute bedrocks of good policing and are the pillars upon which all public support and trust for law enforcement rest.

20.    Third, it seemed to be SAC O'Brien's intent to completely nullify the legitimate and long-standing authority of Connecticut officials to investigate use of force incidents in the State. His process would prevent the OIG from complying with our statutory duties that encourage confidence, transparency, and trust in local law enforcement and in our office. Without access to the information SAC O'Brien seeks to withhold, we cannot fulfill our statutory duties. The consequence will be the public's trust in law enforcement operating in our State will be undermined.

21.    Likewise, if the State's authority to investigate and prosecute federal officials—including officers acting under the umbrella of a federal task force as a Task Force officer ("TFO")—for use of force incidents is enjoined, even temporarily, and a federal official killed someone in Connecticut during that time, it would severely frustrate if not entirely prohibit OIG from ever conducting an investigation to hold that official accountable for potential criminal violations, even if the injunction were later lifted.  Even a brief injunction could be severely damaging to the public.

22.    Further, if the Court were to enjoin the OIG from investigating any incidents involving federal officials, that would include incidents involving TFOs. TFOs often include local and state officers designated as federal officers for the TFO

operation. State or local police must be subject to being held accountable for their actions directed at Connecticut residents.

23.    Immediate collection of witness statements and physical evidence like trace and DNA evidence, shell casings, video evidence, clothing, weapons, and vehicles is critical to our investigations. Witness statements are most reliable closest to the event, and physical evidence can be spoiled or lost entirely if not collected in a timely manner. For example, if we are precluded from investigating a shooting by a federal law enforcement officer, if there is video evidence of the shooting from a local Ring camera or security camera, that evidence may be written over or erased if not collected shortly after the incident. SAC O'Brien's plan demonstrates that a meaningful investigation probably will not be undertaken at all, so there is little chance the OIG could take up the investigation using evidence gathered by him and his colleagues after an injunction is lifted.

## DECLARATION UNDER PENALTY OF PERJURY
## PURSUANT TO 28 U.S.C. § 1746

I, Racheal Cain declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct to the best of my belief and based upon my personal knowledge.  Executed on July 7, 2026.

Racheal Cain
Chief Inspector

11

# Attachment A



# State of Connecticut

OFFICE OF
INSPECTOR GENERAL

ELIOT D. PRESCOTT
INSPECTOR GENERAL

P.O. BOX 460
CHESHIRE, CONNECTICUT 06410
ELIOT.PRESCOTT@CT.GOV
Telephone: (203) 806-1595

February 6, 2026

Over the past few months, we all have seen a rise nationally in the use of deadly physical force incidents involving federal law enforcement officers, particularly, U.S. Immigration and Customs Enforcement (ICE) and Border Patrol agents. In the past, in Connecticut, the Office of Inspector General (OIG) has conducted investigations into the use of deadly physical force by federal law enforcement officers in cooperation with our federal partners. As we have seen recently in Minnesota, cooperation from federal law enforcement agencies with these investigations is not necessarily assured.

First and foremost, it is the Inspector General's position that a federal agency cannot lawfully prohibit Connecticut's state or local law enforcement agencies from investigating a deadly use-of-force incident within our State. Indeed, any alleged violation of Connecticut's criminal laws can and will be investigated by the appropriate law enforcement agencies of this State.

Although we are unaware of any increased immigration operations in Connecticut, the OIG has been working with both the Governor's Office, the Division of Criminal Justice, and Connecticut State Police to provide clarification and guidance on how the OIG will respond in the event a federal law enforcement officer, including an ICE and/or Border Patrol agent, is involved in a deadly use of force incident.

Due to the increased potential for civil unrest surrounding immigration enforcement activities, local law enforcement will likely need to play a critical role in ensuring crowd control and securing relevant evidence until personnel from the OIG arrive on scene. It is for this purpose that we provide the following guidance to all Chiefs of Police and Executive Officers.

> If there are protests or civil unrest of more than minimal size in your jurisdiction due to an immigration operation, please notify our office even if no use of deadly physical force has yet occurred. This advance notification will assist the OIG in responding promptly to an incident scene if the need arises.

AN EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER

Page 2

In the event there is a deadly use of force incident in your jurisdiction involving any federal law enforcement officers, it is imperative that you immediately contact the OIG's office and the State's Attorney fo your judicial district.

Please secure the immediate scene and preserve all evidence until personnel from the OIG arrive at the incident scene.

Please photograph or otherwise document the scene and the relevant participants upon arrival.

If you are unable to secure the scene due to civil unrest, please safely attempt to collect any items of evidence that may be destroyed, preferably after photographing the item and its location at the scene. Once the scene has been secured, any evidence collected will then be turned over to the State Police Major Crime detectives with accompanying documentation.

In most cases, the federal law enforcement officer involved will immediately leave the scene with his/her duty weapon. Do not use force on any officer to secure evidence or identify participants.

Local law enforcement agencies will be asked to maintain a scene perimeter so that Major Crimes Detectives or Inspectors can process the scene safely. If local law enforcement agencies are unable to adequately secure the primary scene, Connecticut State Police will assist.

I realize that most of the above guidance is consistent with existing best practices for securing a potential crime scene. My office does not anticipate any incidents like those seen in other parts of the country, but I hope this guidance will reduce any conflict if one occurs. If you have any additional questions, please do not hesitate to contact me.

Best,

Racheal Cain
Chief Inspector
Office of Inspector General
203-627-1586
Racheal.cain@ct.gov