# Exhibit 8

*Declaration of Seth W. Stoughton with Attachment A*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA    :                    3:26-CV-00758-SVN

    *Plaintiff*                                  :

                                                 :

    v.                                           :

                                                 :

STATE OF CONNECTICUT, ET AL.     :

    *Defendants.*                               :                    JULY 7, 2026

**DECLARATION OF**

I, **Seth W. Stoughton,** DO DECLARE (OR CERTIFY, VERIFY, OR STATE) UNDER

PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT AND IS

BASED UPON MY PERSONAL KNOWLEDGE:

1.      My name is Seth Stoughton. I am over 18 years old and a resident of South Carolina.

I make this declaration based on my own knowledge and expertise in the field of law enforcement.

I have also reviewed the United States' May 15, 2026, complaint. I have personal knowledge of

the facts stated herein, and if called as a witness, I could and would testify competently to the

matters set forth below. I was retained by the Connecticut Office of the Attorney General to offer

expert opinions on the matters discussed herein, and am being compensated at a rate of $585 per

hour. My compensation is not contingent on my opinions or any of my conclusions set forth in this

declaration.

2.      I began my career as an officer in the Tallahassee Police Department in Tallahassee, Florida, serving for a total of five and a half years, serving as a full-time officer from March 2001 until October 2005, and as a reserve (part-time) officer from November 2005 until June 2006. During the course of my service with the department, I was assigned to the Uniform Patrol Division. As a full-time officer, I earned and maintained multiple operator and instructor certifications beyond my state certification as a police officer. I also had a wide range of responsibilities beyond my standard duty assignment, including serving as acting supervisor as needed, serving as a founding member of our Special Response Team (a tactical team focused on crowd control and riot response), teaching report writing, and establishing and teaching community self-defense courses. As an officer, I engaged in both regular and special duties.

3.      I have conducted academic research on policing since 2012. I am a tenured, chaired Professor at the University of South Carolina Joseph F. Rice School of Law, where I teach in the area of criminal law, criminal procedure, and policing. I am the Faculty Director of the Excellence in Policing and Public Safety Program, a legislatively- and grant-funded initiative that provides training, professional development, and research assistance to police and public safety practitioners. I also hold a courtesy appointment as a Professor in the University of South Carolina's Department of Criminology and Criminal Justice. I previously held an academic appointment in a two-year teaching fellowship at Harvard Law School.

4.      My research focuses on the regulation of policing, including tactics and the use of force, agency policies and procedures, administrative investigations, and both contemporary and historical industry practices. I have published extensively on these topics. I am the principal author of *Evaluating Police Uses of Force*, a book published by NYU Press in May 2020. My academic articles have been published in, inter alia, peer-reviewed, scientific journals such as *Police*

2

*Quarterly* and *Policing: An International Journal*; in flagship law reviews, including the *Emory Law Journal*, the *Harvard Law Review Forum*, the *Minnesota Law Review*, the *North Carolina Law Review*, the *Tulane Law Review*, the *Virginia Law Review*, and the *Wake Forest Law Review*; and in specialty journals in both law, such as the *American Criminal Law Review* and the *Journal of Criminology and Criminal Law*, and the social sciences, such as the *Cambridge Journal of Evidence-Based Policing*. I have written book chapters in *Rethinking and Reforming American Policing: Leadership Challenges and Future Opportunities*; in *Evidence Based Policing: An Introduction; in Legal Issues Around the Globe* (Vol. I); in *Plural Policing in the Global North*, and in *Critical Issues in Policing* (8th ed.) and *Critical Issues in Policing* (9th ed.). Additionally, I was one of three scholars commissioned by the National Academies of Sciences, Engineering, and Medicine to write a report on the state of empirical evidence related to the use of force by police.

5.    My work is widely relied upon in the field. I have an i10-index, representing the number of academic publications that have been cited at least ten times by other academic sources, of 16, and a Hirsch index, which measures the number of academic publications that have at least that same of number of citations, of 16. Electronic versions of my work have been downloaded thousands of times, and my published research has been broadly cited by legal scholars in top journals including the *Yale Law Journal*, the *Harvard Law Review*, the *California Law Review*, the *Duke Law Journal*, the *Columbia Law Review*, the *N.Y.U. Law Review*, the *Georgetown Law Journal*, and the *Cornell Law Review*, just to name a few. My work has also been broadly cited by scholars in other disciplines, most prominently in criminology (e.g., in *Criminology & Public Policy, Police Quarterly, Police Practice & Research, Policing: An International Journal*, the *Journal of Criminal Justice*, the *Journal of Research in Crime and Delinquency*, and the *British Journal of Criminology*) but also in public administration (e.g., in *Public Administration Review*),

geography (e.g., in *Political Geography*) and psychology (e.g., in *Psychological Science*, *Law & Human Behavior*, *Psychonomic Bulletin & Review*, and the *Journal of Police and Criminal Psychology*). It has also been cited in textbooks and casebooks (e.g., in Rachel Harmon's *The Law of Police*), treatises (e.g., in Wayne LaFave's *A Treatise on the Fourth Amendment*), and both popular books and academic texts (e.g., James Forman, Jr.'s *Locking Up Our Own*, Barry Friedman's *Unwarranted: Policing Without Permission*, Stephen Rushin's *Federal Intervention in American Police Departments*, Chris Hayes' *A Colony in a Nation*, and Norm Stamper's *To Protect and Serve*). My work has also been cited by practitioners, including by the Civil Rights Division of the United States Department of Justice and the United States Attorney's Office for the Northern District of Illinois in their investigation of the Chicago Police Department. Further, my academic research has been featured in national and international media, including in *The New York Times*, on *National Public Radio*, and in a host of other publications.

6.      I am active in policing beyond publishing academic research. As the Faculty Director of the Excellence in Policing and Public Safety Program, I oversee and actively participate in the design and delivery of a suite of courses, including a Masters of Studies in Law in Public Safety Executive Leadership and a graduate certificate in the same topic, which we developed specifically for police executives and would-be executives, as well as an eight-month Executive Credential in Police Leadership.  I am a Member of the American Law Institute, where I serve as an Adviser to the ALI's *Principles of the Law, Policing* and currently serve as an Adviser to the *Restatement of the Law, Constitutional Torts*.  I have provided training on the investigation, review, and evaluation of police uses of force on many occasions, including to the city of Chicago's Civilian Office of Police Accountability, the Washington Metropolitan Police Department's Police Leadership Academy, the Charleston Police Department's Executive Leadership Institute, and a

number of other police agencies and organizations. I currently serve, by appointment, on the Citizen Advisory Council of the Columbia Police Department in Columbia, South Carolina, a department of approximately 350 sworn officers serving a city with a population of over 130,000 and a metropolitan-area population of over 800,000. I was appointed as one of the original members of the council and have served in that capacity since 2015.

7.      As a policing expert, I am regularly invited to present on various aspects of policing to legal, law enforcement, and academic audiences. To date, I have formally presented on policing issues over 175 times to audiences that include the American Judges Association; the Conference of Chief Justices; the Fourth Circuit Judicial Conference; the National Conference of State Courts; state judicial conferences in Indiana, Kansas, Missouri, New York, North Dakota, Ohio, South Carolina, and Tennessee; the Federal Law Enforcement Training Center; federal Inspectors General & Inspectors General Investigators; the Senior Executive Staff of the Bureau of Alcohol, Tobacco, Firearms, and Explosives; the Peace Officers' Association of Georgia; the South Carolina Police Chiefs Association; the Command Staff of the Kansas City (Missouri) Police Department; the Washington, D.C., Metropolitan Police Department's Police Leadership Academy; the Washington State Criminal Justice Training Commission; and a host of others.

8.      I have served as a subject matter expert on policing in multiple capacities outside of litigation, including under a Bureau of Justice Assistance grant to develop technical assistance related to police body-worn cameras; in that capacity, I provided verbal and written consultation, as well as presented, by invitation, a keynote address on using police body-worn cameras to investigate and evaluate officer actions with an emphasis on use-of-force incidents. I also served as a subject matter expert in the OIR Group review of the Madison Police Department. I was retained by the City Council of Hammond, Louisiana to conduct an independent investigation of

a use-of-force incident and to issue a report documenting findings, conclusions, and recommendations.

9. I have testified before or consulted with legislators, legislative committees, and public task forces or task force members in California, Massachusetts, North Carolina, Pennsylvania, South Carolina, and Virginia. I have filed or joined multiple briefs *amicus curiae* to the Supreme Court of the United States and United States Courts of Appeals related to police procedure, and I have written about policing for *The Atlantic*, *The New York Times*, *TIME*, and other media publications.

10. I am regularly retained to provide expert review and testimony related to police litigation. To date, I have been formally retained over 150 times, across 33 states and internationally. I have been retained as an expert witness in state and federal courts in the course of both civil and criminal litigation, and I have testified in depositions, grand juries, and trials, providing both favorable and unfavorable opinions about officer conduct. Among other retentions, I served as an expert for the prosecution of Derek Chauvin and other officers criminally charged for the death of George Floyd, and as an expert for the defense in civil litigation against the City of Seattle during the 2020 protests. A true and accurate copy of my curriculum vitae is attached hereto as Attachment A.

11. Through my extensive study as a legal scholar studying policing, I have a thorough understanding of how different jurisdictions use law and administrative regulations (i.e., agency policy, training, etc.) to set standards for officer behavior. I also have a thorough understanding of how different jurisdictions use legal and administrative proceedings as accountability systems that enforce the relevant standards for officer behavior. Additionally, I have a thorough understanding of the interplay of different standards and proceedings, including the intersection of multiple

6

standards (that is, when distinct standards mutually apply), the interstices between multiple standards (that is, the gaps between distinct standards), and the interrelation, or lack thereof, between multiple standards (that is, the way one standard influences or does not influence another). Indeed, several of my academic publications address these specific points. See Seth W. Stoughton, *How the Fourth Amendment Frustrates the Regulation of Police Violence*, 70 EMORY L J 521 (2021); SETH W. STOUGHTON ET AL., EVALUATING POLICE USES OF FORCE (2020); Seth W. Stoughton, *The Regulation of Police Violence*, in CRITICAL ISSUES IN POLICING: CONTEMPORARY READINGS 321 (Roger G. Dunham, Geoffrey P. Alpert, & Kyle D. McLean, eds., 8th ed. 2020).

**STATE LAWS REGULATE POLICE USES OF FORCE BY ESTABLISHING JUSTIFICATION DEFENSES FOR, OR AFFIRMATIVELY AUTHORIZING, ACTIONS THAT MIGHT OTHERWISE BE PROHIBITED BY GENERALLY APPLICABLE STATE LAW**

12.     In 2020, I, along with two co-authors, published *Evaluating Police Uses of Force* (NYU Press); the first part of that academic book explored four different standards that can be applied to assess an officer's use of force. SETH W. STOUGHTON ET AL., EVALUATING POLICE USES OF FORCE (2020). Chapter 2 provides a detailed analysis of how state laws regulate police uses of force, *id.* at 58, while the relevant text of the fifty-eight (58) different use-of-force statutes in effect across the forty-two (42) states with statutory law is reproduced in the Appendix of State Laws, *id*. at 239. The Appendix of State Laws also includes citations to, and a summary of, relevant case law in those states that lacked statutory law at the time. *Id*.

13.     Since publishing the aforementioned book, I have continued to study how states codify and amend use-of-force laws in their respective statutory regimes. As of the date of this declaration, a total of forty-six (46) states have enacted approximately sixty-five (65) statutes that

7

specifically regulate aspects of police uses of force. These statutes fall into three categories: state statutes that create justification defenses to otherwise applicable state criminal law, affirmative authorizations for criminal procedure actions that might violate otherwise applicable state criminal law, and standards set out in police administration or training statutes.

14.    As of the date of this declaration, thirty-five (35) states specifically regulate police uses of force by establishing defenses to criminal liability; the forty-five (45) statutes that follow this approach use of force statutes provide legal justification for actions that might otherwise be prohibited under state law. Specifically:

| | |
|---|---|
| **Alabama** | Ala. Code § 13A-3-27 (2025), titled *Use of force in making an arrest or preventing an escape*, is codified in Title 13a (Criminal Code), Chapter 3 (Defenses), Article 2 (Justification and Excuse). |
| **Alaska** | Alaska Stat. Ann. § 11.81.370 (1978), titled *Justification: Use of force by a peace officer in making an arrest or terminating an escape*, is codified in Title 11 (Criminal Law), Chapter 81 (General Provisions), Article 4 (General Principles of Justification). |
| **Arizona** | Ariz. Rev. Stat. Ann. § 13-409 (1978), titled *Justification, use of physical force in law enforcement*, and Ariz. Rev. Stat. Ann. § 13-410 (1989), titled *Justification; use of deadly physical force in law enforcement*, are codified in Title 13 (Criminal Code), Chapter 4 (Justification). |
| **Arkansas** | Ark. Code Ann. § 5-2-610 (2005), titled *Use of physical force by law enforcement officers*, is codified in Title 5 (Criminal Offenses), Subtitle 1 (General Provisions), Chapter 2 (Principles of Criminal Liability), Subchapter 6 (Justification). |

8

**California**    Cal. Penal Code § 196 (2020), titled *Justifiable homicide; peace officers*, is codified in state Penal Code, Part 1 (Of Crimes and Punishments), Title 8 (Of Crimes Against the Person), Chapter 1 (Homicide).

**Colorado**    Colo. Rev. Stat. Ann. § 18-1-707 (2024), titled *Use of force by peace officers--definitions*, is codified in Title 18 (Criminal Code), Article 1 (Provisions Applicable to Offenses Generally), Part 7 (Justification and Exemptions from Criminal Responsibility).

**Connecticut**    Conn. Gen. Stat. Ann. § 53a-22 (2026), titled *Use of physical force in making arrest or preventing escape*, is codified in Title 53a (Penal Code), Chapter 951 (Penal Code: Statutory Construction; Principles of Criminal Liability).

**Delaware**    Del. Code Ann. tit. 11, § 467 (2021), titled *Justification--Use of force in law enforcement*, is codified in Title 11 (Crimes), Part 1 (Delaware Criminal Code), Chapter 4 (Defenses to Criminal Liability).

**Florida**    Fla. Stat. § 776.05 (1997), titled *Law enforcement officers; use of force in making an arrest*, is codified in Title XLVI (Crimes), Chapter 776 (Justifiable Use of Force).

**Hawaii**    Haw. Rev. Stat. § 703-307 (2001), titled *Use of force in law enforcement*, is codified in Division 5 (Crimes and Criminal Proceedings), Title 37 (Hawaii Penal Code), Chapter 703 (General Principles of Justification).

**Idaho**    Idaho Code Ann. §§ 18-4011 (1986), titled *Justifiable homicide by officer*, is codified in Title 18 (Crimes), Chapter 40 (Homicide).

9

**Illinois**  720 Ill. Comp. Stat. 5/7-5 (2021), titled *Peace officer's use of force in making arrest*, and 720 Ill. Comp. Stat. 5/7-5.55 (2021), titled *Prohibited use of force by a peace officer*, are codified in Chapter 720 (Criminal Offenses – Criminal Code), Act 5 (Criminal Code of 2012), Title II (Principles of Criminal Liability), Article 7 (Justifiable Use of Force; Exoneration).

**Indiana**  Ind. Code § 35-41-3-3 (2021), titled *Use of force relating to arrest or escape*, is codified in Title 35 (Criminal Law and Procedure), Article 41 (Substantive Criminal Provisions), Chapter 3 (Defenses Relating to Culpability).

**Kansas**  Kan. Stat. Ann. § 21-5227 (2011), titled *Law enforcement officer making arrest*, is codified in Chapter 21 (Crimes and Punishments), Article 52 (Principles of Criminal Liability).

**Kentucky**  Ky. Rev. Stat. Ann. § 503.090 (1974), titled *Use of physical force in law enforcement*, is codified in Title L (Kentucky Penal Code), Chapter 503 (General Principles of Justification).

**Maine**  Me. Rev. Stat. tit. 17-A, § 107 (2025), titled *Physical force in law enforcement*, is codified in Title 17-a (Maine Criminal Code), Part 1 (General Principles), Chapter 5 (Defenses and Affirmative Defenses; Justification).

**Minnesota**  Minn. Stat. 609.06 (2024), titled *Authorized use of force*, and Minn. Stat. 609.066 (2024), titled *Authorized use of deadly force by peace officers*, is

10

codified in Crimes; Expungement; Victims, Chapter 609 (Criminal Code), General Principles.

**Mississippi**   Miss. Code Ann. § 97-3-15 (2023), titled *Justifiable homicide*, is codified in Title 97 (Crimes), Chapter 3 (Crimes Against the Person).

**Missouri**   Mo. Rev. Stat. § 563.046 (2017), titled *Law enforcement officer's use of force in making an arrest*, is codified in Title XXXVIII (Crimes and Punishment; Peace Officers and Public Defenders), Chapter 563 (Defense of Justification).

**Montana**   Mont. Code Ann. § 45-3-106 (2009), titled *Use of force to prevent escape*, is codified in Title 45 (Crimes), Chapter 3 (Justifiable Use of Force), Part 1 (When Force Justified).

**Nebraska**   Neb. Rev. Stat. § 28-1412 (1975), titled *Use of force in law enforcement*, and Neb. Rev. Stat. § 28-1414 (1975), titled *Mistake of law; reckless or negligent use of force*, is codified at Chapter 28 (Crimes and Punishments), Article 14 (Noncode Provisions), (b) (Justifications for Use of Force).

**New Hampshire**   N.H. Rev. Stat. Ann. § 627:5 (2020), titled *Physical Force in Law Enforcement*, is codified in Title LXII (Criminal Code), Chapter 627 (Justification).

**New Jersey**   N.J. Stat. § 2C:3-7 (1981), titled *Use of force in law enforcement*, is codified in Title 2c (The New Jersey Code of Criminal Justice), Subtitle 1 (General Provisions), Chapter 3 (General Principles of Justification).

