# Exhibit 9

*Declaration of Christy E. Lopez with Attachment A*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA      :                   3:26-CV-00758-SVN

    *Plaintiff*                 :

                             :

    v.                       :

                             :

STATE OF CONNECTICUT, ET AL.   :

    *Defendants.*            :                   JULY 2, 2026

## DECLARATION OF CHRISTY E. LOPEZ

I, CHRISTY E. LOPEZ, DO DECLARE (OR CERTIFY, VERIFY, OR STATE) UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT AND IS BASED UPON MY PERSONAL KNOWLEDGE:

### Background

1.      I am Christy E. Lopez, a Professor of Practice at Georgetown Law, where I teach courses on constitutional criminal procedure, civil rights enforcement, and police accountability. I also am faculty co-director of Georgetown's Center for Innovations in Community Safety. I have been at Georgetown Law since January, 2017.

2.      I worked in the United States Department of Justice ("US DOJ") Civil Rights Division from 1995-2000 and again from 2010-early 2017. I began working in

the DOJ Civil Rights Division in the Special Litigation Section in 1995 as an Honors attorney, and left in 2000 as a senior trial attorney.

3.      Between 2000 and 2010 I was an attorney at a small plaintiffs-side civil rights firm in Washinton D.C., then called Relman & Associates, before leaving to devote my time to monitoring the Oakland Police Department as the court-appointed monitor to United States District Court Judge Thelton Henderson. I monitored implementation of the *Delphine Allen* police consent decree (called the "Negotiated Settlement Agreement"). *See Allen v. City of Oakland*, Docket No. 3:00-cv-04599-WHO (N.D. Ca.). My team and I decided to stop monitoring the consent decree in 2010 and turned over our duties to a new monitoring team.

4.      I returned to the Special Litigation Section of the US DOJ Civil Rights Division in 2010. Shortly after returning, I was promoted to Deputy Chief in the Special Litigation Section. Soon after that, I began leading the newly formed Police Practices Group.

5.      During my time as a Deputy Chief in the Civil Rights Division I led the investigations of many police departments pursuant to the Department's authority under (then) 42 U.S.C. § 14141 (now recodified as 34 U.S.C. § 12601).

## USDOJ's Position on Mandatory Police Identification During the Protests in Ferguson, Missouri

6.      Among the investigations I led under § 14141 was the investigation of the Ferguson Police Department, a law enforcement agency in Ferguson, Missouri. I led this investigation from the day it was initiated, September 4, 2014, until my departure from USDOJ in 2017.

7.      The USDOJ investigation of the Ferguson Police Department was conducted parallel to large scale ongoing street protests. My recollection is that these protests were almost entirely peaceful. but that, in some instances, a few individuals caused significant property damage. I remember in particular that a convenience store and gas station called "QuikTrip" was burned down, along with a local beauty supply store and an auto parts store. Several other buildings were burned down in Ferguson and surrounding areas. These protests, even when peaceful, were repeatedly  met with significant uses of force by law enforcement, leading to injuries of both protestors and officers, and several lawsuits against law enforcement agencies and officers, including against the Ferguson Police Department.

8.      I recall also that during this time two police officers from the St. Louis area were shot while policing the protests. My recollection is that the injuries were not life threatening, but of course harmful and frightening, nonetheless. I recall that during this time there were also publicly reported attempts by some individuals and groups to "dox" individual law enforcement officers.[1] I understand "doxing" to mean discovering personal information about individuals (e.g. phone number, social media profile, social security number, etc.) and sharing this information online to facilitate unlawful harassment of those individuals.

9.      As documented in the publicly-available letter noted below, during the investigation, residents of the Ferguson area told me, and others on my team

---

[1] Bever, *Amid Ferguson protests, hacker collective Anonymous wages cyberwar*, Washington Post (Aug. 13, 2014), https://www.washingtonpost.com/news/morning-mix/wp/2014/08/13/amid-ferguson-protests-anonymous-hacktivists-wage-cyberwar/.

investigating the Ferguson Police Department, that some Ferguson Police officers were removing or covering the nameplates on their uniforms.

10.     Although I very much support police accountability, I do not see doxing as a legitimate accountability effort and am against it. My understanding, however, is that officers not identifying themselves via nameplates or otherwise provides marginal, at best, protection against doxing. The names of a law enforcement agency's officers can be readily obtained from sources other than officer nameplates, as can other personal, and even private, information. I do not recall any incidents of Ferguson officers being doxed during the Ferguson protests at all, much less being doxed by using information available only from their nameplates or visage. Further, doxing can be addressed via the set of laws prohibiting stalking, online harassment, etc.

11.     In contrast to the marginal impact it has on preventing doxing, officers hiding their identities has a significant negative impact on police legitimacy and accountability. Based on my experience, many members of the public, especially those concerned about being subjected to police misconduct, are concerned that when officers conceal their identities it makes it more difficult to identify police officers who violate law or policy, and thus to hold them accountable. Based on my experience I also believe concealing their own identity may embolden some officers to violate law or policy. I am aware that in both lawsuits and internal investigations, identifying the officer who committed the wrongdoing at issue can be a barrier to accountability. Courts sometimes dismiss lawsuits against police officers because plaintiffs are

unable to identify the individual who committed the violation. Likewise it is not uncommon for administrative investigations to be closed if the officer who allegedly committed the wrongdoing cannot be identified. My years as a civil rights attorney focused on police accountability has also taught me that police lose legitimacy when they are viewed as unwilling to openly perform their law enforcement duties, and to follow the rules while doing so.

