UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Civil Action No. |
| | : | 3:26-cv-758 (VDO) |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT; NED | : | July 23, 2026 |
| LAMONT, Governor of Connecticut, in his | : | |
| official capacity; WILLIAM TONG, | : | |
| Attorney General of Connecticut, in his | : | |
| official capacity; PATRICK GRIFFIN, | : | |
| Chief State's Attorney of Connecticut, in | : | |
| his official capacity; and ELIOT D. | : | |
| PRESCOTT, Deputy Chief State's | : | |
| Attorney, Inspector General, in his official | : | |
| capacity, | : | |
| Defendants. | : | |

**DECLARATION OF SAIFULLAH KHAN IN SUPPORT OF MOTION TO INTERVENE**

I, Saifullah Khan, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of eighteen and understand the obligation of an oath. I make this declaration in support of my motion to intervene as a defendant in this action. The facts stated here are true of my own personal knowledge, except where I state that they are on information and belief, and as to those facts, I believe them to be true.

2. I am a citizen of Afghanistan. I first came to the United States in 2011, as a scholarship student at The Hotchkiss School, and I began my studies at Yale University in 2012; my most recent entry into the United States, in January 2015, was in F-1 student status. I have lived in Connecticut ever since I first arrived. I live in New Haven. My wife is a United States citizen.

3. I applied for asylum in the United States in June 2016. In 2018, after a trial, a Connecticut jury acquitted me of the charges that had interrupted my studies. The record ICE

1

prepared of my May 9, 2025 arrest acknowledges both facts: it states that "KHAN was acquitted of those charges," and, in a separate entry, "Subject has no criminal history."

4. On March 21, 2025, through counsel, I filed an action in this District seeking to compel a decision on my asylum application, which by then had been pending for nearly nine years. *Khan v. Noem*, No. 3:25-cv-471 (D. Conn.). On April 3, 2025, U.S. Citizenship and Immigration Services closed my asylum case and issued a Notice to Appear, placing me in removal proceedings.

5. On May 9, 2025, I appeared, as directed, for a hearing in those removal proceedings before Immigration Judge Ted Doolittle on the sixth floor of the Abraham A. Ribicoff Federal Building, 450 Main Street, Hartford. I came to court voluntarily, as I always have.

6. When I left the hearing and walked into the elevator area, men in plain clothes moved toward me. I did not know who they were. I saw no uniforms and no badges that I recognized. I was terrified. I turned and ran back in the direction of the courtroom I had just left, yelling for the judge. I was struck from behind by Taser probes and shocked repeatedly—seven discharges in all, as the administrative claim I later presented to ICE recounts—until my muscles seized and I could no longer control my body. I was then handcuffed and arrested.

7. Immigration Judge Doolittle came out of his courtroom and questioned the officers about what they were doing; I heard officers tell him, in substance, not to interfere. Later, while I was in custody, officers spoke to me of the judge as a "traitor" for challenging them. Within about an hour of the tasing, I began to experience symptoms in my chest, and emergency medical services were called. I was taken to Hartford Hospital and evaluated that evening.

8. ICE then moved me out of Connecticut—first to a facility in Plymouth, Massachusetts, and then to the Moshannon Valley ICE Processing Center in Philipsburg, Pennsylvania, hundreds of miles from my wife, my home, and my lawyers.

9. On May 22, 2025, Immigration Judge Donald R. Ostrom heard my request for release on bond. At that hearing, the government argued that my attempt to run from armed men who had not, to my understanding, identified themselves showed that I was dangerous. On May 27, 2025, the judge ordered me released on a $7,500 bond. I was not released until the evening of Friday, May 30, 2025—three more days in detention after the release order. I have since been informed and believe that no stay of the release order was in effect during those three days, and that the government's own later filing answered "No" to the question whether it had invoked the automatic-stay provision.

10. I first sought treatment with my psychologist in September 2023, and I returned to treatment in July 2025, two months after these events. My current diagnosis, which my psychologist has stated in writing, is post-traumatic stress disorder. I remain in treatment. What happened on May 9, 2025 is with me every day, and entering a federal building—something my immigration case requires of me—now takes deliberate effort.

11. Since these events, the United States has granted me asylum. My application for adjustment of status to lawful permanent residence (Form I-485) is pending, and no removal proceedings are pending against me. Because my application is pending, I must continue to appear before federal immigration authorities in Connecticut—for interviews, biometrics appointments, and any proceedings they schedule—in the same kinds of federal buildings where I was tased.

3

12. On January 8, 2026, I submitted a Freedom of Information Act request to ICE for its records of the May 9, 2025 incident; to date, no records have been produced to me. On February 2, 2026, through counsel, I presented an administrative claim to ICE on Standard Form 95 under the Federal Tort Claims Act, seeking $70,000,000; that claim remains pending.

13. I have commenced a civil action under Section 1 of Public Act No. 26-14 in the Connecticut Superior Court, Judicial District of Hartford, against officers involved in the events of May 9, 2025. *Khan v. Uccello*, No. HHD-CV-26-6228240S. That action is pending.

14. I understand that in this case the United States is challenging parts of Public Act No. 26-14 and has reserved the right to challenge other parts in the future, and that neither the United States nor the State defendants holds a claim under Section 1 or has addressed that section in their filings. My Superior Court action depends on Section 1. I ask to intervene so that a person who actually holds a claim under the Act—and whose case may be decided, as a practical matter, by what happens here—can defend it as a party.

15. If the Court permits me to intervene, I will take the case as I find it. I do not presently seek any discovery of my own and will propound none without the Court's permission; I do not seek any change to the schedule or any relief beyond the denial of the relief the United States seeks; and I have authorized my counsel to accept the conditions stated in my motion as terms of intervention.

16. True and accurate copies of the following documents, cited in the accompanying memorandum of law, are submitted with this motion: as Exhibit B, the Form I-213 record prepared by ICE concerning my May 9, 2025 arrest; as Exhibit C, the Standard Form 95 administrative claim presented to ICE on February 2, 2026; as Exhibit D, a Hartford Courant article of May 22, 2025; as Exhibit E, a CT Insider article of May 30, 2025; as Exhibit F,

excerpts of the government's June 6, 2025 filing appealing my bond order—its Form EOIR-26 notice of appeal and the cover page of its simultaneous emergency motion for a discretionary stay; and as Exhibit G, the summons and complaint in my Superior Court action, *Khan v. Uccello*, as served. Each is a true and accurate copy of the document, or identified excerpt of the document, it purports to be. The exhibits are compiled in a single, consecutively paginated Appendix filed with the motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed at _____*Saif*_____, Connecticut, on July 23, 2026.

_____
Saifullah Khan

5