UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


*United States v. State of Connecticut, et al.*
Civil Action No. 3:26-cv-758 (VDO)


# APPENDIX OF EXHIBITS B THROUGH G
## TO THE MEMORANDUM OF LAW IN SUPPORT OF
## SAIFULLAH KHAN'S MOTION TO INTERVENE


**INDEX**

| | | |
|---|---|---|
| **Exhibit B** | Form I-213, Record of Deportable/Inadmissible Alien (May 9, 2025) (redacted per Fed. R. Civ. P. 5.2) | App. 2 |
| **Exhibit C** | Standard Form 95, presented to ICE February 2, 2026 (excerpts; redacted per Fed. R. Civ. P. 5.2) | App. 7 |
| **Exhibit D** | E. Mahony, Hartford Courant (May 22, 2025) | App. 10 |
| **Exhibit E** | J. Eaton, CT Insider (May 30, 2025) (excerpts) | App. 17 |
| **Exhibit F** | DHS Notice of Appeal of Bond Order and Emergency Stay Motion (June 6, 2025) (excerpts) | App. 22 |
| **Exhibit G** | Summons and Complaint, Khan v. Uccello (as served) | App. 26 |

Pages of this Appendix are numbered consecutively App. 1 through App. 40
and are cited in the accompanying memorandum as "App. __."


**App. 1**

# EXHIBIT B

Form I-213, Record of Deportable/Inadmissible Alien, with continuation pages (May 9, 2025) (excerpted from DHS's May 22, 2025 evidence submission in Mr. Khan's bond proceedings)

**App. 2**

U.S. Department of Homeland Security          Subject ID : 398621948          **Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|
| KHAN, SAIFULLAH JUMA | | | | M | BLK | BRO | LGT |

| Country of Citizenship | Passport Number and Country of Issue | File Number HAR2505000162 208 484 528 | Height 72 | Weight 200 | Occupation |
|---|---|---|---|---|---|
| AFGHANISTAN | | | | | |

| U.S. Address | | Scars and Marks |
|---|---|---|

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number CJCREKD5A | Single ☐ Divorced ☐ Married ☒ Widower ☐ Separated ☐ |
|---|---|---|---|
| 01/13/2015 Unknown Time, JFK, F1-Student | | | |

| Number, Street, City, Province (State) and Country of Permanent Residence | | Method of Location/Apprehension NCA |
|---|---|---|

| Date of Birth REDACTED R.5.2          Age: 32 | Date of Action 05/09/2025 | Location Code HAR/BOS | At/Near See I-831 | Date/Hour 05/09/2025 19:39 |
|---|---|---|---|---|

| City, Province (State) and Country of Birth AFGHANISTAN | AR ☒ | Form : (Type and No.) Lifted ☐ Not Lifted ☐ | By See Narrative |
|---|---|---|---|

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|

| Immigration Record NEGATIVE | Criminal Record |
|---|---|

| Name , Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children None |
|---|---|

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|

| Monies Due/Property in U.S. Not in Immediate Possession None Claimed | Fingerprinted? ☒ Yes ☐ No | Systems Checks | Charge Code Words(s) See Narrative |
|---|---|---|---|

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary Hr | Employed from/to |
|---|---|---|---|

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FIN: 1121599625                Left Index fingerprint                Right Index fingerprint

Subject Health Status
----------------------

Current Administrative Charges
--------------------------------
05/09/2025 - 237a1B - NONIMMIGRANT OVERSTAY

   ...(CONTINUED ON I-831)

| Alien has been advised of communication privileges  05/09/2025 (Date/Initials) | N 8197 UCCELLO Deportation Officer (Signature and Title of Immigration Officer) |
|---|---|

| Distribution: File | Received: (Subject and Documents)  (Report of Interview) Officer: N 8197 UCCELLO on: May 9, 2025                          (time) Disposition: Warrant of Arrest/Notice to Appear Examining Officer: HARTNEY, T 7252 |
|---|---|

Form I-213 (Rev. 08/01/07)

**App. 3**

U.S. Department of Homeland Security                    Continuation Page for Form I-213

| Alien's Name<br>KHAN, SAIFULLAH JUMA | File Number<br>208 484 528<br>Event No: HAR2505000162 | Date<br>05/09/2025 |
|---|---|---|

```
Previous Criminal History
-------------------------
Subject has no criminal history

ARRESTING AGENTS
----------------
N 8197 UCCELLO
S 8526 PALUMBO
C 7276 JONES
GEORGE LEWIS
D06020 MOORE

AT/NEAR
-------
Hartford, CT

Record of Deportable/Excludable Alien:
--------------------------------------
ENCOUNTER:
Saifullah Juma KHAN, was initially encountered by U.S. Immigration and Customs Enforcement
(ICE), Enforcement and Removal Operations (ERO), Hartford, CT, in 2016, as a result of his
criminal arrest, where he was charged with Sexual Assault in the First Degree, in violation
of C.G.S./P.A. No: 53a-70(a)(1)) and Sexual Assault in the Second Degree, in violation of
C.G.S./P.A. No: 53a-70(a)(3)).  Those charges have since been dropped.

Since then, KHAN has seemingly intentionally avoided ICE apprehension on numerous occasions
by not following through with planned meetings with ICE Officers and moving addresses
multiple times.

On May 5, 2025, ICE, Homeland Security Investigations (HSI), New Haven, Connecticut,
referred this case to Hartford ERO.

ARREST:
On May 9, 2025, at approximately 1440, Deportation Officer Uccello N, Deportation Officer
Palumbo S, Deportation Officer Jones C, Deportation Officer Lewis G, and Supervisory
Detention and Deportation Officer became aware that KHAN was at the A.A. Ribicoff federal
building, at 450 Main St, Hartford, Connecticut. ICE Officers were aware that KHAN was in
the building for his EOIR hearing, and waited for the hearing to finish.  ICE Officers were
waiting for KHAN at the elevator foyer of the 6th floor, when KHAN exited EOIR and walked
into the elevator foyer.  Deportation Officer Uccello approached KHAN, informed him he is an
officer with U.S. Immigration and Customs Enforcement, and showed KHAN his badge.  KHAN then
yelled "NO!" and immediately fled on foot back towards EOIR.  KHAN ignored repeated commands
of, "STOP!" and "POLICE!" While ignoring Officer's commands, KHAN was repeatedly yelling
"JUDGE!" and running towards a known to be occupied courtroom.  As KHAN approached the
courtroom door, Officer Uccello feared for the safety of the judge and any other persons
inside the courtroom, based on KHAN's repeatedly yelling "JUDGE!" Officer Uccello then aimed
his taser at KHAN's back and initiated a probe deployment, striking KHAN with ineffective
deployments, as multiple darts hit only his suit jacket and another hit his belt, before
striking him with effective deployments in the upper right portion of his back and the lower
right portion of his back. It appeared that neuromuscular incapacitation (NMI) was then
achieved and Officer Uccello immediately stopped firing. KHAN fell to the ground as Officer
Uccello and Officer Palumbo attempted to catch him.  Officers were then able to secure KHAN
by applying handcuffs to with his hands behind his back, without further incident. Probes
were removed immediately on scene, by Officer Lewis, who is an ICE Tactical Medic. KHAN had
```

