**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

THE UNITED STATES OF AMERICA,

    Plaintiff,

  v.

STATE OF CONNECTICUT *et al.*,

    Defendants.

No. 3:26-cv-758

**REPLY IN SUPPORT OF MOTION**
**FOR PRELIMINARY INJUNCTION**

1

**TABLE OF CONTENTS**

INTRODUCTION ..............................................................................................................................1

ARGUMENT...................................................................................................................................1

    I.       The United States Has Standing ................................................................................1

    II.      The United States is Likely to Succeed on the Merits of its
            Supremacy Clause Claims ........................................................................................4

    III.    The United States Has Shown a Likelihood of Irreparable Injury................................8

    IV.    The Balance of Equities and Public Interest Weigh in the United States' Favor ........ 10

CONCLUSION................................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Arizona v. California*,
   283 U.S. 423 (1931) .................................................................................................. 4

*Arizona v. Yellen*,
   34 F.4th 841 (9th Cir. 2022) .................................................................................. 2

*DHS v. Texas*,
   144 S. Ct. 715 (2024) ............................................................................................. 5

*Elk Grove Unified Sch. Dist. v. Newdow*,
   542 U.S. 1 (2004) ................................................................................................ 3, 6

*GEO Grp., Inc. v. City of Tacoma*
   2019 U.S. Dist. LEXIS 196858 (W.D. Wash. Nov. 13, 2019) ............................... 6

*In re Neagel*,
   135 U.S. 1 (1890) .................................................................................................... 8

*McCulloch v. Maryland*,
   17 U.S. (4 Wheat) 316 (1819) ................................................................................ 4

*Nat'l Bank v. Commonwealth*,
   76 U.S. (9 Wall.) 353 (1869) ................................................................................. 6

*North Dakota v. United States*,
   495 U.S. 423 (1990) ............................................................................................ 4, 6

*NRDC, Inc. v. United States FDA*,
   710 F.3d 71 (2d Cir. 2013) ..................................................................................... 4

*Rest L. Ctr. v. City of New York*,
   90 F.4th 101 (2d Cir. 2024) .................................................................................... 5

*Seminole Tribe of Fla. v. Florida*,
   517 U.S. 44 (1996) .................................................................................................. 2

*Tennessee v. Davis*,
   100 U.S. 257 (1879) ................................................................................................ 8

*Texas v. DHS*,
   123 F.4th 186 (5th Cir. 2024) ............................................................................. 4, 5

*Trump v. Boyle*,
   145 S. Ct. 2653 (2025) ........................................................................................... 5

*United States v. California*,
   173 F.4th 1060 (9th Cir. 2026) ............................................................... 2, 5, 6, 9, 10

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) ........................................................................ 3

*United States v. City of Arcata*,
629 F. 3d 986 (9th Cir. 2010) ................................................................... 4, 6

*United States v. City of Philadelphia*,
No. 26-cv-4208, 2026 WL 1906075 (E.D. Pa. July 2, 2026) ........................ 6, 9, 10

*United States v. City of Pittsburgh*,
757 F.2d 43 (3d Cir. 1985) .......................................................................... 2

*United States v. Connecticut*,
566 F. Supp. 571 (D. Conn. 1983) ............................................................ 2, 9

*United States v. Missouri*,
114 F.4th 980 (8th Cir. 2024) ...................................................................... 2

*United States v. Texas*,
143 U.S. 621–45 (1892) .............................................................................. 2

*United States v. Virginia*,
2026 WL 1909995 ............................................................................. *passim*

*Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*,
790 F.3d 1000 (10th Cir. 2015) .................................................................. 9

*Vitagliano v. Cty. of Westchester*,
71 F.4th 130 (2d Cir. 2023) ........................................................................ 1

*Vt. Agency of Nat. Res. v. United States ex. rel. Stevens*,
529 U.S. 765 (2000) .................................................................................... 2

**Statutes**

SB 397 § 6 .................................................................................................. 6

SB 397 §6(a)(1) .......................................................................................... 1

SB 397 § 6(b) ............................................................................................. 5

SB 397 § 3(a)(1)(A), ................................................................................... 1

SB 397 § 3(a)(2) ......................................................................................... 5

SB 397 § 4(a)(1)(B), 5(a), 6(a)(1) ............................................................... 1

SB 397 § 5(a) ............................................................................................. 1

**INTRODUCTION**

Connecticut's SB 397 clearly targets federal officers by including them in its statutory definitions. *See* SB 397 §§ 3(a)(1)(A), 4(a)(1)(B), 5(a), 6(a)(1). Connecticut readily admits that it seeks to prosecute federal officers and that an injunction would hinder its ability to do so. ECF 31 (hereinafter "Opp.") at 47-48. But Connecticut does not have the right to control how federal officers conduct their official duties, including what they wear, how they are identified, and when their force is justified; the Supremacy Clause dictates that such power belongs to the Federal Government. By seeking to usurp federal power, Connecticut has caused a grave and sovereign injury to the United States. Moreover, as the United States explained in its opening brief, Connecticut's law also imposes concrete injuries on federal officers in the performance of their official duties, requiring them to choose between officer safety or compliance with Connecticut's laws. No federal officer should have to make that choice.

