**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 3:26-cv-758 |
| v. | **OPPOSITION TO DEFENDANTS'** |
| STATE OF CONNECTICUT *et al.*, | **MOTION TO DISMISS** |
| Defendants. | |

**TABLE OF CONTENTS**

**INTRODUCTION**................................................................................................1

**BACKGROUND** ................................................................................................2

    **I.**     **Governing Principles of Law Enforcement** ..............................................2

    **II.**    **The Challenged Connecticut Act** ................................................................4

    **III.**   **Procedural History**................................................................................7

**LEGAL STANDARD** ................................................................................8

**ARGUMENT**................................................................................................8

    **I.**     **The United States Possesses Standing to Challenge SB 397**....................8

         **A.**    **SB 397 Threatens Harm to the United States**..............................10

             **1.**    **SB 397 is Unconstitutional and Inflicts a Sovereign Injury Upon the United States** ................................................................10

             **2.**    **Sections 3, 4, and 5 Threaten Injury to the United States**..............12

         **B.**    **A Favorable Ruling From This Court Would Redress the Harms the United States Faces** ................................................................19

         **C.**    **Governor Lamont, Attorney General Tong, and CSA Griffin are Proper Parties for Each Cause of Action** ................................................22

         **D.**    **Governor Lamont, Attorney General Tong, CSA Griffin, and the State of Connecticut Are Proper Parties in the United States' Challenge to Section 6 of SB 397** ................................................................26

    **II.**    **This Dispute is Ripe for Review** ................................................................28

**CONCLUSION** ................................................................................................33

## TABLE OF AUTHORITIES

**Cases**

*All. of Auto. Mfrs., Inc. v. Currey*,
  984 F. Supp. 2d 32 (D. Conn. 2013) ....................................................................... 29

*Am. Cruise Lines v. United States*,
  96 F.4th 283 (2d Cir. 2024) ................................................................................... 21

*Arizona v. United States*,
  567 U.S. 387 (2012) ............................................................................................ 3, 12

*Arizona v. Yellen*,
  34 F.4th 841 (9th Cir. 2022) ................................................................................. 10

*Armstrong v. Exceptional Child Center, Inc.*,
  575 U.S. 320 (2015) ............................................................................................... 12

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ............................................................................................. 9, 13

*Columbia Air Servs. v. DOT*,
  293 Conn. 342 (2009) ...................................................................................... 26, 27

*Comm. for Freedom of the Press v. Rokita*,
  147 F.4th 720 (7th Cir. 2025) .............................................................................. 21

*Crow Indian Tribe v. United States*,
  965 F.3d 662 (9th Cir. 2020) ................................................................................. 11

*Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*,
  118 F.4th 505 (2d Cir. 2024) ............................................................................... 21

*Ex Parte Young*,
  209 U.S. 123 (1908) ............................................................................................... 22

*Gardner v. Toilet Goods Ass'n*,
  387 U.S. 167 (1967) ............................................................................................... 29

*Gunn v. Minton*,
  568 U.S. 251 (2013) ................................................................................................. 8

*In re Debs*,
  158 U.S. 564 (1895) ............................................................................................... 12

*In re Neagle*,
135 U.S. 1 (1890) ................................................................................................ 16, 20

*Isaacs v. Bowen,*
865 F.2d 468 (2d Cir. 1989) ....................................................................................... 29

*Johnson v. Maryland*,
254 U.S. 51 (1920) ...................................................................................................... 16

*Knight v. City of New York*,
164 F.4th 173 (2d Cir. 2026) ..................................................................................... 21

*Kuck v. Danaher*,
822 F. Supp. 2d 109 (D. Conn. 2011) ....................................................................... 23

*Larson v. Valente*,
456 U.S. 228 (1982) .................................................................................................... 21

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ......................................................................................... 8, 10, 19

*MedImmune, Inc. v. Genentech, Inc.,*
549 U.S. 118 (2007) .................................................................................................... 28

*Murphy v. New Milford Zoning Comm'n*,
402 F.3d 342 (2d Cir. 2005) ...................................................................................... 28

*Nat'l Org. for Marriage, Inc. v. Walsh*,
714 F.3d 682 (2d Cir. 2013) ...................................................................................... 28

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,*
491 U.S. 350 (1989) .................................................................................................... 32

*N.Y. Civil Liberties Union v. Grandeau*,
528 F.3d 122 (2d Cir. 2008) ...................................................................................... 29

*New York v. Tanella*,
374 F.3d 141 (2d Cir. 2004) ...................................................................................... 31

*New York v. United States Dep't of Health & Hum. Servs.*,
414 F. Supp. 3d 475 (S.D.N.Y. 2019) ....................................................................... 30

*Omar Islamic Ctr. Inc. v. City of Meriden*,
633 F. Supp. 3d 600 (D. Conn. 2022) ......................................................................... 9

*Principality of Monaco v. State of Mississippi*,
    292 U.S. 313 (1934)................................................................................ 22, 23

*S. Lyme Prop. Owners Ass'n., Inc. v. Town of Old Lyme*,
    539 F. Supp. 2d 524 (D. Conn. 2008) ............................................................ 29

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020)........................................................................................ 2

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996)............................................................................... 9, 27, 32

*Simmonds v. I.N.S.*,
    326 F.3d 351 (2d Cir. 2003) .......................................................................... 29

*Soule v. Connecticut Ass'n of Schs., Inc.*,
    90 F.4th 34 (2d Cir. 2023) ............................................................................. 19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)......................................................................................... 9

*Stauffer v. Brooks Bros.*,
    619 F.3d 1321 (Fed. Cir. 2010) ......................................................................11

*Steffel v. Thompson*,
    415 U.S. 452 (1974)................................................................................... 9, 32

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)................................................................................... 9, 13

*Sweet v. Sheahan*,
    235 F.3d 80 (2d Cir. 2000) .............................................................................. 8

*Tennessee v. Davis*,
    100 U.S. 257 (1879)................................................................................... 2, 16

*Tweed-New Haven Airport Auth. v. Tong*,
    930 F.3d 65 (2d Cir. 2019) ............................................................................ 10

*United States v. Arlington Cnty.*,
    669 F.2d 925 (4th Cir. 1982)...........................................................................11

*United States v. Assa Co.*,
    934 F.3d 185 (2d Cir. 2019) ............................................................................ 8

*United States v. California*,
173 F.4th 1060 (9th Cir. 2026).................................................................................... passim

*United States v. City of Arcata*,
629 F.3d 986 (9th Cir. 2010)..................................................................................... 16, 17

*United States v. City of Philadelphia*,
No. 26-cv-4208, 2026 WL 1906075 (E.D. Pa. July 2, 2026)............................................... 18, 20

*United States v. City of Pittsburgh*,
757 F.2d 43 (3d Cir. 1985).......................................................................................9, 11

*United States v. Colo. Sup. Ct.*,
87 F.3d 1161 (10th Cir. 1996)......................................................................................11

*United States v. Commonwealth of Virginia*,
No. 3:26-CV-545, 2026 WL 1909995 (E.D. Va. July 2, 2026)......................................... passim

*United States v. Connecticut*,
566 F. Supp. 571 (D. Conn. 1983) ............................................................................ 9, 26, 27

*United States v. Illinois*,
796 F. Supp. 3d 494 (N.D. Ill. 2025) ............................................................................... 20

*United States v. Mississippi*,
380 U.S. 128 (1965)............................................................................................... 22, 27

*United States v. Missouri*,
114 F.4th 980 (8th Cir. 2024).....................................................................................11, 28

*United States v. Texas*,
143 U.S. 621 (1892)................................................................................................... 27

*Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*,
790 F.3d 1000 (10th Cir. 2015)...................................................................................... 26

*Vitagliano v. Cnty. of Westchester*,
71 F.4th 130 (2d Cir. 2023)..................................................................................... 9, 13, 18

*Vt. Agency of Nat. Res. v. United States ex. rel. Stevens*,
529 U.S. 765 (2000).................................................................................................11

*We the Patriots USA, Inc. v. Lamont*,
No. 3:23-CV-00737 (KAD), 2024 WL 1241939 (D. Conn. Mar. 22, 2024)........................... 22

**Constitutions and Statutes**

Conn. Const. art. IV § 5 .................................................................................................... 24

