| | |
|---|---|
| UNITED STATES OF AMERICA, | : Civil Action No. |
|     Plaintiff, | : 3:26-cv-758 (VDO) |
| | : |
| v. | : |
| | : August 7, 2026 |
| STATE OF CONNECTICUT; NED | : |
| LAMONT, Governor of Connecticut, in his | : |
| official capacity; WILLIAM TONG, | : |
| Attorney General of Connecticut, in his | : |
| official capacity; PATRICK GRIFFIN, | : |
| Chief State's Attorney of Connecticut, in | : |
| his official capacity; and ELIOT D. | : |
| PRESCOTT, Deputy Chief State's | : |
| Attorney, Inspector General, in his official | : |
| capacity, | : |
|     Defendants. | : |

### REPLY MEMORANDUM IN FURTHER SUPPORT OF
### SAIFULLAH KHAN'S MOTION TO INTERVENE

Much is now common ground. Both oppositions apply the same four-part test for intervention of right. Opp. 2; *see* Mem. 9–10.[1] Neither disputes that this motion is timely. And neither objects to—or so much as mentions—the conditions Mr. Khan accepted in advance: no discovery without leave of Court, no continuances, consolidated briefing within the page limits, and the existing schedule, including the August 25 argument, kept to the day. Mem. 27; ECF No. 42-5 ¶¶ 3–4. What remains in dispute is whether Mr. Khan has a qualifying interest, whether this case may as a practical matter impair it, and whether any existing party represents it.

On that question, the two oppositions cannot both be right. The defendants assure the Court that "[t]his Court's decision in this case thus has no impact on Section 1 of SB 397," Obj. 2—the section under which Mr. Khan's suit is now pending. The United States, the only party that decides

---

[1] Citations to "Opp." are to the United States' opposition to this motion, ECF No. 53 (filed July 31, 2026); to "Obj.," the defendants' objection, ECF No. 52 (filed July 30, 2026); to "Mem.," Mr. Khan's supporting memorandum, ECF No. 42-1; to "Compl.," the complaint, ECF No. 1; and to "ECF No. 54," the United States' opposition to the defendants' motion to dismiss, filed August 3, 2026. Page references are to each document's internal pagination.

what it will challenge, gives no such assurance. Its complaint records "grave concerns over the constitutionality of other parts of the Act" and "reserves the right to bring additional challenges in the future." Compl. 2 n.1. Its opposition restates Mr. Khan's concern "that any decision in this case could affect Section 1 through its reasoning," Opp. 3, and disputes only whether that concern counts under Rule 24. And its theory of the case—that a State may not regulate federal officers "in any manner and to any degree," Compl. ¶ 1; ECF No. 54 at 1 (quoting *United States v. California*, 173 F.4th 1060, 1068 (9th Cir. 2026))—does not stop at the four sections named in its prayer.

Three days after opposing this motion, opposing the defendants' motion to dismiss, it argued that a party facing a threat recorded on the books "need not wait until its agents are criminally charged," ECF No. 54 at 32; that where the other side has "never disavowed" the feared step, the anticipated injury is "not only credible, but imminent and concrete," *id.* at 17–19; and that when a filing is silent about intentions, "[t]hat absence speaks volumes," *id.* at 18 (quoting *United States v. City of Philadelphia*, No. 26-cv-4208, 2026 WL 1906075, at *8 (E.D. Pa. July 2, 2026)). Every element is present here, with the roles reversed: the concern is recorded, the challenge is reserved, and conspicuously absent from the United States' opposition is any statement that it does not intend to bring it. Mr. Khan asks only that the United States be held to its own standard, and that Rule 24 be applied as written.

## I. MR. KHAN'S INTEREST IS DIRECT, SUBSTANTIAL, AND LEGALLY PROTECTABLE (OPP. 3–5; OBJ. 1–2).

### A. A filed, pending cause of action is a paradigm Rule 24(a)(2) interest.

The opposition states the test: the interest must be "direct, substantial, and legally protectable." Opp. 3 (citing *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96–97 (2d Cir. 1990)). Mr. Khan's interest is a cause of action—conferred by Section 1 on

