**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 3:26-CV-00758-SVN |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, ET AL. | : | |
| *Defendants.* | : | August 17, 2026 |

**DEFENDANTS' REPLY TO**
**PLAINTIFF'S OPPOSITION TO THEIR MOTION TO DISMISS**

The Plaintiff, the United States, lacks standing to bring nearly all its claims. It named the wrong Defendants while trying to invalidate Connecticut's mask and identification law. And its claims challenging Conn. Gen. Stat. §§ 53a-22, 51-277a, and 51-277e suffer a fatal pleading defect that cannot be remedied: it cannot demonstrate any concrete harm from any of these statutes, nor can it demonstrate redressability. The federal government cannot manufacture standing by purporting to suffer sovereign harm from laws it does not like when those statutes proscribe no conduct and merely dictate the bounds of Connecticut's criminal justice officials' authority. The only criminal penalties federal law enforcement may face with regard to §§ 53a-22, 51-277a, and 51-277e is for violating generally applicable state criminal laws like murder, manslaughter, or assault, *that are not at issue here.*

The Plaintiff's primary argument that the mere existence of the challenged laws on the books constitutes a "sovereign injury," regardless of whether there is an imminent or credible threat the law will be enforced against them, would permit the Plaintiff to challenge virtually any state

law it wants at any time simply by *asserting* that the law violates intergovernmental immunity or the Supremacy Clause. Courts have roundly rejected that limitless view of sovereign injury, and so too should this Court. And the Plaintiff's claim that it can invoke an unspecified "sovereign injury" to bar Connecticut from investigating and prosecuting federal law enforcement officers who harm and even kill its citizens and violate its criminal laws is the sort of breathtaking federal power this Court must reject. Ultimately, the Plaintiff's requested relief would require this Court to immunize federal law enforcement officers so they could violate Connecticut criminal law with impunity. It would deprive Connecticut of its right to enforce its own criminal laws against federal law enforcement officials—a result that would deprive Connecticut of its basic sovereign rights under our federalist system. Such a result cannot stand. For the reasons set forth below and in Defendants' motion, the Court should dismiss this action.

## I. A "sovereign injury" with no concrete, particularized injury, is insufficient to establish standing.

With no concrete injury to speak of resulting from §§ 53a-22, 51-277a, and 51-277e, the Plaintiff relies primarily in their opposition on an assertion of sovereign injury to support their claim. But a bare claim of "sovereign harm" divorced from any actual impact on the federal government or its agents cannot "substitute as a traditional injury in fact." *United States v. City of Boston,* No. 25-12456-LTS, 2026 U.S. Dist. LEXIS 117779, at *25 (D. Mass. May 28, 2026) (this position would allow the federal government to sue over "any pronouncement of a position contrary to federal policy."). If this were allowed, any official statement, law, or regulation opposing federal policies or positions would suffice to provide the Plaintiff standing to seek an injunction, even if the statement lacks any practical effect. *See United States v. California,* No. 2:25-cv-06230-MCS, 2026 U.S. Dist. LEXIS 61221, at *4-5 (C.D. Cal. Mar. 18, 2026) (noting theory that "mere existence of a preempted state law creates a sovereign injury to the federal

government" is not supported by binding authority and has potentially sweeping consequences) (emphasis in original). That is not the law.

Most fundamentally, the Plaintiff's argument seems to be based upon a misunderstanding of the distinction between standing and the merits. The Plaintiff argues: "[w]here a state enacts a law that is invalid under the Supremacy Clause, the Plaintiff suffers a sovereign injury which it has standing to remedy." ECF No. 54 at 9; *id.* at 11 ("SB 297 is invalid under the Supremacy Clause, which in turn causes a sovereign injury"). But this is circular reasoning. Whether a challenged law "is invalid under the Supremacy Clause" is the dispute at issue on the merits of the case. Standing is about whether the court has jurisdiction to even hear that dispute in the first instance. *Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute"). The Plaintiff's argument—that the Court has jurisdiction to hear the merits because the United States thinks it will win on the merits—does not make any sense and would make Article III's requirement to show an injury meaningless.

None of the cases the Plaintiff cite support its novel standing theory. Instead, the authority upon which it relies actually underscores the fallacy of its position and demonstrates that there must be some demonstrable impact and harm upon the federal government for it to have standing. In *United States v. Missouri*, for example, the harm the United States asserted was not simply the existence of a law that declared certain federal gun laws as "invalid" and "rejected" by the state—not that the challenged laws here would be remotely comparable anyway. *Id.* 114 F.4th 980 (8th Cir. 2024); ECF No. 54, Pg. 11. Indeed, the Eighth Circuit did not find even the fact that the state statute created a civil enforcement mechanism to inflict an injury. *Id.* Instead, it relied upon the

concrete harm to the United States that the state of Missouri, in passing the law, withdrew its "resources and manpower" that furthered the enforcement of federal law. *Id.* at 984.