11

| | |
|---|---|
| **New Mexico** | N.M. Stat. Ann. § 30-2-6 (1989), titled *Justifiable homicide by public officer or public employee*, is codified in Chapter 30 (Criminal Offenses), Article 2 (Homicide). |
| **New York** | N.Y. Penal Law § 35.30 (2004), titled *Justification; use of physical force in making an arrest or in preventing an escape*, is codified in Penal Laws, Chapter 40 (Of the Consolidated Laws), Part One (General Provisions), Title C (Defenses), Article 35 (Defense of Justification). |
| **North Dakota** | N.D. Cent. Code Ann. § 12.1-05-02 (2021), titled *Execution of public duty*, and N.D. Cent. Code Ann. § 12.1-05-07 (2021), titled *Limits on the use of force--Excessive force--Deadly force*, are codified in Title 12.1 (Criminal Code), Chapter 12.1-05 (Justification--Excuse--Affirmative Defenses). |
| **Oklahoma** | Okla. Stat. tit. 21, § 732 (2025), titled *Justifiable homicide by officer*, is codified in Title 21 (Crimes and Punishments), Part III (Crimes Against the Person), Chapter 24 (Homicide), Excusable and Justifiable Homicide. |
| **Oregon** | Or. Rev. Stat. §§ 161.233 (2020), titled *Use of physical force by a peace officer*, Or. Rev. Stat. §§ 161.237 (2020), titled *Use of physical force impeding normal breathing and circulation of blood*, and Or. Rev. Stat. §§ 161.242 (2020), titled *Use of deadly physical force by a peace officer*, are codified in Title 16 (Crimes and Punishments), Chapter 161 (General Provisions), Justification. |
| **Pennsylvania** | 18 Pa. Cons. Stat. § 508 (2007), titled *Use of force in law enforcement*, is codified in Title 18 Pa.C.S.A (Crimes and Offenses), Part I (Preliminary Provisions), Chapter 5 (General Principles of Justification). |

| | |
|---|---|
| **South Dakota** | S.D. Codified Laws §§ 22-16-33 (2005), titled *Justifiable homicide-- Apprehending felon--Suppressing riot--Preserving peace*, is codified in Title 22 (Crimes), Chapter 22-16 (Homicide and Suicide), while S.D. Codified Laws §§ 22-18-2 (2005), titled *Justifiable force used by public officer in performance of duty--Assistance or direction of officer*, and S.D. Codified Laws §§ 22-18-3 (2005), titled *Lawful force in arrest and delivery of felon*, are codified in Title 22 (Crimes), Chapter 22-18 (Assaults and Personal Injuries). |
| **Tennessee** | Tenn. Code Ann. § 39-11-620 (2021), titled, *Deadly force; law enforcement officers*, are codified in Title 39 (Criminal Offenses), Chapter 11 (General Provisions), Part 6 (Justification Excluding Criminal Responsibility). |
| **Texas** | Tex. Penal Code Ann. § 9.51 (1994), titled *Arrest and Search*, is codified in Penal Code, Title 2 (General Principles of Criminal Responsibility), Chapter 9 (Justification Excluding Criminal Responsibility), Subchapter E (Law Enforcement). |
| **Utah** | Utah Code Ann. § 76-2-403 (2025), titled *Force in arrest or temporary detention*, and Utah Code Ann. § 76-2-404 (2022), titled *Law enforcement officer use of deadly force*, are codified in Title 76 (Utah Criminal Code), Chapter 2 (Principles of Criminal Responsibility), Part 4 (Justification Excluding Criminal Responsibility). |
| **Vermont** | Vt. Stat. Ann. tit. 13, § 2305 (2022), titled *Justifiable homicide*, is codified in Title Thirteen (Crimes and Criminal Procedure), Part 1 (Crimes), Chapter 53 (Homicide). |

**Washington**    Wash. Rev. Code § 9A.16.040 (2019), titled *Justifiable homicide or use of deadly force by public officer, peace officer, person aiding--Good faith standard*, is codified in Title 9a (Washington Criminal Code), Chapter 9A.16 (Defenses).

15.    Twelve (12) states codify use-of-force laws in the form of affirmative authorizations, with a total of fourteen (14) statutes that authorize actions that might otherwise be inconsistent with state law.  Specifically:

**California**    Cal. Penal Code § 835a (2026), titled, *Legislative findings and declarations; use of force to effect arrest, prevent escape, or overcome resistance; use of deadly force; definitions*, is codified state Penal Code, Part 2 (Of Criminal Procedure), Title 3 (Additional Provisions Regarding Criminal Procedure), Chapter 5 (Arrest, by Whom and How Made).

**Georgia**    Ga. Code Ann. § 17-4-20 (2025), titled *Arrest without warrant; use of deadly force; training recommendations; authority of nuclear power facility security officers*, is codified in Titled 17 (Criminal Procedure), Chapter 4 (Arrest of Persons), Article 2 (Arrest by Law Enforcement Officers Generally).

**Idaho**    Idaho Code Ann. §§ 19-610 (1987), titled, *What Force may be used*, is codified in Title 19 (Criminal Procedure), Chapter 6 (Arrest, by Whom and How Made).

**Iowa**    Iowa Code § 804.8 (2020), titled *Use of force by peace officer making an arrest*, is codified in Title XVI (Criminal Law and Procedure), Subtitle 2

(Criminal Procedure), Chapter 804 (Commencement of Actions--Arrest--Dispositions of Prisoners).

**Louisiana**  La. Code Crim. Proc. Ann. art. 220 (1966), titled *Submission to arrest; use of force*, is codified in Louisiana Code of Criminal Procedure, Title V (Arrest).

**Minnesota**  Minn. Stat. 629.33 (1985), titled, *When force may be used to make arrest*, is codified in Criminal Procedure; Peace Officers; Privacy of Communications, Chapter 629 (Extradition, Detainers, Arrest, Bail), Arrests.

**Montana**  Mont. Code Ann. § 46-6-104 (1991), titled *Method of arrest*, is codified in Title 46 (Criminal Procedure), Chapter 6 (Arrest), Part 1 (General Provisions).

**Nevada**  Nev. Rev. Stat. § 171.1455 (2021), titled *Use of deadly force to effect arrest: Limitations*, is codified in Title 14 (Procedure in Criminal Cases), Chapter 171 (Proceedings to Commitment), Arrest (By Whom and How Made).

**North Carolina**  N.C. Gen. Stat. § 15A-401 (2025), titled *Arrest by law-enforcement officer*, is codified in Chapter 15A (Criminal Procedure Act), Subchapter IV (Arrest), Article 20 (Arrest.)

**Rhode Island** R.I. Gen. Laws § 12-7-8 (1956), titled *Restraint and force used*, and R.I. Gen. Laws § 12-7-9 (1956), titled *Conditions justifying force dangerous to life*, are codified in Title 12 (Criminal Procedure), Chapter 7 (Arrest).

15

**Tennessee**    Tenn. Code Ann. § 40-7-108 (2012), titled *Resisting arrest; law enforcement officer; powers and duties*, is codified in Title 40 (Criminal Procedure), Chapter 7 (Arrest), Part 1 (General Provisions).

**Washington**    Wash. Rev. Code § 10.116.020 (2021), titled *Chokehold or neck restraint prohibited*, and Wash. Rev. Code § 10.116.022 (2024), titled *Hog-tying prohibited*, is codified in Title 10 (Criminal Procedure), Chapter 10.116 (Peace Officers--Tactics and Equipment).

16.    Six (6) states set use-of-force standards in statutes (one in each state) that govern the certification or training of police officers. Specifically:

**Maryland**    Md. Code Ann. § 3-524 (2022), titled *Maryland Use of Force Statute*, is codified in Public Safety, Title 3 (Law Enforcement), Subtitle 5 (Miscellaneous Provisions).

**Massachusetts**    Mass. Gen. Laws ch. 6E, § 14 (2021), titled *De-escalation tactics to be used prior to physical or deadly force; prohibited uses of force; exceptions; mass demonstrations*, is codified in Part I (Administration of the Government), Title II (Executive and Administrative Officers of the Commonwealth), Chapter 6E (Massachusetts Peace Officer Standards and Training Commission).

**South Carolina**    S.C. Code Ann. § 23-1-250 (2022), titled *Use of chokeholds limited*, is codified in Title 23 (Law Enforcement and Public Safety), Chapter 1 (General Provisions).

**Vermont**    Vt. Stat. Ann. tit. 20, § 2368 (2021), titled *Standards for law enforcement use of force*, is codified in Twenty (Internal Security and Public Safety),

Part 6a (Training of Law Enforcement Officers), Chapter 151 (Vermont Criminal Justice Council), Subchapter 1 (General Provisions).

**Virginia**     Va. Code Ann. § 19.2-83.5 (2021), titled *Use of deadly force by a law-enforcement officer during an arrest or detention*, is codified in Title 19.2 (Criminal Procedure), Chapter 7.1 (Law-Enforcement Officer Conduct During an Arrest or Detention).

**Wisconsin**     Wis. Stat. § 175.44 (2024), titled *Law enforcement use of force*, is codified under Police Regulations, Chapter 175 (Miscellaneous Police Provisions).

17.     Several state statutes do have specific prohibitions related to police uses of force. Colorado[1] and Washington,[2] for example, prohibit officers from using chokeholds, while states including Illinois,[3] Iowa,[4] Minnesota,[5] New Hampshire,[6] Oregon,[7] and South Carolina[8] prohibit chokeholds except under circumstances justifying the application of deadly force. Those prohibitions serve to limit the scope of the statutory justification for police uses of force rather than providing independent bases for criminal or civil litigation against officers. None of the cited statutes purport to attach any criminal characterization (that is, identifying relevant behavior as criminal), liability classifications (e.g., establishing the use of prohibited force as a particular class of misdemeanor or felony), or sanction (that is, the potential fine or term of imprisonment).

18.     As I explain to students in both my first-year Criminal Law course and my upper-level Police Law & Policy course, state law commonly identifies behavior it generally seeks to

---

[1] Colo. Rev. Stat. Ann. § 18-1-707(2.5) (2024).
[2] Wash. Rev. Code § 10.116.020 (2021).
[3] 720 Ill. Comp. Stat. Ann. 5/7-5.5 (2021).
[4] Iowa Code § 804.8 (2020).
[5] Minn. Stat. 609.06 (2024).
[6] N.H. Rev. Stat. Ann. § 627:5 (2020).
[7] Or. Rev. Stat. §§ 161.237 (2020).
[8] S.C. Code Ann. § 23-1-250 (2022).

17

proscribe, such as homicides or assaults, and sets out a generally applicable criminal law that prohibit such behavior. State law also creates specific exceptions such that the generally prohibited behavior can be, under certain circumstances, legally permissible, either because it is affirmatively authorized under law or because state law creates a specific defense to criminal liability. This is perhaps most obvious with common justification doctrines, such as self-defense, but it is also observable with the police-specific authorizations and justification defenses described above. State law also commonly sets outer bounds for its exceptions, such as by disallowing aggressors to benefit from a self-defense claim or disallowing officers who use chokeholds to raise a police use-of-force defense.

19.    I am aware of no state that has promulgated a law that purports to specifically regulate police uses of force through the imposition of criminal liability distinct from generally applicable crimes. Some states do impose specific prohibitions, violations of which are subject to criminal penalty, on police officers—for example, Wisconsin imposes specific penalties on officers who "fail[] to report a noncompliant use of force" as required by state law,[9] and on officers who fail to intervene as required by state law.[10]  Notably, however, Wisconsin does not impose any specific penalty for officers who use noncompliant force; presumably, such offenses are addressed through generally applicable criminal provisions (e.g., homicide and assault). In a similar vein, South Carolina law states that the "the willful use of excessive force in an objectively unreasonable manner may be considered misconduct and may serve as grounds for disciplinary action . . . including dismissal, demotion, suspension, or transfer," but state law does not impose any distinct criminal liability for excessive force. S.C. Code Ann. § 23-1-250 (2022). Again, such behaviors are presumably subject to generally applicable criminal provisions (e.g., homicide and assault).

---

[9] Wis. Stat. § 175.44(3)(b) (2024).
[10] Wis. Stat. § 175.44(4)(c) (2024).

18

20. The Henry A. Wallace Police Crime Database, maintained by Prof. Phil Stinson of Bowling Green State University, maintains a list of—as of the time of this declaration—20,711 arrests of 16,758 individual nonfederal police officers from 2005 to 2021. Philip Matthew Stinson, *The Henry A. Wallace Police Crime Database*, Bowling Green State Univ., https://policecrime.bgsu.edu/ (last visited June 30, 2026). That database reflects, *inter alia*, the following:

> Assault Offenses
>> 3,506 entries for Simple Assault
>> 2,141 entries for Aggravated Assault
>> 1,249 entries for Intimidation
> Homicide Offenses
>> 370 entries for Murder and Nonnegligent Manslaughter
>> 178 entries for Negligent Manslaughter
> Other Offenses
>> 702 entries for Kidnapping/Abduction. *Id.*

21. To the best of my ability to ascertain, *The Henry A. Wallace Police Crime Database* does not reflect *any* criminal charges brought against officers for violating police-specific use-of-force laws. *Id.*

22. That observation is consistent with my own research, which establishes that while officers can be criminally charged—including for actions they take in their official capacity—the underlying crimes they are accused of committing are either generally applicable laws (e.g., assault) or offenses that relate to the abuse of official authority (e.g., abuse of office or civil rights violations) rather than criminal laws that specifically punish improper uses of force by police.

23. In short, I have not been able to find *any* state-level criminal laws that specifically punish improper uses of force by police (e.g., statutes that specifically prohibit, and impose criminal liability for, the use of excessive force).

24. As with all of the other states that regulate police uses of force through statutory law, Connecticut law does not purport to regulate police uses of force through the imposition of

19

police-specific criminal offenses. Instead, Connecticut's use-of-force law follows every other state by creating a justification defense or affirmative authorization for police uses of force, within bounds, that might be otherwise be prohibited and punished by generally applicable state law.

**DESPITE CONSIDERABLE VARIATION IN HOW STATES HAVE HISTORICALLY REGULATED POLICE USES OF FORCE, FEDERAL LAW ENFORCEMENT AGENCIES DO NOT SYSTEMATICALLY TRAIN, AND HAVE NEVER SYSTEMATICALLY TRAINED, FEDERAL AGENTS IN THE IDIOSYNCRACIES OF STATE USE-OF-FORCE LAW**

25.     As described above, my published research has included a detailed analysis of what were, as of 2020, the fifty-eight (58) different use-of-force statutes adopted across forty-two (42) states, as well as the case law in those states and the eight states that had not, as of 2020, adopted any relevant statute. SETH W. STOUGHTON ET AL., EVALUATING POLICE USES OF FORCE 58 (2020). Since the 2020 publication of that book, I have continued to study the evolution of state use of force laws; currently, forty-six (46) states have adopted approximately sixty-five (65) statutes that regulate police uses of force. My research finds that the various states have, in many ways, adopted legal standards that are distinct and distinguishable.

26.     Almost but one of the states with statutory law regulating police uses of force permit officers to use force to effect an arrest (South Carolina's statutory law addresses only a limitation on chokeholds[11]). However, there are multiple dimensions of variation in how state laws relating to the use-of-force to effect an arrest.

---

[11] S.C. Code Ann. § 23-1-250 (2022).

27.    States vary in whether the underlying arrest must be lawful,[12] whether officers must subjective believe the arrest is lawful,[13] or whether officers must reasonably believe the arrest is lawful.[14] And some states do not specify, merely stating that officers can use force to effect arrests[15] or, for one state, "effectuate a legitimate law enforcement objective."[16]

28.    States vary in whether and how they describe the nature of the subject's actions that can justify the use of force while the officer is effecting an arrest.  Most states simply authorize officers to use force to effect an arrest without specifying the nature of the subjects' actions,[17] but some states specify that force may be used to overcome resistance without specifying the nature of that resistance,[18] and other states specify that officers attempted to effect arrests may use force if the subject flees or forcibly resists.[19]

29.    In the context of less-lethal force, states also vary in terms of how much force officers can use. The most common approach, by far, is for states to approve of reasonably necessary force,[20] but some states permit the use of force when it is "reasonable" without mentioning necessity[21] while other states authorize force when it is necessary without mentioning reasonableness.[22]

---

[12] See, e.g., Fla. Stat. § 776.05 (1997) (allowing the use of force "to make a lawful arrest").

[13] See, e.g., Ky. Rev. Stat. Ann. § 503.090(1)(c) (1974) (allowing the such of force to make an arrest when the officer "[b]elives the arrest to be lawful"); Me. Rev. Stat. tit. 17-A, § 107(1)(A) (2025) (permitting the use of force to effect an arrest "unless the officer knows that the arrest or detention is illegal").

[14] See, e.g., Mo. Rev. Stat. § 563.046(2) (2017) (allowing the use of force only when "the arrest is lawful or the law enforcement officer reasonably believes the arrest is lawful"); Tex. Penal Code Ann. § 9.51(a)(1) (1994) (permitting the use of force to effect an arrest if "the actor reasonably believes the arrest . . . is lawful").

[15] See, e.g., Utah Code Ann. § 76-2-403 (2025).

[16] Md. Code Ann. § 3-524(d)(1)(ii) (2022).

[17] See, e.g., Alaska Stat. Ann. § 11.81.370(a) (1978) (authorizing force "when and to the extent the officer reasonably believes it necessary to make an arrest").

[18] See, e.g.,  Del. Code Ann. tit. 11, § 467(a)(1) (2021).

[19] See, e.g., Idaho Code Ann. § 19-610 (1987).

[20] See, e.g., Alaska Stat. Ann. § 11.81.370(a) (1978) (permitting force "when and to the extent the officer reasonably believes it necessary"); N.H. Rev. Stat. Ann. § 627:5(I) (2020) (authorizing force ""when and to the extent the officer reasonably believes it necessary").

[21] See, e.g., Wis. Stat. § 175.44 (2024).

[22] See, e.g., N.D. Cent. Code Ann. § 12.1-05-07(2)(d) (2021); S.D. Codified Laws § 22-18-3 (2005).

21

30.    States also vary in whether and how they regulate *threats* of force. Most states do not have statutory provisions that explicitly govern threats of force. However, Arizona has a specific statutory provision that governs threats of deadly force,[23] while Alaska[24] and Arkansas[25] treats "using nondeadly physical force or threatening to use deadly force" in the same way.