12.     On September 23, 2014, I, on behalf of the USDOJ, sent a letter to Ferguson Police Chief Thomas Jackson, asking him to immediately begin enforcing the Fergusion Police Department policy that required officers to identify themselves by wearing name tags.

13.     As I wrote in that letter, which was made public at the time and is attached to this declaration as Attachment A:

> *Officers wearing name plates while in uniform is a basic component of transparency and accountability. It is a near-universal requirement of sound policing practices and required under some state laws. Allowing officers to remain anonymous when they interact with the public contributes to mistrust and undermines accountability. The failure to wear name plates conveys a message to community members that, through anonymity, officers may seek to act with impunity. Further, the lack of name plates makes it difficult or impossible for members of the public to identify officers if they engage in misconduct, or for police departments to hold them accountable.*

14.     The requirement that Ferguson Police Department officers wear nameplates or nametags as part of their standard uniform, in order to allow members of the public to identify offices with whom they interact, was later included in the consent decree negotiated between the USDOJ and the City of Ferguson and entered

as a court order on April 19, 2016. *See United States of America v. City of Ferguson*, Docket No. 4:16-cv-000180-CDP, ECF No. 41 (electronically available at: https://www.justice.gov/d9/ferguson_consentdecree_4-19-16.pdf). This requirement, included at paragraph 365 of the consent decree, also requires that Ferguson Police Department supervisors inspect personnel at roll call to ensure that officers are complying with this requirement, and that failure to wear a nameplate or nametag, or a supervisor's repeated failure to inspect whether officers are wearing nameplates or nametags, requires investigation and may result in discipline.

15.    This provision of the consent decree was retained in the "Amended and Restated Consent Decree" filed on November 15, 2018.

16.    To my knowledge, this provision requiring Ferguson Police Department Officers to wear nameplates or nametags remains in effect today.

## DECLARATION UNDER PENALTY OF PERJURY
## PURSUANT TO 28 U.S.C. § 1746

I, Christy E. Lopez, declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct to the best of my belief and based upon my personal knowledge.  Executed on July 2, 2026.

/s *Christy E. Lopez*

Christy E. Lopez, *Esq.*,

# Attachment A

**U.S. Department of Justice**

Civil Rights Division

CL:JV:CH:CB:ES:MC
DJ: 207-42-6

*Special Litigation Section - PHB*
*950 Pennsylvania Ave, NW*
*Washington DC 20530*

September 23, 2014

Chief Thomas Jackson
Police Chief
City of Ferguson
222 S. Florissant Road
Ferguson, MO 63135

Re:     Ferguson Police Department Investigation: Officer Name Plates

Dear Chief Jackson:

When we met at the outset of our investigation, we noted that, where appropriate, we would inform you of any concerns that we discovered during our investigation that warrant your immediate attention. During our time in Ferguson, we have observed that some Ferguson police officers were not wearing name plates. We also have heard numerous complaints that Ferguson police officers do not wear name plates, indicating that our observations are not aberrational.

We have reviewed Ferguson Police Department's General Order 214.00, *Uniforms, Equipment, and Appearance* (January 3, 2012), which indicates that officers are issued "name plates" with their first initial and last name, and requires that officers wear a "name tag," bearing their first initial and last name on both their uniform shirt and jacket. This policy also requires that supervisors inspect personnel daily, and periodically require personnel to produce all Department-issued property for inspection. Officers found not in conformity with this policy may be subject to disciplinary action.

Officers wearing name plates while in uniform is a basic component of transparency and accountability. It is a near-universal requirement of sound policing practices and required under some state laws. Allowing officers to remain anonymous when they interact with the public contributes to mistrust and undermines accountability. The failure to wear name plates conveys a message to community members that, through anonymity, officers may seek to act with impunity. Further, the lack of name plates makes it difficult or impossible for members of the public to identify officers if they engage in misconduct, or for police departments to hold them accountable.

2

We urge you to explain to officers the importance of General Order 214.00 and to begin enforcing it immediately. Please let us know at your earliest convenience whether you intend to do so.

Our investigation is ongoing and we will provide a complete report of our findings when it is complete. We are writing this interim letter regarding this specific, easily remedied problem, to allow the City of Ferguson and its police department to immediately correct a practice that is at odds with principles of constitutional policing, and that engenders deep distrust among the very people whose trust police most need to effectively fight crime and protect public safety.

Please do not hesitate to call me if you have questions.

Sincerely,

Christy E. Lopez
Deputy Chief
Special Litigation Section
Civil Rights Division
United States Department of Justice

cc:    John Shaw
       Ferguson City Manager

       Stephanie Karr
       City Attorney