| Signature<br>N 8197 UCCELLO | Title<br>Deportation Officer |
|---|---|

2 of 4 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

App. 4

U.S. Department of Homeland Security                    Continuation Page for Form I-213

| Alien's Name | File Number | Date |
|---|---|---|
| KHAN, SAIFULLAH JUMA | 208 484 528<br>Event No: HAR2505000162 | 05/09/2025 |

no visible injuries aside from probe deployment locations ▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ KHAN was then escorted to Hartford ERO for
processing.  At approximately 1515, KHAN requested medical attention, claiming issues with
his "heart."  Officers immediately contacted local Emergency Medical Services (EMS). Local
EMS responded approximately five minutes later. KHAN was transported to Hartford Hospital in
Hartford, Connecticut, and evaluated by hospital staff.  KHAN returned to Hartford ERO at
approximately 2215, after receiving a post tasing evaluation at the hospital, with no known
medical issues identified by hospital staff.

ALIENAGE:
Subject claims to be a native and citizen of Afghanistan, via previously filed immigration
applications.

DERIVATIVE CITIZENSHIP DATA:
Review of U.S. government indices provides no derivative citizenship data for subject.  No
evidence of lawful permanent residency was located for the subject.

ENTRY DATA:
On January 3, 2015, U.S. Customs and Border Protection admitted KHAN to the U.S., as an F-1,
student, with authorization to remain in the U.S. for the duration of his status.

PURPOSE OF ENTRY/ IMMIGRATION DOCUMENTS:
KHAN entered the U.S. to attend school.  KHAN refused to answer any questions.

IMMIGRATION HISTORY:
On January 3, 2015, U.S. Customs and Border Protection admitted KHAN to the U.S., as an F-1,
student, with authorization to remain in the U.S. for the duration of his status.

On November 13, 2015, KHAN's F-1 student status was terminated due to Yale suspending him,
which was due to his criminal arrest for sexual assault.  KHAN's termination of status
started his required window of time, to depart the U.S.  KHAN failed to depart the U.S. as
required.

On June 29, 2016, KHAN filed a Form I-589, Application for Asylum and for Withholding of
Removal, with USCIS.

On April 3, 2025, USCIS closed their asylum case and issued KHAN a Form I-862, Notice to
Appear.

On April 30, 2025, KHAN filed a Form I-130, Petition for Alien Relative, with USCIS.  This
application is currently pending.

May 8, 2025, KHAN filed a Form I-829, Application for Temporary Protected Status.  This
application is currently pending.

On May 20, 2025, Temporary Protected Status for Afghanistan is scheduled to end.

CRIMINAL HISTORY:
FBI Number: CJCREKD5A
State Criminal Number: CT01348912

On November 12, 2015, the New Haven Police Department arrested KHAN and charged him with
Sexual Assault in the First Degree, in violation of C.G.S./P.A. No: 53a-70(a)(1)) and Sexual

| Signature<br>N 8197 UCCELLO | Title<br>Deportation Officer |
|---|---|

3 of 4 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

App. 5

U.S. Department of Homeland Security

Continuation Page for Form I-213

| Alien's Name | File Number | Date |
|---|---|---|
| KHAN, SAIFULLAH JUMA | 208 484 528<br>Event No: HAR2505000162 | 05/09/2025 |

Assault in the Second Degree, in violation of C.G.S./P.A. No: 53a-70(a)(3)).  KHAN was acquitted of those charges.

DOCUMENTS TO BE AND/OR REMAIN IN THE U.S.:
None.

MILITARY SERVICE:
Subject refused to answer questions.

CHILD CARE /CUSTODY ISSUE:
Subject refused to answer questions.

GANG AFFILIATION:
Subject refused to answer questions.

MEDICAL HISTORY:
Subject refused to answer questions.

FEAR:
Subject refused to answer questions.

RECOMMENDATIONS / DISPOSITION:
The subject appears amenable to removal from the United States pursuant to:
Section 237(a)(1)(B) of the Immigration and Nationality Act (Act), as amended, in that after admission as a nonimmigrant under Section 101(a)(15) of the Act, you have remained in the United States for a time longer than permitted, in violation of this Act or any other law of the United States.

Based on the subject's attempts to flee arrest, engaging ICE Officers in foot pursuit, and forcing ICE Officers to tase him to get him in custody, and to protect everyone inside an active courtroom, the subject should be considered a flight risk.  Based on the subject's multiple sexual assault allegations from multiple different victims, it is recommended the subject be considered a public safety threat.  Based on the identified factors, it is recommended the subject be held in custody until the conclusion of his removal proceedings. OPLA will be filing a Motion for Change of Venue to Boston, based on his housing location of Plymouth.

Other Identifying Numbers
--------------------------
ALIEN-208484528
State Criminal Number/State Bureau Number-CT01348912   (UNITED STATES)

| Signature<br>N 8197 UCCELLO | Title<br>Deportation Officer |
|---|---|

4 of 4 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

App. 6

# EXHIBIT C

Standard Form 95, Claim for Damage, Injury, or Death, with Declaration of
Express Authority (presented February 2, 2026) (excerpts)

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. Immigration and Customs Enforcement, Office of the Principal Legal Advisor, District Court Litigation Division, 500 12th Street, SW, Mailstop 5900, Washington, DC 20536 | Saifullah Khan, 17 Court St., New Haven, CT 06511 Personal Representative: Alexander T. Taubes, Esq., 470 James St., Ste 007, New Haven, CT 06513 |

| 3. TYPE OF EMPLOYMENT | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN   REDACTED R.5.2 | Married | 5/9/25 Friday | 2pm |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

On May 9, 2025, unidentified plain-clothes ICE agents Tased Saifullah J. Khan seven times outside an immigration hearing at the Ribicoff Federal Building in Hartford, Connecticut, causing injuries requiring medical attention. On May 27, 2025, an immigration judge ordered his release on bond; he remained detained in defiance of that order.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

not applicable

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Claimant Saifullah J. Khan sustained injuries from seven Taser deployments, requiring medical attention. Full extent of physical and psychological injuries under continuing evaluation; claimant reserves the right to supplement.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Ted Doolittle, former IJ | unknown |
| Naomi Freeman | 17 Court St., New Haven, CT 06511 |

12. (See instructions on reverse).   AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| | 70,000,000 | | 70,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| | 860-921-3626 | 2/2/26 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

**App. 8**

## DECLARATION OF EXPRESS AUTHORITY

I, Saifullah Khan, Date of Birth REDACTED R.5.2 by declare under penalties of perjury pursuant to 28 U.S.C. § 1746 that my attorney, Alexander T. Taubes, Esq., is my duly authorized agent and legal representative to submit my claim to the U.S. Immigration and Customs Enforcement. This declaration is intended to establish that Attorney Taubes has express authority to act on my behalf. His title is my Attorney and Legal Representative.