The United States thereby has shown standing, that it is likely to succeed on the merits, a likelihood of irreparable injury, and that the balance of hardships and public interest weigh in its favor. An injunction is warranted against the challenged provisions of SB 397.

**ARGUMENT**

**I.      The United States Has Standing**

Connecticut argues that the United States provided insufficient evidence for standing. Opp. 18-21.[1] That fails for several reasons. First, the United States *always* has standing to pursue a

---

[1] As a bizarre aside, Connecticut argues that the United States failed to plead standing. Opp.18. On the contrary, the complaint addresses all elements of standing, including injury to the United States both in the form of sovereign injury from Connecticut's unconstitutional law and injury to federal law enforcement operations. ECF 1 ¶¶ 36-52, 56-57, Prayer. The United States satisfies the requirements of pre-enforcement standing set forth in *Vitagliano v. Cty. of Westchester*, 71 F.4th 130, 137 (2d Cir. 2023). PI Memo. 9-12; ECF 1 ¶¶32-33, 38-51. In any event, Connecticut filed a separate Motion to Dismiss, ECF 30, which it incorporates by reference into its Preliminary

sovereign injury, which is an irreparable injury. *See, e.g.*, *United States v. Connecticut*, 566 F. Supp. 571, 579 (D. Conn. 1983) (concluding "without hesitation that the United States has shown that it will be irreparably injured by the continuing violation of ... a Federal statute, that would result from failure to enjoin enforcement of the Connecticut statute"), *aff'd without opinion*, 742 F.2d 1443 (2d Cir. 1983), *aff'd without opinion*, 465 U.S. 1014 (1984); *United States v. California*, 173 F.4th 1060, 1069 (9th Cir. 2026) ("[I]rreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity."); *cf. Arizona v. Yellen*, 34 F.4th 841, 851-53 (9th Cir. 2022). As the Supreme Court stated, "[i]t is beyond doubt" that a complaint "asserts an injury to the United States" if it alleges an "injury to [U.S.] sovereignty arising from violation of its laws." *Vt. Agency of Nat. Res. v. United States ex. rel. Stevens*, 529 U.S. 765, 771 (2000); *see also United States v. City of Pittsburgh*, 757 F.2d 43, 45 (3d Cir. 1985) (finding "injury to [United States'] sovereign rights sufficient to have standing to sue in the district court"); *United States v. Missouri*, 114 F.4th 980, 985 (8th Cir. 2024) ("Interference with the federal government's interest in enforcing federal law is sufficient to establish that the Act's implementation injured the United States."). Indeed, the Supreme Court has long recognized that "[t]he Federal Government can bring suit in federal court against a State" to "ensur[e] the State['s] compliance with federal law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 71 n.14 (1996) (citing *United States v. Texas*, 143 U.S. 621, 644–45 (1892)).

Connecticut claims such authority is too broad, Opp. 20-21, but as the cited cases show, such authority has long been recognized, derives from the Supremacy Clause itself, and is consistent with the rule that "there are no *de minimis* violations of the Constitution--no

---

Injunction Opposition. Opp. 19. The United States will respond to that motion on the August 3, 2026, deadline.

constitutional harms so slight that the courts are obliged to ignore them." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 36-37 (2004) (O'Connor, J. concurring); *see also United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019) ("Supreme Court case law compels the rejection of a *de minimis* exception to the doctrine of intergovernmental immunity."). Connecticut's reliance on two wrongly-decided, out-of-circuit district court cases is not persuasive (Opp. 20), particularly because the United States put forth evidence that Connecticut's officials believe the State to be sovereign vis-à-vis the Federal Government and the U.S. Constitution, *see* PI Memo. 11.