Conn. Const. art. IV § 12 .................................................................................................. 25

U.S. Const., art. I § 8, cl. 4 ................................................................................................. 3

U.S. Const. art. II § 3 ......................................................................................................... 2

5 U.S.C. § 301 .................................................................................................................... 3

5 U.S.C. § 5901 .................................................................................................................. 4

6 U.S.C. § 211 .................................................................................................................... 2

6 U.S.C. § 252 .................................................................................................................... 2

8 U.S.C. § 1103(a)(2) ..................................................................................................... 3, 4

8 U.S.C. § 1182 .................................................................................................................. 3

8 U.S.C. §§ 1225-29a ........................................................................................................ 3

8 U.S.C. § 1231 .................................................................................................................. 3

21 U.S.C. § 801 .................................................................................................................. 3

28 U.S.C. § 509 .................................................................................................................. 3

28 U.S.C. § 531 .................................................................................................................. 2

28 U.S.C. § 561 .................................................................................................................. 2

29 U.S.C. § 668 .................................................................................................................. 4

Conn. Gen. Stat. § 3-1 ..................................................................................................... 24

Conn. Gen. Stat. § 3-125 ................................................................................................. 25

Conn. Gen. Stat. § 51-275 ............................................................................................... 23

Conn. Gen. Stat. § 51-277a ............................................................................................... 1

Conn. Gen Stat. § 51-277e ................................................................................................ 1

Conn. Gen Stat. § 53a-22 .................................................................................................. 1

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 8

Fed. R. Civ. P. 41.................................................................................................. 2

**Regulations**

28 C.F.R. §§ 0.100-0.101 ..................................................................................... 3

**Other Authorities**

Eng, https://ctnewsjunkie.com/2026/05/04/we-are-all-minneapolis-lamont-signs-bill-limiting-ice-into-law/ (May 4, 2026, 2:11 p.m.) (last visited Aug. 3, 2026) ......................................... 25

https://perma.cc/7Q5F-ZXUE (last visited Aug. 3, 2026) ............................................................19

https://portal.ct.gov/ag/press-releases/2026-press-releases/attorney-general-tong-praises-senate-passage-of-senate-bill-397 (last visited Aug. 3, 2026) ............................................................25

https://www.youtube.com/watch?v=5Z1etP04_As (last visited Aug. 3, 2026)..............................18

**INTRODUCTION**

On May 1, 2026, the Connecticut legislature passed Substitute Senate Bill 397, which Governor Lamont signed into law on May 4, 2026 ("Act" or "SB 397"). Through SB 397, Connecticut seeks to directly regulate federal officers in the performance of their official duties and purports to subject them to criminal penalties should they depart from those regulations. This is blatantly unconstitutional, as three other courts have held in recent months regarding similar laws. Through this litigation, the United States seeks to enjoin four discrete sections of SB 397 because they impermissibly regulate the Federal Government: Sections 3, 4, and 5,[1] which impose state-law use of force standards on federal officers, and Section 6, which regulates what federal officers may and may not wear when carrying out their official duties in Connecticut, including facial coverings and personal identifiers. Both the use of force and mask and identification provisions expose federal officers to criminal liability unless they conform to Connecticut's law. These provisions flout well-established precedent that states have no authority to regulate the Federal Government "in any manner and to any degree." *United States v. California*, 173 F.4th 1060, 1068 (9th Cir. 2026).

Defendants have now moved to dismiss the United States' complaint for lack of subject matter jurisdiction, citing standing and prudential ripeness concerns. Neither argument is persuasive. First, the United States has made the requisite showing of injury for purposes of pre-enforcement standing where it has demonstrated a sovereign injury through Connecticut's enforcement of an unconstitutional law, an intention to engage in conduct proscribed by SB 397, and a credible threat of enforcement for this course of conduct. Second, the United States properly

---

[1] Section 3 amends Conn. Gen. Stat. § 51-277a. Section 4 amends Conn. Gen Stat. § 53a-22. Section 5 amends Conn. Gen Stat. § 51-277e. For ease of reference, each provision will be referred to in this brief by its section number in SB 397.

1

named each defendant in this lawsuit. Moreover, the injuries the United States faces are redressable by a favorable decision of this Court. Finally, this purely legal challenge to the constitutionality of SB 397 is ripe for review. Defendants' Motion to Dismiss should be denied in its entirety.

## BACKGROUND

### I.    Governing Principles of Federal Law Enforcement

The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3. The authority to discharge that duty "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States." *Tennessee v. Davis*, 100 U.S. 257, 263 (1879). Because "no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203-04 (2020). In executing the laws, the Federal Government "can act only through [those] officers and agents," who must in turn "act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement activities necessarily take place within the several States, including Connecticut.

Federal law enforcement agencies, including those within the Departments of Justice ("DOJ") and Homeland Security ("DHS"), are created by federal law. *See, e.g.*, 28 U.S.C. § 531 (Federal Bureau of Investigation ("FBI")), § 561 (U.S. Marshals Service), § 599A (Bureau of Alcohol, Tobacco, Firearms and Explosives); 6 U.S.C. § 252 (Immigration and Customs Enforcement ("ICE")); 6 U.S.C. § 211 (U.S. Customs and Border Protection ("CBP")); Reorganization Plan No. 2 of 1973, 38 F.R. 15932, 87 Stat. 1091, as amended Pub. L. 93–253, § 1, Mar. 16, 1974, 88 Stat. 50 (Drug Enforcement Administration ("DEA")). All law enforcement agents within these agencies have the power to swear out and execute search warrants based upon probable cause. Fed. R. Civ. P. 41. Different law enforcement agencies within the Federal

Government have different, but sometimes overlapping, authorities for the types of crimes and offenses they investigate and prosecute.

For example, the DEA enforces the Nation's controlled substances laws. *See generally* 21 U.S.C. § 801, *et seq*. In carrying out that mission, the DEA investigates and aids in the prosecution of violators of controlled substances laws; seizes and forfeits assets derived from illicit drug trafficking; and manages a national drug intelligence program in cooperation with federal, state, local, and foreign officials. *See* 28 C.F.R. §§ 0.100-0.101.

The FBI is charged with rooting out violent crime, defending the homeland against terrorist attacks, and investigating and combating cybercrime, among other duties. *See id*. § 0.85. It conducts extensive operations throughout the country and in partnership with federal, state, local, and foreign officials.

DHS and its component agencies of ICE and CBP are principally responsible for enforcing the nation's immigration laws. Those laws are primarily contained in the Immigration and Nationality Act ("INA"), and, pursuant to Congress's power to "establish an uniform Rule of Naturalization," U.S. Const., art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status," *see Arizona v. United States*, 567 U.S. 387, 395 (2012). The INA gives the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225-29a, 1231.

To achieve the foregoing goals, the heads of each agency have the power to govern the agency's affairs and direct their agents' activities. *See, e.g.*, 5 U.S.C. § 301 (authorizing the head of an Executive or military department to "prescribe regulations for the government of his department [and] the conduct of its employees"); 28 U.S.C. § 509 (vesting all functions of other officers, agencies, and employees of the Department of Justice in the Attorney General); 8 U.S.C.

§ 1103(a)(2) (authorizing the DHS Secretary to "control, direct[], and supervis[e]" all DHS employees). Included within that power to govern the agencies is the power to determine how agents must conduct themselves when engaged in official duties and their use of force in accordance with federal law. Federal law similarly empowers the Executive to provide for and dictate federal law enforcement officers' uniforms and equipment when carrying out their official duties. *See, e.g., id.*; 5 U.S.C. § 5901 (directing the head of each federal agency to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational safety and health programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees).

## II.    The Challenged Connecticut Act

SB 397 was passed by the Connecticut legislature on May 1, 2026, and the Governor signed it into law on May 4, 2026. *See* ECF 1-1, Ex. A. Sections 3, 4, 5, and 6 of the Act took effect immediately. *See id.* at §§ 3, 4, 5, 6 (stating "*Effective from passage*").