"the party injured," and in suit now as *Khan v. Uccello*, No. HHD-CV-26-6228240S (Conn. Super. Ct.). Mem. 2–3, 12. "[A] cause of action is a species of property . . . ." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). The interest is direct: the claim rises or falls with the Act whose validity is the subject of this action. It is substantial: on this record, Section 1 is the only remedy reaching the officers themselves. Mem. 17 n.2. And it is legally protectable: the statute names its holder. What *Washington Electric* excludes is an interest "contingent upon the occurrence of a sequence of events before it becomes colorable." 922 F.2d at 97. A filed lawsuit is the opposite of that.[2]

The United States warns that on this reasoning "anyone could intervene as of right in any lawsuit." Opp. 3. Not anyone—the person who holds the claim this case's reasoning would decide, and that is exactly one person. The Rule, moreover, protects "an interest relating to the property or transaction that is the subject of the action," Fed. R. Civ. P. 24(a)(2)—not, as the opposition restates it, an interest confined to "the only claims asserted in the Complaint." Opp. 3. The words the restatement drops—"relating to"—are the Rule's. And where the interest is this strong, the Second Circuit instructs that the other elements ask less: the Rule's components "are not bright lines, but ranges," and "[a] showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation." *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984).

---

[2]Because Mr. Khan seeks nothing beyond the denial of the relief the United States seeks, he need not separately establish Article III standing. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017) (standing is required only for an intervenor who "pursue[s] relief that is different from that which is sought by a party with standing"); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020) (court of appeals "erred by inquiring into the Little Sisters' independent Article III standing" where the intervenor sought relief also sought by a party with standing). In any event, a pending damages claim whose value the requested judgment directly threatens would satisfy any measure. Mem. 10–11.

**B.  The governments' own filings tie this case to Section 1 and to private tort suits.**

The defendants write that "[n]one of these sections impact or relate to Mr. Khan's lawsuit or Section 1," Obj. 2, and the United States agrees that Sections 3 through 6 "do not grant private citizens a cause of action," Opp. 3. The United States' same-week filing says otherwise. It describes Section 6(d)—a challenged provision—as "seek[ing] to impose civil liability on agents by purporting to prohibit any assertion of 'any privilege or immunity' in tort cases." ECF No. 54 at 5; *accord id.* at 30. Tort cases have tort plaintiffs; Mr. Khan—now suing the officers who tased him—is one. On the United States' own description, the challenged sections operate on private civil claims, the very category of interest the oppositions call collateral.

The same brief twice quotes the Governor's description of the Act—"the right to sue federal agents who break the law"—as proof of the defendants' "intent to enforce" it. ECF No. 54 at 18–19, 25; Compl. ¶ 33. The "right to sue" is Section 1, and Mr. Khan is the person exercising it. A plaintiff cannot plead that promise into its complaint, invoke it as evidence of what the Act is about, reserve "the right to bring additional challenges," Compl. 2 n.1, and then call the promise's only claimant a stranger to the transaction. Even the defendants' objection describes Section 1 as "a private cause of action designed to increase accountability and provide a real remedy for Connecticut residents whose constitutional rights are violated." Obj. 1. That is a description of Mr. Khan's suit.

The case law asks less than what Mr. Khan holds. Intervention of right has issued for movants who held only a statute's protection—the exemption's beneficiary in *Little Sisters*, 591 U.S. at 674 n.6, and, over both sovereigns' objection, providers with "no enforceable rights" under the rider they defended in *California ex rel. Lockyer v. United States*, 450 F.3d 436, 439–42 (9th

4

Cir. 2006); *see* Mem. 13–14 (collecting authority). A rule that admits a statute's beneficiaries admits, *a fortiori*, the holder of its cause of action.

### C. The retroactivity argument is a merits question for another court—as the United States concedes.

The United States' last answer is that Mr. Khan "concedes he may not have an interest under SB 397 at all" because his injuries predate the Act. Opp. 4. The memorandum concedes nothing: it explains that under Connecticut law remedial provisions are presumed to apply to pending matters, and that the question belongs to the court where the claim is pending. Mem. 15. The argument then runs into a settled bar: "[e]xcept for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129–30 (2d Cir. 2001) (quoting *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984)). The opposition does not argue frivolousness, and could not: it agrees the scope question "must be decided by another court." Opp. 5. A claim that the plaintiff concedes must be litigated elsewhere is not frivolous here. And the burden Mr. Khan bears, Opp. 5, is to establish the elements of intervention—not to win his claim in advance.