Nor do any of the other cases the Plaintiff cites support its position. For example, *United States v. California*, 921 F.3d 865, 882 (9th Cir. 2019), involved a state statute that imposed inspection requirements and other burdens on federal immigration facilities. Standing was not even challenged in that case. *United States v. Alabama,* 691 F.3d 1269, 1282-83 (11th Cir. 2012), like *United States v. Arizona,* involved state immigration laws that actively and significantly undermined federal efforts to maintain a uniform national policy on immigration. By contrast, the Plaintiff has not shown that §§ 53a-22, 51-277a or 51-277e have or will have any impact on federal operations. Lastly, the Plaintiff's argument about *In re Debs*, 158 U.S. 564 (1895), overstates its holding. That case involved a concrete threat to interstate commerce—not just the existence of a law the federal government did not like.

Other cases have found standing where a state law directly undermined federal interests by requiring a person to engage in conduct that violates federal law. *See*, *e.g., United States v. Idaho,* 623 F. Supp. 3d 1096, 1103 (D. Id. 2022) (Idaho law criminalizing abortion would have required violation of EMTALA). Or in instances where a concrete threat of *enforcement* of a law would allegedly harm the federal government. *See United States v. California,* 173 F.4th 1060, 1063 (9th Cir. 2026) (criminal prosecution of officers can amount to harm). Or, lastly, where Congress had exercised its authority and expressly authorized suit. *See Stauffer v. Brooks Bros.,* 619 F.3d 1321, 1327 (Fed. Cir. 2010) (government had statutory standing to intervene).

These cases all demonstrate that the Plaintiff must establish a concrete injury in fact just like every other plaintiff in order to challenge a law. The Supreme Court has "consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened *enforcement*,

whether today or in the future," or some other concrete harm, like withdrawal of state resources. *California v. Texas*, 593 U.S. 659, 670 (2021) (emphasis in original). That is no less true in Supremacy Clause cases when the federal government is the plaintiff. *California*, 2026 U.S. Dist. LEXIS 61221, at *8; *see also United States v. King County*, 122 F.4th 740, 751 (9th Cir. 2024) (finding United States demonstrated injury in fact where there was a "substantial risk that the county will formally prohibit" entities from servicing ICE charter flights).

Ultimately, the Plaintiff cannot rely on abstract concepts of "sovereign interest" to establish their injury in fact here.

## II. The Plaintiff cannot establish a concrete threat of harm where Conn. Gen. Stat. §§ 53a-22, 51-277a, and 51-277e do not proscribe any conduct, and the Complaint fails to allege any facts to establish that the threat of prosecution is anything other than purely remote and speculative.

The Plaintiff fails to meaningfully engage with Defendants' presentation of the plain language of the challenged statutes in its opposition. But Plaintiff's theory of standing fails for three reasons: 1.) it cannot establish pre-enforcement standing because the *plain language* of the statutes do not proscribe any conduct, do not "impose" requirements on anyone, are not enforceable, and cannot be violated, notwithstanding Plaintiff's mischaracterizations, 2.) because the statutes do not proscribe conduct, federal officials do not face prosecution "thereunder" and instead would be prosecuted for an independent criminal violation, and 3.) to the extent an official could face prosecution, the risk of prosecution is so speculative and attenuated it cannot establish standing.

Plaintiff claims it has standing under a pre-enforcement theory: "it satisfies the injury prong where it demonstrates an intention to engage in conduct proscribed by [the law]… and there exists a credible threat of prosecution thereunder." ECF No. 54, Pg. 12. This theory fails on both points. None of the challenged sections prohibit, restrict, or require the federal government, its

officers, or indeed, any state or local law enforcement to *do,* or *not do,* anything. Instead, § 53a-22 provides a defense to such officers if they are ever charged with a crime or sued under tort law. It is no different than justification defenses that have existed in other states, and that have applied to federal officers, for years. *See* Def. Br. at 16 (collecting statutes); *New York v. Tanella*, 239 F. Supp. 2d 291, 297 (E.D.N.Y. 2003) (noting that in addition to federal defenses, state defenses like self-defense or officer justified use of force defense would be available to DEA agent in state criminal prosecution). The plain language imposes no requirements, restrictions, or policies on anyone and does not "proscribe" conduct. *Cerame v. Slack*, 123 F.4th 72, 83 (2d Cir. 2024) (defining the arguable proscription standard as whether, "on a plausible interpretation of the statute, the conduct is forbidden"). Similarly, §§ 51-277a, and 51-277e do not impose any burdens on or proscribe any conduct of federal officials. They dictate the duties and responsibilities of a state prosecutor. There is no reasonable interpretation of the challenged statutes that proscribes federal officials' conduct.