31.    There is additional variation in the statutory predicates for deadly force.

32.    Some states allow a justification defense when deadly force is used to prevent the escape of a fleeing felon,[26] others when deadly force is used to effect the arrest of someone believed to have committed a violent felony,[27] and yet others when deadly force is used to effect the arrest of someone believed to have committed statutorily specified crimes.[28] Many states permit officers to use deadly force to protect against imminent threats of death or serious bodily injury[29] or to prevent the flight of a subject who, if not immediately apprehended, will cause death or serious bodily injury.[30]

33.    Some states have adopted additional restrictions on the use of deadly force, such as permitting the use of deadly force only when there is no substantial risk to innocent parties[31] or only after all other reasonable alternatives have been exhausted.[32]

34.    States also vary in the degree to which state law preempts agency policy. Georgia law, for example, states, "No law enforcement agency of this state or of any political subdivision

---

[23] Ariz. Rev. Stat. Ann. § 13-410(A) (1989).
[24] Alaska Stat. Ann. § 11.81.370(a) (1978).
[25] Ark. Code Ann. § 5-2-610(a) (2005).
[26] See, e.g., Miss. Code Ann. § 97-3-15(1)(d) (2023); see also S.D. Codified Laws § 22-18-3 (2005).
[27] See, e.g., Or. Rev. Stat. § 161.242(1) (2020); Tenn. Code Ann. § 39-11-620 (2021).
[28] See, e.g., N.J. Stat. § 2C:3-7(b)(2)(c) (1981).
[29] See, e.g., Cal. Penal Code § 835a(c)(1)(A) (2026).
[30] See, e.g., Minn. Stat. § 609.066(Subd. 2)(2) (2024).
[31] See, e.g., Del. Code Ann. tit. 11, § 467(c)(2) (2021); Haw. Rev. Stat. § 703-307(3)(c) (2001); Neb. Rev. Stat. § 28-1412(3)(c) (1975).
[32] See, e.g., Del. Code Ann. tit. 11, § 467(c) (2021); Tenn. Code Ann. § 39-11-620(b) (2021); Tenn. Code Ann. § 40-7-108(b) (2012); Va. Code Ann. § 19.2-83.5(A)(4) (2021); Wis. Stat. § 175.44(2)(c) (2024).

of this state shall adopt or promulgate any rule, regulation, or policy which prohibits a peace officer from using that degree of force to apprehend a suspected felon which is allowed by the statutory and case law of this state."[33] Washington law, on the other hand, states, "This section shall not be construed as . . . [p]reventing a law enforcement agency from adopting standards pertaining to its use of deadly force that are more restrictive than this section."[34]

35.    In sum, there is—and there has historically been—substantial and meaningful variation in the state laws that regulate police uses of force.

36.    To the best of my knowledge as a policing scholar who has studied, *inter alia*, federal policing operations and joint-agency operations involving federal-state or federal-local partnerships, and who has presented on use-of-force evaluation at a at a multiple-agency event at the Federal Law Enforcement Training Center, there is no evidence any federal law enforcement agency has, at any point, trained its sworn employees on the idiosyncrasies of how the various states regulate police uses of force. To the best of my knowledge, there is no evidence that variations in state use-of-force law have meaningfully inhibited or negatively affected federal law enforcement efforts.

**SUPREMACY CLAUSE IMMUNITY PROVIDES A CLEAR PROCEDURE FOR ASSESSING WHETHER FEDERAL OFFICIALS ARE SUBJECT TO, OR IMMUNE FROM, STATE CRIMINAL LAW**

37.    As a law professor who studies policing and who teaches first-year Criminal Law, as well as an upper level Police Law & Policy course, I am familiar with, have studied, and actively teach about the intersection of state criminal law and federal law enforcement authority.

---

[33] Ga. Code Ann. § 17-4-20(d) (2025).
[34] Wash. Rev. Code § 9A.16.040(5)(b) (2019).

38.     There is a clear historical record of states bringing criminal charges against federal employees. Many, if not most, of those prosecutions are entirely uncontroversial. As legal scholar Seth P. Waxman wrote, "[T]he mere fact of federal employment surely does not confer blanket immunity from state law. Why, for example, should a postal worker be able to escape state liability for a death caused while driving under the influence, simply because he was delivering mail?" Seth P. Waxman, *Federalism, Law Enforcement, and the Supremacy Clause: The Strange Case of Ruby Ridge*, 51 U. KAN. L. REV. 141, 145 (2002); see also *Mesa v. California*, 489 U.S. 121 (1989).

39.     Federal officers who are charged with a crime by a state authority have long had access to a well-established, two-step procedure for testing whether their official conduct is protected from state prosecution: first, removal of the state criminal proceeding to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1); and second, once in federal court, assertion of the substantive constitutional defense known as Supremacy Clause immunity, which the Supreme Court first recognized in *In re Neagle* and has applied in the century and a half since.[35]

40.     In the first step, the federal official removes the case to federal court under 28 U.S.C. § 1442(a)(1), which authorizes removal of a civil or criminal case against a federal officer, or a person acting under a federal officer, where the case relates to an act taken under color of that office.[36] Congress's authority to authorize removal in criminal cases has been settled law since 1880.[37] The Supreme Court has instructed that this statute is not to be read narrowly, but is instead

---

[35] 28 U.S.C. § 1442(a)(1); *In re Neagle*, 135 U.S. 1 (1890).

[36] 28 U.S.C. § 1442(a)(1) (permitting removal of a case against a federal officer "for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue").

[37] *See Tennessee v. Davis*, 100 US 257, 265 (1880) ("[I]f there is power in Congress to direct a removal before trial of a civil case arising under the Constitution or laws of the United States, and direct its removal because such a case has arisen, it is impossible to see why the same power may not order the removal of a criminal prosecution, when a similar case has arisen in it.")

"broad enough to cover all cases where federal officers can raise a colorable federal defense arising out of their duty to enforce federal law."[38]

41.    Once the case is removed, the second step is for the federal officer to invoke Supremacy Clause immunity as a substantive defense to the underlying state charge. The details of that 135-year-old procedure were laid out in the Supreme Court's 1890 decision in *In re Neagle*, which held that a state court lacks jurisdiction to try a federal officer for conduct that (1) the officer was authorized to undertake by federal law, and (2) that the federal officer undertook in a necessary and proper manner.[39]

42.    Lower courts have consistently applied *Neagle*'s two-part test in the decades since that decision. The Sixth Circuit's formulation, for example, concludes that "a state court has no jurisdiction if (1) the federal agent was performing an act which he was authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do."[40] The Eleventh Circuit has described this analysis as asking "whether the officer's acts have some nexus with furthering federal policy and can reasonably be characterized as complying with the full range of federal law. If the answer to these questions is yes, application of state law, to the extent it unavoidably conflicts with federal law, has no effect, as it would frustrate and impede the compelling federal interest of allowing federal officers to effectively discharge their duties."[41]

43.    Courts applying the second prong—evaluating whether a federal official's actions were "necessary and proper"—assess the reasonableness of the officer's conduct from the officer's own perspective at the time, rather than in hindsight. An officer seeking immunity need not

---

[38] *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969).
[39] *In re Neagle*, 135 U.S. 1, 75 (1890).
[40] *Kentucky v. Long*, 837 F.2d 727, 744 (6th Cir. 1988).
[41] *Denson v. United States*, 574 F.3d 1318, 1348 (11th Cir. 2009) (citations omitted).

establish that his conduct was, in fact, necessary, or that it would be vindicated in retrospect; it is enough that he reasonably believed it to be necessary under the circumstances he faced.[42] Indeed, in *In re: Neagle*, the federal official—a Deputy Marshal in the Northern District of California who had been charged with protecting Judge Field[43]—fatally shot David S. Terry, who had punched the judge and whom Neagle believed to have "turned his hand to thrust it in his bosom, as Neagle felt sure, with the purpose of drawing a bowie-knife," although it was later learned that Terry "had no weapons."[44]

44.     This well-established two-step procedure—removal under § 1442(a)(1) followed by the assertion of Supremacy Clause immunity—has been invoked by a range of federal law enforcement personnel, including deputy marshals, revenue officers, and federal agents from agencies such as the Drug Enforcement Administration, the Federal Bureau of Investigation, and the U.S. Fish and Wildlife Service, whose official conduct exposed them to potential state criminal liability.[45]

45.     In sum, and based on my study of how legal and administrative proceedings intersect with the various standards that govern police use of force, the procedure by which a federal officer may test state criminal charges against the Supremacy Clause is well defined and has been for well over a century: the officer removes the state proceeding to federal court under 28 U.S.C. § 1442(a)(1) and claims Supremacy Clause immunity, and the federal court then determines whether the officer's conduct satisfies the two-part standard set out in *In re Neagle*.

---

[42] *Clifton v. Cox*, 549 F.2d 722, 728 (9th Cir. 1977) (federal officer seeking immunity need not "show that his action was in fact necessary or in retrospect justifiable, only that he reasonably thought it to be").
[43] 135 U.S. at 52.
[44] *Id*. at 53.
[45] *See, e.g., New York v. Tanella*, 374 F.3d 141 (2d Cir. 2004) (DEA agent); *Idaho v. Horiuchi*, 253 F.3d 359 (9th Cir. 2001) (FBI agent), vacated as moot, 266 F.3d 979 (9th Cir. 2001) (en banc); *Wyoming v. Livingston*, 443 F.3d 1211 (10th Cir. 2006) (Fish and Wildlife Service agents); *Tennessee v. Davis*, 100 U.S. 257 (1879) (federal revenue officer).

**DECLARATION UNDER PENALTY OF PERJURY**

**PURSUANT TO 28 U.S.C. § 1746**

I, Seth W. Stoughton, declare under penalty of perjury that the foregoing is true and correct to the best of my belief and based upon my personal knowledge.  Executed on July 7, 2026.

_____
Seth Stoughton

# Attachment A

# SETH W. STOUGHTON

315 Running Fox Rd.
Columbia, SC 29223
SWStough@law.sc.edu
434-262-2484

---

**ACADEMIC APPOINTMENTS**

**University of South Carolina School of Law**
*Mitchell Willoughby Professor of Advocacy and Public Justice*, 2026–present
*Professor*, 2022–present
*Associate Professor* (with tenure), 2018–2021
*Assistant Professor*, 2014–2018

| | |
|---|---|
| Law Courses: | Criminal Law, Criminal Procedure, Police Law & Policy, Regulation of Vice, Advanced Topics in Criminal Law |
| MSL Courses: | Civil Rights for Public Safety Leaders |
| Awards: | Absolute Most Fucks Given, Criminal Law § 3, 2025 |
| | G.G. Dowling Award, 2023 |
| | Best Classroom Teacher Award, 2016 and 2021 |
| | Outstanding Faculty Publication Award (Book), 2021 |
| | Eboni S. Nelson Award, 2015 and 2018 |
| Service: | Faculty Advisory Committee (elected) (2026-present, 2022-2024, 2016-2018) |
| | Curriculum Committee Chair (2025-2026) & Member (2024-2025, 2015-2016,) |
| | Faculty Selection (2021-2022) |
| | Academic Responsibility Committee Chair (2018-2019) & Member (2019-2021) |
| | Rule of Law Collaborative, Core Faculty (2014-present) |
| | Diversity, Equity & Inclusion Committee (2020-2022) |
| | Faculty Senator (2016-2019, 2014-2015) |
| | Faculty Awards Committee (2016-2017) |
| | Academic Technology Committee (2014-2015) |
| | Academic Self-Study Committee (2014-2015) |
| | Safe Zone Training Facilitator |

*Faculty Director*, *Excellence in Policing & Public Safety (EPPS) Program,* 2023–present

| | |
|---|---|
| EPPS Courses: | Principles of Leadership & Management, Collaborative Communications, Evidence-Based Policing, Civil Rights for Public Safety Leaders, Sound Agency Management, Agency Operations, Workforce Management, Co-Production of Public Safety, Critical Incident & Sentinel Event Review |

Stoughton
*Curriculum Vitae*

**APPOINTMENTS**

**United States Commission on Civil Rights, Advisory Committee (South Carolina)**
*Member,* 2025 - present

**American Law Institute**
*Member*, 2021 – present
*Adviser (Principles of the Law, Policing*), 2018-2022

**American Bar Foundation**
*Fellow*, 2021 – present

**ABA Legal Education Police Practices Consortium**
*Research Advisor*, 2021 – 2025
*Interim Director*, 2021

**Columbia Police Department**
*Civilian Advisory Council Member*, 2015-present

**EDUCATION**

**University of Virginia School of Law**
J.D., Order of the Coif, 2011
 Articles Editor, Virginia Law Review (Managing Board)
 Thomas Marshall Miller Prize
 Elsie Hughes Cabell Scholar

**Florida State University**
B.A. English (Literature), 2008
 Rohrmann Scholar
 Certificates in Emergency Management and Public Administration

**PROFESSIONAL ASSOCIATIONS**

Virginia Bar (Associate Member)
American Society of Evidence-Based Policing
American Society of Criminology
International Association of Chiefs of Police
Association of International Criminal Law Prosecutors (Associate Member)

**CLERKSHIP**

**The Honorable Kenneth F. Ripple, United States Court of Appeals for the Seventh Circuit**
*Clerk*, August 2011 – August 2012

**PROFESSIONAL EXPERIENCE**

**McKenna Long & Aldridge**, Atlanta, Georgia
*Summer Associate*, May 2009 – July 2009

**Florida Dept. of Education, Office of Inspector General**, Tallahassee, Florida
*Investigator*, November 2005 – July 2008
 Activities
  Conducted complex criminal and administrative investigations
  Directed multi-agency investigations into tuition voucher fraud

– 2 –

Stoughton
*Curriculum Vitae*

**PROFESSIONAL EXPERIENCE (CON'T)**

Led a state Whistle-Blower investigation into the state's garnishment of $10 million from student loan borrowers in default

Awards
  Prudential–Davis Productivity Commendation, 2008
  Meritorious Performance Award, 2007
Certifications & Specialized Training
  Certified Fraud Examiner, Ass'n of Certified Fraud Examiners, 2007
  Certified Inspector General Investigator, Ass'n of Inspectors General, 2007

**Tallahassee Police Department**, Tallahassee, Florida
*Police Officer,* March 2001 – June 2006
  Activities
    Uniformed Patrol Division, March 2001 – October 2005
    Special Response Team member, 2003 – 2005
    Reserve Officer, November 2005 – June 2006
    Taught report writing and other topics to sworn and civilian employees
    Developed policies related to new technologies
    Established, coordinated, and taught community self-defense courses
    Developed and implemented a children's abduction/molestation prevention program
  Awards
    City of Tallahassee Formal Achievement Award, 2004
  Certifications & Specialized Training
    Instructor Certifications:
      Baton, Chemical Aerosol Projector, Specialty Impact Munitions, Chemical Munitions, and Riot Response/Crowd Control
    Operator Certifications (selected)
      Patrol Rifle, PepperBall, and Breath Alcohol Testing

**BOOKS**

EVALUATING POLICE USES OF FORCE (NYU Press 2020) (with Jeffrey J. Noble and Geoffrey P. Alpert)

**BOOK CHAPTERS**

*A Taxonomy of Plural Policing in the United States*, in PLURAL POLICING IN THE GLOBAL NORTH (Nathalie Hirschmann, Tobias John, Frauke Reichl, and Jacqueline Abigail Garand, eds., 2022)

*Accountability and Enhancement: The Dual Objectives of Use-of-Force Review*, in RETHINKING AND REFORMING AMERICAN POLICING: LEADERSHIP CHALLENGES AND FUTURE OPPORTUNITIES (Joseph Shafer & Richard Myers, eds., 2022)
*The Regulation of Police Violence*, in CRITICAL ISSUES IN POLICING: CONTEMPORARY READINGS (8th ed., Kyle McClean, Roger G. Dunham, & Geoffrey P. Alpert, eds., 2020)

*The Legal Framework for Evidence-Based Policing in the United States*, in EVIDENCE BASED POLICING: AN INTRODUCTORY READER (Renée J. Mitchell & Laura Huey, eds., 2018)

*Police Misconduct*, in LEGAL ISSUES ACROSS THE GLOBE 125 (Thomas Riggs, ed., 2018)

Stoughton
*Curriculum Vitae*

**ACADEMIC ARTICLES & ESSAYS**

*Assessing "Reasonable" Police Uses of Force after* Barnes v. Felix*: How Time Framing Affects Public Perceptions*, ___ POLICE QUARTERLY ___ (forthcoming March 2027) (with Scott Mourtgos, Ian T. Adams, Kyle McLean, and Geoffrey P. Alpert)

*Forced Science: A Critical Appraisal of the Scientific Rigor of "Force Science" Policing Research*, ___ POLICE QUARTERLY ___ (2025) (with Ian T. Adams, Irick T.J. Geary, Marc Olson, Brandon del Pozo, and Geoffrey P. Alpert)

*An Experimental Look at Reasonable Suspicion and Police Discretion*, 46 POLICING: INT'L J 503 (2023) (with Kyle McLean, Ian Adams, and Geoffrey P. Alpert)

*Police Uses of Force in the USA: A Wealth of Theories & a Lack of Evidence*, 6 CAMBRIDGE J. EVID.-BASED POLICING 1 (2022) (with Kyle McLean and Geoff Alpert)

*Policing Suspicion: Qualified Immunity & "Clearly Established" Standards of Proof*, 112 J. CRIM. L. & CRIM. 37 (2022) (with Kyle McLean, Justin Nix, and Geoff Alpert)

*How the Fourth Amendment Frustrates the Regulation of Police Violence*, 70 EMORY L. J. 521 (2021)

*Police Body-Worn Cameras*, 96 N.C. L. REV. 1363 (2018)

*The Blurred Blue Line: Reform in an Era of Public & Private Policing*, 44 AM. J. CRIM. L. 117 (2017)

Terry v. Ohio *and the (Un)Forgettable Frisk*, 15 OHIO STATE J. CRIM. L. 19 (2017)

*Moonlighting: The Private Employment of Off-Duty Officers*, 2017 U. ILL. L. REV. 1848 (2017)

*A Tactical Fourth Amendment*, 102 VA. L. REV. 211 (2017) (with Brandon Garrett)

*Principled Policing: Warrior Cops & Guardian Officers*, 51 WAKE FOREST L. REV. 611 (2016)
- Reprinted as Chapter 5 in THE CIVIL RIGHTS LITIGATION & ATTORNEY FEE ANNUAL HANDBOOK (2017).