Signed: _____     Date: __02/02/2026__

App. 9

# EXHIBIT D

E. Mahony, *New Details Emerge on ICE Using Taser to Grab Ex-Yale Student*,
Hartford Courant (May 22, 2025)

NEWS > CONNECTICUT NEWS

# New details emerge on ICE using Taser to grab ex-Yale student. Lawyer says CT judge called 'traitor'

The man's attorney said he was told ICE agents called a Hartford judge a 'traitor'



Kenneth R. Gosselin / Hartford Courant



By **EDMUND H. MAHONY** | emahony@courant.com | Hartford Courant
PUBLISHED: May 22, 2025 at 8:05 PM EDT | UPDATED: May 23, 2025 at 10:25 AM EDT

Getting your **Trinity Audio** player ready…

A former Yale student detained recently by immigration agents in Hartford's federal courthouse received medical attention after being hit seven times with Tasers by immigration agents who then rebuked a judge who tried to intervene, according to information presented in court Thursday.

New details of the May 9 detention of Afghan refugee and former student Saifullah Khan by Immigration and Customs Enforcement agents became public Thursday when Khan argued for release on bond at a federal immigration court in Chelmsford, Mass.

The Department of Homeland Security said Khan is dangerous and a flight risk — in part because he tried to run away from the plain clothes ICE agents who he said failed to identify themselves before firing Tasers at him on the sixth floor of the secure federal building on Main Street in Hartford.



**Kenneth R. Gosselin / Hartford Courant**
The Abraham A. Ribicoff Federal Building and Courthouse on Main Street, Hartford.

U.S. Immigration Judge Donald R. Ostrom did not immediately rule on bond. Ostrom said he was taking the matter "under advisement" and would issue a written decision, departing from his practice in other cases Thursday in which he issued rapid fire decisions on release from the bench.

Hartford attorney Gregory C. Osakwe, who represented Khan, argued for bond, disputing government arguments about danger and flight, while providing more information about how ICE agents made the arrest.

Osakwe said Khan, who had a pending asylum application, had been summoned to appear in immigration court and was leaving Judge Ted Doolittle's courtroom after the hearing was continued to a future date.

"When he was exiting the court on the sixth floor in Hartford, ICE officials approached him," Osakwe said. "There was no reason to arrest him. They had the authority, but it was highly irregular because he had an affirmative application which was pending.

"They didn't identify themselves. They sought to grab him. And then he, not knowing who they were, started running back to the court and he was

"As a matter of fact, the ICE officers subsequently told (Khan) that the judge was a traitor for coming out to challenge them," Osakwe said.

He said Khan may have suffered a concussion and received a medical examination.

No one could be reached at Hartford's ICE office Thursday afternoon.

Osakwe also disputed claims by the Department of Homeland Security that it has not been able to locate Khan for years. Among other things, he told the court the department has mailed immigration forms to his apartment.

Khan, who is 32, is married to a U.S. citizen and lives in New Haven. He became well-known in legal circles a decade ago because of a sexual assault accusation that resulted in his expulsion from Yale and a defamation suit he filed against university in retaliation after a jury acquitted him of the sexual assault charges.

He was born in a Pakistani refugee camp after his family was forced from Afghanistan by the Taliban. He was admitted to Yale as a scholarship student and was on track to graduate in 2016 until the expulsion.

On Halloween night in 2015, a female student who lived in Khan's dormitory accused him of sexually assaulting her. He said they spent the night together and engaged in consensual sex after attending a party and a performance by the Yale Student Orchestra earlier in the evening.

Khan denied the sexual assault allegation. But he was ultimately expelled after an inquiry by Yale's University-Wide Committee on Sexual Misconduct.

After his exoneration in court, Khan sued Yale and his accuser, asserting that he had been treated unfairly by Yale's in-house disciplinary process. Two appeals courts agreed and Yale has not succeeded in winning dismissal of the defamation suit.

Homeland Security attorney Alexandra Wolff, who argued against bond, said Khan also was the subject of a protective order in the state of Washington in 2018. There was no criminal charge in that matter, which arose from an intimate relationship.

Wolff argued that the Yale accusation and the Washington order are interactions with law enforcement that support the DHS argument that Khan is dangerous. She said the department has not been able to confirm Khan was acquitted of the Yale charges because the transcript of the trial resulting in exoneration has been partially sealed to hide the accuser's identity.

"It does appear that the respondent was acquitted of those charges," Wolff said. "It is DHS's position that DHS has not been able to independently verify the acquittal because the case was sealed."

"Additionally the department posits that there are multiple ways to be a danger to the community and not just through criminal convictions or interactions with law enforcement," Wolff said.

Wolff was referring specifically to a rebuke of Khan by the U.S. District judge presiding over the defamation suit. After the court denied an attempt by Khan to unseal the identity of his accuser, he posted on social media that he had been "gagged." The court said the post was an encouragement to others to publicly identify the accuser in violation of the confidentiality order.

DHS considers Khan a flight risk because, in spite of the publicity that has accompanied his suit against Yale, the department had been unable to locate him for years, Wolff said.
.
"The respondent has been unable to be found for the last several years," Wolff said. "I can proffer as a representative of DHS that ICE has been attempting to locate this respondent since 2016 and they have been unable to locate him. Now a government agency being unable to locate someone should be significant evidence of flight."

Osakwe said claims that Khan could not be found are untrue.

He said Khan has lived at his current address for seven years and his U.S. wife has submitted documentation of their marriage to immigration authorities as part of the couple's argument against deportation. Their address can be found in forms documenting the marriage, as well as other correspondence — including forms and notifications immigration authorities have addressed to Khan.

"When counsel proffers that they have been trying to locate him and have been unable to do that, it is factually inaccurate," Osakwe said. "He has not lived at any other address for the past seven years. They have his address. The only time they made an effort to detain him was when he had come to the court."

Osakwe was critical of how Khan was detained.

"It is very unfortunate that officers of the United States government would do that," he said. "It is a pattern that they are doing right now to intimidate people. That officers would make derogatory statements to an immigration judge …is also very unfortunate."

Khan, who appeared at the hearing remotely by video link wearing a green prison uniform from a detention center in Plymouth, Mass. said at the end of the hearing that he will comply with any conditions of release.

"I have been attending court appearances in the criminal matter and the civil matters and this one voluntarily over the past nine years," he said.