Second, Connecticut claims any injury must be tied to actual or threatened enforcement (Opp. 21). But Connecticut *does not disclaim enforcement of its laws*. At best, it claims that despite the statute's use of "shall," its current Inspector General believes prosecution is not *required* for use of deadly force and considers other factors in choosing whether to prosecute. Opp. 27. But Connecticut cannot guarantee what its future inspectors general may do. The law is clear on its face, and Connecticut plans to enforce it against federal officers. PI Memo. 10-11. Connecticut also contends that the use-of-force provisions are not criminal in nature and whether officers will use force is far from certain. Opp.19. Regardless, the fact remains that Connecticut has not disclaimed its intent to enforce SB 397's mask, ID, and use-of-force provisions against federal officers.

Third, the United States submitted declarations establishing concrete harms from Connecticut's law—an independent basis for standing and irreparable harm here. *See* ECF 12-2 through 12-6. Though Connecticut tries to discount such evidence with competing declarations and claims that the law contains what it believes are sufficient exceptions (Opp. 33-36), such attempts fail as discussed below, and at any rate the United States' declarations are sufficient to

show "a credible threat of harm sufficient to remove [the] claimed injury from the realm of speculation." *NRDC, Inc. v. United States FDA*, 710 F.3d 71, 82 (2d Cir. 2013).

**II.    The United States is Likely to Succeed on the Merits of its Supremacy Clause Claims**

The United States is likely to Succeed on the merits, as set forth in its opening brief. Connecticut's arguments to the contrary fail because Connecticut relies on the wrong legal standard and Connecticut's attempts to justify its law do not cure the constitutional defects.

Connecticut relies on the wrong standard to evaluate the United States' likelihood of success. The standard is not, as Connecticut claims, whether the laws "impermissibly burden federal agencies' operations" or that "they do so in every application." Opp. 32. A state regulation is invalid if, as here, "it regulates the United States directly," *North Dakota v. United States*, 495 U.S. 423, 435 (1990), as shown by the plain language of SB 397 which targets federal officers. Courts have consistently held that *any* direct regulation is impermissible, even if it is coextensive with the Federal Government's own regulations. PI Memo.17-18; *McCulloch,* 17 U.S. at 431 ("there is a plain repugnance" in letting states "interfer[e] with or control[] the operations of the Federal Government"); *see also United States v. City of Arcata*, 629 F. 3d 986, 991-92 (9th Cir. 2010) ("A state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid, even if it is no more restrictive than federal law."). Likewise, Connecticut's reliance on its own police power (Opp.21-22) is misplaced because "[t]he United States may perform its functions without conforming to the police regulations of a state." *Arizona v. California*, 283 U.S. 423, 451 (1931); *Virginia*, 2026 WL 1909995 at * 11 (rejecting argument that state police powers permit states to regulate conduct of federal officers).

The cases relied upon by Connecticut do not change the analysis. Connecticut cites a Fifth Circuit case, *Texas v. DHS*, 123 F.4th 186 (5th Cir. 2024), about whether Border Patrol agents could

cut a fence erected by Texas, in support of its burden argument (Opp.32), but the Ninth Circuit rejected that very same argument in *California*, 173 F.4th at 1068, which dealt with an analogous identification law and is more on point. In *California*, the court observed that the identification law was likely not one of general applicability because it pertained to law enforcement officers specifically. *Id.* at 1068. The same is true here. Further, *Texas* was wrongly decided. In fact, the Supreme Court vacated a previous injunction in that case the only time the issues were presented to that Court. *See DHS v. Texas,* 144 S. Ct. 715 (2024). Such interim orders "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). And *Texas v. DHS* is distinguishable. In that case, Texas sued under the Administrative Procedure Act (APA) to prevent the U.S. Border Patrol from cutting a fence erected by Texas on State land, ostensibly to allow migrants into Texas. *Texas,* 123 F.4th at 193. The Fifth Circuit found Texas was "acting as a proprietor, not a regulator" and specifically held that Texas did "not seek to control how Border Patrol agents carry out their duties" because the Texas law was a "generally applicable state law" such as trespass that applies equally to private citizens. *Id.* at 205-07. The court also found that the challenged actions of the Border Patrol agents were outside the scope of their official job duties. *Id.* at 208. *See also Virginia*, 2026 WL 1909995 at * 10-11 (distinguishing *Texas*).