Section 6 of the Act regulates the use of facial coverings and display of officer names and badges by "peace officers," expressly including federal agents. Because "peace officer" explicitly includes federal agents, *see* § 6(a)(1) (incorporating definition of § 3(a)(1)(A)), Section 6(b)'s limitations on facial coverings purport to directly regulate federal agents. Section 6(b) of the Act requires that "[a] peace officer, while carrying out the enforcement of laws of this state, any other state or the United States, shall not wear any facial covering or personal disguise while interacting with the public in the performance of such officer's duties[.]" *See id.* § 6(b). "Facial covering" is defined broadly to include "any opaque mask, garment, helmet, headgear or other item that conceals or obscures the facial identity of an individual, including, but not limited to, a balaclava,

4

tactical mask, gator, ski mask and any similar type of facial covering or face-shielding item." *Id.* § 6(a)(2). The exceptions to the rule are narrow and relate to masks used for health, safety, or for an "active undercover operation or assignment" if wearing a facial covering in that undercover work is authorized by a supervisor or court. § 6(b).

Section 6(c) also pertains to any "peace officer," including federal agents; it applies when "conducting a planned arrest" or "interacting with the public" in an official capacity; and it dictates that a federal officer must be "clearly identified" by "badge and name tag on the officer's uniform." *Id.* § 6(c). Section 6(c) contains narrowly drawn exceptions for "active undercover assignment[s]," compliance with the model policy adopted pursuant to section 7-294ii of the Connecticut General Statutes, court order, and if weather or safety-related conditions preclude compliance. *Id.*

Any federal agent who violates either Section 6(b) or 6(c) "shall be guilty of a class D misdemeanor" which is punishable by up to 30 days in jail. Conn. Gen Stat. § 53a26(d)(4). Beyond such criminal liability, Section 6(d) seeks to impose civil liability on agents by purporting to prohibit any assertion of "any privilege or immunity" in tort cases if the agent was "wearing a facial covering or personal disguise in a knowing and wilful [sic] violation of this section." ECF 1-1, § 6(d).

Sections 3, 4, and 5 of the Act relate to use of force and purport to regulate federal agents directly by defining "peace officer" to include "any federal law enforcement officer as defined under 18 USC 115(c)(1) and 34 USC 50301(5)." *See* ECF 1-1 at § 3(a)(1)(A); *see also id.* at § 4(a)(1)(B) (incorporating same definition); § 5(a) (incorporating same definition).

Section 4 permits use of force in narrow circumstances, namely, when an officer "reasonably believes" force is necessary in "effecting an arrest pursuant to a warrant" or "preventing an escape from custody," and permits the officer to "defend himself or herself or a

5

third person from the use or imminent use of physical force" as long as the officer does not know "that the arrest or custody is unauthorized." *Id.* § 4(a)(2); (b). Execution of search warrants and other investigative conduct do not appear to fall within the scope of Section 4. *See id.* Section 4(c) defines when deadly force is justified. It requires a use of force to be consistent with Section 4(b) (*e.g.*, effecting an arrest or preventing an escape from custody) and also requires that the actions must be "objectively reasonable under the given circumstances at that time," and either the officer "reasonably believes" deadly force is necessary to defend himself or a third party against "the use or imminent use of deadly physical force" or the officer has "reasonably determined":

- that "there are no available reasonable alternatives to the use of deadly physical force"; and

- he "reasonably believes" that "the force employed creates no unreasonable risk of injury to a third party"; and

- he reasonably believes "such use of force to be necessary to" effect an arrest of a person whom he "reasonably believes has committed or attempted to commit a felony which involved the infliction of serious physical injury," or

- to "prevent the escape from custody" of such person if that person "poses a significant threat of death or serious physical injury to others"

- as long as the officer, in both scenarios and if feasible, gave "warning of his or her intent to use deadly physical force."

*Id.* § 4(c)(1)(A) & (B). Section 4(c)(2) provides "factors to be considered" in the after-incident evaluation of whether deadly force was justified (which are additional factors that an agent may consider prior to using force), including whether the person "possessed or appeared to possess a deadly weapon," whether the peace officer "engaged in reasonable deescalation measures prior to

6

using deadly physical force," and whether the peace officer's conduct was "unreasonable" and "led to an increased risk of an occurrence of the situation that precipitated the use of such force." *Id.* § 4(c)(2). Section 4(d) defines specifically when "chokeholds," a type of force, are permitted. Sections 4(e)-(h) appear not to pertain to federal agents.

Sections 3 and 5 purport to give the state of Connecticut the authority to investigate and prosecute uses of force by federal agents, and Section 3 purports to give the State the power to exclude the Federal Government from any collection of evidence in such an investigation. For example, Section 3(a)(2) states that in any use of deadly force or use of physical force by a federal officer resulting in death, Connecticut's "Division of Criminal Justice shall cause an investigation to be made" and the Connecticut Inspector General ("IG") "shall" determine "whether the use of physical force by the [federal] officer was justifiable" under Connecticut law. *Id.* § 3(a)(2); *see also id.* § 5(a). A similar investigation and determination is required if a person dies in the custody of a federal officer. *Id.* § 3(a)(3)(A); *see id.* § 5(a)(5) (same). The law is explicit that any investigation is to be conducted by the "Division of Criminal Justice and the Inspector General" who "shall have the unrestricted right to access the scene and collect evidence" even if only a federal officer was involved, and may seek injunctive relief in Connecticut state court if anyone "restricts" their right to access the scene and collect evidence. *Id.* § 3(a)(5)(B), (C). If it is determined by the State that the use of force was not justified or there was a failure to intervene, the Connecticut "Office of the Inspector General *shall* prosecute" the violation. *Id.* § 3(c) (emphasis added); *see also id.* § 5(a)(2) (same).

### III.   Procedural History

The United States commenced this action on May 15, 2026, against the State of Connecticut, Governor Ned Lamont, Attorney General William Tong, Chief State's Attorney ("CSA") Patrick Griffin, and Deputy Chief State's Attorney, Inspector General ("IG") Eliot D.

7

Prescott, to enjoin enforcement of SB 397 against federal law enforcement officers as an unlawful regulation of the Federal Government invalid under the Supremacy Clause. ECF 1 (Compl.) ¶¶ 12-16, 57-67. The United States seeks a declaration that Sections 3, 4, 5, and 6 of SB 397 are invalid as to federal officers under the Supremacy Clause, and an order enjoining Defendants, as well as their successors, agents, servants, employees and attorneys, and all those working in concert with them, from enforcing those sections against the Federal Government. *Id.*, Prayer for Relief. On May 22, 2026, the United States moved for a preliminary injunction. ECF 12. Then, on July 13, 2026, Defendants moved to dismiss the complaint in its entirety for lack of subject matter jurisdiction on standing and ripeness grounds. ECF 30, ECF 30-1 (MTD Memo.). A hearing on both motions is scheduled for August 25, 2026. ECF 37.

## LEGAL STANDARD

A motion to dismiss filed under Rule 12(b)(1) challenges subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and lack the power to adjudicate claims absent jurisdiction conferred by the Constitution or by statute. *Gunn v. Minton*, 568 U.S. 251, 256 (2013); *United States v. Assa Co.*, 934 F.3d 185, 188 (2d Cir. 2019). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

## ARGUMENT

### I.    The United States Possesses Standing to Challenge SB 397.

The United States has standing to bring this challenge. Constitutional standing is an indispensable component of the case-or-controversy requirement of Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To satisfy the constitutional requirement of standing, a plaintiff

must demonstrate that they "have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Omar Islamic Ctr. Inc. v. City of Meriden*, 633 F. Supp. 3d 600, 610 (D. Conn. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Where a state enacts a law that is invalid under the Supremacy Clause, the United States suffers a sovereign injury which it has standing to remedy. *See, e.g.*, *United States v. Connecticut*, 566 F. Supp. 571, 579 (D. Conn. 1983) *aff'd without opinion*, 742 F.2d 1443 (2d Cir. 1983), *aff'd without opinion*, 465 U.S. 1014 (1984); *United States v. City of Pittsburgh*, 757 F.2d 43, 45 (3d Cir. 1985); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 71 n.14 (1996).

To demonstrate standing based on the threatened enforcement of a law, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Rather, that requirement is satisfied where the plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). In the Second Circuit, once a plaintiff shows that a law facially covers its conduct, enforcement is presumed and the burden shifts to the defendant government to affirmatively disavow it. *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 138 (2d Cir. 2023). The "credible-threat standard sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review, as courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Id.* (quotations and citations omitted). Further, "the [traceability] requirement is met" where "a plaintiff is threatened by the enforcement of a

9

statute that specifically targets the plaintiff." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) (citing *Lujan*, 504 U.S. at 561-62).