## II. DISPOSING OF THIS ACTION MAY, AS A PRACTICAL MATTER, IMPAIR THAT INTEREST (OPP. 4–5, 7; OBJ. 2).

### A. The first judgment construing the Act will control the case Mr. Khan has already filed.

The Second Circuit holds that the force of stare decisis supplies the required impairment where litigation will likely yield "conclusions of law on issues of first impression" that "would control any subsequent lawsuit by the intervenors." *Oneida*, 732 F.2d at 265–66 (finding such

"unusual circumstances"). The opposition, which nowhere cites *Oneida*, describes those circumstances itself: no court has yet construed the Act; the questions presented are "purely legal," ECF No. 54 at 29; and because a Section 1 suit against federal officers is removable under 28 U.S.C. § 1442(a)(1), *Khan v. Uccello* will be litigated in this courthouse, beneath whatever this Court holds—same statute, same officers, same events. Mem. 16–17. This is more than an interest in "shaping" precedent, Opp. 7, it is practical impairment of Mr. Khan's interests.

### B. "Wait," Opp. 4, is the impairment, not the cure.

To the reserved challenge, the United States answers that "the time to seek intervention would be if such an amendment were to occur." Opp. 4. Its own filings supply the response. A party facing a recorded threat "need not wait until its agents are criminally charged." ECF No. 54 at 32. A government that has "never disavowed" the feared step makes the injury "not only credible, but imminent and concrete." *Id.* at 17–19. Silence "speaks volumes." *Id.* at 18. The sequence the United States proposes—precedent first, challenge second, intervenor last—would have Mr. Khan arrive only after the reasoning that decides his claim is on the books. *Cf. Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267 (2022). Rule 24(a)(2) says "may" precisely so that no one is required to wait for the harm.

### C. The case may also end without a judgment—on terms set by parties who answer for nothing Mr. Khan holds.

The Court has noted that the parties might "agree to a temporary stay in enforcement of the challenged provisions." ECF No. 21. The United States now offers not to "oppose dismissing the Governor and Attorney General from this lawsuit." ECF No. 54 at 26 n.5. Dispositions of that kind "could turn on political calculations" as to which those most affected "would not be influential" and "may not even be privy." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27

F.4th 792, 802 (2d Cir. 2022). A nonparty can neither object to a negotiated disposition nor appeal a judgment: "the better practice is for such a nonparty to seek intervention for purposes of appeal." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam).

The defendants' answer is their assurance that this case "has no impact on Section 1." Obj. 2. The assurance binds no one—not the United States, whose reserved challenge it predicts away, and not any later court reading this judgment. If the defendants are right, Mr. Khan's presence costs the parties nothing. If they are wrong, his absence may cost him the only claim he holds. "May as a practical matter" resolves that doubt in favor of intervention. The objection also inverts the pleadings when it warns that Mr. Khan would "inject a wholly unnecessary constitutional issue into this suit." Obj. 1. His Fourth Defense asks the Court *not* to decide Section 1's fate—to confine any judgment to "the provisions and applications actually adjudicated." ECF No. 42-3 at 6. The party holding a reserved constitutional challenge is the plaintiff. Compl. 2 n.1. The United States' remaining answer—that once it prevails, Mr. Khan "cannot have a legitimate or legally protectable interest in preserving those provisions," Opp. 5—assumes its victory to defeat the motion. On that logic no statute's defender could ever intervene, because every plaintiff expects to win. The single case cited, *A.H. v. French*, 985 F.3d 165, 184 (2d Cir. 2021), states the public-interest factor of the preliminary-injunction standard after a finding of likely success; it does not address Rule 24.

## III.   NO EXISTING PARTY ADEQUATELY REPRESENTS MR. KHAN'S INTEREST (OPP. 5–6; OBJ. 1–2).

### A.   The opposition states the wrong standard.

The United States would require Mr. Khan to show that his interests "will not be adequately defended." Opp. 6. That has never been the burden. Representation need only "'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v.*

*United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). *Trbovich* had this case's shape—a private movant beside a government litigant serving "two distinct interests, which are related, but not identical," *id.* at 538–39—and the Supreme Court, "[r]ather than endorse a presumption of adequacy," applied the minimal burden. *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196–98 (2022). Adequacy, moreover, is congruence, not vigor: the test is "not whether" the existing party "did well," but whether its interests were "so similar" to the movant's "that adequacy of representation was assured"—because a representative with institutional interests of its own "may, in short, behave like a stakeholder rather than an advocate." *Brennan*, 260 F.3d at 132–33. The "resolve to vigorously defend" credited in *Kearns v. Cuomo*, No. 1:19-cv-902, 2019 U.S. Dist. LEXIS 175384, at *16–17 (W.D.N.Y. Oct. 9, 2019) (cited at Opp. 6), therefore does not answer this motion: Connecticut's vigor is conceded, Mem. 3, and it is beside the question.