And even if a federal law enforcement officer were prosecuted by the IG, it would not be "under the challenged law." *Vitagliano v. Cnty. of Westchester,* 71 F.4th 130, 136 (2d Cir. 2023). A person cannot be charged with "violating" §§ 53a-22, 51-277a, or 51-277e. At most, if the IG investigates a use of force incident and exercises his discretion to prosecute, he will charge a peace officer under an independently enforceable criminal statute—like manslaughter, assault, or murder—not §§ 53a-22, 51-277a, or 51-277e. Thus, to remedy the "harm" of potential prosecution the Plaintiff raises, the Court would have to enjoin application of every generally applicable Connecticut criminal statute to federal law enforcement, which it cannot do.

Assuming arguendo that the statutes could be "enforced" against federal officials, the Plaintiff still had to allege a concrete intention to actually or arguably violate those statutes in the reasonably imminent future. To satisfy the injury-in-fact requirement for a pre-enforcement

challenge, a plaintiff must show three requirements: that it has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Picard v. Magliano,* 42 F.4th 89, 97 (2d Cir. 2022) (*quoting Susan B. Anthony List,* 573 U.S. at 158-59). Plaintiff focuses on the "credible threat" requirement. *See* ECF No. 54, Pgs. 18-19. But that misses the mark. Plaintiff fails the standing requirements because it has not alleged a concrete, non-speculative *intention to engage in conduct* that could be prosecuted, whether under the challenged statutes or not.

The Complaint alleges no facts whatsoever that would plausibly establish that federal officers are imminently likely to engage in conduct the OIG can or would prosecute them for (i.e., crimes involving the use of deadly force, or use of nondeadly force resulting in a death). The Plaintiff argues—in wholly conclusory terms—that merely because "the United States will not direct its law enforcement agencies to adopt the policies that Connecticut demands or require its officers to comply with them," federal officers are necessarily threatened with criminal prosecution. ECF No. 54 at 13. But Connecticut is not mandating the implementation of any policy. The assertion that officers are not being directed to comply with the challenged laws is plainly not the same thing as affirmatively alleging that they presently or imminently intend to engage in prosecutable uses of force against Connecticut citizens, or even that a situation is imminently likely to arise where such conduct could occur.

The Plaintiff argues that because the OIG "shall prosecute" law enforcement officials' whose certain uses of force are not justified, federal law enforcement face an imminent and concrete threat of prosecution. But that statutory language does nothing to establish standing because the Plaintiff was obligated to allege an imminent and concrete intention—not a "someday" intention—to engage in conduct that at least arguably violates the laws they are challenging and

places them under a credible threat of prosecution. They have not. That is dispositive. *See Evergreen Ass'n v. Hochul*, 2025 U.S. Dist. LEXIS 17448, at *6 (finding that "the hypothetical chain of events that would need to occur to create the conditions for Evergreen to engage in conduct proscribed by the statute is fatally attenuated").

Making the threat of prosecution even more attenuated, the OIG retains prosecutorial discretion and is not mandated to bring a prosecution in all cases and has declined to do so even where he has found certain uses of force unjustified under Connecticut law. So even if the Plaintiff had sufficiently pled that its agents are likely to engage in deadly force (or non-deadly force in which a person dies as a result)—which it has not—the prospect of an actual prosecution resulting from that conduct would still be contingent on hypothetical circumstances to satisfy standing. And this Court cannot assume that the OIG will act unconstitutionally as the Plaintiff argues. *See Dombrowski v. Pfister,* 380 U.S. 479, 484 (1965) ("we generally assume[] that state courts and prosecutors will observe constitutional protections").