*Law Enforcement's "Warrior" Problem*, 128 HARV. L. REV. FORUM 225 (2015)
- Cited by the U.S. Department of Justice, Civil Rights Division, in their Investigation of the Chicago Police Department

*Evidentiary Rulings as Police Reform*, 69 MIAMI L. REV. 429 (2015)

*The Incidental Regulation of Policing*, 98 MINN. L. REV. 2179 (2014)

*Policing Facts*, 88 TUL. L. REV. 847 (2014)
- Featured and reviewed by Elizabeth Joh, *Influential But Uninformed: What SCOTUS Knows About Policing*, JOTWELL (Oct. 1, 2014)

Stoughton
*Curriculum Vitae*

*Note: Modern Police Practices: Arizona v. Gant's Illusory Restriction of Vehicle Searches Incident to Arrest*, 97 VA. L. REV. 1727 (2011)

**OTHER PUBLICATIONS**

*When "Science" Isn't Scientific: What Police Leaders Should Know about Force Science*, 3 APPLIED POLICE BRIEFINGS 53 (2026) (with Irick A. Gear, Ian T. Adams, Brandon del Pozo, Marc Olson, and Geoffrey P. Alpert)

*What Federal Immigration Enforcement Is Doing Isn't Policing—and It Isn't Normal*, JUSTIA VERDICT, Jan. 29, 2026 (with Ian T. Adams, Geoffrey P. Alpert, Gil Kerlikowse, Maureen Q. McGough and Jeffrey J. Noble)

*The Legality of Deadly Force: Three Critical Questions About the ICE Shooting in Minneapolis*, JUSTIA VERDICT, Jan. 9, 2026

*Tactical Experts Analyze ICE Shooting Footage*, DAILY MAIL, Jan. 8, 2026 (with Ian Adams and Geoffrey Alpert)

*Barnes v. Felix: The Supreme Court Reaffirms "Totality of the Circumstances" Review in Use-of-Force Cases*, APPLIED POLICE BRIEFINGS, July 18, 2025

*Can Anyone Make a Citizen's Arrest? The History and Legalities of Catching Criminals Yourself*, THE CONVERSATION, Feb. 12, 2024 (with Caroline McAtee)

*Tyre Nichols' Death Underscores the Troubled History of Specialized Police Units*, THE CONVERSATION, Feb. 1, 2023 (with Ian Adams)

*Ahmaud Arbery Murder Trial Will Scrutinize The Use—And Abuse—Of 'Outdated' Citizen's Arrest Laws*, THE CONVERSATION, Oct. 17, 2021

*Evaluating the Police Shooting of Ashli Babbitt*, LAWFARE, Sept. 9, 2021 (with Jeffrey J. Noble and Geoffrey Alpert)

*Should Police Be Able to Review Their Body Cam Footage?*, SMERCONISH, May 14, 2021

*Addressing Misconduct Will Require A Change in Police Culture. Is Police Leadership Up To The Challenge?*, TALKING POINTS MEMO, June 28, 2020 (with Karen Rice)

*The Unnecessary Protection of Qualified Immunity*, JUSTIA VERDICT, June 26, 2020 (with Joanna Schwartz)

*How to Actually Fix America's Police*, THE ATLANTIC, June 3, 2020

*Commentary: All Options are Bad in a Protest; Charleston Police Picked Least-Bad One*, THE POST & COURIER, June 3, 2020

*George Floyd's Death Shows Exactly What Police Should Not Do*, WASHINGTON POST, May 29, 2020 (with Jeffrey J. Noble and Geoffrey Alpert)

*Ahmaud Arbery's Killing Puts a Spotlight on the Blurred Blue Line of Citizen's Arrest Laws*, THE CONVERSATION, May 29, 2020

Stoughton
*Curriculum Vitae*

*Police Training in South Carolina is Dangerously Deficient*, THE POST & COURIER, Feb. 25, 2020 (with Geoff Alpert)

**OTHER PUBLICATIONS (CON'T)**

*Well-Intentioned AB 931 Comes with Fatal Flaws*, SAN FRANCISCO EXAMINER, June 3, 2018 (with Arif Alikhan)
- Republished as *Well-Intentioned AB 931 Comes with Fatal Flaws*, SAN FRANCISCO EXAMINER, June 3, 2018

*Deadly Force Proposal Needs Work*, CAPITOL WEEKLY, May 29, 2018 (with Arif Alikhan)

*Regulating the Reasonableness of Police Violence*, THE REGULATORY REVIEW, Feb. 14, 2017

*Understanding the Practical Aspects of Interpreting Video Footage*, U.S. DEPARTMENT OF JUSTICE, BUREAU OF JUSTICE ASSISTANCE, BODY-WORN CAMERA TRAINING & TECHNICAL ASSISTANCE, EXPERT COMMENTARY, Jan. 2017

*Is the Police-Community Relationship in America Beyond Repair?*, THE WASHINGTON POST, Jul 8, 2016

*Why Police Need Constructive Criticism*, THE ATLANTIC, DEC. 23, 2015 (with Geoffrey Alpert & Jeff Noble)

*Why Are Police Disciplining Students?* THE ATLANTIC, Oct. 29, 2015 (with Josh Gupta-Kagan)

*Better Information is the Key to Policing Reform,* THE ATLANTIC, Sept. 24, 2015 (with Geoffrey Alpert & Jeff Noble)

*Deus ex Canini: Drug Dogs & Probable Cause*, CASETEXT, Aug. 16, 2015
*Cop Expert: Why Sandra Bland's Arrest Was Legal But Not Good Policing,* TALKING POINTS MEMO, July 24, 2015

*What A Police Expert Calls The Most Ignored Cause Of Cop Violence*, TALKING POINTS MEMO, June 15, 2015

*A Former Cop On What Went Wrong in McKinney*, TALKING POINTS MEMO (cover feature), June 9, 2015

*8 Things We Still Get Wrong About Policing,* TIME, May 15, 2015
*Police Warriors or Community Guardians?* WASHINGTON MONTHLY, Apr. 17, 2015

*Police Shouldn't Ask if a Shooting is Justified, But If It's Avoidable*, THE NEW YORK TIMES, Apr. 9, 2015

*How Police Training Contributes to Avoidable Deaths*, THE ATLANTIC, Dec. 12, 2014

*Trust Is a Police Officer's Greatest Protection*, THE NEW YORK TIMES, Nov. 26, 2014

Stoughton
*Curriculum Vitae*

| | |
|---|---|
| **OTHER PUBLICATIONS (CON'T)** | *A Windfall for the Government, Take 2: Seth Stoughton on* Arizona v. Gant, EVIDENCEPROGBLOG, Oct. 6, 2014 |

*What Would a Better Ferguson Response Have Looked Like?*, VERDICT JUSTIA, Sept. 12, 2014

*Supreme Court Has Myopic View of Police Chases*, BRENNAN CENTER FOR JUSTICE, June 16, 2014

**SELECTED SERVICE AS SUBJECT MATTER EXPERT**

City Council of the City of Hammond, Louisiana
- Use of Force Investigative Report with Conclusions and Recommendations

National Police Foundation on National Institute of Justice grant 2019-R2-CX-0025, 2021
- Constitutional policing (Fourth Amendment)

Polis Solutions on Chicago Police Department training contract, 2021
- Constitutional policing (Fourth Amendment)

OIR Group on review of the Madison, WI, Police Department, 2017
- Training, agency culture, police body-worn cameras

CNA Solutions on Bureau of Justice Assistance grant 2015-DE-BX-K002, 2015
- Police body-worn cameras

**EXPERT CONSULTING: REPORTS, DEPOSITIONS & TRIALS**

Estate of Dotson, et al. v City of Farmington, et al., D-1116-CV-2025-00449, Eleventh Judicial District Court, San Juan County, New Mexico
- Retained by defendant's counsel, Robles Rael & Anaya
- Tactics, use of force
- Report

Estate of Rachel Blake v. City of North Vernon, et al., Cause No. 4:25-CV-000076-TWP-KMB, United States District Court for the Southern District of Indiana
- Retained by plaintiff's counsel, Parr, Richey, Frandsen, Patterson, Kruse
- Tactics, use of force
- Report

Moore v. Lauer, *et al*., 22-cv-50354, United States District Court for the Northern District of Illinois
- Retained by plaintiff's counsel, Law Offices of Al Hofeld
- Use of force
- Deposition testimony, report

Orange County Sheriff's Office, Officer Involved Shooting
- Retained by the Office of the State Attorney, Ninth Judicial Circuit
- Use of force
- Grand jury testimony

Stoughton
*Curriculum Vitae*

**EXPERT CONSULTING (CON'T)**

Altamonte Springs Police Department, Officer Involved Shooting
- Retained by the Office of the State Attorney, Ninth Judicial Circuit
- Use of force
- Grand jury testimony

Motley, et al., v. Eckman, et al., Civil Action No. 2 :24-CV-05763-JDW, United States District Court for the Eastern District of Pennsylvania
- Retained by plaintiff's counsel, Kline & Spector, P.C.
- Emergency vehicle operations (pursuit)
- Report

Gentzler v. City and County of Honolulu, et al., Civil No. 1CCV-21-0000996 JMT, Circuit Court of the First Circuit, State of Hawai'i
- Retained by plaintiff's counsel, Law Offices of Eric Seitz
- Tactics, use of force
- Report, deposition testimony

Slaughter et al. v. Roy et al., Cause No. 2422-CC00668, Circuit Court of St. Louis City, Missouri
- Retained by plaintiff's counsel, Phillip S. George, PLLC
- Tactics, use of force
- Report

Terria Holcomb as P.R. for the Estate of Darius Holcomb v. Spartanburg County, et al., Civil Action No. 7:24-cv-1145-JDA-KFM, United States District Court for the District of South Carolina
- Retained by plaintiff's counsel, Colin Ram Law, LLC
- Tactics, use of force
- Report, deposition testimony

Ohio v. Grubb, Franklin County 24CR-4561
- Retained by the Franklin County State Attorney's Office
- Tactics, use of force
- Report, hearing testimony, trial testimony

Emelia Najera as P.R. of the Estate of Escar Najera v. Board of County Commissioners of the County of Chaves, No. D-504-CV-2022-00145, New Mexico Fifth Judicial Circuit
- Retained by plaintiff's counsel, Ives & Flores
- Tactics, agency policy
- Report, deposition testimony

Emma Weber, as P.R. of the Estate of Travis Boawn, and Virginia Boawn, v. Board of Commissions for the County of Torrence, et al., Case No. D-722-CV-2023-00226, New Mexico Seventh Judicial Circuit
- Retained by plaintiff's counsel, Ives & Flores
- Tactics
- Opinion letter, deposition testimony

People v. Grayson, Sangamon County, 2024 CF 909

– 8 –

Stoughton
*Curriculum Vitae*

**EXPERT CONSULTING (CON'T)**

- Retained by the Sangamon County State Attorney's Office
- Tactics, use of force
- Report, trial testimony

Akiwine Sykap and Yovita Luvio v. City and County of Honolulu, Civil No. 1CCV-21-0000674, Circuit Court of the First Circuit of Hawai'i
- Retained by plaintiff's attorney, Eric A. Seitz
- Emergency vehicle operations (pursuit), tactics, use of force
- Report

Arthur Ash v. City of Phoenix, et al., CV-23-02473-PHX-SPL(JZB), United States District Court for the District of Arizona
- Retained by plaintiff's attorney, Plattner Verderame, P.C.
- Use of force
- Report

Josephine T.W. Bishop v. County of Hawai'i, Civil No. 3CCV-23-0000134,  Circuit Court of the First Circuit of Hawai'i
- Retained by plaintiff's attorney, Eric A. Seitz
- Tactics, use of force
- Report, deposition testimony

Critical Incident Response Team 24-4
- Retained by the Office of the District Attorney for the 1st Judicial District of Colorado
- Emergency vehicle operations (pursuit), tactics, use of force
- Opinion letter

Molina v. Johnston Police Department & Mark Warchol, C/A No.: 8:23-cv-4572-TMC, United States District Court for the District of South Carolina
- Retained by the plaintiff's attorney, Parker Law Group
- Emergency vehicle operations (pursuit), tactics
- Report

Sean Dixon v. Commissioner of An Garda Síochána, Minister for Justice & Equality, Ireland &  Attorney General
- Retained by the plaintiff's attorney, Solicitor Brigid O'Donnell
- Police procedure
- Report

OIS of Christian Glass
- Retained by the Office of the District Attorney for the 5th Judicial District of Colorado
- Tactics, use of force
- Report, trial testimony

Death of Mario Gonzalez
- Retained by the Oakland District Attorney's Office
- Use of force
- Opinion Letter

– 9 –

Stoughton
*Curriculum Vitae*

**EXPERT**
**CONSULTING**
**(CON'T)**

Farmington, New Mexico, Officer-Involved Shooting
- Retained by the New Mexico Attorney General's Office
- Tactics, use of force
- Report

Estate of Brent Thomson et al. v. Lorenzo Lujan, Case No. 2024-CV-30299, United States District Court for the District of Colorado
- Retained by the plaintiff's attorney, Rathod Mohamedbhai LLC
- Use of force
- Opinion Letter

Myers v. Roberts *et al.*, C/A No. 1:23-1495-SAL-PJG, United States District Court for the District of South Carolina
- Retained by the plaintiff's attorney, the Solomon Law Firm
- Use of force, intervention, aid
- Report

State of California v. Little *et al*.
- Retained by the Los Angeles District Attorney's Office
- Use of force
- Report

State of Texas v. Taylor
- Retained by the Travis County District Attorney's Office
- Tactics, use of force
- Trial testimony

Gerald v. Charleston County Sheriff's Office, Case No. 2:2022cv01517, United States District Court for the District of South Carolina
- Retained by the defendant's attorney, the Buyck Law Firm
- Arrest, tactics, use of force
- Report

Thomas v. City and County of Honolulu, Civil No. 21-00087 JAO-KJM, United States District Court for the District of Hawaii
- Retained by the plaintiff's attorney, Eric A. Seitz, Attorney at Law
- Tactics, use of force
- Report

Sidlo v. County of Hennepin *et al*., 27-CV-22-10775, Minnesota District Court, Fourth Judicial District
- Retained by the plaintiff's attorney, Law Office of Time Phillips
- Use of force
- Report

Ohio v. Meade
- Retained by the Franklin County Prosecuting Attorney's Office
- Tactics, use of force
- Report, trial testimony

– 10 –

Stoughton
*Curriculum Vitae*

**EXPERT CONSULTING (CON'T)**

Estate of Crosby v. Colleton County Sheriff's Office *et al*.
- Retained by the plaintiff's attorney, McLeod Law Group
- Police procedure
- Report

New York v. Nigro
- Retained by the New York Office of the
- Emergency vehicle operations (pursuit); tactics, use of force
- Report, grand jury testimony, trial testimony

Kinloch v. Murray et al., 2:23-cv-006950DCN0MHC, United States District Court for the District of South Carolina
- Retained by the plaintiff's attorney, Allen Law
- Use of force
- Report

Estate of Christian Glass v. Buen *et al*.
- Retained by the plaintiff's attorney, Rathod Mohamedbhai LLC
- Police procedure, tactics, and use of force
- Report

Commonwealth of Pennsylvania Officer-Involved Shooting Review
- Retained by the Philadelphia State Attorney's Office
- Tactics, use of force
- Report

Herndon v. Henderson Police Department et al., Nevada District Court, Clark County, Case No. A-21-842739-C, Dept. 24
- Retained by the plaintiff's attorney, H&P Law
- Tactics, use of force
- Report, trial testimony

Estate of Robertson v. Anderson County Sheriff's Office et al., Case No.: 0:22-cv-00232-JD-PJG, United States District Court for the District of South Carolina
- Retained by the plaintiff's attorney, The Clardy Law Firm
- Use of force
- Report

Estate of Britt v. Charleston County, et al., Civil Action No. 2:21-3770-RMG, United States District Court for the District of South Carolina
- Retained by the plaintiff's attorney, the McLeod Law Group
- Use of force
- Report

State of Michigan v. Schurr
- Retained by Kent County Prosecutor's Office
- Tactics, use of force
- Report, grand jury testimony, trial testimony

– 11 –

Stoughton
*Curriculum Vitae*

**EXPERT CONSULTING (CON'T)**

Bahadoran v. City of New York, et al., 21-cv-04884, United States District Court for the Southern District of New York
- Retained by the plaintiff's attorney: Emery Celli Brinckerhoff Abady Ward & Maazel
- Tactics, use of force
- Report

In-Custody Death of Ronald Greene
- Retained by the Office of the District Attorney, Third Judicial District of Louisiana
- Tactics, use of force
- Report, grand jury testimony

Blouin et al. v. Normand et al., No.: 17-944, Louisiana Civil District Court, Parish of Orleans
- Retained by the plaintiff's attorneys, Gary Bizal
- Tactics, use of force
- Report

Maros v. Greenville County Sheriff's Office, Case No. 6:21-cv-03346-JD-JDA, United States District Court for the District of South Carolina
- Retained by the plaintiff's attorneys: The Clardy Law Firm
- Tactics, use of force
- Report, deposition testimony

Zelaya, et al. v. Hammer, et al., Civ. Action No. 3:19-CV-00062-TRM-CHS, United States District Court for the Eastern District of Tennessee
- Retained by the plaintiff's attorneys: Southern Poverty Law Center and National Immigration Law Clinic
- Use of force
- Report

Hunters Capital, LLC, v. City of Seattle,  Case No. 2:20-cv-00983 TSZ, United States District Court for the Western District of Washington
- Retained by the defendant's attorney: Seattle City Attorney's Office
- Tactics
- Report, deposition testimony

Commonwealth of Pennsylvania v. Mendoza
- Retained by the Philadelphia State Attorney's Office
- Tactics, use of force
- Grand jury testimony, preliminary hearing testimony

Lance v. City of San Antonio et al., Civil Action No. 5:21-CV-837, United States District Court for the Western District of Texas
- Retained by the plaintiff's attorney: Law Offices of Maloney & Campolo
- Use of force
- Report, deposition testimony

In re: Shooting of Ma'Khia Bryant
- Retained by the Franklin County, Ohio Prosecuting Attorney's Office

– 12 –

Stoughton
*Curriculum Vitae*

| | |
|---|---|
| **EXPERT CONSULTING (CON'T)** | • Tactics, use of force<br>• Grand jury testimony |

Stapleton v. City of Springfield
- Retained by the plaintiff's attorney: Murray & Murray Co. LPA
- Emergency vehicle operations
- Report

Floyd v. Knight et al., 2:21-cv-03288-RMG-MGB, United States District Court for the District of South Carolina
- Retained by the defendant's attorney (civil): Hood Law Firm, LLC
- Use of force, police procedure, investigations
- Report

In re: Providence Police Department Use of Force Incident, Providence, Rhode Island
- Retained by the Rhode Island Attorney General's Office
- Tactics, use of force
- Report, grand jury testimony

South Carolina v. Bailey
- Retained by the First Circuit Public Defender's Office
- Police procedure, investigations
- Report

Bruce Stolk Officer-Involved Shooting, Orange County, Florida
- Retained by the Office of the State Attorney, Ninth Judicial Circuit
- Use of force
- Report, grand jury testimony, deposition testimony

James Montiel Officer-Involved Shooting, Orange County, Florida
- Retained by the Office of the State Attorney, Ninth Judicial Circuit
- Use of force
- Report, grand jury testimony