**2025** ⟩ **May** ⟩ **22**

# EXHIBIT E

J. Eaton, Ex-Yale Student Reportedly Tased by ICE Released from Custody, CT
Insider (May 30, 2025) (excerpts of web edition)

1/14/26, 9:51 PM                    Ex-Yale student reportedly tased by ICE released from custody: Lawyer

**Trending:**  Macy's layoffs  |  Anthony: UConn struggles, beats Seton Hall  |  Azzi Fudd's streak  |  (

NEWS

 

By **Joshua Eaton**, *Staff Writer*
May 30, 2025

   

U.S. Immigration and Customs Enforcement released 32-year-old Afghan immigrant Saifullah J. Khan from the Moshannon Valley ICE Processing Center, in Philipsburg, Pennsylvania Friday evening, said attorney Mario Cerame, who is representing Khan in a separate civil case.

**ADVERTISEMENT**
Article continues below this ad

"My client informed me he was bonded out this evening," Cerame told CT Insider via text.

Cerame declined to comment further, citing a gag order in the civil case, which he said he and his client are challenging.

ICE's online detainee locator still showed Khan at the Pennsylvania facility as of Friday night.



### Take control of your search results

Make CT Insider a preferred source on Google to see more of our journalism when you search.

Add Preferred Source

The Hartford Courant reported Thursday that ICE was holding Khan in custody even after he was granted release on May 27 by U.S. Immigration Judge Donald Ostrom, of the immigration court in Chelmsford, Massachusetts, on a $7,000 bond.

## More For You

CT Democrats urge Lamont to tap $332M contingency fund for state food aid


Watch: Two bobcats seen playing together in Middletown


Nationwide recall issued for 14 flavors of Sea Moss Gel. Here's the list


Verizon, T-Mobile and AT&T service returns after widespread outages


70% of voters oppose U.S. military involvement in Iran, Quinnipiac Poll shows


Federal officials moved Khan to Massachusetts before moving him to Pennsylvania, the Courant reported. There are no ICE detention facilities in Connecticut.

The Courant previously reported on a May 22 bond hearing before Ostrom at which Khan's immigration attorney, Gregory C. Osakwe, laid out dramatic details of Khan's arrest in federal immigration court in Hartford on May 9. According to Osakwe's account and other reporting by the Courant, plain-clothed ICE agents did not identify themselves as they confronted Khan while he was leaving U.S. Immigration Judge Ted Little's courtroom on the sixth floor of the federal building in Hartford.

When Khan attempted to flee back to Doolittle's courtroom, Osakwe reportedly told the court, the agents used a stun gun on him.

**ADVERTISEMENT**
Article continues below this ad

"They didn't identify themselves," Osakwe said, according to the Courant. "They sought to grab him. And then he, not knowing who they were, started running back to the court and he was tasered seven times. Judge Doolittle came out of the court and asked ICE officers, 'Why are you doing this?' And they told him he should not interfere with a lawful arrest."

It's not clear why ICE detained Khan. He filed a federal suit against ICE's parent agency, the U.S. Department of Homeland Security, on March 1 to resolve a pending

# EXHIBIT F

Form EOIR-26, DHS Notice of Appeal of Bond Order, and cover page of DHS's
simultaneous Emergency Motion for a Discretionary Stay (filed June 6, 2025)
(excerpts)

Filed at BIA on: 06/06/2025 at 05:30:21 AM (Eastern Daylight Time)

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB# 1125-0002

**Notice of Appeal from a Decision of an
Immigration Judge**

*Staple Check or Money Order Here. Include Name(s) and "A" Number(s) on the face of the check or money order.*

**1.**

List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s):

KHAN, Saifullah Juma
A208-484-528

For Official Use Only

**!  WARNING:** Names and "A" Numbers of **everyone** appealing the Immigration Judge's decision must be written in item #1. The names and "A" numbers listed will be the only ones considered to be the subjects of the appeal.

**2.**  I am  ☐ the Respondent/Applicant  ☑ DHS-ICE *(Mark only one box.)*

**3.**  I am  ☐ DETAINED  ☑ NOT DETAINED *(Mark only one box.)*

**4.**  My last hearing was at __EOIR CHELMSFORD, Massachusetts__ *(Location, City, State)*

**5.  What decision are you appealing?**

*Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

☐ I am filing an appeal from the Immigration Judge's decision *in **merits** proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated_____.

☑ I am filing an appeal from the Immigration Judge's decision *in **bond** proceedings* dated __May 27, 2025__. (For DHS use only: Did DHS invoke the automatic stay provision before the Immigration Court?  ☐ Yes.  ☑ No.)

☐ I am filing an appeal from the Immigration Judge's decision ***denying a motion to reopen or a motion to reconsider*** dated_____.

*(Please attach a copy of the Immigration Judge's decision that you are appealing.)*

EOIR — 1 of 94

**Page 1 of 3**

Form EOIR-26

**App. 23**
Exp. Jan. 2026

Filed at BIA on:  06/06/2025 at 05:30:21 AM (Eastern Daylight Time)

**6.** **State in detail the reason(s) for this appeal. Please refer to the General Instructions at item F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.**

Please see attached addendum.

*(Attach additional sheets if necessary)*

> ⚠ **WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

**7.** Do you desire oral argument before the Board of Immigration Appeals?    ☐ Yes  ☑ No

**8.** Do you intend to file a separate written brief or statement after filing this Notice of Appeal?  ☑ Yes  ☐ No

**9.** If you are unrepresented, do you give consent to the BIA Pro Bono Project to have your case screened by the Project for potential placement with a free attorney or accredited representative, which may include sharing a summary of your case with potential attorneys and accredited representatives? *(There is no guarantee that your case will be accepted for placement or that an attorney or accredited representative will accept your case for representation)*    ☐ Yes  ☐ No

> ⚠ **WARNING:** If you mark "Yes" in item #7, you should also include in your statement above why you believe your case warrants review by a three-member panel. The Board ordinarily will not grant a request for oral argument unless you also file a brief.
>
> If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule.

**10.** **Print Name:**    Courtney Gates-Graceson

**11.** **Sign Here:** ➤    X  COURTNEY G GRACESON  Digitally signed by COURTNEY G GRACESON  Date: 2025.06.06 05:21:53 -04'00'    06/06/2025

Signature of Person Appealing
*(or attorney or representative)*                                    Date

EOIR — 2 of 94

**App. 24**

Exp. Jan. 2026

Filed at BIA on:  06/06/2025 at 05:30:21 AM (Eastern Daylight Time)

Ronald Seely                                                    **DETAINED**
Chief Counsel
Courtney Gates-Graceson
Deputy Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
John F. Kennedy Federal Building, Room 425
Boston, MA  02203
(617) 565-2415

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS

_____     )
                                                          )
In the Matter of:                                 )
                                                          )
KHAN, SAIFULLAH                           )          File No. A208 484 528
                                                          )
In bond proceedings                           )
                                                          )
_____ )

## DEPARTMENT OF HOMELAND SECURITY
## EMERGENCY MOTION FOR A DISCRETIONARY STAY

# EXHIBIT G

Summons and Complaint, Khan v. Uccello, No. HHD-CV-26-6228240S (Conn. Super. Ct., J.D. of Hartford) (as served; return date August 25, 2026)

**SUMMONS - CIVIL**
JD-CV-1   Rev. 2-25
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259;
P.B. §§ 3-1 through 3-21, 8-1, 10-13

**Instructions are on page 2.**

| For information on ADA accommodations, contact the Centralized ADA Office at 860-706-5310 or go to: www.jud.ct.gov/ADA/ |
|---|

STATE OF CONNECTICUT
JUDICIAL BRANCH
**SUPERIOR COURT**
*www.jud.ct.gov*



☐ Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.