Those facts are in stark contrast to the laws here which are criminal in nature, specific to law enforcement not generally applicable, do not involve Connecticut acting as a proprietor and specifically target actions "while carrying out the enforcement of laws of … the United States" or "in the performance of such officer's duties." SB 397 § 3(a)(2) § 6(b). Connecticut's reliance on *Rest L. Ctr. v. City of New York*, 90 F.4th 101 (2d Cir. 2024) is similarly misplaced because that case dealt with conflict preemption; it did not address intergovernmental immunity at all. Likewise,

5

the out-of-circuit case *GEO Grp., Inc. v. City of Tacoma*, is not a direct regulation case, and is thus not on point. 2019 U.S. Dist. LEXIS 196858 at *14 (W.D. Wash. Nov. 13, 2019). Connecticut misreads *Nat'l Bank v. Commonwealth*, 76 U.S. (9 Wall.) 353, 362 (1869). There, banks were not purely arms of the federal government, and thus the Court explained that it was only when the State law affected such federal aspects of the bank that intergovernmental immunity applied. There is no similar question here because Connecticut's law directly targets federal law enforcement whose function is purely federal.

Connecticut does not dispute that Section 6, addressing masks and IDs, dictates what federal officers and agents may or may not wear when performing their official duties. *See, e.g.*, Opp.2. Instead, Connecticut argues that the burden is "incidental." Opp.32. As explained, that is the wrong standard. Indeed, other courts uniformly have enjoined similar mask or ID requirements as violations of intergovernmental immunity. *See California*, 173 F.4th 1060; *United States v. City of Philadelphia*, No. 26-cv-4208, 2026 WL 1906075 (E.D. Pa. July 2, 2026); *United States v. Virginia*, No. 3:26-cv-545, 2026 WL 1909995 (E.D. Va. July 2, 2026). This Court should too for the reasons explained in the United States' opening brief. PI Memo. 15, 18, 20-25. Consistent with its argument that incidental burden is acceptable, Connecticut tries to argue that its law is sufficiently narrow that it should be permitted to stand. Opp.33. But as explained, there is no exception for *some* direct regulation of the Federal Government by a state, or *de minimis* constitutional harm. *North Dakota*, 495 U.S. at 435 (1990); *Elk Grove Unified Sch. Dist.*, 542 U.S. 1 at 36-37; *City of Arcata*, 629 F. 3d at 991-92.

Connecticut also erroneously relies on its own experts and witnesses to call into question the declarations submitted by the United States in support of its motion. Take for example, Declarant Schuchart, whose testimony on similar issues in the U.S. District Court for the Eastern

District of Virginia did not credit because "Schuchart's reasoning and conclusions are ill-thought out, presented in conclusory fashion, and are not really documented. They are not helpful to the fact finding task of the court or to understanding any issue in the case." *Virginia*, 2026 WL 1909995 at *7. The other declarations submitted by Connecticut are equally problematic. Keith Mello, for example, claims to know what officers he has never met are thinking while the officers are wearing masks. Mello Decl. (ECF 31-5) ¶ 14. He provides conclusory opinions about what he thinks best practices should be, despite having no experience in federal law enforcement. *Id.* ¶ 7, 12-15, 17, 21. The same is true of the various professor declarants, who opine on history, use of force, and policing, but have no experience with, or the right to dictate, federal policy. Similarly, Connecticut's recitation of historical practices (both recent and far removed) to suggest that its law aligns with policing norms (almost 13 pages of its Opposition), is irrelevant to whether SB 397 regulates the Federal Government. Further, even Connecticut admits that doxxing is harmful and puts officer safety at risk and that officer safety should be protected. Opp.34. Instead, Connecticut disputes *how* the Federal Government should go about protecting its officers, but that is not for Connecticut, or any state, to decide. Ultimately, these policy-based arguments are best directed to Congress or the relevant federal agencies, not the courts.

Connecticut's discussion of the use-of-force provision raises more questions than it answers. For example, Connecticut argues there is no direct regulation of the Federal Government because the provisions provide "an affirmative defense against criminal liability"—a non sequitur. Opp.26. But Connecticut has no more authority to determine what defenses a federal officer has available than it does to impose criminal liability on federal officers for performing their official duties. And at any rate, a constitutional violation cannot be cured through justification. Connecticut also argues that it has the unfettered right to prosecute federal officers. Opp.28. That is false. At