The United States easily satisfies these requirements.

### A.       SB 397 Threatens Harm to the United States.

Defendants contend that the United States has not established standing where it cannot demonstrate a cognizable Article III injury-in-fact. MTD Memo. 17-27. Defendants attempt to disclaim sovereign injury, and allege that because Sections 3, 4, and 5 supposedly do not proscribe any conduct, and Section 4 is purportedly nothing more than a justification defense, the United States cannot possibly claim an injury. Furthermore, Defendants contend that any injury claimed from Sections 3 and 5, which involve the investigative and prosecutorial authority of the IG, is too remote and speculative to satisfy standing. These arguments are misguided, and the United States addresses them in turn.

### 1.       SB 397 is Unconstitutional and Inflicts a Sovereign Injury Upon the United States.

As discussed in the briefing on the United States' motion for preliminary injunction, any time federal law is violated or the Federal Government is regulated, the United States suffers a sovereign injury. ECF 12-1 (PI Memo.) 10; ECF 47 (Reply ISO PI) 8-9; *see also California*, 173 F.4th at 1069 ("[I]rreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity."); *United States v. Commonwealth of Virginia*, No. 3:26-CV-545, 2026 WL 1909995, at *12 (E.D. Va. July 2, 2026) ("[B]eing subjected to a state law that regulates an activity that is constitutionally delegated to the federal government is an infringement of the Supremacy Clause that constitutes an irreparable injury."); *cf. Arizona v. Yellen*, 34 F.4th 841, 851-53 (9th Cir. 2022). As the Supreme Court stated, "[i]t is beyond doubt" that a complaint "asserts an injury to the United States" if it alleges an "injury to [U.S.] sovereignty

10

arising from violation of its laws." *Vt. Agency of Nat. Res. v. United States ex. rel. Stevens*, 529 U.S. 765, 771 (2000); *see also City of Pittsburgh*, 757 F.2d at 45 (finding "injury to [United States'] sovereign rights sufficient to have standing to sue in the district court"); *Missouri*, 114 F.4th at 985 ("Interference with the federal government's interest in enforcing federal law is sufficient to establish that the Act's implementation injured the United States.").

On its face, SB 397 is invalid under the Supremacy Clause, which in turn causes a sovereign injury. That suffices for purposes of standing. In *United States v. Missouri*, the court of appeals addressed the question of whether the Federal Government had standing to challenge a state law statute that facially violated the Supremacy Clause. 114 F.4th 980 (8th Cir. 2024). In rejecting the State of Missouri's argument that the Federal Government lacked an injury-in-fact, the Eighth Circuit explained:

> Interference with the federal government's interest in enforcing federal law is sufficient to establish that the Act's implementation injured the United States. Whether the United States is entitled to relief from that injury is a question on the merits of the dispute.

*Id.* at 985 (Missouri's statute classifying various federal firearms laws as infringements of the Second Amendment was a "concrete and particularized" injury to the United States by violating the Supremacy Clause) (citing *United States v. Colo. Sup. Ct.*, 87 F.3d 1161, 1165 (10th Cir. 1996), and *Crow Indian Tribe v. United States*, 965 F.3d 662, 676 (9th Cir. 2020)); *see also California*, 173 F.4th at 1069 ("Here, irreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity."); *Stauffer v. Brooks Bros.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010) ("[A] violation of [the] [federal] statute inherently constitutes an injury to the United States .... The parties have not cited any case in which the government has been denied standing to enforce its own law."); *United States v. Arlington Cnty.*, 669 F.2d 925, 929

11

(4th Cir. 1982) ("The United States can sue to enforce its policies and laws, even when it has no pecuniary interest in the controversy.").

Originating in the Federal Government's equitable right to sue to protect its sovereign interests, the Federal Government has for *centuries* had standing to seek equitable relief in the federal courts to challenge state statutes that facially violate the Supremacy Clause of the U.S. Constitution. For example, in *Arizona v. United States*, 567 U.S. 387 (2012), the Federal Government successfully invoked the federal court's equity jurisdiction against the State of Arizona, as the Federal Government is doing here against the State of Connecticut, seeking to enjoin enforcement of a statute that violated the Supremacy Clause of the U.S. Constitution, notwithstanding that the Arizona statute had not yet taken effect. *See also In re Debs*, 158 U.S. 564 (1895) (Federal Government has an inherent right to invoke the equitable jurisdiction of the courts to protect the general welfare, remove obstructions to its sovereign functions, and enforce federal supremacy over interstate channels); *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England."). That suffices for standing, and the Court need not look further.

### 2.  Sections 3, 4, and 5 Threaten Injury to the United States.

Sections 3, 4, and 5 of SB 397 also pose tangible (although no less concrete), imminent harm to the United States.[2] In this pre-enforcement challenge, the United States satisfies the injury prong where it demonstrates an intention to engage in conduct proscribed by SB 397 (which is

---

[2] Defendants' Motion to Dismiss only addresses the United States' injuries with respect to Sections 3, 4, and 5 of SB 397. They do not contest that the United States has established injury for purposes of standing with respect to Section 6.

unconstitutional) and there exists a credible threat of enforcement for this course of conduct. *See Driehaus*, 573 U.S. at 159 (quoting *Babbitt*, 442 U.S. at 298).

At the threshold, there is no mistaking that the United States has asserted "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a [state] statute[.]" *Id.* (citation omitted). The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to Connecticut (or any State) by complying with Connecticut's purported requirements for federal law enforcement officers. Indeed, the United States will not direct its law enforcement agencies to adopt the policies that Connecticut demands or require its officers to comply with these unlawful provisions. *See* ECF 12-2 (O'Brien Decl.) ¶ 20; ECF 12-3 (Allen Decl.) ¶ 22; ECF 12-6 (Cleveland Decl.) ¶ 17. As a direct result, under Connecticut law, federal officers are threatened with criminal prosecution, which poses a serious and concrete injury that the Federal Government is entitled to address through this pre-enforcement challenge.

Defendants contend that Sections 3, 4, and 5 of SB 397 do not proscribe any conduct, are not enforceable, and cannot be violated. MTD Memo. 17. This creative characterization of these provisions belies reality. Section 4 imposes restrictions on use of force and use of deadly force upon federal officers. ECF 1-1, § 4(a)(2), *id.* §§ (b)–(d); *see also id.* § 3(a)(1)(A) (defining "Peace officer" to include "any federal law enforcement officer as defined under 18 USC 115(c)(1) and 34 USC 50301(5)"). These requirements easily satisfy the standard that a party's "intended conduct need only be *arguably* proscribed by the challenged statute, not necessarily *in fact* proscribed." *Vitagliano*, 71 F.4th at 138 (internal quotation marks and citation omitted) (emphases in original).

For example, Section 4(b) provides:

a peace officer … is justified in using physical force upon another person when and to the extent that he or she reasonably believes such use to be necessary to: (1)

13

> Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape.

*Id.* § 4(b). In plain terms, Section 4 supplies the standards by which federal officers executing their official duties in Connecticut must abide when using force.

Section 3, in addition to including federal law enforcement officers in the definition of peace officer, *id.* § 3(a)(1)(A), also requires any use of force resulting in death or any use of deadly physical force to be investigated by the Division of Criminal Justice (DCJ) and tasks the IG with determining whether that use of force was justifiable. *Id.* § 3(a)(2). Similarly, this section requires any death within the physical custody of a federal law enforcement officer or agency be investigated by the IG so a determination can be made as to whether physical force was used, and if so, whether it was justified. *Id.* § 3(a)(3). Section 3 also grants the DCJ and the IG unrestricted access to the scene in which a peace officer uses physical force that results in death, "uses deadly physical force, or a person dies in the custody of a peace officer or law enforcement agency, regardless of whether such incident involved only peace officers employed by the federal government." *Id.* § 3(a)(5)(B). Any restriction on such access triggers the DCJ or the IG to bring an action in Superior Court for injunctive relief. *Id.* § 3(a)(5)(C).