**B. The divergence is briefed and pleaded, not conjectured.**

Adequacy is measured against the interest the movant actually asserts. Mr. Khan's proposed Answer pleads a defense—severability, with any judgment confined to the provisions actually adjudicated, ECF No. 42-3 at 6 (Fourth Defense)—that appears in no defendant's filing: not the motion to dismiss, not the preliminary-injunction opposition, not the objection to this motion. The assertion that Mr. Khan raises "the very same defenses" as Connecticut, Opp. 5, is accurate only as to the jurisdictional objection his Answer joins; the defense that protects his claim is the one that is missing. Under the United States' own authority, the question is whether the movant's stake relates to "colorable legal defenses" that the existing "defendants would be less able to assert." *Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 62 (2d Cir. 1987); Opp. 6. This defense is colorable—Connecticut law presumes severability, Conn. Gen. Stat. § 1-3, and remedies law directs courts to "try not to nullify more of a legislature's

8

work than is necessary," *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006)—and the existing defendants have not asserted it at all. That is not a different "motive to litigate," Opp. 6; it is a different position.

The United States wants every challenged section struck down—and reserves the right to come back for the rest. The defendants say no section should fall at all. There is a third position: Sections 3 through 6 fall, and Section 1 stands. It is the one Connecticut law itself prescribes, Conn. Gen. Stat. § 1-3—and no party in this case will argue it. Except Mr. Khan.

The record shows why. The State's dismissal papers litigate the challenged provisions as dispensable: they "'proscribe' nothing," ECF No. 30-1 at 17; Inspector General prosecutions are "rare," *id.* at 21 n.10; Section 4 is "a boon, not harm," *id.* at 19; and even an injunction would not matter, because the State's Attorneys "can and will prosecute any federal officials who violate Connecticut's criminal laws," *id.* at 31. A sovereign can afford every one of those arguments—its enforcement power survives this case however it ends. The holder of a Section 1 claim can afford none of them. The defendants' professed alignment—"entirely aligned with Mr. Khan regarding the constitutionality of Section 1," Obj. 1—is alignment on a question they insist is not in the case, backed by a promise to "vigorously defend the law, if it is ever challenged." *Id.* "If it is ever challenged" is the problem: the United States' "grave concerns" are already on file, Compl. 2 n.1, and by the day concern becomes challenge, this case's reasoning will exist.

Nor is *In re N.Y.C. Policing* distinguishable as "simply not analogous." Opp. 6. Its adequacy holding did not rest on formal adversity between governments; it rested on the recognition that "the interests of employers and their employees frequently diverge," 27 F.4th at 802–04 (quoting *Floyd v. City of New York*, 770 F.3d 1051, 1059 (2d Cir. 2014))—a shared caption, with different calculations behind it. The same divergence defeated the government's

9

claim of adequacy in *Lockyer*, on litigating positions "already" of record there as they are here: a government defending a statute may "abandon or concede a potentially meritorious reading" of it, and such differences "go to the heart of the defense." 450 F.3d at 444–45. Only Mr. Khan has an interest and a position that will survive any election or change in government personnel.

## CONCLUSION

The motion should be granted on the conditions Mr. Khan has offered, and the proposed Answer, ECF No. 42-3, should be docketed. Because the alignment of the parties should be settled before the Court first hears this case, Mr. Khan respectfully asks that the motion be decided before the argument scheduled for August 25, 2026. ECF Nos. 37–38.

Respectfully submitted,

THE PROPOSED INTERVENOR-DEFENDANT,
SAIFULLAH KHAN

By: /s/ Alexander T. Taubes
Alexander T. Taubes, Esq.
470 James Street, Suite 007
New Haven, Connecticut 06513
Tel. (203) 909-0048
alextt@gmail.com
Federal Bar No. ct30100

10