Ultimately, because the challenged statutes do not regulate the conduct of federal law enforcement, no one can be prosecuted for violating them, and the Plaintiff did not allege a non-speculative intention to engage in conduct that would lead to prosecution, it cannot establish standing.[1]

---

[1] This speculative potential situation where the IG could potentially prosecute federal officials not only defeats this claim because of the lack of standing but provides further reason the Court should decline to entangle itself in a constitutional issue that is highly dependent upon the facts and can be raised in any potential prosecution by the federal law enforcement official as a Supremacy Clause immunity defense. *See Lee v. State of Or.,* 107 F.3d 1382, 1391-92 (9th Cir. 1997) (claim brought by doctors challenging facial validity of Oregon's Death With Dignity Act was not ripe because noncompliance with allegedly offending provisions would lead, at most, to an enforcement action, at which time the plaintiffs could challenge the provisions' validity); *Baker v. Grice,* 169 U.S. 284, 291 (1898) ("reasons for interference" in state prosecutions of federal officials must be "extraordinary" and present "exceptional facts as to justify the interference of the Federal tribunal.")

**III. Federal law enforcement officials are and will always be subject to Connecticut's investigation and prosecution for violating its criminal laws.**

The Court must also dismiss all claims seeking to invalidate §§ 53a-22, 51-277a, and 51-277e as applied to federal officials because that relief would not redress the supposed harm. The federal government's primary concern is that federal officers can be prosecuted by the State if they commit a crime. But Connecticut retains a paramount and inviolable right to prosecute anyone who violates its criminal laws, including federal officials, regardless of whether §§ 53a-22, 51-277a, and 51-277e are enjoined. The Plaintiff has presented no real counter to this fact. Instead, in recognizing federal law enforcement may be prosecuted, it claims the state cannot "impos[e] criminal penalties on them for violating unconstitutional laws." ECF No. 54. But again, the only criminal penalties federal law enforcement will face is for violating generally applicable state criminal laws like murder, manslaughter, or assault, *that are not at issue here.*

To get the relief Plaintiff seeks—immunity from criminal prosecution for federal law enforcement—this Court would have to enjoin much of Connecticut's criminal code. Even if the IG is enjoined from initiating that prosecution against federal officials, it does not matter—the State retains the inherent authority, through its prosecutors, to enforce its criminal laws. Connecticut already has that authority and always had that authority, as a fundamental pillar of federalism. It does not need a statute to establish or exercise its authority. That it has chosen to establish a specific office responsible for specific types of investigations and prosecutions does not render Connecticut's basic sovereign right to enforce its criminal laws somehow unconstitutional. So, the Plaintiff's purported "injury" here exists as consequence of our federal system and the Court's judgment here cannot alter that consequence of our constitutional system. "[T]hat is the very kind of relief that cannot alone supply jurisdiction." *California,* 593 U.S. at

673; *All. for Hippocratic Med.*, 602 U.S. at 378-79 ("[F]ederal courts do not issue advisory opinions about the law—even when requested by the President.").

At most, issuance of the relief sought would merely change the state prosecutor who investigates and prosecutes a federal law enforcement official who violates Connecticut criminal law. This does not remedy the supposed harm, because those federal officers will still be prosecuted, albeit by a different state official, under a different state statute not challenged here. The laws federal officers will be charged with will still exist and still be enforced against them no matter what happens in this suit. *See Leal v. Becerra*, 2022 U.S. App. LEXIS 20803, 5th Cir. 2022) ("Redressability is [] a problem when declaring one law unenforceable may not provide relief because a different law independently causes the same injury.") (collecting cases). Consequently, the relief Plaintiff seeks here will not redress its supposed harm.

The Plaintiff's arguments here amount solely to a disagreement and discontent with basic principles of federalism that secure the State's right to enforce its criminal laws against federal officials. That is not enough to bring a claim, and this Court should dismiss Plaintiff's claims challenging §§ 53a-22, 51-277a, and 51-277e.

## IV. Conclusion

For the aforementioned reasons and those asserted more fully in Defendants' opening brief, this Court should grant Defendants' motion to dismiss.

Respectfully submitted,

DEFENDANTS

WILLIAM TONG
ATTORNEY GENERAL

By: /s/ *Janelle Medeiros*
Janelle Medeiros (ct30514)
Timothy Holzman (ct 30420)
Edward Rowely (ct 30701)
Assistant Attorneys General
Office of the Attorney General
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Tel: (860) 808-5020
Fax: (860) 808-5347
E-mail: Janelle.Medeiros@ct.gov
Timothy.Holzman@ct.gov
Edward.Rowley@ct.gov

**CERTIFICATION**

I hereby certify that on August 17, 2026, a copy of the foregoing was electronically filed and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's system.

U.S. DOJ-Civil Rights Dept.
Alexandra Schulte
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Alexandra.Schulte@usdoj.gov

/s/ *Janelle Medeiros*

Janelle Medeiros (ct30514)
Assistant Attorney General