Alexander Paul Officer-Involved Shooting, Broward County, Florida
- Retained by the Office of the State Attorney, Seventeenth Judicial Circuit
- Use of force
- Report

Doe v. City of Myrtle Beach et al., 4:21-CV-00635-JD, United States District Court for the District of South Carolina
- Retained by defendant's attorney: Battle Law Firm, LLC
- Police procedure; investigations
- Report

James v. Davies, Case No. 2:19CV341-HCN-DBR, United States District Court for the District of Utah
- Retained by defendant's attorney: Battle Law Firm, LLC
- Emergency vehicle operations (pursuit), tactics, use of force

– 13 –

Stoughton
*Curriculum Vitae*

| | |
|---|---|
| **EXPERT CONSULTING (CON'T)** | • Report |

Ondrej et al. v. Perry et al., 5-21-cv-281-JKP, United States District Court for the Western District of Texas
- Retained by plaintiff's attorney: The Cortez Law Firm
- Use of force, tactics
- Report, deposition testimony

Sanders v. Rutherford County Sheriff's Office et al.
- Retained by plaintiff's attorney: Grimes Teich Anderson, LLP
- Police procedure
- Report

State of Minnesota v. Potter, 27-CR-21-7460
- Retained by the Office of the Minnesota Attorney General (prosecution)
- Use of force, police procedure
- Report, trial testimony

State of Minnesota v. Derek Chauvin (27-CR-20-12646), J. Alexander Kueng (27-CR-20-12953), Thomas Lane (27-CR-20-12951), and Tou Thao (27-CR-20-12949)
- Retained by the Office of the Minnesota Attorney General (prosecution)
- Use of force, police procedure
- Report, trial testimony in *State of Minnesota v. Chauvin*

State of Ohio v. Coy
- Retained by the Office of the Ohio Attorney General (prosecution)
- Use of force, tactics
- Report, trial testimony

Hartsfield v. Gunn et al., Case No. 4:19-CV-341-JM, United States District Court for the Eastern District of Arkansas
- Retained by plaintiff's attorney: Laux Law Group
- Use of force; tactics; investigations
- Report

State of Minnesota v. Potter
- Retained by the Office of the Minnesota Attorney General (prosecution)
- Use of force
- Report

Doe v. North Charleston Police Dept., et al., Case No.: 20-cv-02202-DCN-MHC, United States District Court for the District of South Carolina
- Retained by plaintiff's attorney: Joye Law Firm
- Police procedure, investigations
- Report, deposition testimony

Jones et al. v. County of Pinal et al., No. 2:20-cv-00714-GMS-CDB, United States District Court for Eastern District of Arkansas
- Retained by plaintiff's attorney: Richardson & Richardson, P.C.
- Use of force, police procedure

– 14 –

Stoughton
*Curriculum Vitae*

**EXPERT**
**CONSULTING**
**(CON'T)**

- Report, trial testimony

Walls v. Starks et al., No. 19-CV-398, United States District Court for the Eastern District of Arkansas
- Retained by plaintiff's attorney: Loevy & Loevy
- Use of force; tactics; agency policy and custom
- Report

Morris v. Town of Bonneau, et al., CA No. 2018-CP-08-01844, Court of Common Pleas for the Ninth Judicial Circuit of South Carolina
- Retained by plaintiff's attorney: Uricchio, Howe, Krell, Jacobsen, Toporek, Theos & Keith, PA
- Police procedure, investigations
- Report, deposition testimony

Russ v. City of Hartsville et al., 2020-CP-1600478, Court of Common Pleas for the Fourth Judicial Circuit of South Carolina
- Retained by plaintiff's attorney: Thurmond Kirchner & Timbes, P.A.
- Use of force; agency policy
- Report, deposition testimony

Franklin v. City of Charlotte and Wendy Kerl, 3:20-cv-330, United States District Court for the Western District of North Carolina
- Retained by plaintiff's attorney: Tin Fulton Walker & Owen, PLLC
- Use of force; tactics
- Report, deposition testimony

Campbell v. City of North Charleston et al., 2:20-cv-00959, United States District Court for the District of South Carolina
- Retained by plaintiff's attorney: Allen Law
- Use of force; tactics
- Report, deposition testimony

Rhynes v. City of Myrtle Beach, et al., 4:19-cv-2478, United States District Court for the District of South Carolina
- Retained by plaintiff's attorney: Law Office of Walter S. Ameika
- Use of force; tactics
- Report

Duran v. United Tactical Systems et al., 1:18-cv-01062 MV/LF, United States District Court for the District of New Mexico
- Retained by plaintiff's attorney: Fine Law Firm
- Training provided by private weapons vendor
- Report, deposition testimony

Gipp v. Webb, Case No. 1:19-cv-00213, United States District Court for the District of North Dakota
- Retained by plaintiff's attorney: Conlin Law Firm
- Tactics, use of force
- Report, trial testimony

– 15 –

Stoughton
*Curriculum Vitae*

**EXPERT CONSULTING (CON'T)**

Rhines v. State of New Jersey, Docket No. ESX-L-580-19, Superior Court of New Jersey, Essex County
- Retained by plaintiff's attorney: The Donnelly Law Firm
- Police procedure
- Report, trial testimony

Ellis v. Kirkman, et al., United States District Court for the District of South Carolina
- Retained by plaintiff's attorney: The Bax Law Firm, PA
- Use of force
- Report, deposition testimony

Hein v. Gunnison County Sheriff's Office, et al., 1:19-cv-01520-WJM-GPG, United States District Court for the District of Colorado
- Retained by plaintiff's attorney: Sagal Law, LLC
- Use of force; tactics; police procedure
- Report

Use of Force Review: Jamee Johnson
- Retained by the Office of the State Attorney, Fourth Judicial Circuit of Florida (Jacksonville)
- Use of force; tactics
- Report

Shooting of Jamarion Robinson
- Retained by the Office of the Fulton County (GA) District Attorney
- Use of force; tactics
- Report

Dalonte White v. City of Cleveland et al., 1:17-CV-1165, United States District Court for the Northern District of Ohio)
- Retained by plaintiff's attorney: The Chandra Law Firm, LLC
- Investigative procedure
- Report

Clifford Blake v. City of North Charleston et al., Civil Action No: 2019-CP-10-3774, United States District Court for the District of South Carolina
- Retained by plaintiff's attorney: Uricchio Howe Krell PA
- Use of force; police procedure
- Report

Barbara Elifritz v. City of Portland et al., 3:18-cv-00903 HZ, United States District Court for the District of Oregon
- Retained by defendant's attorney (civil): Portland City Attorney's Office
- Tactics; use of force
- Report

Jordan Gantlin v. Dante Ghi et al., Civil Action No: 2:18-cv-02063-DCN-MGB, United States District Court for the District of South Carolina
- Retained by plaintiff's attorney: McLeod Law Group
- Investigations; police procedure; private security

– 16 –

Stoughton
*Curriculum Vitae*

**EXPERT CONSULTING (CON'T)**

- Report

Heyward v. Keith Tyner et al., C/A No.: 2:17-cv-01545-DCN-MGB, United States District Court for the District of South Carolina
- Retained by plaintiff's attorney: Bamberg Legal, LLC
- Use of force; tactics; investigative procedure
- Report; deposition testimony

Fried v. City of Strongsville, Case No. 1:18-cv-00139, United States District Court for the Northern District of Ohio
- Retained by defendant's attorney (civil): Mazanec, Raskin & Ryder
- Emergency vehicle operations (pursuit); use of force
- Report; deposition testimony

Norton v Rosier, Case No. 7:14-CV-260-FL, United States District Court for the Middle District of North Carolina
- Retained by plaintiff's attorney: Brooks, Pierce, McLendon, Humphrey & Leonard LLP
- Police procedure; traffic stops
- Report; trial testimony

Matusiewicz v. Florence County Sheriff's Office et al., Case No. 4:16-cv-01595-RBH-KDW, United States District Court for the District of South Carolina
- Retained by plaintiff's attorney: McLeod Law Group
- Investigative procedure; service of arrest warrant
- Report; deposition testimony

Murray v. City of North Charleston, et al., Case No. 2:17-cv-01508, United States District Court for the District of South Carolina
- Retained by plaintiff's attorney: Weston, Craig, & Anthony
- Use of force
- Report

Carr v. Johnson, Case No. 1:17-CV-620, United States District Court for the Northern District of Ohio
- Retained by plaintiff's attorney: Patituce & Associates
- Investigative procedure; service of search warrant
- Report

Dekany v. City of Akron, et al., Case No. 5:16-cv-01829, United States District Court for the Northern District of Ohio
- Retained by defendant's attorney: Mazanec, Raskin & Ryder
- Investigative procedure
- Report

Smith v. Charleston County, et al., C/A/ No.: 2:16-cv-655-PMD-BM, United States District Court for the District of South Carolina
- Retained by plaintiff's attorney: McLeod Law Group
- Investigative procedure; canine track; home entry
- Report; deposition testimony; trial testimony

– 17 –

Stoughton
*Curriculum Vitae*

**EXPERT CONSULTING (CON'T)**

Garnet v. City of Norfolk, Civil Action No. 3:15-CV-01585, United States District Court for the District of Connecticut
- Retained by plaintiff's attorney: Garrison, Levin-Epstein, Fitzgerald, & Pirrotti
- Arrest; use of force
- Report

State of Georgia v. Christopher Calmer, No. 2015CR111, Monroe County Superior Court, Forsyth, GA
- Retained by defendant's attorney (criminal): Georgia Capital Defenders
- Police tactics and use of force; home entry; crisis intervention
- Trial testimony

Clint Lee Gulledge v. Chesterfield County et al., C/A #: 4:16-cv-00440-RBH-KDW, United States District Court for the District of South Carolina
- Retained by plaintiff's attorney: Rikard & Protopapas
- Investigative procedure; arrest warrant
- Report

De-Vaunte Taylor v. James E. Holtmeyer et al., 4:14-cv-3127, United States District Court for the District of Nebraska
- Retained by plaintiff's attorney: Fraser Stryker
- Police tactics; use of force
- Report

Alan G. Cox v. Berkeley County Sheriff's Department & South Carolina Law Enforcement Division, Court of Common Pleas for the (South Carolina) Ninth Judicial Circuit
- Retained by defendant's attorney (civil): Hood Law Firm
- Investigative procedure; arrest decisions
- Report; deposition testimony

**SELECTED PRESENTATIONS & SPEAKING ENGAGEMENTS**

*Immigration, Community Trust, and Policing: Lessons from Emerging Evidence in Minneapolis*, American Society of Evidence-Based Policing, Washington, D.C., May 21, 2026

*Reviewing & Evaluating Police Uses of Force*, Charleston Police Department Executive Leadership Institute, May 6, 2026

*Reviewing Uses of Force for Accountability & Enhancement*, Metropolitan Police Department Police Leadership Academy, May 4, 2026

*A Legally Unreasonable Public*, Federalist Society, William & Mary Law School, Apr. 9, 2026

*Testimony Before the Permanent Subcommittee on Investigations Bicameral Forum on the Violent Use of Force by ICE Agents*, Washington, D.C., Feb. 3, 2026

– 18 –

Stoughton
*Curriculum Vitae*

*What Litigators Need to Know about the 'Science' Behind Police-Use of Force Expertise: Force Science under Daubert*, South Carolina Bar Convention, Jan. 24, 2026

**SELECTED PRESENTATIONS & SPEAKING ENGAGEMENTS (CON'T)**

*Who Claims the Power to Police? Authority, Legitimacy, and the Re-Imagining of Public Safety* (panelist), American Association of Law Schools Conference, Jan. 7, 2026

*Pursuits & Uses of Force: Review & Evaluation*, Metropolitan Police Department Police Leadership Academy, Oct. 2, 2025

*Principles of Leadership & Management,* Beaufort Police Department, August 13, 2025

*Report Writing*, Beaufort Police Department, Aug. 12 & 14, 2025

*Supervisory Legal Liability*, South Carolina Narcotics Commander School, Columbia, SC, July 29, 2025

*Reviewing & Evaluating Police Uses of Force*, Charleston Police Department Executive Leadership Institute, June 12, 2025

*Forced Science: Evaluating the Scientific Reliability of "Force Science"*, American Society of Evidence-Based Policing, Tucson, AZ, May 2, 2025

*Law Enforcement Training and Education: Inspiring and Empowering the Next Generation of Evidence-Based Policing Advocates*, American Society of Evidence-Based Policing, Tucson, AZ, May 1, 2025

*Continuous Improvement in Public Safety*, Pennsylvania Association of Criminal Justice Educators Annual Conference, Bethlehem, PA, April 5, 2025

*Police Use of Force: Review and Evaluation*, DC Police Leadership Academy, Mar. 4, 2025

*Police Use of Force: Review and Evaluation*, DC Police Leadership Academy, Nov. 19, 2024

*Reliance on Use of Force Experts and Force Science*, Prosecutors Alliance 2024 Conference on Prosecution of Police Misconduct, Atlanta, GA, Nov. 18, 2024

*Constitutional Policing, Civil Rights, and Civil Liberties*, National Policing Institute, Sept. 5, 2024

*Police Accountability (Panel Discussant)*, Institute for Innovation in Prosecution/Prosecutors Alliance, July 18, 2024

*Investigating & Evaluating Police Uses of Force*, City of Chicago, Civilian Office of Police Accountability, July 1-2, 2024

*Anti-Money Laundering & Corruption Simulations*, Ulaanbaatar, Mongolia May 27-31, 2024

– 19 –

Stoughton
*Curriculum Vitae*

**SELECTED PRESENTATIONS & SPEAKING ENGAGEMENTS (CON'T)**

*In-Custody Deaths*, National Academies of Sciences, Washington, DC, Apr. 2, 2024

*Policing & the Legacy of (Panel Discussant)*, Vestiges of the Confederacy: Reckoning with the Legacy of the South, Richmond Law Review Symposium, Richmond, VA, Mar. 1, 2024

*Use of Force (Panel Discussant)*, Prosecuting Police Misconduct, Prosecutors Alliance, Berkeley, CA, Nov. 3, 2023

*Using Expert Witnesses,* State Attorneys General Police Oversight & Accountability Network, Oct. 24, 2023

*Advancing Equitable, Accountable and Effective Policing and Partnerships*, Fair and Just Prosecution, Georgetown Law School, Sept. 21, 2023

*Policing Volatile Contexts Roundtable*, Griffith University, Queensland Police Service, Victoria Police Service, AUS, July 20, 2023

*Considerations in Reviewing Police Uses of Force*, Griffith University, Queensland, AUS, July 20, 2023

*An Empirical Examination of Reasonable Suspicion*, Law of Policing Conference, University of Chicago School of Law, June 7, 2023

*Criminal Law Books Workshop*, University of Richmond School of Law, May 19, 2023

*How Do We Reform the Law in Light of What We Know?*, California Law Review Symposium, Apr. 14, 2023

*Modern Policing and the Law*, Northern Kentucky University, Mar. 24, 2023

*Symposium Panel on Shielded: How the Police Became Untouchable*, Georgetown Law School, Mar. 7, 2023

*Ending Police Brutality: Embracing Systemic Reform After Memphis*, William & Mary Law School, Feb. 13, 2023

*Considerations in Investigating and Prosecuting Police Uses of Force*, North Carolina Governor's Task Force, Prosecutorial Advisory Group, Nov. 18, 2022

*Evaluating Police Uses of Force (CLE)*, Travis County District Attorney's Office, June 29, 2022

*Interpreting Video Footage in Use of Force Investigations (CLE)*, Travis County District Attorney's Office, June 29, 2022

*The Law of the Police Conference*, University of South Carolina School of Law, June 8-10, 2022 (organizer)

*Litigating Police Use of Force Cases* (Panel Member), Inaugural Civil Rights Institute, Charlottesville, VA, June 7, 2022

Stoughton
*Curriculum Vitae*

*Civil Rights Panel*, South Carolina Bar Association Conference, Greenville, SC, Jan. 20, 2022

**SELECTED PRESENTATIONS & SPEAKING ENGAGEMENTS (CON'T)**

*Evaluating Police Uses of Force,* Florida 4th Judicial Circuit State Attorney's Office, Jacksonville, FL, Dec. 10, 2021

*Video Footage & Investigations*, Florida 4th Judicial Circuit State Attorney's Office, Jacksonville, FL, Dec. 10, 2021

*Keynote Address*, South Carolina Black Lawyer's Association, Charleston, SC, Oct. 29, 2021

*Evaluating Police Uses of Force*, South Carolina Judicial Conference and Clerks Conference, Columbia, SC, Oct. 5, 2021

*Police Investigations*, South Carolina Public Defender's Conference, Myrtle Beach, SC, Sept. 28, 2021

*Shooting to Incapacitate*, Peace Officer Association of Georgia, Savannah, GA, Aug. 17, 2021

*Gender Equity in Policing*, California Community Colleges, Aug. 17, 2021

*Dismantling Racism, Sexism, and Inequities in Policing Panel*, 20th Annual Social Equity Leadership Conference, June 11, 2021

*Language Shapes Experiences*, California Community Colleges, June 8, 2021

*I Have a Problem With That: Race and the Justice System Panel*, Richland County Library, May 18, 2021

*The Point: Know Justice, Know Peace* Panel, South Carolina Fifth Circuit Solicitor, May 3, 2021

*General Police Accountability* Panel, The Criminal Justice System in Review: Accountability, Reform, & Policy, Loyola University Chicago Law Journal, April 9, 2021

*Police Violence: The Legalities Behind Police Use of Force*, University of Wisconsin, Platteville, Apr. 8, 2021

*Policing from an (Inter)National Perspective; Public and Private Policing*, University of Münster, Mar. 29, 2021

*Police Reform: From Prisons to the Streets, How Far We Have Come and How Far We Still Have to Go* Panel, No Justice, No Peace: Finding Justice in American Policing Symposium, Indiana Law Review, Mar. 26, 2021

*Qualified Immunity in Practice* Panel, Journal of Criminal Law and Criminology, Mar. 25, 2021

– 21 –

Stoughton
*Curriculum Vitae*

*Evaluating Police Body-Worn Cameras*, Justice Day, Leadership Jacksonville, Mar. 4, 2021

**SELECTED PRESENTATIONS & SPEAKING ENGAGEMENTS (CON'T)**

*Evaluating Police Uses of Force,* Novel Justice (Book Talk series), Wilson Center for Science and Justice, Duke Law School, Feb. 23, 2021

Guest Speaker, Policing the Police, Columbia Law School, Feb. 16, 2021

Guest Speaker, Health Impacts of Immigration Law Enforcement in the United States, University of Maryland, Dept. of Health Behavior and Health Education, Feb. 12, 2021