☒ Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.

☒ Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**

By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk *(Number, street, town and zip code)* | Telephone number of clerk | Return Date *(Must be a Tuesday)* |
|---|---|---|
| **95 Washington Street** | ( 860 ) 548 − 2700 | **8/25/26** |

| ☒ Judicial District ☐ Housing Session | G.A. ☐ Number: ___ | At *(City/Town)* **Hartford** | Case type code *(See list on page 2)* Major: **T**   Minor: **90** |
|---|---|---|---|

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* **Alexander T. Taubes, Esq.** | Juris number *(if attorney or law firm)* **437388** |
|---|---|

| Telephone number ( 203 ) 909 − 0048 | Signature of plaintiff *(if self-represented)* |
|---|---|

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case. Any attorney who is not exempt from e-filing is required to accept electronic delivery. (Practice Book Section 10-13) ☒ Yes ☐ No | E-mail address for delivery of papers under Section 10-13 of the Connecticut Practice Book **alextt@gmail.com** |
|---|---|

| Parties | Name *(Last, First, Middle Initial)* and address of each party *(Number; street; P.O. Box; town; state; zip; country, if not USA)* | |
|---|---|---|
| **First plaintiff** | Name: **Khan, Saifullah J.** Address: **c/o Attorney Alexander T. Taubes, Esq., 470 James St., Ste 007, New Haven, CT 06513** | P-01 |
| **Additional plaintiff** | Name: Address: | P-02 |
| **First defendant** | Name: **Uccello, Nicholas J.** Address: **13 Boris Court, Meriden, CT 06450** | D-01 |
| **Additional defendant** | Name: **Doe, Johns 1-6** Address: **Addresses Unknown** | D-02 |
| **Additional defendant** | Name: Address: | D-03 |
| **Additional defendant** | Name: Address: | D-04 |
| **Total number of plaintiffs: 1** | **Total number of defendants: 7** | ☐ Form JD-CV-2 attached for additional parties |

## Notice to each defendant

1. **You are being sued**. This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.
2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.
3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.
4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book, which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.
5. If you have questions about the summons and complaint, you should talk to an attorney.
   **The court staff is not allowed to give advice on legal matters.**

| Date **7/10/26** | Signed *(Sign and select proper box)* | ☒ Commissioner of Superior Court ☐ _____ Clerk | Name of person signing **Alexander T. Taubes** |
|---|---|---|---|

| If this summons is signed by a Clerk: | *For Court Use Only* |
|---|---|
| a. The signing has been done so that the plaintiff(s) will not be denied access to the courts. b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law. c. The court staff is not permitted to give any legal advice in connection with any lawsuit. d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any errors or omissions in the summons, any allegations contained in the complaint, or the service of the summons or complaint. | File Date |

| I certify I have read and understand the above: | Signed *(Self-represented plaintiff)* | Date | Docket Number |
|---|---|---|---|

[ Print Form ]            Page 1 of 2            [ Reset Form ]

**App. 27**

**App. 28**

**Instructions**

1. *Type or print legibly. If you are a self-represented party, this summons must be signed by a clerk of the court.*

2. *If there is more than one defendant, make a copy of the summons for each additional defendant. Each defendant must receive a copy of this summons. Each copy of the summons must show who signed the summons and when it was signed. If there are more than two plaintiffs or more than four defendants, complete the Civil Summons Continuation of Parties (form JD-CV-2) and attach it to the original and all copies of the summons.*

3. *Attach the summons to the complaint, and attach a copy of the summons to each copy of the complaint. Include a copy of the Civil Summons Continuation of Parties form, if applicable.*

4. *After service has been made by a proper officer, file the original papers and the officer's return of service with the clerk of the court.*

5. *Use this summons for the case type codes shown below.*

    *Do not use this summons for the following actions:*

    (a) *Family matters (for example divorce, child support, custody, parentage, and visitation matters)*

    (b) *Any actions or proceedings in which an attachment, garnishment or replevy is sought*