most those cases stand for the proposition that a state may sometimes bring charges for generally applicable laws where it is questionable if the officer was acting in the performance of their federal duties, but even then typically such cases are removed to federal court and dismissed on Supremacy Clause grounds, as Connecticut even acknowledges. Opp. 25; *see also In re Neagel*, 135 U.S. 1, 75 (1890) (U.S. Marshal acting within official scope of duties could not be prosecuted on state murder charges); *Tennessee v. Davis*, 100 U.S. 257, 263 (1879) ("If, when ... acting ... within the scope of their authority, [federal] officers can be arrested and brought to trial in a State court, for an alleged offence against the law of the State ... the operations of the general government may at any time be arrested at the will of one of its members."). The law here is not generally applicable like a murder statute; it specifically applies to law enforcement officers in the performance of their duties. Such a direct regulation is never permitted. *See California*, 174 F.4th at 1068. Yet Connecticut, argues that an injunction against the use-of-force provisions would "prohibit the OIG from investigating and holding accountable federal officers[.]" Opp.47. As explained in the United States' opening brief, allowing a state to impose its own standards, and its own alleged state law justifications on federal officer actions, is a violation of the Supremacy Clause, puts officers at risk, and sets a dangerous precedent. PI. Memo. at 22-23. This Court should reject Connecticut's alleged justifications for applying its use-of-force provisions to federal officers.

### III.    The United States Has Shown a Likelihood of Irreparable Injury.

Connecticut argues the United States' only asserted harm is "the threat of prosecution" and thus there is no irreparable injury. That argument is wrong for two reasons. First, as explained above, the United States asserts, first and foremost, a sovereign injury because Connecticut has declared itself sovereign and able to disregard the U.S. Constitution and the Supremacy Clause to enact laws that seek to regulate the Federal Government. *See* PI Memo at 20. Such a sovereign

8

injury is constitutional in nature and irreparable. *See, e.g.*, *Connecticut*, 566 F. Supp. at 579; (concluding "without hesitation that the United States has shown that it will be irreparably injured by the continuing violation of ... a Federal statute, that would result from failure to enjoin enforcement of the Connecticut statute."); *California*, 173 F.4th at 1069 ("[I]rreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity."); *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah,* 790 F.3d 1000, 1005 (10th Cir. 2015) (Gorsuch, J.) (explaining that "an invasion of tribal sovereignty can constitute irreparable injury"); *Virginia*, 2026 WL 1909995, at *12 ("It seems rather clear that being subjected to a state law that regulates an activity that is constitutionally delegated to the federal government is an infringement of the Supremacy Clause that constitutes an irreparable injury.").

Second, as explained in detail in the United States' opening brief, the threat of prosecution, particularly combined with the facts in the declarations submitted by the United States including the potential for federal officers to hesitate in dangerous situations or be forced to choose between complying with SB 397 with its limited exceptions and risking prosecution or their own safety, constitutes irreparable harm. *See* PI. Memo. at 20-23 (explaining irreparable harms). And while Connecticut claims as to use of force sections that its law has long applied to a subset of federal officers (Opp. 41), it does dispute that its new law is far broader and that it intends to enforce it. Thus, Connecticut's "delay" argument fails.

The United States has clearly demonstrated a likelihood of irreparable harm from Connecticut's laws. Each of the three courts to address similar state and local measures has found irreparable harm. *See City of Philadelphia*, 2026 WL 1906075 *13; *California*, 173 F.4th at 1069; *Virginia*, 2026 WL 1909995 at *14. This Court should as well.

**IV.    The Balance of Equities and Public Interest Weigh in the United States' Favor**

Connecticut argues that balance of harms and public interest weigh in its favor because an injunction would prevent it from prosecuting federal officers for use of force incidents or for wearing masks or not wearing IDs. Opp. 47-48. But that is exactly the point. Connecticut passed these laws to regulate how federal officers perform their official duties in Connecticut. It cannot do that under the Supremacy Clause's principles of intergovernmental immunity. There is no public interest in allowing Connecticut to reign supreme over the Federal Government. As explained in the United States' Motion, the balance of harms and public interest weigh in its favor, not Connecticut's. PI Memo. 23-25. Each of the three courts to have addressed similar state and local measures has agreed the balance tips in the Federal Government's favor. *See California*, 173 F.4th at 1069; *City of Philadelphia*, 2026 WL 1906075, at *14; *Virginia*, 2026 WL 1909995, at *14. This Court should as well.

### CONCLUSION

For the foregoing reasons and those set forth in its opening brief, the United States respectfully requests that this Court preliminarily enjoin the Defendants, the Defendants' officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with any of the Defendants, from enforcing Sections 3, 4, 5, and 6 of SB 397 as to federal officers, agents, and employees.

Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS

10

Counsel to the Associate Attorney General

CHARLES E.T. ROBERTS
Counsel to the Assistant Attorney General
Civil Division

JACQUELINE SNEAD
Deputy Director

*/s/Alexandra McTague Schulte*
ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsel (NY Bar No. 4342911)
U.S. Department of Justice Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044-0386
Tel: (202) 718-0483
Email: alexandra.schulte@usdoj.gov

*Attorneys for the United States of America*