Section 3(a)(6) requires the IG to complete a detailed status report for incidents when an officer uses physical force or deadly physical force that results in death. *Id.* § 3(a)(6). In such circumstances, upon completion of an investigation of the incident, the IG must file a report with the CSA that becomes publicly available on the DCJ's website. *Id.* § 3(b). Finally, the IG's office "*shall* prosecute" any case where the IG "determines that (1) the use of force by a peace officer

14

was not justifiable under section" 4, "or (2) there was a failure to intervene in such incident or to report any such incident[.]" *Id.* § 3(c) (emphasis added).

Section 5 provides that the IG shall investigate peace officers (in accordance with Section 3) and prosecute peace officers in cases where the use of force was found not to be justifiable under Section 4. *Id.* § 5(a).

Taken together, these provisions heighten the risk that federal law enforcement officers will hesitate before using force in dangerous situations for fear of prosecution in Connecticut. *See* PI Memo. at 11-12, 22-23. Situations requiring use of force necessitate split-second decisionmaking and can become deadly if an officer exhibits any kind of hesitation. Federal officers are trained extensively on federal use of force policy to enable them to make such split-second decisions. *See* O'Brien Decl. ¶ 16; Allen Decl. ¶ 21; ECF 12-5 (DuBan Decl.) ¶¶ 5-11; Cleveland Decl. ¶¶ 18, 19. As demonstrated in detail through the declarations submitted by the United States in support of its motion for preliminary injunction, Connecticut's imposition of onerous requirements for the justification of use of force will place officers and the public in harm's way by delaying the decisionmaking process. *See*, *e.g.*, O'Brien Decl. ¶ 16 ("Any attempt to impose or integrate Connecticut's use of force policy into the DOJ's use of force policy could reasonably be expected to increase the risk of death or serious physical injury to FBI Special Agents and others."); Allen Decl. ¶ 21 ("Requiring Special Agents to comply with multiple legal standards for the use of force, as SB 397 does, creates a risk to their safety and to that of the public.").

Defendants' attempt to characterize Section 4 as a "justification defense" fares no better. MTD Memo. 19-22. According to Defendants, Section 4 does not harm the United States where it operates as a benefit to federal officers by providing a justification for their actions. *Id.* at 21. But in reality, Section 4 imposes a series of onerous requirements that federal officers performing their

15

official duties in Connecticut must familiarize themselves with and abide by should they need to use force. Federal agents, however, are subject to *federal* use of force policies, including with respect to review and any discipline or prosecution. Indeed, federal law enforcement agencies enforce *federal law* throughout the United States, and in so doing, are generally not required to comply with individual state laws when operating within the scope of their official duties. *See, e.g.*, *Johnson v. Maryland*, 254 U.S. 51 (1920); *Davis*, 100 U.S. at 262-63 ("If, when ... acting ... within the scope of their authority, [federal] officers can be arrested and brought to trial in a State court, for an alleged offence against the law of the State ... the operations of the general government may at any time be arrested at the will of one of its members."); *In re Neagle*, 135 U.S. 1, 75 (1890) ("[I]f the prisoner is held in the state court to answer for an act which he was authorized to do by the law of the United States, which it was his duty to do as marshal of the United States, and if in doing that act he did no more than what was necessary and proper for him to do, he cannot be guilty of a crime under ... [state] law[.]"); *United States v. City of Arcata*, 629 F.3d 986, 991-92 (9th Cir. 2010) (invalidating local ordinances that prohibited federal military recruiters from recruiting minors).

Connecticut's use of force policy in Section 4 is broader than federal standards. For example, in Connecticut, use of force is not permissible in certain scenarios, including execution of search warrants or other investigative actions, or protection assignments. *See* ECF 1-1, § 4(a)-(c). This would expose federal agents to potential liability in the routine course of their official job duties should they exercise their discretion in accordance with *federal* policy to use force. Moreover, should a federal officer be required to employ force or deadly force – often under extremely stressful and quickly evolving circumstances where the officer must make split-second decisions with life-or-death consequences – he or she must run through the required factors listed

16

in Section 4, including assessing whether the individual committed a felony that involved the infliction of serious physical injury, whether force may cause unreasonable risk to a third party, whether the agent's own actions may have contributed to the situation, whether deescalation is possible, and whether a warning about use of deadly force is feasible. *See id.* § 4(b), (c). Should a federal officer err in abiding by such restrictions, he or she will be investigated and prosecuted by the State, dispelling the falsehood that Section 4 is "a boon, not harm." MTD Memo. 19.

Even if Section 4's use of force provisions closely mirrored federal law and policies (which they do not), Connecticut's law still would run afoul of intergovernmental immunity and pose cognizable harm to the United States. "A state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid, even if it is no more restrictive than federal law." *City of Arcata,* 629 F.3d at 991-92. Even if the proscribed conduct is illegal under federal standards, it is still an unconstitutional and burdensome regulation on the Federal Government to have its officers face an investigation and potential criminal liability from state officials. *California*, 173 F.4th at 1067-68 (holding that a law was invalid under the Supremacy Clause because it "directly regulates inherently governmental conduct of federal officers carrying out their duties *under federal authority*") (emphasis original).

Finally, the threatened injury from the IG's investigative and prosecutorial authority is not speculative. Federal officers face a credible threat of enforcement of the new law and prosecution thereunder, especially where Connecticut has refused to disclaim its intentions of enforcing the law against federal officers. *See Virginia*, 2026 WL 1909995, at *9 (finding "a credible threat of prosecution" where "Virginia declined to disavow enforcement of the Mask/Identity Law once it became effective on July 1, 2026, and there is no reason to believe Virginia will not enforce the law it passed in May."). As noted throughout this litigation, Connecticut and its officials have

*never* disavowed enforcement of the law. *See* PI Memo. 10-11; Reply ISO PI 3. Even in its Motion to Dismiss, Defendants have not given this Court a reason to believe they will not enforce the law. *See United States v. City of Philadelphia*, No. 26-cv-4208, 2026 WL 1906075, at *8 (E.D. Pa. July 2, 2026) ("[C]onspicuously absent from Defendants' Opposition is any indication, statement, or declaration from any Defendant that they do *not* plan to enforce the Bill against federal law enforcement officers should federal officers violate the ordinance. That absence speaks volumes.").

To the extent that Defendants allege that threat of prosecution is too attenuated since "[the] United States has not alleged that any of its' officers plan to kill a Connecticut resident or use deadly force on a Connecticut resident," MTD Memo. 25; *see also id.* at 21-22; 24, that argument should be rejected. That is not the standard. *See Vitagliano*, 71 F.4th at 138 (explaining that the credible-threat standard for a pre-enforcement challenge is "low" and "quite forgiving," and "courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund.") (internal citation omitted); *see also City of Philadelphia*, 2026 WL 1906075, at *7 (concluding that the United States established it faced a credible threat of enforcement of Philadelphia's mask and ID law because it stated and evidenced an intent not to comply with the law, noting "the movant need not confess that it will in fact violate the law" to satisfy this element of pre-enforcement standing) (cleaned up). Sections 3, 4, and 5 are newly enacted provisions of Connecticut law, and state leaders have affirmatively declared their intent to enforce the law against federal officers. The Governor declared SB 397 "the law of the land in the State of Connecticut," noting that "this is what Connecticut is all about." *See* Compl. ¶ 33, citing https://www.youtube.com/watch?v=5Z1etP04_As (last visited Aug. 3, 2026). He also boasted on X, "Today I signed SB 397 into law. Connecticut will not stand by while federal agents

18

violate the constitutional rights of our residents. Protected areas, accountability measures, and the right to sue federal agents who break the law." *Id.* (citing X post, May 4, 2026 (@GovNedLamont)). And Connecticut's Attorney General announced that the "passage of Senate Bill 397 reaffirms a simple truth. In Connecticut, no one is above the law, including federal immigration officials." *Id.* (citing https://perma.cc/7Q5F-ZXUE (last visited Aug. 3, 2026)).

Defendants' recent passage of the law, refusal to disavow enforcement, and declaration that federal officers will be held accountable under the SB 397 confirms that the injury the United States fears is not only credible, but imminent and concrete.