*Qualified Immunity: History, Current Application, and Uncertain Future*, Maros Inn of Court, Feb. 2, 2021

*Who is the Reasonable Person?*, SC Bar Convention, Jan. 20, 2021 (online

*A User's Guide to South Carolina Criminal Practice: the 2021 Pandemic Edition, Social Justice Panel*, South Carolina Bar, Jan. 8, 2021

*Evidence-Based Policing: The Use of Force*, California Community Colleges, Dec. 10, 2020

*Eyewitness: Police Reform*, North Carolina Public Defender's Office, Nov. 16, 2020

*Police Use of Force*, Policing Los Angeles Forum, Loyola (LA) Law School, Nov. 9, 2020

*Police Culture*, Addressing the Crisis in Policing Today: Race, Masculinity, and Police Use of Force in America Symposium, George Washington Law School, Oct. 22, 2020

*Handling Police Brutality Cases in 2020: An "A to Z" Guide for Identifying, Evaluating and Litigating Civil Rights Cases Involving Police Brutality,* Connectionology, Oct. 8, 2020

*Evidence-Based Policing: Training*, California Community Colleges, Oct. 5, 2020

*Police Unions*, Conversations on Race and Policing Series, California State University San Bernardino, Oct. 7, 2020

*Evidence-Based Policing: Fundamentals and Concepts*, California Community Colleges, Sept. 29, 2020

*Eyewitness: Police Reform*, North Carolina Public Defender, Sept. 21, 2020

*The High Risks, Liabilities, and Costs of Secondary Employment*, ODM, Sept. 3, 2020

*Policing & Police Reform*, Grand Strand Action Together, August 12, 2020

Stoughton
*Curriculum Vitae*

**SELECTED PRESENTATIONS & SPEAKING ENGAGEMENTS (CON'T)**

*Policing & Police Reform*, Progressive Democrats of Buncombe County (NC), August 10, 2020

*Warrior Policing*, "Reimaging/Reinventing Police," University of Chicago, July 30, 2020

*Evaluating Police Uses of Force*, New York Judicial Conference, July 8, 2020

*We the People*, National Constitution Center (via Internet), June 15, 2020

*Policing and Police Reform*, South Carolina for Criminal Justice Reform, June 11, 2020

*Constitutional and Administrative Standards Regulating the Use of Force*, National Association for Civilian Oversight of Law Enforcement, Austin, TX, Mar. 6, 2020

*Police Body-Worn Cameras*, Crown Defense Conference, Winnipeg, Manitoba, Dec. 4, 2019

*Fourth Amendment Flaws & the Regulation of Police Violence*, Vanderbilt Criminal Law Roundtable, Nashville, TN, Nov. 8-9, 2019

*Policing*, Critical Inquiry Speaker Series, University of South Carolina, Aiken, Oct. 28, 2019

*De-Escalation Summit*, California Peace Officer Standards and Training Officer Commission, San Diego, CA, October 14, 2019 (invited participant)

*When Justice Prevails*, Alpha Phi Alpha, Columbia, SC, Oct. 6, 2019

*Inaugural National Symposium on Police Academies & Training*, Washington, D.C., October 7, 2019 (invited participant) (facilitator)

*The Regulation of Police Uses of Force*, Media Law School, Columbia, SC, Sept. 20, 2019

*Fourth Amendment Flaws & the Regulation of Police Violence*, CrimFest!, Brooklyn, NY, July 15, 2019

*Principled Policing: Warrior Cops & Guardian Officers*, 2019 Cultural and Linguistic Competency Conference, Columbia, SC, June 20, 2019

*Police Body-Worn Cameras: Interpretive Challenges*, Investigative Reporters & Editors Conference 2019, Houston, Texas, June 13, 2019

*Segunda Conferencia Internacional Seguridad Ciudadana: La Vía Civil*, Ibero Ciudad de Mexico, Mexico City, Mexico, May 21, 2019 (panel discussant)

2019 Neighborhood Criminal Roundtable, University of North Carolina, Chapel Hill, May 13-14, 2019 (invited participant)

*Body-Police Worn Cameras: Legal, Practical, and Policy Challenges*, Federal Bar Association, Jacksonville, FL, Apr. 29, 2019

Stoughton
*Curriculum Vitae*

**SELECTED PRESENTATIONS & SPEAKING ENGAGEMENTS (CON'T)**

*Principles of the Law, Policing, Advisor Meeting*, American Law Institute, Philadelphia, PA, Apr. 4, 2019

*The Law of the Police Conference*, University of South Carolina School of Law, Feb. 28-Mar. 2, 2019 (organizer)

*Use-of-Force Investigations: Body-Worn Camera Footage*, Chicago Civilian Office of Police Accountability, Jan. 23, 2019

*Crisis Intervention Team Training*, Focus on the Facts Training, Georgia Capital Defenders, Atlanta, GA, Dec. 18, 2018

*Police Misconduct*, Focus on the Facts Training, Georgia Capital Defenders, Atlanta, GA, Dec. 18, 2018

*Talkback: The Hate U Give*, The Nickelodeon Theater, Nov. 15, 2018

Class Speaker (via Skype) in Seeing Criminal Justice: Examining the Interplay of Visual Media, Storytelling and Criminal Law, Harvard Law School, Nov. 13, 2018

*Police Body-Worn Cameras: Interpretative Issues*, Florida 4th Judicial Circuit State Attorney's Office, Jacksonville, FL, Nov. 5, 2018

*Guardian Policing*, TEDx UofSC, Columbia, SC, Oct. 9, 2018

*#EndMoneyBail For a Better Hawai'i and a Better Nation*, ACLU, Honolulu, HI, Sept. 27, 2018 (panelist)

*Police Body Worn Cameras: Legal, Practical, and Policy Challenges*, American Association Conference, Kauai, HI, September 26, 2018

*Interpreting Police-Body Worn Footage*, Media Law School, Columbia, SC, September 20, 2018

*Contemporary Issues in Policing*, South Carolina Advisory Committee to the United States Commission on Civil Rights, Aug. 13, 2018 (via telephone)

*Guardian Policing*, Washington State Criminal Justice Standards Commission, Law Enforcement Academy, Sea-Tac, WA, July 30, 2018

*Close Encounters of the Police Kind: Interaction, Over-reaction, and Inaction*, Fourth Circuit Judicial Conference, The Greenbrier, WV, June 29, 2018 (panelist)

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, Arizona Judicial Conference, Tucson, AZ, June 21, 2018

*Testimony in Support of Assembly Bill 931*, California Senate Committee on Public Safety, Sacramento, CA, June 19, 2018

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, Tennessee Judicial Conference, Memphis, TN, June 13, 2018

– 24 –

Case 3:26-cv-00758-VDO    Document 31-8    Filed 07/13/26    Page 54 of 71

Stoughton
*Curriculum Vitae*

**SELECTED PRESENTATIONS & SPEAKING ENGAGEMENTS (CON'T)**

*Testimony in Support of Assembly Bill 931*, California Senate Committee on Public Safety, Sacramento, CA, June 19, 2018

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, Tennessee Judicial Conference, Memphis, TN, June 13, 2018

*Reimaging the Police Role,* University of Michigan, Dearborn, March 8, 2017, (first workshop in the sixth Alternatives to Violent Force series)

*Reimaging the Police Role,* University of Michigan, Dearborn, March 8, 2017, (last workshop in the fifth Alternatives to Violent Force series)

*How Perspective Impacts Perception: Body-Worn Cameras & Interrogation Videos*, Virginia Bar Association, Indigent Defense Counsel, Richmond, VA, May 3, 2018 (with Harlan Yu)

Class Speaker (via Skype) in Seeing Criminal Justice: Examining the Interplay of Visual Media, Storytelling and Criminal Law, Harvard Law School, Apr. 3, 2018

Keynote Speech, *Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, Body-Worn Camera Training & Technical Assistance National Meeting, Mar. 28, 2018

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, Florida 4th Judicial Circuit State Attorney's Office, Jacksonville, FL, Mar. 16, 2018

*Use-of-Force Investigations: Body-Worn Camera Footage*, Chicago Civilian Office of Police Accountability, Mar. 7, 2018

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, Delaware, OH, Feb. 2, 2018 (two separate presentations)

*Terry at Fifty: On the Books and On the Ground*, AALS Conference, San Diego, CA, Jan. 6, 2018

*AALS Hot Topic Panel: The Promise & Pitfalls of The Marijuana Justice Act of 2017*, AALS Conference, San Deigo, CA, Jan. 3, 2018

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, New Mexico Defense Lawyers Association Civil Rights Seminar, Albuquerque, NM, Dec. 8, 2017

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, North Dakota Judicial Conference, Bismarck, ND, Nov. 20, 2017

*Police Body-Worn Cameras*, North Carolina Law Review Symposium on "Badge Cams as Data and Deterrent: Law Enforcement, the Public, and the Press in the Age of Digital Video," Chapel Hill, NC, Nov. 3, 2017

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, South Carolina Police Chiefs Association, Annual Training Conference, Columbia, SC, Oct. 13, 2017

Stoughton
*Curriculum Vitae*

**SELECTED PRESENTATIONS & SPEAKING ENGAGEMENTS (CON'T)**

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, National Conference of State Courts, Court Technology Conference, Salt Lake City, Utah, Sept. 13, 2017

*Use-of-Force Investigations: Body-Worn Camera Footage*, Chicago Civilian Office of Police Accountability, Aug. 10, 2017

*Policing First Principles*, Southeastern Association of Law Schools Conference, Boca Raton, FL, Aug. 1, 2017

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, Command Staff Training, Kansas City (Missouri) Police Department, June 30, 2017

*Use-of-Force Investigations: Body-Worn Camera Footage*, Chicago Civilian Office of Police Accountability, June 1, 2017

*Lights, Camera, Courts, and Cops: Living in the Age of Body Cameras*, National Consortium on Racial & Ethnic Fairness in the Courts, St. Louis, MO, May 17, 2017

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, Legal Liability & Risk Management Institute, Cape Coral, FL, Apr. 18, 2017

*Police Body-Worn Cameras: Opportunities & Challenges*, William & Mary Law School, Apr. 13, 2017

*Alternatives to Violent Force: Workshop 1,* University of Michigan, Dearborn, March 8, 2017

*Police Body-Worn Cameras: Practical Implications for Investigations*, United States Inspector General Investigators Training, Shepherdstown, WV, March 2, 2017

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, Conference of Chief Justices, Phoenix, AZ, Jan. 31, 2017

*Police Body-Worn Cameras: Practical Limitations*, The Defense Research Institute, Civil Rights & Governmental Liability Section Conference, Nashville, TN, Jan. 26, 2017

*Alternatives to Violent Force: Workshop 1,* University of Michigan, Dearborn, January 4, 2016

*Senior Executive Training Session: Principled Policing*, Bureau of Alcohol, Tobacco, Firearms, and Explosives, Washington, D.C., Dec. 1, 2016

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, North Dakota Judicial Conference, Bismarck, ND, Nov. 20, 2017

*Police Body-Worn Cameras*, North Carolina Law Review Symposium on "Badge Cams as Data and Deterrent: Law Enforcement, the Public, and the Press in the Age of Digital Video," Chapel Hill, NC, Nov. 3, 2017

Stoughton
*Curriculum Vitae*

**SELECTED PRESENTATIONS & SPEAKING ENGAGEMENTS (CON'T)**

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, South Carolina Police Chiefs Association, Annual Training Conference, Columbia, SC, Oct. 13, 2017

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, National Conference of State Courts, Court Technology Conference, Salt Lake City, Utah, Sept. 13, 2017

*Use-of-Force Investigations: Body-Worn Camera Footage*, Chicago Civilian Office of Police Accountability, Aug. 10, 2017

*Policing First Principles*, Southeastern Association of Law Schools Conference, Boca Raton, FL, Aug. 1, 2017

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, Command Staff Training, Kansas City (Missouri) Police Department, June 30, 2017

*Use-of-Force Investigations: Body-Worn Camera Footage*, Chicago Civilian Office of Police Accountability, June 1, 2017

*Lights, Camera, Courts, and Cops: Living in the Age of Body Cameras*, National Consortium on Racial & Ethnic Fairness in the Courts, St. Louis, MO, May 17, 2017
*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, Legal Liability & Risk Management Institute, Cape Coral, FL, Apr. 18, 2017

*Police Body-Worn Cameras: Opportunities & Challenges*, William & Mary Law School, Apr. 13, 2017

*Reimaging the Police Role*, University of Michigan, Dearborn, March 8, 2017, (first workshop in the third Alternatives to Violent Force series)

*Police Body-Worn Cameras: Practical Implications for Investigations*, United States Inspector General Investigators Training, Shepherdstown, WV, Mar. 2, 2017

*Police Body-Worn Cameras: Legal, Practical, and Policy Challenges*, Conference of Chief Justices, Phoenix, AZ, Jan. 31, 2017

*Police Body-Worn Cameras: Practical Limitations*, The Defense Research Institute, Civil Rights & Governmental Liability Section Conference, Nashville, TN, Jan. 26, 2017

*Reimaging the Police Role*, University of Michigan, Dearborn, January 4, 2016 (first workshop in the second Alternatives to Violent Force series)

*Senior Executive Training Session: Principled Policing*, Bureau of Alcohol, Tobacco, Firearms, and Explosives, Washington, D.C., Dec. 1, 2016

*Senior Executive Training Session: Police-Body-Worn Cameras*, Bureau of Alcohol, Tobacco, Firearms, and Explosives, Washington, D.C., Dec. 1, 2016

– 27 –

Stoughton
*Curriculum Vitae*

**SELECTED PRESENTATIONS & SPEAKING ENGAGEMENTS (CON'T)**

*Police Body-Worn Cameras*, International Association of Privacy Professionals, Columbia, SC, Nov. 7, 2016

*Alternatives to Violent Force: Workshop 1,* University of Michigan, Dearborn, Nov. 1, 2016

*Perspectives on Police Body-Worn Cameras*, Summit on Trending Issues in Policing, Federal Law Enforcement Training Center, Brunswick, GA, Sept. 28, 2016

*Police Body-Worn Cameras: Practical Limitations*, South Carolina Solicitors' Conference, Myrtle Beach, SC, Sept. 25, 2016

*Police Body-Worn Cameras: Practical Limitations*, Ohio Judicial Conference, Columbus, OH, September 15, 2016

*Police Body-Worn Cameras: Practical Limitations*, Missouri Judicial Conference, Columbia, MO, Aug. 21, 2016

*Police Body-Worn Cameras: Practical Limitations*, Media Law School, Columbia, SC, Aug. 18, 2016

*Executive Training Session: Police-Body-Worn Cameras*, Peace Officers' Association of Georgia, Savannah, GA, Aug. 22, 2016

*Police Body-Worn Cameras: Practical Limitations*, South Carolina Judicial Conference, Columbia, SC, August 18, 2016

*Moonlighting: The Private Employment of Off-Duty Police*, CrimFest, Cardozo School of Law, July 11, 2016

*A Tactical Fourth Amendment*, University of Virginia School of Law, June 28, 2016

Police *Body-Worn Cameras: Practical, Policy, and Legal Challenges*, Indiana Bench/Bar Conference, French Lick, IN, June 17, 2016

*Police Body-Worn Cameras*, National Association of Criminal Defense Lawyers Body Camera Task Force, June 14, 2017 (teleconference)

*Police Body-Worn Cameras: Practical, Policy, and Legal Challenges*, Kansas Judicial Conference, Wichita, KS, June 9, 2017

*Video Analytics in Public Safety: Legal, Ethical, and Social Concerns*, National Institute of Standards & Technology, San Diego, CA, June 6, 2017

*Exploring the Relationship Between the Rule of Law & Violent Extremism in the Middle East*, Justice Sector Training, Research and Coordination Program; Dubai, United Arab Emirates, June 1-3, 2016

*Principled Policing,* Wake Forest School of Law, Implementing De-Incarceration Strategies Symposium, Apr. 1, 2016

Stoughton
*Curriculum Vitae*

**SELECTED PRESENTATIONS & SPEAKING ENGAGEMENTS (CON'T)**

*Police Body-Worn Cameras: Practical and Policy Implications*, Savannah Law School, Feb. 12, 2016

*A Tactical Fourth Amendment*, Savannah Law School, Feb. 12, 2016

*Principled Policing: Warriors & Guardians*, Columbus (OH) Bar Association, 4th Annual Martin Luther King, Jr. Memorial Civil Rights Symposium, Columbus, OH, Jan. 29, 2016 (6 CLE hours offered for event)

*The Crisis in Policing: Violence, Race, and Community Relations*, University of Florida School of Law, Nov. 13, 2015

*Police Body-Worn Cameras: Practical and Policy Implications*, The Midwest Conference of Chief Justices and State Court Administrators, Columbus, OH, Oct. 16, 2015 (7.5 CLE credits offered for event)

*Principled Policing: Warriors & Guardians*, National Association of Women Law Enforcement Executives, Hartford, CT, Aug. 6, 2015

*Police Officer Use of Deadly Force & Shootings: Analysis of Training, Investigation, and Review*, Cuyahoga County Prosecutor's Office, Mar. 12, 2015 (6 CLE hours offered for event)

*Tactical Fourth Amendment*, Law of the Police Works-in-Progress Roundtable, University of Virginia School of Law, Mar. 5-6, 2015

*Law Enforcement's "Warrior" Problem*, The Thin Blue Line: Policing Post-Ferguson, St. Louis University School of Law, Feb. 20, 2015 (4.5 CLE hours)

*And Justice For All*, Martin Luther King Day Commemoration Panel Discussion, University of South Carolina School of Law, Jan. 15, 2015

*Policing & Immigration Colloquium*, University of South Carolina College of Social Work, Oct. 10, 2014

*Evidentiary Rulings as Police Reform*, CrimFest Conference, July 2014

*Domestic Policing & the Rule of Law*, Emerging Scholars in Rule of Law Workshop, University of South Carolina School of Law, April 2014

*From Below: Trial Courts & Criminal Procedure Symposium*, University of Miami School of Law, February 2014

Stoughton
*Curriculum Vitae*

**SELECTED
MEDIA
INTERVIEWS &
APPEARANCES
2020-PRESENT**

Paresh Dave, *Here's How Much San Francisco Tech Companies Pay for Police Protection*, WIRED, Apr. 27, 2026

Joseph Neff, *How North Carolina Officials Kept the Truth About a Police Shooting Hidden*, THE MARSHALL PROJECT, Apr. 22, 2026

Jacob Sullum, *Houston Irks Texas Gov. Greg Abbott by Reminding Cops to Comply with the Fourth Amendment*, REASON, Apr. 22, 2026