    (c) *Applications for change of name*

    (d) *Probate appeals*

    (e) *Administrative appeals*

    (f) *Proceedings pertaining to arbitration*

    (g) *Summary Process (Eviction) actions*

    (h) *Entry and Detainer proceedings*

    (i) *Housing Code Enforcement actions*

**Case Type Codes**

| MAJOR DESCRIPTION | CODE | MINOR DESCRIPTION | MAJOR DESCRIPTION | CODE | MINOR DESCRIPTION |
|---|---|---|---|---|---|
| **Contracts** | C 00 | Construction - All other | **Property** | P 00 | Foreclosure |
| | C 10 | Construction - State and Local | | P 10 | Partition |
| | C 20 | Insurance Policy | | P 20 | Quiet Title/Discharge of Mortgage or Lien |
| | C 30 | Specific Performance | | P 30 | Asset Forfeiture |
| | C 40 | Collections | | P 70 | Dissolution of Lien Upon Substitution of Bond |
| | C 50 | Uninsured/Underinsured Motorist Coverage | | P 90 | All other |
| | C 60 | Uniform Limited Liability Company Act - C.G.S. 34-243 | **Torts** *(Other than Vehicular)* | T 02 | Defective Premises - Private - Snow or Ice |
| | C 90 | All other | | T 03 | Defective Premises - Private - Other |
| **Eminent Domain** | E 00 | State Highway Condemnation | | T 11 | Defective Premises - Public - Snow or Ice |
| | E 10 | Redevelopment Condemnation | | T 12 | Defective Premises - Public - Other |
| | E 20 | Other State or Municipal Agencies | | T 20 | Products Liability - Other than Vehicular |
| | E 30 | Public Utilities & Gas Transmission Companies | | T 28 | Malpractice - Medical |
| | E 90 | All other | | T 29 | Malpractice - Legal |
| **Housing** | H 00 | Housing - Summary Process | | T 30 | Malpractice - All other |
| | H 03 | Housing - Deceased Tenants - Summary Process | | T 40 | Assault and Battery |
| | H 10 | Housing - Return of Security Deposit | | T 50 | Defamation |
| | H 12 | Housing - Rent and/or Damages | | T 61 | Animals - Dog |
| | H 20 | Housing - Housing Code Enforcement | | T 69 | Animals - Other |
| | H 30 | Housing - Entry and Detainer | | T 70 | False Arrest |
| | H 40 | Housing - Audita Querela/Injunction | | T 71 | Fire Damage |
| | H 50 | Housing - Administrative Appeal | | T 90 | All other |
| | H 60 | Housing - Municipal Enforcement | **Vehicular Torts** | V 01 | Motor Vehicles* - Driver and/or Passenger(s) vs. Driver(s) |
| | H 70 | Housing - Bed Bug Infestation | | V 04 | Motor Vehicles* - Pedestrian vs. Driver |
| | H 87 | Housing - Denied Fee Waiver Appeal | | V 05 | Motor Vehicles* - Property Damage only |
| | H 90 | Housing - All Other | | V 06 | Motor Vehicle* - Products Liability Including Warranty |
| **Miscellaneous** | M 00 | Injunction | | V 09 | Motor Vehicle* - All other |
| | M 10 | Receivership | | V 10 | Boats |
| | M 15 | Receivership for Abandoned/Blighted Property | | V 20 | Airplanes |
| | M 20 | Mandamus | | V 30 | Railroads |
| | M 30 | Habeas Corpus (extradition, release from Penal Institution) | | V 40 | Snowmobiles |
| | M 40 | Arbitration | | V 90 | All other |
| | M 50 | Declaratory Judgment | | | *Motor Vehicles include cars, trucks, motorcycles, and motor scooters. |
| | M 63 | Bar Discipline | **Wills, Estates and Trusts** | W 00 | Probate Appeals |
| | M 66 | Department of Labor Unemployment Compensation Enforcement | | W 10 | Construction of Wills and Trusts |
| | M 68 | Bar Discipline - Inactive Status | | W 90 | All other |
| | M 70 | Municipal Ordinance and Regulation Enforcement | | | |
| | M 75 | Foreign Subpoena - C.G.S. 52-657 | | | |
| | M 80 | Foreign Civil Judgments - C.G.S. 52-604 & C.G.S. 50a-30 | | | |
| | M 83 | Small Claims Transfer to Regular Docket | | | |
| | M 84 | Foreign Protective Order | | | |
| | M 85 | Civil Protection Order | | | |
| | M 87 | Denied Fee Waiver Appeal | | | |
| | M 88 | Application for Pro Hac Vice for State or Municipal Agency/Board | | | |
| | M 89 | CHRO Action in the Public Interest - P.A. 19-93 | | | |
| | M 90 | All other | | | |

| Print Form | Page 2 of 2 | Reset Form |
|---|---|---|

RETURN DATE: AUGUST 25, 2026
SAIFULLAH KHAN,                                    :        SUPERIOR COURT
*Plaintiff,*                                        :        JUDICIAL DISTRICT OF
                                                   :
v.                                                 :        HARTFORD
                                                   :
NICHOLAS J. UCCELLO,                               :        AT HARTFORD
 and SIX UNKNOWN NAMED                             :        JULY 10, 2026
AGENTS OF U.S. IMMIGRATION AND                     :
CUSTOMS ENFORCEMENT (DOES 1–6),                    :
each in an individual capacity,                    :
*Defendants.*                                      :

## COMPLAINT

### FIRST COUNT (Deprivation of Rights Secured by the Fourth Amendment — Excessive Force — P.A. 26-14, § 1 — Against All Defendants)

1. On Friday, May 9, 2025, at approximately 2:40 in the afternoon, inside the Abraham A. Ribicoff Federal Building and United States Courthouse at 450 Main Street in Hartford, officers of U.S. Immigration and Customs Enforcement ("ICE"), dressed in plain clothes, fired Tasers into the back of the plaintiff, Saifullah Khan — seven discharges in all — as he ran toward the courtroom he had left moments before, calling out for the judge. No judge had authorized any of it: the only warrant behind the operation was an administrative form ICE had issued to itself.

2. This action arises under Section 1 of Substitute Senate Bill No. 397, Public Act No. 26-14 ("the Act"), which makes every person — including a federal officer or employee — who, under color of law, deprives any person within the jurisdiction of this state of rights secured by the United States Constitution liable to the party injured, and which authorizes punitive damages and attorney's fees. P.A. 26-14, § 1(a)-(b).

3. The plaintiff, Saifullah Khan, is a citizen of Afghanistan and a resident of New Haven, Connecticut, where he has lived at the same address for seven years. He was born in a refugee camp in Pakistan after his family fled the Taliban. He first came to the United States in 2011, as a

1

scholarship student at the Hotchkiss School, and was admitted in January 2015 as an F-1 student to attend Yale University where he began school in 2012. He is married to a United States citizen. His asylum application, filed June 29, 2016, has since been granted; his application for adjustment of status to lawful permanent residence (Form I-485) is pending; and no removal proceedings are pending against him. He has no criminal record: a Connecticut jury acquitted him in 2018 of the only charges ever brought against him, and the arrest record prepared on May 9, 2025 concedes both that "KHAN was acquitted of those charges" and that "Subject has no criminal history."

4. The defendant Nicholas J. Uccello (ICE Officer No. 8197) was at all relevant times a deportation officer of ICE, Enforcement and Removal Operations, assigned to Hartford, Connecticut, acting under color of the statutes, regulations, customs and usages of the United States. He is sued in his individual capacity.

5. The defendants sued as Six Unknown Named Agents of U.S. Immigration and Customs Enforcement (Does 1 through 6) are officers, employees, or agents of ICE or of other federal components who planned, participated in, directed, ratified, or failed to prevent the conduct described below — among them, on information and belief, one or more agents who discharged Tasers into the plaintiff, and the officers who held and shackled him afterward — and whose identities are not presently known to the plaintiff. Each is sued in an individual capacity. The plaintiff will amend to state their true names when discovery reveals them.

6. Four other ICE officers are named in the arrest record of May 9, 2025: S. Palumbo (Officer No. 8526), Christopher Jones (Officer No. 7276), George Lewis, a deportation officer and tactical medic, and Derek R. Moore (No. D06020), a supervisory detention and deportation officer. This complaint describes their acts where the record supplies them. They are identified as actors, not sued as defendants, and the Doe defendants are persons other than these four officers.

2

7. The acts and omissions described in this complaint occurred in Hartford, Connecticut. Venue lies in this judicial district.

8. For nearly nine years, the government did not adjudicate the plaintiff's asylum application, and it never once sought to detain him. It knew where he was the entire time: he updated his address with the immigration authorities on the government's own form; the government mailed his work permits and official notices to his home; and it repeatedly granted him employment authorization. He appeared, voluntarily, at every court date in every proceeding that concerned him, for nine years.