> **B.    A Favorable Ruling From This Court Would Redress the Harms the United States Faces.**

An order from this Court enjoining Sections 3, 4, and 5[3] would redress the injuries those laws pose to the United States. In order to demonstrate redressability for purposes of Article III standing, "a plaintiff must show that it is 'likely, as opposed to merely speculative, that the [alleged] injury will be redressed by a favorable decision.'" *Soule v. Connecticut Ass'n of Schs., Inc.*, 90 F.4th 34, 47 (2d Cir. 2023) (en banc) (quoting *Lujan*, 504 U.S. at 561). Where the relief sought would remedy any effects of the harm, a plaintiff satisfies the inquiry. *Id.*

Defendants contend that a favorable decision from this Court would not redress the United States' injuries because the state of Connecticut possesses the "fundamental sovereign right to enforce their criminal laws" and enjoining Sections 3, 4, and 5 will not prohibit Connecticut from doing so. MTD Memo. 28-32. While Connecticut does possess the ability to appropriately enforce its criminal laws, it cannot unlawfully regulate federal officials in the execution of their official

---

[3] Much like their arguments with respect to injury, Defendants' Motion to Dismiss only claims that the United States has not established redressability with respect to Sections 3, 4, and 5 of SB 397. They do not contest that the United States' injuries with respect to Section 6 are redressable.

duties by imposing criminal penalties on them for violating unconstitutional laws. *See In re Neagle*, 135 U.S. at 75. There are limitations to a state's police power, especially when dealing with the Federal Government. *See Virginia*, 2026 WL 1909995, at *7 (a state's "police power cannot supplant the federal choice").

Section 4 *requires* federal officers to comply with Connecticut's own set of standards as to use of force. ECF 1-1, §§ 3(a)(1)(A), 4. As discussed above, this constitutes an unlawful regulation of the United States that runs afoul of principles of intergovernmental immunity. Subjecting the United States "to a state law that regulates an activity that is constitutionally delegated to the federal government is an infringement of the Supremacy Clause that constitutes an irreparable injury." *Virginia*, 2026 WL 1909995, at *12. An order of this Court enjoining the law's application to federal officers would redress that injury. Moreover, such relief would unburden federal officers from complying with Connecticut's use of force law while they follow the applicable federal use of force policies to execute federal law enforcement objectives. *See*, *e.g.*, *United States v. Illinois*, 796 F. Supp. 3d 494, 510 (N.D. Ill. 2025) ("Enjoining the Policies would redress the alleged harm by removing definitive impediments to federal immigration policy.").

Contrary to Defendants' assertions, the Federal Government is not asking to operate "above the law," MTD Memo. 37, but instead seeks to reassure its officers and the public that federal officers will abide by federal use of force policies, upon which its officers are extensively trained, in order to enforce federal law. Enjoining Sections 3, 4, and 5 would provide that relief. *See City of Philadelphia*, 2026 WL 1906075, at *8 ("there is a strong likelihood that the United States' injury is redressable by a favorable decision that enjoins Defendants from enforcing the Bill against federal officers"). SB 397 places federal officers at risk of state criminal prosecution should they fail to comply with Section 4 in their use of force, deadly or otherwise, in the execution of

20

their official duties. ECF 1-1, § 3(c); *see also id.* § 5(a)(2) (same). Enjoining the challenged provisions of SB 397 would eliminate the risk that federal officers would be prosecuted in Connecticut for violating *state* use of force standards while carrying out their federal duties.

Defendants argue that, even if the Court were to enjoin Sections 3, 4, and 5, "the DCJ and State's Attorneys, can and will prosecute any federal officials who violate Connecticut's criminal laws." MTD Memo. 31. Accordingly, Defendants contend that the relief sought would not redress the entirety of the United States' claimed harm with respect to the challenged provisions. But that argument plainly fails because "a plaintiff 'need not show that a favorable decision will relieve [their] *every* injury.'" *Am. Cruise Lines v. United States*, 96 F.4th 283, 286 (2d Cir. 2024) (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)); *see also Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*, 118 F.4th 505, 521 (2d Cir. 2024). Enjoining Sections 3, 4, and 5 would provide a significant benefit to federal officers operating in Connecticut because they would be able to execute their official duties according to federal use of force policies for their respective agencies, reducing confusion and hesitation that could lead to injury and death. Moreover, an injunction would substantially reduce the risk that a federal officer is prosecuted at all because he or she is no longer subject to Connecticut's use of force policy. *Knight v. City of New York*, 164 F.4th 173, 180 (2d Cir. 2026) ("[A] district court's ability to reduce the plaintiff's aggregate criminal exposure can satisfy redressability."); *see also Reps. Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720, 729 (7th Cir. 2025) ("[R]emoving an additional layer of criminal liability [is] a form of redress sufficient to confer standing, even though the underlying behavior [is] still subject to prosecution."). Defendants' contention that the United States has failed to demonstrate redressability where Connecticut may still prosecute federal officers should they violate general criminal laws in the state is a red herring. The United States filed suit seeking to remove this

21

obstacle that places officers and the community at risk, and that threatens criminal prosecution of federal officials who do not abide by unconstitutional, state-imposed regulation of federal duties. An order enjoining the law would redress the United States' injuries.

### C. Governor Lamont, Attorney General Tong, and CSA Griffin are Proper Parties for Each Cause of Action.

The Governor, Attorney General, and CSA are properly named parties in the United States' challenge to Sections 3, 4, 5, and 6 of SB 397.[4] Defendants disagree "because none have primary enforcement authorities connected to the laws challenged by the United States." MTD Memo. 9. Thus, according to Defendants, the United States cannot demonstrate that the injury it seeks to redress is fairly traceable to any defendant or likely to be redressed by a favorable decision of this Court. *Id.* They are wrong.

Defendants mistakenly contend that for a party to be a proper defendant, that party must "have (1) a particular duty to enforce the law in question and (2) a demonstrated willingness to exercise that duty." MTD Memo. 9 (quoting *We the Patriots USA, Inc. v. Lamont*, No. 3:23-CV-00737 (KAD), 2024 WL 1241939, at *2 (D. Conn. Mar. 22, 2024)). However, that standard relates to the Supreme Court's decision in *Ex Parte Young*, which involves an exception to state sovereign immunity under the Eleventh Amendment. 209 U.S. 123, 159-60 (1908). The Federal Government is not subject to the Eleventh Amendment and may sue a state "without the consent of" the same. *Principality of Monaco v. State of Mississippi*, 292 U.S. 313, 329 (1934); *see also United States v. Mississippi*, 380 U.S. 128, 140 (1965) (The Eleventh Amendment "forbids suits against States *only* when 'commenced or prosecuted by Citizens of another State, or by Citizens or Subjects of any Foreign State.'") (internal citation omitted) (emphasis added). "[N]othing in [the Eleventh

---

[4] Defendants do not contest that the State of Connecticut, CSA Griffin, and IG Prescott are proper defendants with respect to the United States' challenge to Sections 3, 4, and 5 of SB 397.

22

Amendment] or any other provision of the Constitution prevents or has ever been seriously supposed to prevent a State being sued by the United States. The United States in the past has in many cases been allowed to file suits … against States[.]" *Mississippi*, 380 U.S. at 140 (collecting cases).

Defendants' attempt to inject the *Ex Parte Young* standard in this action brought by the United States is misguided. While "courts in the Second Circuit have not extended the exception under *Ex parte Young* on the basis that a state official has a general duty to execute and enforce state laws," *Kuck v. Danaher*, 822 F. Supp. 2d 109, 142 (D. Conn. 2011) (suit by private citizens against Governor and other state entities), this premise is inapposite here where the United States is a plaintiff. *See Monaco*, 292 U.S. at 329. For the reasons set forth below, the United States has standing to sue the named defendants where the injuries the United States seeks to redress through this lawsuit are fairly traceable to them and a favorable ruling would redress those injuries.

First, CSA Griffin is a proper party. The CSA is the Chief of the DCJ, Conn. Gen. Stat. § 51-275, which is responsible for "exercis[ing] all powers and duties with respect to the investigation and prosecution of criminal matters[.]" *Id.* § 51-277(a). The DCJ "shall take all steps necessary and proper to prosecute all crimes and offenses against the laws of the state and ordinances, regulations and bylaws of any town, city, borough, district or other municipal corporation or authority." *Id.* § 51-277(b). The CSA "may sign any warrants, informations, applications for grand jury investigations and applications for extradition[,]" *id.* § 51-277(d)(1), may "appear in court to represent the state[,]" *id.* § 51-277(d)(2), and, in certain circumstances, "may represent the state in lieu of a state's attorney for a judicial district in any investigation, criminal action or proceeding[.]" *Id.* § 51-277(d)(3).