Jennifer Titus & Libby Hendren, *State Investigates 30-Bed Mental Health Facility in Tampa, Orders No New Admissions*, 10 TAMPA BAY, Apr. 14, 2026

Christian Boschult, *Spartanburg County Council Takes First Step Toward Creating a Sheriff's Office Review Committee*, THE POST & COURIER, Mar. 27, 2026

Céilí Doyle, *Was Baltimore County Police Use-of-Force in Samuel 'Big Sam' Brown's Death Justified?*, THE BALTIMORE BANNER, Mar. 20, 2026

Nicole Einbinder, *"Flock Flocked Up"*, BUSINESS INSIDER, Mar. 9, 2026

Matt deGrood, *Houston Mayor says HPD ICE Arrests Violate Department Policies*, HOUSTON CHRONICLE, Mar. 6, 2026

Meg Anderson, *The Trump Administration is Increasingly Trying to Criminalize Observing ICE*, NPR, Feb. 18, 2026

Wailin Wong et al., *How Well are ICE's 12,000 New Officers Being Trained?*, THE INDICATOR FROM PLANET MONEY, NPR, Feb. 18, 2026

Reshma Patricia Crawford, *What Are Citizen's Arrests—and Do They Ever Result in Justice?*, A&E CRIME + INVESTIGATION, Feb. 13, 2026

Ted Hesson et al., *ICE is Cracking Down on People Who Follow Them in Their Cars*, REUTERS, Feb. 10, 2026

Caitlyn Byrd, *Over 2 Years Later, Sled Investigation Tied to Nancy Mace is Unresolved as SC Election Season Begins*, THE POST & COURIER, Feb. 8, 2026

Andy Rose, *Calls for Accountability Over Feds' Deadly Use of Force in Minneapolis Have Not Relented. Here's Why That's Complicated*, CNN, FEB. 7, 2026

Jim Morrill, *Greg Bovino's Last Stand*, THE ASSEMBLY, Jan. 29, 2026

David Nakamura, *Five Moments in the Alex Pretti Shooting that Raise Red Flags for Policing Experts*, THE WASHINGTON POST, Jan. 27, 2026

Reis Thebault & Maia Coleman, *Policing Experts Question Agents' Conduct in Lead-Up to Shooting of Alex Pretti*, NY TIMES, Jan. 26, 2026

Stoughton
*Curriculum Vitae*

| | |
|---|---|
| **SELECTED MEDIA INTERVIEWS & APPEARANCES 2020-PRESENT (CON'T)** | Sydney Bishop, *Officials say Alex Pretti 'Brandished' a Weapon, but Have Offered No Evidence. Why that Term Matters*, CNN, Jan. 25, 2026 |

Alexia Fernández Campbell and Umar Farooq, *'I Can't Breathe.' Police Use Restraint With Fatal Results*, BLOOMBERG LAW, Jan. 23, 2026

Miranda Suarez, *5 Years Before Anthony Johnson Jr.'s Death, Indicted Guard Watched Another Man Get Knelt on in Jail*, KERA NEWS, Jan. 20, 2026

Cara Tabachnick, *Does ICE Agent in Renee Good's Shooting Have "Absolute Immunity" from State Charges? Here's What the Law Says*, CBS NEWS, Jan. 15, 2026

Christopher Cann, *Moving Cars, Panic, Gunfire. Immigration Shootings Fit Growing Pattern*, USA TODAY, Jan. 14, 2026

Nicole Foy & McKenzie Funk, *We Found More Than 40 Cases of Immigration Agents Using Banned Chokeholds and Other Moves That Can Cut Off Breathing*, PROPUBLICA, Jan. 13, 2026

Matt deGrood, *How Supreme Court Rules in Texas Police Shooting*, HOUSTON CHRONICLE, Jan. 13, 2026

Brenna T. Smith *et al.*, *Videos Show How ICE Vehicle Stops Can Escalate to Shootings*, THE WALL STREET JOURNAL, Jan. 10, 2026

Lori Robertson, *Politician Reach Different Conclusions on Minnesota Shooting Video*, FACTCHECK.ORG, Jan. 9, 2026

*Deadly ICE Shooting Ignites Debate Over Legality of Officers Firing on a Moving Car*, MORNING EDITION (NPR), Jan. 8, 2026

Noah Lanard, *Cops are Taught Not to Shoot into Cars. ICE Keeps Doing it Anyway.*, MOTHER JONES, Jan. 8, 2026

Jeffrey Meitrodt and Emmy Martin, *We Talked to 5 Use-of-Force Experts. This is What They Say About the Minneapolis ICE Shooting*, STAR TRIBUNE, Jan. 8, 2026

Ari Sen *et al*, *Under the Moonlight*, CBS NEWS, Jan. 6, 2026

Josh Wood, *Plumbers, Barbers Require State Certification. Why Don't Kentucky Sheriffs?* LOUISVILLE COURIER JOURNAL, Dec. 15, 2025

Tory Brynelson, Those Arrested at Portland ICE Protests Recount Disparate, Confusing Treatment by Federal Officers, OPB, Dec. 3, 2025

Rob Davis & Steve Suo, *What Really Happened in Portland Before Trump Deployed the National Guard*, PROPUBLICA, Nov. 5, 2025

– 31 –

Stoughton
*Curriculum Vitae*

**SELECTED MEDIA INTERVIEWS & APPEARANCES 2020-PRESENT (CON'T)**

Allison Herry, *Where Does $20 Million Come From? Massive Jury Award Will Test George Floyd-Era Police Reform Law in Higher Courts*, DENVERITE, Oct. 28, 2025

Television Interview, Ana Cabrera Reports, MSNBC, Oct. 14, 2025

Meg Anderson, *Tackles, Projectiles and Gunfire: Many Fear ICE Tactics Are Growing More Violent*, MORNING EDITION (NPR), Oct. 13, 2025

Christian Boschult, *Assault Charge Dismissed Against Spartanburg County Councilmember*, THE POST AND COURIER, Sept. 30, 2025

Matthew Brown, *Vallejo Officials' Online Comments Cloud Police Shooting Review*, OPEN VALLEJO, Sept. 29, 2025

Kim Bellware et al., *Videos of Fatal Ice Shooting in Chicago Raise Questions About DHS Account*, THE WASHINGTON POST, Sept. 28, 2025

John Keefe, *A Trooper Repeatedly Punched a Handcuffed Man in the Face. The Maine State Police Promoted Him.*, PORTLAND PRESS HERALD, Sept. 17, 2025

Stephana Ocneanu & Hallie Lauer, *How Pittsburgh's Proposed Public Safety Campus Could Work – and Why There's Pushback – as Critical Vote Looms*, PITTSBURGH POST-GAZETTE, Sept. 14, 2025

Christian Boschult, *In Chuck Wright Probe, Agents Asked About Fund Overseen by Former Sheriff's Chaplain*, THE POST & COURIER, July 7, 2025

Maeghan Chase, *UW-Madison Investigates Police Officer Who Students Say Acted Inappropriately*, WISCONSIN WATCH, July 3, 2025

A.L. Lee, *'They Are Just Brute-forcing the Guy': North Carolina Cops Pulled Man Having Diabetic Emergency Out of Car, Punched and Tased Him In Walmart Parking Lot, Video Shows*, ATLANTA BLACK STAR, June 14, 2025

Christian Boschult, *Former Sheriff Chuck Wright hired L.B. Watson 20 years ago. Now the FBI has questions.*, THE POST & COURIER, June 9, 2025.

Christian Boschult, *Under Sheriff Chuck Wright, Spartanburg deputies weren't sworn in correctly. Now they have been.*, THE POST & COURIER, May 28, 2025.

Steven Rich, Tim Arango, & Nicholas Bogel-Burroughs, *Since George Floyd's Murder, Police Killings Keep Rising, Not Falling*, THE NEW YORK TIMES, May 24, 2025

Anna Bauman, *'I Can't Breathe': Video Shows Death Vallejo Police Concealed for Years*, OPEN VALLEJO, May 15, 2025

Emily Cochrane & Ben Stanley, *In Tyre Nichols Case, an Out-of-Town Jury Heard a Familiar Police Defense*, THE NEW YORK TIMES, May 8, 2025

*Video shows Idaho police shooting knife-wielding teen with autism multiple times, sparking outrage*, CBS NEWS, Apr. 11, 2025

– 32 –

Stoughton
*Curriculum Vitae*

**SELECTED MEDIA INTERVIEWS & APPEARANCES 2020-PRESENT (CON'T)**

Tony Kukulich, *City of Beaufort Responds to Criticisms of its Handling of Young Runaways. Did They Get it Right?,* THE POST & COURIER, Feb. 28, 2025

Christan Boschult, *Fear and Concern Follow Spartanburg Sheriff Rule Announced in Wake of Lawsuit,* THE POST & COURIER, Feb. 7, 2025

Christan Boschult, *Former deputy accuses Spartanburg Sheriff Chuck Wright of politically motivated firing,* THE POST & COURIER, Feb. 4, 2025

Son Ji-hyoung, *Why Didn't Police Hit Back at Violent Protesters?, The Korea Herald*, Jan. 22, 2025

Christan Boschult, *In Apparent Shift, Spartanburg PD may be Investigating Assault Claim Against County Councilman*, THE POST & COURIER, Jan. 21, 2025

Nate Rosenfield et al., *Where the Police Used a Taser on a Bible-Reading Great-Grandmother*, THE NEW YORK TIMES, Jan. 14, 2025

Anne Hayes, *A Year After Deputy's Fatal Shooting of 2 Teens, Here's the Latest. 'That is What Save Rosello's Life'*, SYRACUSE.COM, Sep. 24, 2024

Laurence Du Sault, *The Secret Death of Darryl Dean Mefferd*, OPEN VALLEJO, June 10, 2024

Martha Bellisle, *Risks of Handcuffing Someone Facedown Long Known; People Die when Police Training Fails To Keep Up*, ASSOCIATED PRESS, May 14, 2024

Shahid Meighan, Nathan Collins, & Elena Santa Cruz, *Myth of 'Superhuman Strength' in Black People Persists in Deadly Encounters with Police*, TUCSON SENTINEL, Apr. 30, 2024

Samantha Michaels, *A New Police Force Chased a 17-Year-Old Boy to His Death. Then It Vanished.*, MOTHER JONES, March/April 2024

Mark Helenowski, *He Died In a Police Crash. Then the Police Vanished.*, MOTHER JONES, YOUTUBE, Apr. 17, 2024

Patrick Sisson, *AI Was Suppose to Make Police Bodycams Better. What Happened?* MIT TECHNOLOGY REVIEW, Apr. 16, 2024

Jennifer Emert, *Questioning Police Tactics: Diabetic Man's Arrest at Walmart Sparks Controversy*, ABC13 NEWS, Apr. 3, 2024

Jamiles Lartey, *When Police Encounters with Autistic People Turn Fatal*, THE MARSHALL PROJECT, Mar. 16, 2024

Emily Zentner & Lisa Pickoff-White, *Revealed: At Least 22 Californians have Died While Being Held Face Down by Police Since 2016*, THE GUARDIAN, Feb. 28, 2024

Olivia Diaz, *Officer Who Killed Man had Drawn Gun on Suspected Shoplifters Twice Before*, THE WASHINGTON POST, Feb. 24, 2024

Stoughton
*Curriculum Vitae*

**SELECTED MEDIA INTERVIEWS & APPEARANCES 2020-PRESENT (CON'T)**

*Safer Stops*, PBSNewsHour, Feb. 21, 2024

Jeremy Kohler, *St. Louis Police Chief Receives a Third of His Pay From a Local Foundation, Raising Concerns of Divided Loyalties*, PROPUBLICA, Feb. 20, 2024

Mike Baker, *Officers Charged Her with Drunken Driving. But Her Brain Was Bleeding.* THE NEW YORK TIMES, FEB. 18, 2024

Matthew Halloway, *The Truth is Out There: New Mexico Officers Exonerated in Wrong Address Shooting Death*, LAW ENFORCEMENT TODAY, Feb. 1, 2024

Eric Umansky, *21 Bodycam Videos Caught the NYPD Wrongly Arresting Black Kids on Halloween. Why Can't the Public See the Footage?*, PROPUBLICA, Jan. 26, 2024

Josh Wood, *How a Group of LMPD Officers Went from 'Elite Unit' to Dousing Pedestrians with Drinks*, LOUISVILLE COURIER JOURNAL, Dec. 20, 2023

Eric Umansky, *The Failed Promise of Police Body Cameras*, THE NEW YORK TIMES, Dec. 13, 2023

German Lopez, *A Disappointing Policing Change*, THE NEW YORK TIMES, Dec. 14, 2023

Bianca Moorman, *Former Aiken County Deputy Named in Federal Lawsuit in Edgefield County Traffic Stop*, AIKEN STANDARD, Dec. 11, 2023

How a 'Goon Squad' of Deputies Got Away with Years of Brutality, THE NEW YORK TIMES, Nov. 30, 2023

Almiya White, *'Where is Allisha?': Investigators Search Home Where Missing Woman was Last Seen*, WSOC-TC, July 26, 2023

*Wake DA: No Charges for Police Officers who Shocked Man Outside Sweepstakes Parlor*, WRAL NEWS, June 21, 2023

Dakin Andone, *Jury Selection Begins As Parkland School Resource Officer Scot Peterson Faces A Rare Trial Over Police Conduct In A Mass Shooting On Campus*, CNN, May 31, 2023

Andy Mannix, *One Year Later: Minnesota Agents Still Not Wearing Body Cams*, GOVERNING, May 30, 2023

Andy Mannix*, Years After Biden's Order on Body Cameras, Majority of Federal Agents in Minnesota Aren't Wearing Them*, STARTRIBUNE, May 27, 2023

Sean Keenan, *Body Cameras Can Be a Powerful Tool. But Not All Police Forces Wear Them*, THE NEW YORK TIMES, May 19, 2023

Macon Atkinson and Clare Amari, *Analysis: Greenville Police Almost Never Validate Citizen Complaints for Use of Force*, GREENVILLE NEWS, May 3, 2023

– 34 –

Stoughton
*Curriculum Vitae*

**SELECTED MEDIA INTERVIEWS & APPEARANCES 2020-PRESENT (CON'T)**

Bill Torpy, *Opinion: Police Shootings: Why There's So Often a Fusillade of Bullets*, ATLANTA JOURNAL CONSTITUTION, Apr. 26, 2023

Molly Solomon, Mike Kessler & Madison Aument, *San Bernardino Police Involved in Fatal Rob Adams Shooting Both Have Histories of Alleged Excessive Force*, KQED, Apr. 25, 2023

Josh Michtom, *Opinion: Hartford's Budget Delusion: More Police Spending Will Reduce Crime*, MIRROR, Apr. 25, 2023

Macy Moors, *Central State Hospital Police States Prone Restraints Are Prohibited*, NBC12, Apr. 6, 2023

Christian Martinez, *Family of 18-Year-Old Mom Who Was Killed by School Officer Will Get $13 Million*, LOS ANGELES TIMES, Apr. 4, 2023

Sudiksha Kochi, *Fact Check: Baseless 'False Flag' Conspiracy Theory on Nashville Shooting Circulates Online,* USA TODAY, Mar. 30, 2023

Alex Leeds Matthews, *Atlanta's So-called 'Cop City' is Igniting Protests. Here's What We Know about the Foundation Behind It*, CNN, Mar. 29, 2023

Jill Sheridan & Katrina Pross, *An Indianapolis Mother Called for Mental Health Help.  System Failures Led to Her Son's Death*, WFYI, Mar. 22, 2023

Libor Jany & Richard Winton, *Los Angeles Police Accidentally Release Photos of Undercover Officers to Watchdog Website*, LOS ANGELES TIMES, Mar. 21, 2023

*Fact Check: What is the Most Dangerous Type of Call for Police Officers?*, WRAL NEWS, Mar. 20, 2023

Bill Hutchinson, *Recent High-Profile Deaths Put Police Body Cameras Under New Scrutiny*, ABC NEWS, Mar. 5, 2023

Lee O. Sanderlin & Cassidy Jensen, *'Flash Bangs' and Restraint: Inside the Arrest of David Linthicum, Accused to Shooting 2 Baltimore County Officers*, THE BALTIMORE SUN, Feb. 17, 2023

Bill Leuders, *'He's Got a Knife – Kill Him!'*, THE BULWARK, Feb. 14, 2023

Chris Vanderveen*, PRONE: 16 Minutes Facedown, Strapped Down, and Handcuffed*, 9 NEWS, Feb. 9, 2023

Mark Scolforo, *Memphis Beating Video Puts Spotlight on First Police Account*, CHATTANOOGA TIMES FREE PRESS, Jan. 29, 2023

David D. Kirkpatrick, *The Police Folklore that Helped Kill Tyre Nichols*, THE NEW YORKER, Jan. 28, 2023

Richard Winton & Noah Goldberg, *'Far Worse than Rodney King': Videos of Tyre Nichols Police Beating Show 'Sadistic' Rage, Experts Say*, THE LOS ANGELES TIMES, Jan. 27, 2023

Stoughton
*Curriculum Vitae*

| | |
|---|---|
| **SELECTED MEDIA INTERVIEWS & APPEARANCES 2020-PRESENT (CON'T)** | Chelsea Donovan, *Multiple TASER Shocks not 'Inappropriate,' Law Enforcement Expect Says After Raleigh Man Shocked, Dies During Arrest*, WRAL NEWS, Jan. 23, 2023 |

Chelsea Donovan, 'Outlet To Heal': Community Gathers at Vigil For Man Who Died in Raleigh Police Custody, WRAL NEWS, Jan. 28, 2023

James Finn, *Police Pursuits in Baton Rouge Killed 4 Last Year.  Families Say Policy Change is Overdue*, THE ADVOCATE, Jan. 7, 2023

Damali Ramire, Taylor Bayly, & Kierstin Foote, *How the Push and Pull of Unions is Hindering Police Reform Around the Country*, USA TODAY, Dec. 18, 2022

Paul LaRocco and & David M. Schwartz, *Two Mentally Impaired Men Died in Suffolk Police Custody.  Investigations Protected the Officers*., NEWSDAY, DEC. 9, 2022

James Finn, *Was a Death in Police Custody Preventable?  Video Raises Questions, Law Enforcement Experts Say*, THE ADVOCATE, Dec. 3, 2022

*Police Officers Indicated in Killing of Colorado Man Who Made Heart Symbols as They Approached*, CBC NEWS, Nov. 24, 2022

Justin Rohrlich, *Los Angeles Deputy Charged with Shooting Suicidal Man Already on the Ground*, DAILY BEAST, Nov. 11, 2022