9. On March 21, 2025, the plaintiff sued the Secretary of Homeland Security in the United States District Court for the District of Connecticut to compel a decision on that long-pending asylum application. *Khan v. Noem*, No. 3:25-cv-471 (D. Conn.). Thirteen days later, on April 3, 2025, U.S. Citizenship and Immigration Services closed his asylum case and issued a Notice to Appear, placing him in removal proceedings. The relief the plaintiff had asked a federal court to order was a decision on his application; what the agency delivered instead, thirteen days after he asked, was a prosecution. It did not adjudicate the application — it closed it. On information and belief, it did so because he had sued.

10. The Notice to Appear charges no crime. It alleges no fraud, no danger to any person, no misconduct of any kind. Its sole factual charge is this: "You did not attend Yale University from November 13, 2015 to present." On that basis it asserts that the plaintiff "failed to maintain or comply with the conditions" of his student status — a civil charge, resting on a lapse in student status that began in 2015, a decade before the arrest, when Yale suspended him over an accusation of which a Connecticut jury acquitted him. Within months of that lapse, on June 29, 2016, he filed the asylum application whose adjudication he would then await for nine years — the same application the United States has now granted.

11. On April 30, 2025, the plaintiff's wife, a United States citizen, filed a Form I-130 petition on his behalf. On May 8, 2025, the plaintiff applied for Temporary Protected Status as a national of Afghanistan. Both applications were pending on May 9, 2025.

12. On May 9, 2025, the plaintiff appeared, as directed, for a scheduled hearing before Immigration Judge Ted Doolittle on the sixth floor of the Ribicoff Federal Building. Every person entering that building passes through federal security screening, including magnetometers. After the hearing, the judge continued the matter to a future date, and the plaintiff walked out of the courtroom toward the elevators.

13. The arrest team was waiting for him. On May 5, 2025, ICE's Homeland Security Investigations office in New Haven had referred the plaintiff's case to ICE Enforcement and Removal Operations in Hartford. On May 9, the team knew the plaintiff was in the building for his hearing and waited for it to finish. They wore plain clothes. They displayed no badge, no uniform, and no visible insignia of office, and at no point did they identify themselves to the plaintiff as officers.

14. No judge had issued, or was ever asked to issue, a warrant for the plaintiff. The only process supporting the operation, on information and belief, was a Form I-200 Warrant for Arrest of Alien — an administrative form that federal regulations permit ICE officers to sign for themselves, and that was signed here by an ICE officer, not by any judge or neutral magistrate. ICE's own Hartford office sits in the same federal building as the immigration court. On information and belief, the warrant was signed in ICE's own office and carried — an elevator ride of a single floor — to the sixth-floor foyer where the team waited to execute it.

15. An I-200 is not process to punish, and it charges no crime. It issues under 8 U.S.C. § 1226(a), which permits an arrest only so that an alien may be "detained pending a decision on whether the alien is to be removed from the United States." The only two purposes such civil

4

custody may lawfully serve are securing the alien's appearance at immigration proceedings and protecting the community from danger.

16. No neutral magistrate ever reviewed or authorized this seizure.

17. When the plaintiff walked out of the courtroom into the sixth-floor elevator foyer, more than half a dozen people in plain clothes suddenly turned toward him and closed on him, and defendant Uccello reached for him. Nothing about these men identified them as officers of anything: no badge, no uniform, no insignia, no announcement of any kind before they lunged. The men did not identify themselves — not then, and not at any point before the plaintiff was on the ground.

18. The plaintiff was afraid. He turned and ran back toward the only safety he knew in that building — the courtroom he had just left, where the immigration judge and armed court security officers were — calling out for the judge as he ran. He ran away from the men who grabbed at him, and toward the immigration judge; he ran at no one. As he ran, the men yelled at him to stop. They did not say police. They did not say ICE, immigration, or officers. A yell to stop, from unidentified strangers, told the plaintiff nothing about who they were, and no identification ever followed — only the Tasers. Federal regulation required these agents to identify themselves as immigration officers as soon as practical and safe, 8 C.F.R. § 287.8(c)(2)(iii). They did not do so at any point.

19. Defendant Uccello fired into the plaintiff's back. The strikes did not come one measured trigger-pull at a time: the seven discharges came at roughly the same moment — a volley into the back of one unarmed man, from, on information and belief, more than one weapon. Darts struck his suit jacket, his belt, and his back. In all, the agents discharged Tasers into the plaintiff seven times.

20. No warning that force would be used preceded any of the seven discharges. Before firing, no agent displayed credentials in a manner a frightened, fleeing man could perceive; none

5

attempted to restrain him by hand; none enlisted the uniformed court security personnel already present in a secured federal building; and none simply followed him into the occupied courtroom — staffed by an immigration judge and court security officers — into which he was loudly announcing his own arrival. He was unarmed. He had cleared federal security screening to enter the building.

21. The plaintiff fell backward as his muscles seized, struck his head, and lost consciousness. The agents handcuffed his hands behind his back; Officer Lewis pulled the Taser probes out of his body on the scene.

22. Defendant Uccello lunged first, fired into the plaintiff's back, and prepared the government's arrest record of the incident. Seven near-simultaneous discharges means, on information and belief, more than one weapon and more than one shooter — the Doe defendants among them. Officers Uccello and Palumbo seized and handcuffed the plaintiff; Officer Lewis removed the probes; Officer Moore, the supervisory officer present, directed the operation. Every agent present had four days of planning and an afternoon of lying in wait in which to object to an operation built on concealment and force — and none gave a warning, none objected, and none intervened.

23. When the plaintiff regained consciousness, Immigration Judge Doolittle had come out of his courtroom and was demanding to know why the officers were doing this. The agents told the judge to stay back and not to interfere with a lawful arrest. Officers afterward described the judge to the plaintiff as a "traitor" for challenging them.

24. The agents took the plaintiff downstairs, in the same building, to a holding cell roughly eight feet by four, and shackled him. He asked to use a bathroom; the request was denied; and he wet himself in the cell. His right side was numb from the electricity and his heart was racing. Emergency medical services took him to Hartford Hospital, where he was evaluated and held until

6

approximately 10:15 that night — and he was then returned to the same cell and left to sleep on its urine-soaked floor.

25. ICE moved the plaintiff out of Connecticut — first to a facility in Plymouth, Massachusetts, and then to the Moshannon Valley ICE Processing Center in Philipsburg, Pennsylvania, hundreds of miles from his home, his wife, and his counsel. On May 27, 2025, a United States immigration judge ordered him released on a $7,500 bond. He was released on the evening of May 30, 2025, and returned home to New Haven. In all, ICE held him for three weeks.

26. The United States has since granted the plaintiff asylum.

27. The plaintiff suffered puncture wounds and burns at the probe sites, head trauma, cardiac symptoms requiring emergency evaluation, lasting physical pain, and profound humiliation. He suffers severe and continuing emotional harm: his treating psychologist, who began treating him on September 5, 2023 and resumed treatment in July 2025, has diagnosed post-traumatic stress disorder (DSM-5-TR, F43.1). He has incurred and will incur expenses of medical and psychological care and other economic losses.