23

The CSA (through the DCJ) has particular authority with respect to use of force incidents in Connecticut. *See* ECF 1-1, § 3. For example, "[w]henever a peace officer," including federal officers under Section 3(a)(1)(A) of SB 397, "in the performance of such officer's duties, uses physical force upon another person and such person dies as a result thereof or uses deadly force," "the [DCJ] shall cause an investigation to be made and the Inspector General shall have the responsibility of determining whether the use of physical force by the peace officer was justifiable under section 53a-22." *Id.* § 3(a)(2). Section 3(a)(5)(B) of SB 397 specifically provides the DCJ (and the IG) with "the unrestricted right to access the scene and collect evidence" in such situations "regardless of whether such incident involved only peace officers employed by the federal government[.]" *Id.* § 3(a)(5)(B). And under SB 397, any restriction of such access enables the DCJ or the IG to bring legal action against the violator. *Id.* § 3(a)(5)(C). Moreover, the CSA receives reports on use of deadly force resulting in death from the IG. *See id.* § (a)(6), (b). With respect to Section 6, any federal agent who violates subsections (b) or (c) "shall be guilty of a class D misdemeanor," *Id.* §§ 6(b), (c), which is punishable by up to 30 days in jail. Conn. Gen Stat. § 53a26(d)(4). Accordingly, given the CSA's responsibilities for the prosecution of all crimes and offenses in Connecticut and specifically those with respect to use of force by a peace officer (which includes federal officers), the CSA is properly named, and a favorable ruling would redress the United States' injuries.

Second, Governor Lamont is a proper party to this action. The Governor of Connecticut is vested with "[t]he supreme executive power of the state" and is empowered to "investigate into, and *take any proper action concerning*, *any matter involving the enforcement of the laws of the state* and the protection of its citizens." Conn. Gen. Stat. § 3-1 (emphasis added); *see also* Conn. Const. art. IV § 5 ("The supreme executive power of the state shall be vested in the governor.");

24

*id.* § 12 ("[The governor] shall take care that the laws be faithfully executed."). Moreover, Governor Lamont has indicated an intent to enforce SB 397 against federal officers and agents, including Sections 3, 4, 5, and 6. Compl. ¶ 33. In a post on X, Lamont stated, "Today I signed SB 397 into law. Connecticut will not stand by while federal agents violate the constitutional rights of our residents. Protected areas, accountability measures, and the right to sue federal agents who break the law." *Id.* (citing X post, May 4, 2026 (@GovNedLamont)). Governor Lamont's authority with respect to the laws of Connecticut and his intent to enforce SB 397 against the Federal Government make him a proper party to this action.

Finally, Attorney General Tong is a proper party. The Attorney General of Connecticut "shall have general supervision over all legal matters in which the state is an interested party, except those legal matters over which prosecuting officers have direction." Conn. Gen. Stat. § 3-125. Attorney General Tong similarly expressed an intent to enforce SB 397 against the Federal Government. Compl. ¶ 33. Indeed, he proclaimed that the "passage of Senate Bill 397 reaffirms a simple truth. In Connecticut, no one is above the law, including federal immigration officials." *See id.* (citing https://portal.ct.gov/ag/press-releases/2026-press-releases/attorney-general-tong-praises-senate-passage-of-senate-bill-397 (last visited Aug. 3, 2026)). At the bill's signing, Tong stated that, "[w]e are sovereign in this state, this is the sovereign state of Connecticut," "we will never back down, we will never quit, and we will never surrender." Eng, https://ctnewsjunkie.com/2026/05/04/we-are-all-minneapolis-lamont-signs-bill-limiting-ice-into-law/ (May 4, 2026, 2:11 p.m.) (last visited Aug. 3, 2026). Attorney General Tong's lead role over legal matters in which the State is an interested party, and his clear statements regarding the intent

to enforce SB 397 and Connecticut's sovereignty vis-à-vis the Federal Government and the U.S. Constitution make him a proper party.[5]

Finally, it is important to note that, in addition to the harm these provisions inflict on the United States in terms of the criminal penalties imposed on federal officers for violating SB 397, the United States independently possesses standing here because Sections 3, 4, 5, and 6 inflict a sovereign injury where these provisions are unconstitutional on their face. *See, e.g.*, *Connecticut*, 566 F. Supp. at 579; *California*, 173 F.4th at 1069; *Virginia*, 2026 WL 1909995, at *12; *see also Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah,* 790 F.3d 1000, 1005 (10th Cir. 2015) (Gorsuch, J.).

D.    **Governor Lamont, Attorney General Tong, CSA Griffin, and the State of Connecticut Are Proper Parties in the United States' Challenge to Section 6 of SB 397.**

For the reasons just discussed, CSA Griffin, Governor Lamont, and Attorney General Tong are proper parties with respect to the United States' challenge to Section 6 of SB 397. Defendants' attempts to use the inapposite *Ex Parte Young* standard in this action brought by the United States should be rejected for the same reasons. *See* MTD Memo. 12.

Defendants contend that the State of Connecticut is not a proper party to this action. MTD Memo. 12-14. Defendants again rely on *Ex Parte Young* for the proposition that "the Supreme Court has long recognized that a state officials' enforcement of an allegedly unconstitutional statute is, by definition, not attributable to the State itself[.]" *Id.* 13 (citing 209 U.S. at 142). Once again, *Ex Parte Young* is not relevant to the analysis here. Likewise, Defendants' reliance on *Columbia Air Servs. v. DOT*, 293 Conn. 342, 349 (2009), is misplaced. *See id.* at 12-13. According to

---

[5] To the extent that Defendants concede that should the United States prevail, it can obtain complete relief from the remaining defendants (such as the State of Connecticut), the United States does not oppose dismissing the Governor and Attorney General from this lawsuit.

Defendants, "[b]ecause none of the named Defendants have authority to redress Plaintiff's alleged harms, the claims against [the] State itself, as a purely political entity that 'can act only through its officers and agents,' are even more attenuated." *Id.* at 12-13 (quoting *Columbia Air Servs.*, 293 Conn. at 349). But that case concerned state sovereign immunity, specifically, the principle that a state cannot be sued without its consent. The United States is not, however, bound by this limitation. *Mississippi*, 380 U.S. at 140.

The United States *always* has standing to pursue a sovereign injury. *See, e.g.*, *Connecticut*, 566 F. Supp. at 579 (concluding "without hesitation that the United States has shown that it will be irreparably injured by the continuing violation of ... a Federal statute, that would result from failure to enjoin enforcement of the Connecticut statute"). Indeed, the Supreme Court has long recognized that "[t]he Federal Government can bring suit in federal court against a State" to "ensur[e] the State['s] compliance with federal law." *Seminole Tribe of Fla.*, 517 U.S. at 71 n.14 (citing *United States v. Texas*, 143 U.S. 621, 644-45 (1892)). This is a current, ongoing injury, not one that merely occurs should Connecticut officials decide to prosecute federal officers. Defendants claim that "enjoining an entire State from enforcing a criminal statute would exceed the limits on federal courts' equitable powers[.]" MTD Memo. 13. Not so. Subscribing to this logic would dismantle Supremacy Clause jurisprudence and would give states license to micromanage federal officials and override federal authority through their criminal codes.

The United States has sought relief against "Defendants, as well as their successors, agents, servants, employees and attorneys, and all those working in concert with them[.]" Compl., Prayer for Relief ¶ B. The State of Connecticut, through its legislative process, passed SB 397, and Governor Lamont signed the bill into law. The Governor, Attorney General, and the CSA, as well as their subordinates, including state prosecutors, all play a role in the execution and enforcement

27

of the laws of Connecticut. Defendants' contention that the United States cannot obtain relief from these individuals because they lack enforcement authority for the challenged sections of SB 397 is unfounded. *See Missouri*, 114 F.4th at 985 (rejecting the contention that the purported injury was not redressable for lack of enforcement, noting that "[s]o long as a state official is giving effect to a state statute in a manner that allegedly injures a plaintiff and violates [the plaintiff's] constitutional rights, an action to enjoin implementation of the statute ... is available against the state official") (internal citation omitted). Connecticut has enacted a law that it intends to enforce. That law is unconstitutional, and the United States is entitled to seek relief from that law in federal court. Defendants' attempt to obfuscate the standing inquiry should be rejected.