*The Uvalde Report Revealed Systemic Policing Issues in the U.S.*, ALL THINGS CONSIDERED (NPR), July 24, 2022

Corey Jones, *Stricken Warning Was 'Unnecessary' in Pursuit Policy, Oklahoma Highway Patrol Said. Then 4 People Were Killed in Chases.*, TULSA WORLD, July 30, 2022

Corey Jones*, Trooper in Fatal OHP Pursuit for Stolen Tag had Rifle Cocked Before Spinning Out SUV at Over 100 mph*, TULSA WORLD, July 23, 2022

Vic Ryckaert, *Family Claims Man Died of Positional Asphyxia: 'You Don't Keep Someone Prone After They've Been Handcuffed'*, WRTV ABC NEWC (INDIANAPOLIS), June 22, 2022

Shaila Dean & Mike Baker, *For Families in Uvalde, Laws Limit Paths to Accountability*, THE NEW YORK TIMES, June 2, 2022

Julia Harte & Alexandra Ulmer, *U.S. Police Trainers with Far-Right Ties are Teaching Hundreds of Cops*, REUTERS, May 6, 2022

Anna Krien, *The Death of Kumanjayi Walker*, THE MONTHLY, May 1, 2022

Cassie Buchman & J.J. Bullock, *Family, Attorney Call for Justice in Michigan Police Shooting*, NEWSNATION, Apr. 14, 2022

– 36 –

Stoughton
*Curriculum Vitae*

| | |
|---|---|
| **SELECTED MEDIA INTERVIEWS & APPEARANCES 2020-PRESENT (CON'T)** | Ken Kolker, *Use of Force Expert: GRPD Footage Raises 'Red Flags'*, WLNS, Apr. 13, 2022 |

Ed White, *Questions at the Heart of Patrick Lyoya's Fatal Shooting*, FOX 2 (Detroit), Apr. 15, 2022

Soreath Hok *et al.*, *Bakersfield Police Department Fails to Identify People in Crisis, Thwarting Reform*, KVPR, Apr. 12, 2022

Stephen Fastenau, *Video Released as Family Argues Cops Escalated Deadly Fight with Mentally Ill Columbia Man*, THE POST & COURIER, Mar. 23, 2022

Anthony Ocampo, *Jaxon Sales' Family Says Authorities Ruled His Death An Accidental Overdose Because He Was Gay*, BUZZFEED NEWS, Mar. 18, 2022

Fola Akinnibi & Sarah Holder, *NYC Businesses Hire Off-Duty Police to Blunt Uptick in Violent Crime*, CITYLAB, Feb. 23, 2022

Television Interview, *Fatal Shooting by Deputies into Car Highlights Differences in JPSO, NOPD*, WDSU, Feb. 16, 2022

Indira Eskieva, *Advocates Push for Police Use of Force Legislation in South Carolina*, WCNC, Jan. 31, 2022

Riley Yates, *Is It Cheaper to Hire A New Cop or Pay Huge Overtime Costs?*, NJ.COM, Jan. 24, 2022

Tony Bartelme, *Uncovered: Shining a Light on South Carolina Corruption and Misconduct.*, THE POST & COURIER, Jan. 23, 2022

Heather Bair, *3 Officers Fired After Firing Into Crowd Leaving Football Game, Killing 8-Year-Old*, NEWSWEEK, Jan. 21, 2022

Riley Yates *et al.*, *The True Cost of Policing*, NJ.COM, Jan. 20, 2022

Vinny Vella, *The Sharon Hill Officers Charged with Killing Fanta Bility May Have Acted Against Department Policy*, THE PHILADELPHIA INQUIRER, Jan. 19, 2022

Katja Ridderbusch, *Revolution in den USA: Polizisten lernen jetzt, zu schießen ohne zu töten*, DER TAGESSPIEGEL, Jan. 3, 2022

Connor Sheets & Robert J. Lopez, *Decades Before LAPD Killed Girl, a Wild Shootout Blocks Away Helped Militarize Police*, LOS ANGELES TIMES, Dec. 30, 2021

Akela Lacy, *Two Companies Fight to Corner the Police Body Camera Market*, THE INTERCEPT, Dec. 8, 2021

Timothy Bella, *A Black Teen Died in Custody While Being Restrained Facedown. Now the Prone Position is Again Under Fire*, WASHINGTON POST, Dec. 29, 2021

Stoughton
*Curriculum Vitae*

**SELECTED MEDIA INTERVIEWS & APPEARANCES 2020-PRESENT (CON'T)**

Virginia Bridges, *15 Men Went to Jail on False Charges. Should NC Officer Who Arrested Them Be Charged?*, THE NEWS & OBSERVER, Dec. 23, 2021

Vinny Vella, *Fanta Bility Was Killed by Police. So Why Were Two Teens Charged with Murder?*, PHILADELPHIA INQUIRER, Nov, 21, 2021

Robin Stein et al., *Before the Final Frame: When Police Missteps Create Danger*, THE NEW YORK TIMES, Oct. 31, 2021

Jamie Thompson, *A 'shoot to incapacitate' policy puts Georgia police chief and town in the spotlight*, THE WASHINGTON POST, Oct. 24, 2021

Hayley Smith and Richard Winston, *Shooting of Unarmed Teen by Long Beach School Police Sparks Outrage, Questions*, LOS ANGELES TIMES, Oct. 1, 2021

Gerard Albert, *Cracked Windshield, Confusing Laws Surround Death of Man Shot by Trooper in Horry County*, MYRTLE BEACH ONLINE, Oct. 1, 2021

Richard Winston and Hayley Smith, *'No Justification' for Shooting by Long Beach School Safety Officer, Experts Say*, LOS ANGELES TIMES, Sept. 30, 2021

*The Lawfare Podcast: Seth Stoughton on the Shooting of Ashli Babbitt*, LAWFARE, Sept. 20, 2021

Television Interview, CNN, Sept. 13, 2021

*Real Sports*, HBO, Aug. 25, 2021

Madison Martin, *In Focus: What Experts Think Is and Isn't Working to Help Police in South Carolina*, WMBF NEWS, Aug. 19, 2021

Max Hauptman, *'Warrior Mindset' Police Training Proliferated. Then, High-profile Deaths Put it Under Scrutiny.*, THE WASHINGTON POST, Aug. 12, 2021

Oliva Diaz, *BolaWraps Rope into Lowcountry Police Departments*, THE POST AND COURIER, Aug. 9, 2021

Paul Cuno-Booth, *KSC Security Officer Used Knee on Neck to Restrain Man in 2017 Incident*, SENTINEL SOURCE, Aug. 4, 2021

Shelby Grad, *A Troubling Video Captures L.A. Sheriff's Deputies' Deadly Use of Force*, LOS ANGELES TIMES, Aug. 3, 2021

Leila Miller & Richard Winton, *Video of Deputies Killing Suicidal Man Shows Multiple Failures, Experts Conclude*, LOS ANGELES TIMES, Aug. 3, 2021

Andrew Boryga, *This Was the Biggest, Loudest Cop Union in America. Then Came Jan. 6.*, DAILY BEAST, July 28, 2021

Corey Jones, *Video Shows OHP Pursuit Involving Spike Strips that Ended in Fatal Crash but Wasn't Considered a Use of Force*, TULSA WORLD, July 28, 2021

Stoughton
*Curriculum Vitae*

**SELECTED MEDIA INTERVIEWS & APPEARANCES 2020-PRESENT (CON'T)**

John Kennedy, *'It's a New Day': In the Wake of Floyd Killing, Florida Looks to Change Police Culture*, HERALD-TRIBUNE, July 9, 2021

Will Wright, et al., *Protesters Decry Meck DA Decision to Not Charge Deputy US Marshal in Jennings Killing*, THE CHARLOTTE OBSERVER, July 6, 2021

*Will US Justice System be Tougher on Police After George Floyd Case?*, TIMES OF MALTA, June 27, 2021

Clark Merrefield, *'Defund the Police': What It Means and What the Research Says on Whether More Police Presence Reduces Crime*, THE JOURNALIST'S RESOURCE, June 29, 2021

Corey Jones, *Highway Patrol Protocols for Reporting Serious Encounters and Deadly Force Leave Gaps*, TULSA WORLD, June 27, 2021

Lisa Pickoff-White et al., *Bakersfield Police Broke 31 People's Bones in Four Years. No Officer Has Been Disciplined for It*, LAIST, June 16, 2021

Ion Meyn, *The Invisible Rules that Govern Police Use of Force*, LAWFARE, June 8, 2021*Tennessee Cops Mocked Dying Man's Plea: 'I Can't Breathe'*, BBC NEWS, May 22, 2021

Christoph Koettl & Caroline Kim, *Andrew Brown Jr. Shooting: Videos Cast Doubt on Police Use of Force*, NEW YORK TIMES, May 22, 2021

David Nather*, The Slow Moves to Improve Police Training*, AXIOS, May 18, 2021

Byrhoonda Lyons & Laurel Rosenhall, *Is California's New Police Deadly Force Law Making a Difference?*, CALMATTERS, May 12, 2021

Richard Winton, *Family Wants Federal Inquiry of Alameda Police in Death of Mario Gonzalez*, LOS ANGELES TIMES, May 11, 2021

Noah Robertson, *Policing Has Changed Over the Last Year. Here's How*. CHRISTIAN SCIENCE MONITOR, April 30, 2021

Richard Winston & Lila Seidman, *Outrage Grows as New Video Shows Latino Man Dying after Bay Area Police Pin Him for 4 Minutes*, LOS ANGELES TIMES, Apr. 28, 2021

Maria Iati, *Body-Caemra Video Shows Officer Kneeling on Man for Five Minutes Before He Dies*, WASHINGTON POST, Apr. 28, 2021

David D. Kirkpatrick, *Split-Second Decisions: How a Supreme Court Case Shaped Modern Policing*, THE NEW YORK TIMES, Apr. 25, 2021

Zoe Tillman et al., *Hundreds of People Who Joined the Capitol Riot May Never Face Charges*, BUZZFEED NEWS, Mar. 16, 2021

Eric Westervelt et al., *What Went Wrong: Analysis of Police Handcuffing, Pepper-Spraying 9-Year-Old Girl*, NATIONAL PUBLIC RADIO, Mar. 9, 2021

Stoughton
*Curriculum Vitae*

**SELECTED MEDIA INTERVIEWS & APPEARANCES 2020-PRESENT (CON'T)**

Josh Kelety, *Maricopa County Sheriff's Deputy Cleared After Siccing Dog on Cuffed Inmate in Cell*, PHOENIX NEW TIMES, Feb. 24, 2021

Radio Interview, *Training And Accountability In The Capitol Police Investigations*, ALL THINGS CONSIDERED (NATIONAL PUBLIC RADIO), Feb. 21, 2021

Michael Barajas, *The 'Culture of Violence' Inside Austin's Police Academy*, TEXAS OBSERVER, Feb. 15, 2021

Dustin Patar, *Increasing Trust and Transparency Requires More Than Just Cameras, Says Rcmp Inspector*, NUNATSIAQ NEWS (Iqaluit, Nunavut, Canada), Jan. 27, 2021

Tate Ryan-Mosley, *Police Are Flying Surveillance Over Washington. Where Were They Last Week?*, MIT TECHNOLOGY REVIEW, Jan. 18, 2021

David Z. Morris, *Wht Did Police Fail to Protect the Capital?*, FORTUNE, Jan. 8, 2021

David Travis Bland & John Monk, *What if DC Rioters Were Black, SC Rep Asks. USC, Law Experts Speak on Police Response*, THE STATE, Jan. 8, 2020

Caitlin Byrd, *Charleston Sheriff Cuts Ties With Ice, Calls Policy 'Legal Racial Profiling'*, THE STATE, Jan. 5, 2021

*Watchdog Report on NYPD Protest Response First Step in Long Road to Meaningful Change, Experts Say*, NBC (New York), Dec. 19, 2020

Majlie de Puy Kamp, *The Year Of Reckoning: How 2020 Revealed The Fault Lines In American Policing*, CNN, Dec. 18, 2020

Bert Roughton & Hannah Knowles, *Body Cam Video In Ahmaud Arbery Shooting Raises Familiar Concerns About Unequal Police Treatment*, THE WASHINGTON POST, Dec. 18, 2020

Jordan Smith, *How the Criminal Justice System Fails People with Mental Illness*, THE INTERCEPT, Nov. 26, 2020

Alana Semuels, *As Police Departments Outsource Officer Training to Save Money, Society May Be Paying the Price*, TIME, Nov. 20, 2020

Hady Mawajdeh, *Bodycams Haven't Stopped Police Shootings. Releasing The Footage May Be A Start*, GUNS & AMERICA, Nov. 4, 2020

Christina Maxouris, *These Mental Health Crises Ended in Fatal Police Encounters. Now, Some Communities Are Trying a New Approach*, CNN, Oct. 10, 2020

Rich Lord, *Police Chase Settlement Would Push Lawsuit Payouts Beyond $12 million Since 2009*, PUBLIC SOURCE, Sept. 29, 2020

Michael Wilson, *Did This Police Maneuver Lead to Daniel Prude's Death?*, THE NEW YORK TIMES, Sept. 15, 2020

– 40 –

Stoughton
*Curriculum Vitae*

**SELECTED MEDIA INTERVIEWS & APPEARANCES 2020-PRESENT (CON'T)**

Arthyr Rizer and David Franco, *How 'Warrior Policing' Undermines U.S. Law Enforcement*, THE CRIME REPORT, Sept. 8, 2020

Alanna Durkin Richer and Claudia Lauer, *Were They a Threat? Police Shootings Reignite Legal Debate*, ASSOCIATED PRESS, Aug. 30, 2020

Scottie Andrew, *Why Police Shoot So Many Times to Bring Down a Suspect*, CNN, Aug. 26, 2020

Jamiles Lartey, *Why It's Not So Simple To Arrest The Cops Who Shot Breonna Taylor*, THE MARSHALL PROJECT, Aug. 8, 2020

Margo Gontar, Экс-полицейский о реформе полиции, Voice of America, July 14, 2020

Bill McCarthy, *Ad Watch: Super PAC Attacks Biden in Misleading 'Defund the Police' Ad*, PolitiFact, July 29, 2020

William Finnegan, *How Police Unions Fight Reform*, THE NEW YORKER, July 27, 2020

Candice Norwood, *Can Use of Force Restrictions Change Police Behavior? Here's What We Know*, PBS NEWSHOUR, July 23, 2020

Curtis Bunn, *Lawyers Struggle to Keep Up with Civil Rights Cases Amid America's Racial Reckoning*, NBC NEWS, July 23, 2020

Eric Litke, *Unions Limit Police Accountability, But Moore Claim Exaggerates Impact*, POLITIFACT, JULY 10, 2020

Janet Nguyen, *Police Departments Have Spent Millions in Overtime During Protests*, MARKETPLACE (NATIONAL PUBLIC RADIO), July 3, 2020

Jena McGregor, *Top CEOs Endorse Calls for Police Reform, Another Sign of Momentum on the Issue*, THE WASHINGTON POST, June 30, 2020

Radio Interview, ON POINT, NATIONAL PUBLIC RADIO, June 25, 2020

Television Interview, *Seth Stoughton - "Evaluating Police Uses of Force" and Reimagining the Culture of Policing*, THE DAILY SHOW WITH TREVOR NOAH, June 23, 2020

Ted Hesson *et al.*, V*ideos of Alleged Police Misconduct Went Viral. Then What Happened?*, REUTERS, June 23, 2020

Lynne Peeples, *What the Data Say About Police Bruality and Racial Bias – and Which Reforms Might Work*, NATURE, June 19, 2020

Richard Fausset and Shaila Dewan, *Police Decisions are Scrutinized After Rayshard Brooks' Fatal Encounter*, THE NEW YORK TIMES, June 18, 2020

David Brooks, *The Culture of Policing is Broken*, THE ATLANTIC, June 17, 2020

Stoughton
*Curriculum Vitae*

| | |
|---|---|
| **SELECTED MEDIA INTERVIEWS & APPEARANCES 2020-PRESENT (CON'T)** | Anne Kim, *A Simple Way to Demilitarize the Police*, WASHINGTON MONTHLY, June 17, 2020 |

Rick Rojas and Richard Fausset, *Police Killings Prompt Reassessment of Laws Allowing Deadly Force*, THE NEW YORK TIMES, June 14, 2020

Alana Abramson, *'We as Professionals Are Under Assault.' How The George Floyd Protests Are Shifting Power Away From Police Unions*, TIME, June 11, 2020

Jon Jamp and Scott Calvert, *More Cities Ban Chokeholds, Similar Restrains in Wake of George Floyd Protests*, THE WALL STREET JOURNAL, June 10, 2020

Rajshree Agarwal, *Creating Dialogue in Light of Oppression*, FORBES, June 8, 2020

Alanna Vagianos, *Police Budgets Have Long Been Untouchable. That Could Change.*, HUFFINGTON POST, June 4, 2020

Amelia Thomson-DeVeaux et al., *Why It's Still So Rare for Police Officers to Face Legal Consequences for Misconduct*, FIVETHIRTYEIGHT, June 4, 2020

Television Interview, AMERICA'S NEWS HQ, FOX NEWS, May 31, 2020

Radio Interview, *Minneapolis Police Were Sued a Decade Ago in Similar Restraint Case*, ALL THINGS CONSIDERED, NATIONAL PUBLIC RADIO, May 29, 2020

Patrick Jonsson & Henry Gass, *Despite Furor, Accountability Lags For Police. Here's Why It Might Change*, THE CHRISTIAN SCIENCE MONITOR, May 29, 2020

Scottie Andrew, *The Move Used to Restrain George Floyd is Discouraged by Most Police. Here's Why*, CNN, May 28, 2020

Neil MacFarquhar, *In George Floyd's Death, a Police Technique Results in a Too-Familiar Tragedy*, THE NEW YORK TIMES, May 29, 2020

Radio Interview, *How Police Officers Are Trained To Use Their Guns*, THE TAKEAWAY, NATIONAL PUBLIC RADIO, Mar. 23, 2020

Alanna Vagianos, *Bloomberg's Stop-And-Frisk Was 'State Sanctioned Sexual Assault' of Men of Color*, HUFFINGTON POST, Mar. 2, 2020

Akilah Wise, *The Hidden Cost of 'Stop-and-Frisk'*, BOSTON GLOBE, Feb. 21, 2020

Gaby Del Valle, *Cops are Swarming TikTok to Try to Destigmatize Law Enforcement*, MEDIUM, Jan. 2, 2020