28. On January 8, 2026, the plaintiff requested ICE's records of the incident under the Freedom of Information Act, including any use-of-force review and any video. ICE has produced nothing.

29. At all relevant times, each defendant acted under color of the statutes, regulations, customs and usages of the United States within the meaning of Section 1(a) of the Act, and subjected the plaintiff, a person within the jurisdiction of this state, to the deprivation of rights secured by the United States Constitution, or caused him to be so subjected.

30. The force was unreasonable by every measure. The severity of the offense: there was no offense — the charge was civil, and ten years old. The threat: none — an unarmed man who had cleared federal security screening, running away from the officers and toward an occupied

7

courtroom, announcing himself to the immigration judge. Resistance: none — flight from unidentified men grabbing at him is not resistance, and the plaintiff never struck or threatened anyone. Against all that, the defendants fired seven Taser discharges into his back, without a word of warning — not a graduated response that began with the minimum and escalated only as needed, but a single overwhelming volley, seven discharges at roughly the same moment.

31. The absence of judicial process aggravated, rather than excused, the violence. Acting with no judge's warrant, on no criminal charge, and on the strength of a form their own agency signed for itself, the defendants owed the plaintiff more restraint, not less — and they had alternatives short of force available, and used none. ICE's own regulations command the same restraint: a deportation officer "shall always use the minimum non-deadly force necessary to accomplish the officer's mission," escalating only as the subject's actions warrant, 8 C.F.R. § 287.8(a)(1)(iii), and must, as soon as practical and safe, "[i]dentify himself or herself as an immigration officer" at the time of arrest, 8 C.F.R. § 287.8(c)(2)(iii). The defendants did neither. Seven discharges fired at once is not the minimum force the regulation requires; it is the maximum force available, used first.

32. No reasonable officer could have believed that firing a volley of seven Taser discharges into the back of an unarmed, fleeing civil respondent inside a secured federal courthouse was lawful. The seizure and the force were objectively unreasonable, in violation of the Fourth Amendment.

33. The defendants' conduct was willful, wanton, and malicious, or undertaken in reckless disregard of the plaintiff's rights, warranting punitive damages under Section 1(b) of the Act.

34. As a direct and proximate result, the plaintiff suffered the physical injuries, emotional harm, and economic losses described above, in violation of Section 1 of the Act and the Fourth Amendment.

8

**SECOND COUNT (Deprivation of Rights Secured by the Fourth Amendment — Unreasonable Seizure: Administrative Warrant Executed Against Its Only Lawful Purpose — P.A. 26-14, § 1 — Against All Defendants)**

1.–29. Paragraphs 1 through 29 of the First Count are hereby repeated and incorporated as Paragraphs 1 through 29 of the Second Count.

30. An I-200's only lawful office is to secure a person's appearance at immigration proceedings and to protect the community from danger — and the manner in which the defendants executed theirs served neither end.

31. Danger was refuted by facts the defendants knew before they fired and themselves recorded afterward in their own arrest record — "Subject has no criminal history"; "KHAN was acquitted of those charges" — and the sole charge against the plaintiff was a decade-old civil lapse in student status.

32. That leaves appearance — and the defendants seized the plaintiff at his own appearance. They waited outside the courtroom where he was voluntarily attending the very proceedings an I-200 exists to secure, in the ninth year of his voluntary appearances. A warrant whose only office is to ensure that a man shows up for court cannot reasonably be executed, with violence, on the man as he shows up for court.

33. A seizure that serves none of the purposes that could lawfully support it — executed on no judicial process, by unidentified men, with the force described above, against a man whose address and cooperation the government had documented for nine years — is an unreasonable seizure in violation of the Fourth Amendment, facially at odds with the only justifications the law recognizes for such an arrest.

34. The defendants' conduct was willful, wanton, and malicious, or undertaken in reckless disregard of the plaintiff's rights, warranting punitive damages under Section 1(b) of the Act.

9

35. As a direct and proximate result, the plaintiff suffered the injuries described above, in violation of Section 1 of the Act and the Fourth Amendment.

**THIRD COUNT (Deprivation of Rights Secured by the First Amendment — Retaliation — P.A. 26-14, § 1 — Against All Defendants)**

1.–29. Paragraphs 1 through 29 of the First Count are hereby repeated and incorporated as Paragraphs 1 through 29 of the Third Count.

30. The plaintiff engaged in protected activity, including his March 21, 2025 federal action against the Secretary of Homeland Security and his other litigation, pursued openly and in his own name.

31. On March 21, 2025, the plaintiff petitioned a federal court to compel a decision on an asylum application the government had left undecided for nearly nine years — nine years in which it corresponded with him at his home address and never sought to detain him.

32. Thirteen days later, the agency did not decide his application; it closed it and issued the Notice to Appear, reviving a decade-old civil status charge it had known of since 2016 and never once acted on. Nothing about the merits changed in those thirteen days — the United States has since granted the same application. What changed was that he sued.

33. On May 5, 2025, ICE referred his case for enforcement, and on May 9, 2025, at his first appearance in the removal case his lawsuit had provoked, the defendants seized him with the violence described above — in the one place and at the one time his obedience to the law guaranteed he would be — and afterward described the immigration judge who questioned them as a "traitor," hostility directed not at any threat but at the judicial process itself and at those who invoke it. The only times the government moved against the plaintiff in a decade were after he petitioned a federal court, and when he next appeared, as directed, before a judge.

10

34. The plaintiff's protected petitioning activity was a substantial and motivating factor in the timing and manner of the enforcement actions taken against him. Conduct of this kind — answering a lawsuit with an ambush at a courthouse — would chill a person of ordinary firmness from exercising rights secured by the First Amendment. Nor would the existence of arrest authority insulate the retaliation: nine years of non-enforcement against a known, cooperating, work-authorized applicant, followed by a violent courthouse seizure thirty-six days after he sued, is objective evidence that the plaintiff was treated differently from others similarly situated who had not petitioned the courts.

35. The defendants' conduct was willful, wanton, and malicious, or undertaken in reckless disregard of the plaintiff's rights, warranting punitive damages under Section 1(b) of the Act.

36. As a direct and proximate result, the plaintiff suffered the injuries described above, in violation of Section 1 of the Act and the First Amendment.

## CLAIMS FOR RELIEF

WHEREFORE, the plaintiff claims: money damages; punitive damages; reasonable attorney's fees and expenses; interest and costs; and such other legal and equitable relief as the Court deems just.

## JURY DEMAND

The plaintiff hereby claims a trial by jury.

11

Respectfully submitted,

THE PLAINTIFF, SAIFULLAH KHAN

By: /s/ Alexander T. Taubes
Alexander T. Taubes, Esq.
470 James Street, Suite 007
New Haven, Connecticut 06513
Tel. (203) 909-0048
alextt@gmail.com
Juris No. 437388

12