## II.    This Dispute is Ripe for Review.

Defendants claim that the United States' claims are unripe where such concerns "are more appropriately addressed in a hypothetical prosecution, should one ever occur, than with the blanket ban on prosecution it seeks here." MTD Memo. 32. But the Supreme Court has instructed that, seeking relief from threatened action does "not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128-29 (2007) (collecting cases). Ripeness, which, like standing, is rooted in Article III's case or controversy requirement, reflects Article III's "prudential limitations on the exercise of judicial authority." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). Prudential ripeness is "a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). To assess whether an

28

issue is ripe for review, courts "proceed with a two-step inquiry, requiring [them] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 131-32 (2d Cir. 2008) (internal quotation marks and citation omitted).

The challenges to Sections 3, 4, 5, and 6 of SB 397 are fit for judicial review and the United States faces substantial harm absent the Court's consideration of the issues. *Id.* First, this pre-enforcement challenge is fit for judicial review. *See Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 170 (1967). The United States has presented a facial challenge to Sections 3, 4, 5, and 6 of SB 397, asserting claims under the Supremacy Clause, which raise purely legal questions. *All. of Auto. Mfrs., Inc. v. Currey*, 984 F. Supp. 2d 32, 46 (D. Conn. 2013) ("A pre-enforcement challenge to the facial validity of a law is normally fit for judicial review as of the law's enactment, because such challenges involve purely legal questions requiring no special agency expertise."); *see S. Lyme Prop. Owners Ass'n., Inc. v. Town of Old Lyme*, 539 F. Supp. 2d 524, 536 (D. Conn. 2008). Here, the issue before the Court – whether Sections 3, 4, 5, and 6 are constitutional, are not "contingent on future events or may never occur." *Isaacs v. Bowen,* 865 F.2d 468, 478 (2d Cir. 1989). The law is in effect, and Connecticut has not disavowed its enforcement. Indeed, the law presents an immediate, ongoing sovereign injury to the United States. *See* supra I.A.i. Moreover, the issues "would not benefit from any further factual development and [] the court would be in no better position to adjudicate the issues in the future than it is now." *Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003).

Furthermore, the law is final, and there is no risk that Connecticut will change course, especially considering Defendants' announced intention to enforce the law against federal officers. *See* supra Section I.C.iii. Sections 3, 4, 5, and 6 require federal officers to conform their conduct

29

to Connecticut law *now* or face prosecution, further solidifying this challenge's fitness for review. *See New York v. United States Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 565 (S.D.N.Y. 2019) ("[A]s a substantive and final regulation which raises pure questions of law and requires plaintiffs immediately to conform their conduct, the Rule is fit for immediate review.").

Second, the United States will suffer substantial hardship absent judicial review. Where, as here, a law "'requires an immediate and significant change in [a party's] conduct of its affairs with serious penalties attached to noncompliance,'" it "presents a prototypical instance of hardship." *Id.* (citation omitted). SB 397 requires federal officers to comply with Connecticut's use of force policy, prohibits federal officers from wearing facial coverings in the execution of their official duties, and imposes identification requirements on federal officers. ECF 1-1, §§ 4, 6(b), (c). Moreover, violations of these provisions open federal officers up to criminal prosecution, *id.* §§ 3(a)(3), (c); 5(a), 6(b), (c), and Section 6 seeks to impose civil liability on officers by prohibiting "any privilege or immunity" in tort cases where the officer violated the facial covering provision. *Id.* § 6(d). As described in detail in the preliminary injunction briefing, these provisions irreparably harm the United States absent judicial intervention. *See* PI Memo. 20-23.

Section 6's ban on facial coverings and imposition of identification requirements endangers federal officers and agents by publicly exposing their personal identities at a time when instances of violence against federal officers are on the rise. *See, e.g.*, ECF 12-4 (Egerton Decl.) ¶ 6-12. For example, DHS officers in particular have experienced an increase in death threats and assaults, which are facilitated by doxxing websites that spread the identities and home addresses of officers and their families, encouraging retaliation. *See, e.g.,* Cleveland Decl. ¶ 21-29 (describing threats against DHS officers). Moreover, Section 6 jeopardizes law enforcement operations, including surveillance, protection assignments, and undercover operations. *See* O'Brien Decl. ¶ 12; Allen

Decl. ¶¶ 15, 18, 20; Egerton Decl. ¶ 16; Cleveland Decl. ¶¶ 31, 33. Additionally, the danger posed by compliance with Section 6 will deter federal agents and officers from effectively engaging in important federal law enforcement operations. *See* Allen Decl. ¶¶ 20, 22; Egerton Decl. ¶¶ 14-15; Cleveland Decl. ¶¶ 34-35.

SB 397's use of force provisions in Sections 3, 4, and 5 further pose substantial harm to the United States, counseling in favor of immediate judicial review. These provisions similarly endanger federal officers by imposing state-specific use of force requirements that differ from federal policies. Federal officers comply with, and are trained on, use of force policies that comply with federal law. *See* O'Brien Decl. ¶ 16; Allen Decl. ¶ 21; DuBan Decl. ¶¶ 10-11; Cleveland Decl. ¶¶ 17-18. Requiring federal officers to learn and comply with a new state law with onerous requirements for use of force, which differ from the federal policies agents know, may cause agents to hesitate in such situations, which can be the difference between life and death. *See* O'Brien Decl. ¶¶ 17-18; Allen Decl. ¶ 21; DuBan Decl. ¶ 13; Cleveland Decl. ¶ 18. Moreover, the use of force provisions do not account for instances where federal law enforcement may require use of force, including in the execution of search warrants and other investigative actions or protection assignments. Accordingly, use of force in those situations may carry the threat of prosecution. Likewise, Sections 3, 4, and 5 risk chilling federal law enforcement in Connecticut by subjecting federal officers to criminal liability for noncompliance, particularly because compliance will endanger officers and limit their federal functions. *New York v. Tanella*, 374 F.3d 141, 147 (2d Cir. 2004). Further, there is a risk that, without Court intervention, federal, state, and local law enforcement will be placed at odds with one another, causing dangerous and unnecessary confrontation between officers.

Furthermore, the United States will suffer substantial hardship absent judicial review where

31

it will be subject to the enforcement of an unconstitutional state law in violation of the Supremacy Clause. *See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 366-67 (1989) (noting that irreparable injury may be established "by a showing that the challenged state statute is flagrantly and patently violative of ... the express constitutional prescription of the Supremacy Clause" (citation omitted)); *California*, 173 F.4th at 1069 (finding irreparable harm based on a Supremacy Clause violation); *Virginia*, 2026 WL 1909995, at *12 (same).

Defendants attempt to distract from the proper ripeness analysis by raising the concept of Supremacy Clause immunity, claiming that such a safeguard "already ensures a constitutional balance of state and federal powers without requiring the facial invalidation of state criminal laws[.]" MTD Memo. 34. However, it is patently unreasonable to expect the United States to stand idly by while states enact and enforce unconstitutional laws violative of the Supremacy Clause with the understanding that, once a federal officer is criminally charged, he or she can raise Supremacy Clause immunity. The United States is entitled to affirmatively seek recourse in federal court where a state enacts a law that runs afoul of the Constitution. *See Seminole Tribe of Fla.*, 517 U.S. at 71 n.14. It need not wait until its agents are criminally charged to do so. *Steffel*, 415 U.S. at 459. The United States is not asking the Court "to speculate about whether a potential action by a federal official falls within the bounds of Supremacy Clause immunity." MTD Mot. 36. Instead, the United States seeks this Court's determination of whether the challenged provisions are invalid under the Supremacy Clause, which is an issue that is ripe for review.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

Dated: August 3, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JACQUELINE COLEMAN SNEAD
Deputy Director

ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsel

*/s/Alessandra Faso*
ALESSANDRA FASO
Senior Litigation Counsel (IL Bar No. 6326883)
U.S. Department of Justice
Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC  20044-0386
Tel: (202) 451-7728
Email: alessandra.faso@usdoj.gov

*Attorneys for the United States of America*

33